Judith Elkin (JE-4112)
**HAYNES AND BOONE, LLP**
153 E. 53rd Street, Suite 4900
New York, New York 10022
Telephone: (212) 659-7300

Thomas E. Kurth (Admitted *pro hac vice*)
Robin E. Phelan (Admitted *pro hac vice*)
Richard D. Anigian (Admitted *pro hac vice*)
**HAYNES AND BOONE, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000

Karen M. Asner (KA-5950)
Glenn M. Kurtz (GK- 6272)
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10025
Telephone: (212) 819-8200

**Counsel for Bank of America, N.A.**

Michael Luskin (ML-3957)
Trevor Hoffmann (TH-5876)
**LUSKIN, STERN & EISLER LLP**
330 Madison Avenue
New York, New York 10017
Telephone: (212) 293-2700

**Counsel for The Bank of Nova Scotia**

Mitchell A. Lowenthal (ML-2541)
Lindsee P. Granfield (LG-3984)
Jennifer L. Kroman (JK-7772)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

**Counsel for ABN AMRO Securities LLC,**
**Barclays Capital Inc., Banc of America Securities LLC,**
**BNY Capital Markets, Inc., CIBC World Markets Corp.,**
**Citigroup Financial Products, Inc.,**
**Citigroup Global Markets Holdings, Inc.,**
**Deutsche Bank Alex Brown, Inc., ADP Clearing &**
**Outsourcing Services, Inc., Morgan Stanley & Co.**
**Incorporated, PNC Capital Markets, Inc.,**
**Scotia Capital (USA), Inc.,  SunTrust Securities,**
**Inc., TD Securities (USA), Inc.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 Cases |
| ADELPHIA COMMUNICATIONS CORP., *et al.,* | ) |
| a Delaware corporation, | ) Case No. 02-41729 (REG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| ADELPHIA COMMUNICATIONS CORP. AND | ) |
| ITS AFFILIATED DEBTORS AND DEBTORS | ) Adversary Proceeding |
| IN POSSESSION and OFFICIAL COMMITTEE | ) No. 03-04942 (REG) |
| OF UNSECURED CREDITORS OF ADELPHIA | ) |
| COMMUNICATIONS CORP., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| BANK OF AMERICA, N.A., *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT MOTION TO WITHDRAW THE
## REFERENCE OF THE BANK LITIGATION

Bank of America, N.A., in its individual capacity[1] and in its capacity as Co-

Administrative Agent of the Century Cable Holdings Credit Facility, The Bank of Nova Scotia,

in its individual capacity and in its capacity as Administrative Agent of the Parnassos Credit

Facility (the "Banks") and certain Investment Banks[2] (the "Investment Banks") file this Joint

---

[1]     Bank of America has been a creditor of certain of the Debtors since the inception of these cases and is a defendant in this adversary proceeding. Effective June 13, 2005, Bank of America is also successor by merger to Fleet National Bank, an entity which prior to the merger was also a creditor of certain of the Debtors and is a defendant in this adversary proceeding.

[2]     Including: ABN AMRO Securities LLC, Barclays Capital Inc., Banc of America Securities LLC, BNY Capital Markets, Inc., CIBC World Markets Corp., Citigroup Financial Products, Inc., Citigroup Global Markets Holdings, Inc., Deutsche Bank Alex Brown, Inc., ADP Clearing & Outsourcing Services, Inc., Morgan Stanley & Co. Incorporated, PNC Capital Markets, Inc., Scotia Capital (USA), Inc., SunTrust Securities, Inc., TD Securities (USA), Inc.

Motion to Withdraw the Reference of the "Bank Litigation" (as defined herein) (the "Motion"). In support of the Motion, the Banks and the Investment Banks represent the following:

## I. SUMMARY OF ARGUMENT

1.  By decision dated August 30, 2005 (the "Housecraft Decision"), the Bankruptcy Court (Hon. Robert E. Gerber) authorized the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity Committee," together with the Creditors' Committee, the "Committees") to prosecute, as co-plaintiffs with Adelphia Communications Corporation and its subsidiaries (collectively, the "Debtors"), two separate complaints containing numerous federal and state law claims against the defendants herein, who are hundreds of lenders and investment banks (the "Defendants") in Adversary Proceeding No. 03-04942 (REG) (the "Bank Litigation"). (A true and correct copy of the Housecraft Decision is attached as Exhibit A.) The Housecraft Decision resolves only the threshold issue of whether the Committees are "authorized" to now proceed with their actions on behalf of the Debtors and does not dispose of the still pending motions to dismiss. The Banks and the Investment Banks do not seek to end-run the Bankruptcy Court's resolution of the motions to dismiss, but they are obligated to seek timely withdrawal of the reference now that the suit has been authorized. The Housecraft Decision makes clear that there are grounds for both permissive and mandatory withdrawal. The Banks and the Investment Banks respectfully request that the District Court withdraw the reference.

2.  The tests for both permissive and mandatory withdrawal are met here. The District Court "may" withdraw the reference "for cause shown" and there is ample cause here. The overwhelming thrust of the Committees' claims against the Banks and the Investment Banks is "non-core" state common law and federal RICO claims, many of which the Bankruptcy Court

held will survive the pending motions to dismiss.  Although there are "core" claims also pled, the plan of reorganization ("POR") submitted by the Debtors provides that the Bank Litigation claims will be put into a "Contingent Value Vehicle" (*i.e.*, a litigation trust) following confirmation of the POR.  (Ex. A at 32)  Further, the Debtors are pushing to emerge from bankruptcy by the middle of 2006, at which point the Bank Litigation will still be in the early stages of discovery.  Withdrawing the reference will therefore have no disruptive effect on the bankruptcy proceeding.  To the contrary, as discussed more fully herein, the Bank Litigation is closely related to the MDL securities class action cases now pending before Judge McKenna and involves many of the same parties and similar allegations.   Under these circumstances, withdrawing the Bank Litigation to the District Court will promote judicial economy and efficiency more than will leaving it in the Bankruptcy Court long after the POR has been confirmed.

        3.      The standard for mandatory withdrawal of the reference is also met because the Bank Litigation, as authorized by Judge Gerber in the Housecraft Decision, will involve complex civil RICO claims and the Bank Holding Company Act (the "BHCA") claims in an untested context.  The Equity Committee's complaint alleges that certain of the Banks, by transferring funds pursuant to the terms of various loan agreements, conspired with certain of Debtors' officers to harm the Debtors.  The Banks and Investment Banks believe the RICO claims are devoid of merit.   Nonetheless, while recognizing that the Equity Committee's novel RICO theories alleged against the Banks and the Investment Banks "are plainly the most dramatic" and "in many respects push the envelope the most," the Bankruptcy Court has stated in its Housecraft Decision that it intends to allow these unique claims to proceed.  (Ex. A)  The Bankruptcy Court further concluded:

> Even assuming (as the Court believes it should for the purposes of these motions) that the Creditors' Committee can prove what it has alleged on these motions, it is not clear that the Equity Committee will be able to do likewise on the incremental claims that the Equity Committee wishes to assert. In particular, it is not clear whether, after the facts are developed, the Equity Committee will be able to show that the co-borrowing facilities led to the requisite degree of acquisition and/or control, and for the Equity Committee to meet RICO's continuity requirement. Yet the Equity Committee's intervenor complaint has made the necessary allegations to state a prima facie case.

(Ex. A at 35) As the Bankruptcy Court acknowledged, the Equity Committee's RICO theory "pushes the envelope" beyond anything previously recognized as a viable RICO claim in the Second Circuit (or elsewhere). (Ex. A at 35) Accordingly, the District Court should hear these novel claims and address the numerous RICO requirements that will be hotly contested in litigating whether these claims can proceed.[3]

## II. PROCEDURAL BACKGROUND

### A.     The Procedural History of the Bank Litigation.

4.      The Debtors filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York in June 2002. This Bank Litigation was *provisionally* commenced a year later by the Creditors' Committee purporting to stand in the shoes of the Debtors. The Bank Litigation was *provisional* because the Creditors' Committee cannot pursue claims on behalf of the Debtors without leave of court and except upon a showing that the litigation is in the best interests of the estate. *See Glinka v. Murad (In re Housecraft Industries USA, Inc.)*, 310 F.3d 64 (2d Cir. 2002) ("Housecraft"); *Commodore International Ltd. v. Gould (In re Commodore International Ltd.)*, 262 F.3d 96 (2d Cir. 2001) ("Commodore"); and *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2d Cir. 1985) ("STN").

---

[3]     The Adversary Complaints also assert violations of the BHCA. The Banks and Investment Banks believe that those claims also must be dismissed as a matter of law. The Bankruptcy Court, however, did not mention these claims in the Housecraft Decision.

5. The Creditors' Committee's Complaint (the "UCC Complaint") asserts fifty-two causes of action against more than 500 commercial and investment banks. The crux of the UCC Complaint is that some or all of the Defendants were complicit in the actions by certain of the Debtors' officers and directors (including John and Timothy Rigas and Jim Brown) that allegedly injured the Debtors and/or their shareholders. The UCC Complaint asserts numerous causes of action against some or all of the Banks and some or all of the Investment Banks arising under the BHCA, federal and state fraudulent transfer statutes, and common law torts of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud.

6. The Equity Committee subsequently sought authorization to proceed with its own complaint (the Equity Committee's Complaint with the UCC Complaint, the "Adversary Complaints"), asserting many of the same claims as those asserted by the Creditors' Committee, but adding theories of fraud, breach of contract and RICO violations.

7. The Defendants objected to the standing of the Committees to pursue the asserted claims on the Debtors' behalf (the "Standing Challenge") pursuant to the well-known trilogy of Second Circuit cases outlining the considerations for allowing such suits on behalf of a debtor.[4] Pursuant to a Stipulation and Order, certain of the Defendants, consisting of the administrative agent banks and certain investment banks, and the Committees agreed to proceed also with motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (the "Motions to Dismiss") pending resolution of the Standing Challenge. A hearing was held on the Standing Challenge and the Motions to Dismiss in December 2004.

8. On August 30, 2005, the Bankruptcy Court issued its Housecraft Decision granting the Committees the authority to pursue the claims alleged in the Adversary Complaints. Although the Bankruptcy Court has not yet issued a separate decision on the pending Motions to

---

[4] See *Housecraft, Commodore,* and *STN.*

Dismiss, the Housecraft Decision makes plain that numerous claims will survive, including the common law aiding and abetting claims and the federal RICO claims asserted by the Equity Committee. (*See generally* Ex. A)

9. Pursuant to a Court-approved stipulation titled Stipulation and Order Regarding (1) the Creditors' Committee's Motion for Leave to Prosecute Claims and Causes of Action Against the Pre-Petition Agents and Pre-Petition Secured Lenders, (2) the Equity Committee's Motion to Intervene in the Adversary Proceeding and (3) the Pre-Petition Agents' Responses in Opposition to the Motions of the Creditors' Committee and the Equity Committee and Alternative Motions to Dismiss the Creditors' Committee's Complaint (Docket No. 1925) the Defendants' answers to the Adversary Complaints will not be due until 45 days after the entry of an order ruling on the Motions to Dismiss. Thus, this Motion is timely.

**B.     The Procedural History of the MDL Proceeding.**

10. Beginning in 2002, numerous lawsuits were brought by purchasers and holders of securities issued by Adelphia and affiliated entities (the "Securities Actions"), who were allegedly harmed by the misconduct of the Debtors' officers and directors. Many of the same defendants now named in the Securities Actions are defendants in the Bank Litigation.

11. By Order of the Judicial Panel on Multidistrict Litigation dated December 3, 2003, pursuant to 28 U.S.C. § 407, actions pending in the Central District of California, Western District of New York, Eastern District of Pennsylvania, Western District of Pennsylvania and Northern District of Texas were transferred to the United States District Court for the Southern District of New York (Hon. Lawrence H. McKenna) for coordinated or consolidated pretrial proceedings. The consolidated Securities Actions are styled *In re Adelphia Communications Corp., Securities and Derivative Litigation*, Master File No. 1:03-md-01529-LMM (the "MDL

Proceeding"). On December 22, 2003, the lead plaintiffs in the MDL Proceeding filed consolidated and amended pleadings against scores of individuals and entities, again including many of the defendants in the Bank Litigation[5] (the "Securities Complaints").

12. The plaintiffs in the MDL Proceeding include active members of both of the Committees. Additionally, the MDL Proceeding includes various putative classes of purchasers of Adelphia securities, classes that also necessarily include members of the Committees.[6]

13. In the MDL Proceeding, the plaintiffs assert claims for alleged violations of federal securities laws, as well as numerous common law tort theories, relating to the alleged misuse of funds by senior management at Adelphia, and alleged disclosure violations concerning Adelphia's liability for at least $2.284 billion in off-balance-sheet debt. The factual allegations asserted in support of the common law claims in the MDL Proceeding are substantially similar to the crux of the allegations that form the basis of the Adversary Complaints in the Bank Litigation.[7]

14. Beginning on March 8, 2004, defendants in the MDL Proceeding filed various motions to dismiss the Securities Complaints. By Orders dated May 27, 2005 and July 18, 2005,

---

[5] For a representation of the duplication among defendants in the MDL and the Bank Litigation, see the attached chart at Exhibit B.

[6] For example, see *Appaloosa Investment Limited Partnership I, et al v. Deloitte & Touche, et al.*, Civil Action No. 03 CV 0236 (SCF), originally filed in the United States District Court for the Western District of New York, on March 26, 2003, and subsequently consolidated in the MDL. Appaloosa is a member of the Creditors' Committee. *See* Eleventh Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 8568]. *See also W.R. Huff Asset Management Co., et al. v. Deloitte & Touche LLP, et al*, Civil Action No. 02 CV 0825 S(F), originally filed in the United States District Court for the Western District of New York (claims arise out of the purchase of notes), and subsequently consolidated in the MDL; *W.R. Huff Asset Management Co., LLC, et al. v. Deloitte & Touche LLP*, Civil Action No. 02 CV 0417 S(F), filed in the United States District Court for the Western District of New York (claims arise out of the purchase of bonds), and subsequently consolidated in the MDL. W.R. Huff Asset Management Co. is also a member of the Creditors' Committee. *See* Eleventh Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 8568].

[7] For a comparison of the claims asserted in the MDL and those asserted in the Bank Litigation, see the attached chart at Exhibit C.

Judge McKenna dismissed numerous defendants from the securities claims on statute of limitations grounds and in some instances granted plaintiffs leave to replead. At the time of this filing, Judge McKenna had not ruled on any of the motions to dismiss filed in the Securities Litigation regarding the common law tort claims.

### III.  THE DISTRICT COURT SHOULD WITHDRAW THE REFERENCE OF THE BANK LITIGATION

15.     The District Court should exercise both mandatory and discretionary withdrawal of the reference of the Bank Litigation pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 5011-1.

16.     Section 1334 of title 28, the federal bankruptcy jurisdiction statute, vests bankruptcy jurisdiction in the federal district courts in the first instance. 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), each district court may provide that all matters directly and indirectly involving a case under the Bankruptcy Code be referred to the district court's bankruptcy judges. 28 U.S.C. § 157(a). Although Congress has given the district courts discretion to refer or not to refer, nearly every district court, including the United States District Court for the Southern District of New York, has provided, by rule or order, for automatic reference to the bankruptcy court. *See* S.D.N.Y. Order of Reference, Administrative Order M-61, signed on July 10, 1984 and entered on July 11, 1984.

17.     Notwithstanding the automatic reference, the Court may withdraw the reference upon the filing of a motion by a party or on its own motion. 28 U.S.C. § 157(d). Motions for withdrawal of the reference are filed with the Bankruptcy Court, but are heard by the District Court. FED. R. BANKR. P. 5011; LOCAL BANKR. R. 5011-1.

18.     Withdrawal of the reference may be either discretionary or mandatory. 28 U.S.C. § 157(d). The statute provides:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section [28 U.S.C. § 157], on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

19.     Both grounds are present here. Accordingly, in the wake of the Bankruptcy Court's Housecraft Decision giving the Committees the authority to pursue the Bank Litigation, the Banks and the Investment Banks timely seek to withdraw the reference on both permissive and mandatory grounds.

**A.     The Test For Permissive Withdrawal of Reference Is Met**

20.     There is cause for permissive withdrawal under Section 157(d).

21.     Cause, although not defined in the statute, may be established by consideration of the several factors outlined by the Second Circuit in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("Orion Pictures"): "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in administration of bankruptcy law." *McCrory Corp. v. 99¢ Only Stores (In re McCrory)*, 160 B.R. 502, 506 (S.D.N.Y. 1993) (quoting *Orion Pictures*). A district court generally should first evaluate whether a claim is core or non-core "since it is upon this issue that questions of efficiency and uniformity will turn." *Orion Pictures*, 4 F.3d at 1101.

22.     Proceedings that are "core" are those that are unique to, or uniquely affected by, the bankruptcy proceeding or directly affect a core bankruptcy function. *See In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002). Moreover, "[c]ore matters are ones with which the

bankruptcy court has greater familiarity and expertise[].” *LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.)*, 193 B.R. 669, 675 (S.D.N.Y. 1996). By contrast, while a bankruptcy court has full authority to adjudicate “core” claims, bankruptcy judges may only make proposed findings of fact and conclusions of law subject to the district court’s *de novo* review in “non-core” proceedings. *See* 28 U.S.C. § 157(c)(1).

23. The Bank Litigation here involves both non-core and core claims, with the non-core matters forming the crux of the Adversary Complaints. The core matters include alleged fraudulent transfer claims and claims for equitable subordination. The non-core claims that Judge Gerber has indicated will survive the Motions to Dismiss include common law aiding and abetting, RICO, and numerous other state common law claims. (Ex. A at 29, 36) *See Adelphia Comm. Corp. v. Rigas*, No. 02 Civ. 8495 GBD, 02-41729 REG., 2003 WL 21297258 (S.D.N.Y. June 4, 2003) (describing RICO claims and certain state law causes of action as non-core: “They are not unique to a bankruptcy proceeding, they do not directly affect a core bankruptcy function, nor are they matters which the bankruptcy court would ordinarily be expected to have greater familiarity or expertise.”).[8]

24. Although the presence of non-core claims does not automatically end the inquiry, consideration of the additional *Orion Pictures* factors further supports permissive withdrawal of the Bank Litigation.

25. It is also clear that the efficient and uniform administration of the bankruptcy proceeding will not be affected by the withdrawal of the reference. Under the Debtors’ proposed

---

[8] The district court in *Adelphia v. Rigas* held that the facts in that case did not support permissive withdrawal because the primary issue in the lawsuit – whether property (stock in privately held cable corporations and related assets) that the Rigases claimed to own was actually property of the estate – had a direct impact on the bankruptcy estate. 2003 WL 21297258 at *2-3. Under such circumstances, the district court concluded that withdrawal of the reference would be extremely inefficient. *Id.* In contrast, the claims in the Bank Litigation are independent from, and are even expected to continue after, confirmation. Additionally, the claims in the Bank Litigation, and the discovery associated with those claims, are more closely tied to the MDL Proceedings than the bankruptcy court proceedings.

POR, the Bank Litigation claims will be placed into a "Contingent Value Vehicle" where they are expected to proceed post-confirmation. Consequently, Judge Gerber concluded in his Housecraft Decision:

> Under all plan proposals advanced to date, the claims to be litigated would not need to be resolved prior to confirmation. To the contrary, those Defendants who are entitled to plan distributions will receive them, subject only to the duty to pay the distributions back, or otherwise to make payment, to the extent any liability is established. Reorganization would not be a hostage to the determination of this litigation, and no delay to emergence from chapter 11 will result from the pendency of the proposed litigation.

(Ex. A at 32)

26. Moreover, the Bank Litigation will be barely underway by the time the Debtors expect to emerge from Chapter 11 in mid-2006. As document discovery has only just commenced, the Bank Litigation has the potential to stretch the already limited resources of the Bankruptcy Court and to distract from the central task of approval of the POR with issues that the Bankruptcy Court has decided are not central to the reorganization of Adelphia. *See, e.g., Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842(WHP), 2004 WL 1661115, *3 (S.D.N.Y. July 27, 2004) (finding that judicial economy favored withdrawal of the reference because "Bankruptcy Judges are deluged with matters relating to the administration of bankrupt estates and are the busiest in the nation" and their task should not be "complicated by [protracted] discovery disputes that require judicial intervention.").

27. It will be far more efficient for the Bank Litigation to be heard in District Court, which is more experienced in handling the types of claims at issue here, including allegations of aiding and abetting by more than 500 banks and unprecedented theories of RICO liability for lenders.[9] The District Court is also more experienced in crafting and controlling an efficient discovery plan involving hundreds of adversary parties. Even the Debtors' own proposed

---

9

litigation fund for the Bank Litigation as outlined in the Debtors' disclosure statement is set at $100,000,000. Many of the parties to the Bank Litigation believe that number is too low but it nevertheless confirms the enormous magnitude, complexity, and cost of the Bank Litigation and the need for an experienced district court to manage and control this exceedingly difficult and expensive litigation.

28.     In addition, the Bank Litigation is related to the MDL Proceeding and therefore the efficient adjudication of the Bank Litigation will unquestionably benefit from some level of coordination with that proceeding. Many members of the Committees and many of the Defendants in the Bank Litigation are also parties in the MDL Proceeding, and the plaintiffs in the MDL Proceeding have brought nearly the same common law claims against the commercial banks there as they have in the Bank Litigation. Withdrawal to the District Court and referral of the case to Judge McKenna, will help insure that these cases are efficiently managed and that duplicative discovery and inconsistent results do not occur.[10] *Mishkin v. Ageloff*, 220 B.R. 784, 799-801 (S.D.N.Y. 1998) (concluding that efficiencies supported permissive withdrawal of three related cases involving interlocking facts, especially where case was in early stages of discovery).

29.     Under similar circumstances – where securities litigation was pending between the same debtor or the same defendants involved in related bankruptcy court litigation – this District Court has likewise withdrawn the reference. For example, in *Complete Management Inc. v. Arthur Andersen, LLP (In re Complete Management, Inc.)*, No. 02 CIV. 1736 (NRB), 01-03459, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002), shareholders of Complete Management,

---

[10] This request is consistent with the Manual for Complex Litigation which provides: "Where related adversary proceedings are pending in bankruptcy court, however, the bankruptcy judge should consider having them reassigned, at least tentatively, to the district judge handling related litigation." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20 (2004).

Inc. ("CMI") sued the company in the District Court for the Southern District of New York for securities fraud. CMI then filed for Chapter 11 relief, and the creditors' committee for CMI subsequently sued the company's pre-petition auditor for failing to detect reporting errors in CMI's financial statements. The committee's causes of action were grounded in state law, including negligence, malpractice, and breach of fiduciary duty. *Id.* at *1. This Court found that the state law causes of action were non-core proceedings, but the Court went on to determine that *even assuming* the claims were core matters, withdrawal of the reference was still warranted because (a) CMI's claims against the auditor were based in tort, had no relation to bankruptcy law, and would still exist in the absence of CMI's bankruptcy filing; (b) the litigation raised legal issues more commonly resolved by this Court than by the bankruptcy courts; (c) the litigation would be lengthy, complex, and discovery-intensive; and (d) the Court was familiar with the issues raised in the pending securities litigation. *Id.* at *3. *See also Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 641 (S.D.N.Y. 1996) (granting motion to withdraw reference of Chapter 11 trustee's suit against debtor's former law firm for malpractice, breach of fiduciary duty, and breach of contract; judicial economy would best be served by allowing district court to hear trustee's claims, given similar suit in district court involving investors' securities fraud claims against law firm).

30.     This Court has also withdrawn the reference of even a core fraudulent conveyance action when that action shared common issues of fact and law with securities litigation pending in this Court. In *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239 (S.D.N.Y.1987), the defendants in a fraudulent conveyance action sought withdrawal of the reference. The defendants — a former director, the debtors' accounting firm, and the debtors' underwriter investment bank — were also parties in a pending federal securities fraud lawsuit.

The overlapping facts, transactions, and issues in the two cases constituted good cause for withdrawal of the reference and consolidation with the district court proceeding:

> [A] determination by the bankruptcy court that there was a fraudulent conveyance could have ramifications with respect to securities aspects of the district court case, as discussed below. . . .
>
> Questions in the district court action as to Chinn's performance as a director of Wedtech and his alleged violation of his fiduciary duty to the company will hinge in large measure upon how the question of the alleged fraudulent conveyance is resolved. Questions as to what other directors knew or should have known will involve this issue among others.
>
> The existence or non-existence of an undisclosed fraudulent conveyance of $1.14 million will come up with respect to the liability of accountants Touche Ross and underwriters Moseley Hallgarten and Bear Stearns under the securities laws in the district court action.
>
> For these reasons the motion for withdrawal of the reference is granted.

*In re Wedtech Corp.*, 81 B.R. at 238-40.

31.     Courts in other districts have likewise granted or favored withdrawal of the reference when the litigation before the bankruptcy court was duplicative of, and had overlapping factual and legal issues with, litigation pending in a non-bankruptcy court, and when consolidation of the litigation would save judicial resources, avoid duplicative and costly discovery and avoid the risks of inconsistent court determinations. *See, e.g., Holmes v. Grubman*, 315 F.Supp.2d 1376, 1380-82 (M.D. Ga. 2004) (granting permissive withdrawal of the reference — conditioned on defendants' timely moving the MDL panel for transfer to New York where similar, multidistrict litigation was pending — because, among other factors, withdrawn claims were largely non-core and consolidated discovery would be fair to parties and conserve judicial resources); *Miller v. Vigilant Ins. Co. (In re Eagle Enters., Inc.)*, 259 B.R. 83, 88 (E.D. Pa. 2001) (staying trustee's suit against insurer for breach of contract, breach of fiduciary duty and negligence pending district court determination on motion to withdraw

reference; district court was likely to withdraw reference because, among other factors, (a) trustee's suit should be consolidated with pending non-bankruptcy litigation involving common and overlapping issues of fact and law; (b) judicial economy and economic use of the litigants' resources would be served by trying both cases at the same time; and (c) consolidated trial would reduce the risk of inconsistent outcomes); *In re Bennett Funding Group, Inc.*, 258 B.R. 67, 77 (N.D.N.Y. 2000) (recommending withdrawal of reference as to both core and non-core matters where securities litigation was pending: "In a proceeding which is likely to involve complex issues, it would be a waste of judicial resources to have the parties present the same facts to both courts for their individual consideration, particularly when the District Court has original jurisdiction to hear both core and non-core matters pursuant to 28 U.S.C. § 1334(b). Of particular concern is the possibility that the two courts might reach opposite conclusions" on the litigated issues).

32. The factors that favored withdrawal of the reference for the non-core matters in *Complete Management* also favor withdrawal of the non-core matters here: (a) The plaintiffs' non-core matters are based on federal banking or securities laws, the RICO statute, or state law, have no relation to bankruptcy law and would still exist in the absence of the Debtors' bankruptcy filing; (b) the non-core litigation raises legal issues more commonly resolved by the District Court than by the Bankruptcy Court; (c) the litigation will be lengthy, complex, and discovery-intensive; and (d) the District Court is familiar with the issues raised in the pending MDL Proceedings, which are similar, and in some instances identical to the issues raised in the Bank Litigation.

33. Moreover, the factors that favored withdrawal of the reference for the core matters in *Wedtech Corp.* also favor withdrawal of the core matters here: (a) The District Court

is vested with bankruptcy jurisdiction and can hear and determine all matters; (b) coordination of the Bank Litigation and the MDL proceedings will promote judicial efficiency and reduce the litigants' expenses; and (c) coordination will avoid the risk of inconsistent determinations on the issues of fraud and conspiracy which permeate both the Bank Litigation and the MDL Proceedings.

34.    Finally, there is no concern here that the Banks and the Investment Banks are "forum shopping" by their request for withdrawal.  The Banks and the Investment Banks moved to withdraw the reference promptly after the Bankruptcy Court issued its Housecraft Decision that, for the first time, granted the Committees the authority to proceed with their Adversary Complaints.  Moreover, in light of the extensive briefing and argument before Judger Gerber on the pending Motions to Dismiss, the Banks and the Investment Banks are not opposed to having Judge Gerber conclude his consideration of those Motions.

35.    For all of the above reasons, the Court should withdraw the reference under its discretionary powers.

## B.    The Test For Mandatory Withdrawal of Reference Is Also Met

36.    Withdrawal of proceedings referred to the Bankruptcy Court is mandatory under section 157(d) if the District Court "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  Mandatory withdrawal is required for "cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (concluding that injunction of further proceedings in bankruptcy court was appropriate; claims

were subject to the mandatory provision of section 157(d) because the case required the court to interpret the City's claims under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) 42 U.S.C. § 9601, *et seq.*); *see also In re McCrory Corp.*, 160 B.R. 502 (S.D.N.Y. 1993). Withdrawal is appropriate in "cases where substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." *Enron Power Marketing, Inc. v. California Power Exchange Corp.*, No. 04 Civ. 8177(RCC), 2004 WL 2711101, *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990)). While it is not necessary to present an unsettled issue of first impression to satisfy the substantial-consideration test, courts have found that the mandatory withdrawal standard is "more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws." *In re Keene Corp.*, 182 B.R. 379, 382 (S.D.N.Y. 1995); *see also California Power Exchange*, 2004 WL 2711101, at *2 (citing *In re McCrory Corp.*, 160 B.R. at 505).

37. Here, the Bankruptcy Court has already found that the RICO claims asserted by the Equity Committee "push the envelope vis-à-vis their underlying legal and factual predicates." (Ex. A at 34)

38. The Equity Committee seeks to hold commercial lenders and investment banks liable under the federal RICO statute for loaning money to another who allegedly used the funds improperly. The Bankruptcy Court has stated that it intends to allow the Equity Committee's sweeping federal RICO claims to survive the Motions to Dismiss. (Ex. A at 36) Although the Bankruptcy Court on one hand, and the Banks and the Investment Banks on the other, plainly diverge on their reading of the proper scope of RICO, even the Bankruptcy Court concedes that

the Equity Committee's RICO claims "push the envelope" of existing RICO jurisprudence in this Circuit and are "dramatic". (Ex. A at 34-35)

39. Specifically, the Equity Committee has made the novel allegation that Adelphia, a publicly traded company, was a RICO "enterprise" that was "maintained" and "controlled" by the banks who lent it money by means of arms-length credit agreements. (Ex. A at 35) Despite this extreme RICO theory, the Bankruptcy Court stated that "the Equity Committee's intervenor complaint has made the necessary allegations to state a prima facie case." (Ex. A at 35) Thus, if the Equity Committee prevails on its RICO theory, the Committee will do so only by substantially broadening the concepts of control, enterprise, and continuity beyond anything currently recognized by this Circuit. (Ex. A at 35) This is a paradigm case for mandatory withdrawal of the reference and one that the District Court, with its extensive experience in handling RICO claims, should manage and decide. *See, e.g., Rubin Bros. Footwear, Inc. v. Chemical Bank*, 73 B.R. 346, 351 (S.D.N.Y. 1987) (refusing to allow remand to bankruptcy court after initial withdrawal of reference because plaintiff's RICO claims were more properly resolved by the district court); *see also The Singer Co. B.V. v. Groz-Beckert KG (In re The Singer Co., N.V.)*, No. 01 Civ. 0165(WHP), 2002 WL 243779, *3 (S.D.N.Y. Feb. 20, 2002) ("Here, withdrawal of the reference is mandatory because resolution of the adversary proceeding requires substantial and material consideration of domestic patent law, a statutory creation."); *California Power Exchange Corp.*, 2004 WL 2711101, at *4 (holding that withdrawal of reference was mandatory in case requiring interpretation of the Federal Power Act to determine whether the funds at issue fell within FERC's exclusive jurisdiction).

40. In 2003, in a separate adversary proceeding stemming from the Adelphia bankruptcy, the district court denied a motion by certain Rigas Family members for mandatory

withdrawal of the reference based on RICO claims asserted against them by Adelphia Communications Corp. *See Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258, **3-4 (S.D.N.Y. Jun. 4, 2003) (holding that RICO claims as alleged against the Rigas Family members did not require "a significant interpretation, as opposed to simple application, of the law to the facts," at least not at that initial stage of the proceedings). However, in the *Adelphia v. Rigas* adversary proceeding, the RICO allegations related to specific conduct by the Rigas defendants. In contrast, the RICO claims asserted against some of the Banks and some of the Investment Banks in the Bank Litigation assert unique RICO theories, seeking to hold some of the Banks and some of the Investment Banks liable under RICO for loaning money to the Debtors that was allegedly then used for improper purposes and for which the Debtors improperly accounted. Moreover, in contrast to the present case, the Rigases moved to withdraw the reference before there had been any rulings by the bankruptcy court as to the viability of the RICO claims, thus leaving the district court to conclude that the withdrawal motion was likely premature. *Adelphia Communications Corp.,* 2003 WL 21297258 at *5.

41.     In addition to this novel RICO theory, the Committees have asserted a claim under the BHCA, 19 U.S.C.A. § 1972. The relevant portion of the BHCA (commonly referred to as the "<u>Anti-Tying Provision</u>") provides:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement –
>
> (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

Violations of the BHCA are subject to civil penalties.

42.     The Bankruptcy Court did not state whether the BHCA claims would proceed (the Housecraft Decision did not mention these claims).  However, the BHCA claims, as currently pled, also involve novel, interpretive issues of federal law that compel mandatory withdrawal.

43.     To recover for a violation of the Anti-Tying Provision of the BHCA, a claimant must show:  (1) there was an unusual banking practice; (2) the practice was an anticompetitive tying arrangement; (3) there was a benefit to the bank; and (4) the claimant was damaged.  *See, e.g., Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*, 865 F. Supp. 194, 199 (S.D.N.Y. 1994), *aff'd*, 71 F.3d 407 (2d Cir. 1995); *Gumowitz v. Citibank, N.A.*, No. 91 CIV. 5399 (DNE), 1993 WL 364476, at *2 (S.D.N.Y. Sept. 13, 1993).  There is little case authority addressing liability under the BHCA, and particularly liability under the Anti-Tying Provision of the Act.  In the event the Bankruptcy Court specifically authorizes these claims to proceed, it is clear that resolution of the BHCA claims will require substantial, material consideration and interpretation of a federal statute, likewise mandating for withdrawal of the reference.  *See, e.g., In re Oil Co., Inc.*, 140 B.R. 30, 35 (E.D.N.Y. 1992) (holding withdrawal of reference mandatory where case involved complex interpretation of the Internal Revenue Code on what appeared to be issues of first impression).

## IV.  CONCLUSION

For all of the above reasons, the Banks and the Investment Banks request that the District Court enter an order (i) granting mandatory and/or discretionary withdrawal of the reference of the Bank Litigation; and (ii) granting the Banks and the Investment Banks such other and further relief to which they are entitled.

Dated: October   10        , 2005 at New York, New York.

**HAYNES AND BOONE, LLP**

By: */s/ Judith Elkin*
Judith Elkin (JE-4112)
153 E. 53rd Street, Suite 4900
New York, New York 10022
Telephone: (212) 659-7300
Facsimile: (212) 884-8228

Thomas E. Kurth (admitted *pro hac vice*)
Robin E. Phelan (admitted *pro hac vice*)
Richard D. Anigian (admitted *pro hac vice*)
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

**WHITE & CASE LLP**

By: */s/ Karen M. Asner*
Karen M. Asner (KA-5950)
Glenn M. Kurtz (GK-6272)
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

**COUNSEL FOR BANK OF AMERICA, N.A.**

**LUSKIN, STERN & EISLER LLP**

By: */s/ Michael Luskin*
Michael Luskin (ML-3957)
Trevor Hoffmann (TH-5876)
330 Madison Avenue
New York, New York 10017
Telephone: (212) 293-2700
Facsimile: (212) 293-2705

**COUNSEL FOR THE BANK OF NOVA SCOTIA**

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By: /s/  *Mitchell A. Lowenthal*
Mitchell A. Lowenthal (ML-2541)
Lindsee P. Granfield (LG-3984)
Jennifer L. Kroman (JK-7772)
One Liberty Plaza
New York, NY 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 293-2705

**COUNSEL FOR ABN AMRO SECURITIES LLC, BARCLAYS CAPITAL INC., BANC OF AMERICA SECURITIES LLC, BNY CAPITAL MARKETS, INC., CIBC WORLD MARKETS CORP., CITIGROUP FINANCIAL PRODUCTS, INC., CITIGROUP GLOBAL MARKETS HOLDINGS, INC., DEUTSCHE BANK ALEX BROWN, INC., ADP CLEARING & OUTSOURCING SERVICES, INC., MORGAN STANLEY & CO. INCORPORATED, PNC CAPITAL MARKETS, INC., SCOTIA CAPITAL (USA), INC., SUNTRUST SECURITIES, INC., TD SECURITIES (USA), INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all parties on the attached Service List by U.S. first class mail, postage prepaid, in accordance with the Federal Rules of Bankruptcy Procedure on this 10th day of October, 2005.

*/s/ Judith Elkin*

d-1372653.12