```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :   03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :   MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS PLEADING APPLIES TO            :
05 Civ. 9050, 05 Civ. 9250 &        :
05 Civ. 9285                        :
------------------------------------x
```

McKENNA, D.J.

**1.**

In this Memorandum and Order, the Court considers three motions pursuant to 28 U.S.C. § 157(d) for withdrawal of the reference to the United States Bankruptcy Court for the Southern District of New York of that part of the bankruptcy proceeding relating to Adelphia Communications Corporation ("Adelphia") and related entities that consists of adversary proceedings brought, respectively, by the Official Committee of Unsecured Creditors ("Creditors' Committee" or "CC") and the Official Committee of Equity Security Holders ("Equity Committee" or "EC") against many lending and investment banks, the movants here.[1]  The motions were filed on October 24 and 31 and November 1, 2005, after Bankruptcy Judge Robert E. Gerber, in a Decision on Motions by Creditors'

---

[1] The motions have been filed by (i) Bank of America, N.A., and others, (ii) Wachovia Bank, N.A., and others, and (iii) Deutsche Bank AG. Additional parties have joined in those motions.  The motions make substantially the same arguments.

Committee and Equity Committee to Prosecute Claims on Behalf of the Debtors' Estates, dated August 30, 2005, had -- under relevant Second Circuit authority[2] -- granted both Committees leave to assert their claims against the Debtors' estates. In re Adelphia Comm. Corp., 330 B.R. 364 (S.D.N.Y 2005) ("the Housecraft decision").

At the heart of the Committees' complaints is the claim that the defendants, in financing Adelphia, assisted its management in looting it. As described by the Committees, the Creditor Committee's

> Complaint seeks, among other things, to: (i) recover for intentional and constructive fraudulent transfers pursuant to 11 U.S.C. §§ 544(b), 550 and 551; (ii) equitably subordinate, disallow or re-characterize each of the defendant's claims in the Debtors' bankruptcy proceedings pursuant to 11 U.S.C. § 510(c); (iii) recover damages for breach of fiduciary duty and aiding and abetting such breaches; (iv) avoid and recover voidable preferences under 11 U.S.C. §§ 547 and 550; and (v) recover damages for violations of the Bank Holding Company Act. Of the fifty-two claims asserted in the Complaint, thirty-nine are classic bankruptcy causes of action (e.g., claims arising under provisions of the Bankruptcy Code), and thirteen are statutory and tort state law claims. All of the claims are asserted against parties who filed proofs of claim, or on whose behalf proofs of claims have been filed, in the Chapter 11 Cases. Subsequently, [the Equity Committee] intervened in the Adversary Proceeding, joining in all but the claims premised on insolvency, and asserting

---

[2] In re Housecraft Indus. USA, Inc., 310 F.3d 64 (2d Cir. 2002); In re Commodore Int'l Ltd., 262 F.3d 96 (2d Cir. 2001); and In re STN Enter., 779 F.2d 901 (2d Cir. 1985).

2

> additional claims by supplemental intervenor complaint.

(CC & EC Joint Mem. at 12 (citation and footnote omitted).) The Equity Committee's additional claims include claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

### 2.

28 U.S.C. § 157(d) provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In cases where permissive withdrawal is sought (28 U.S.C. § 157(d) (first sentence)),

> the district court shall weigh several factors, of which the first is the most important: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (citations omitted). The parties' jury trial rights are also relevant. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).

The "mandatory withdrawal provision [28 U.S.C. § 157(d) (second sentence)] has been interpreted to require withdrawal to

the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991) (citations omitted).  Mandatory withdrawal does not depend "on whether the statutory interpretation [falls] within the bankruptcy court's 'core' or 'non-core' jurisdiction." Id. (citations omitted).

**3.**

The Committees contend that the motions for withdrawal are not "timely," as required for both permissive and mandatory withdrawal by 28 U.S.C. § 157(d).  The Court does not agree.

In the context of the present case, the appropriate time from which to measure the timeliness of the withdrawal motions is the date of the Housecraft decision.  Prior to the Bankruptcy Court's establishment of the Committees' standing to initiate proceedings against the defendants, the Committees' complaints were, in substance, only proposed complaints that could only proceed after the Committees had obtained the approval of the Bankruptcy Court.[3]  The Housecraft decision was made on August 30,

---

[3] In STN, the Second Circuit noted that "[t]he Bankruptcy Code . . . contains no explicit authority for creditors' committees to initiate adversary proceedings." 779 F.2d at 904.  The Second Circuit "agree[d] with [certain cited] bankruptcy courts that 11 U.S.C. §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court." Id.

4

2005, and the latest of the three withdrawal motions was made within 9 weeks of that date. Given the massiveness and complexities of the Committees' claims and the even greater complexity of Adelphia litigation in general, the motions were timely made.

**4.**

The Committees' claims include claims under laws, other than Title 11 of the United States Code, "regulating organizations or activities affecting interstate commerce," 28 U.S.C. § 157(d), i.e., claims under RICO and under the Bank Holding Company Act, 12 U.S.C. § 1972 ("BHCA").

The Bankruptcy Court has already noted that "the Equity Committee's additional claims, in material respects, push the envelope vis-à-vis their underlying legal and factual predicates," In re Adelphia, 330 B.R. at 384, and that "[t]he Equity Committee's RICO claims, which are plainly the most dramatic, in many respects push the envelope the most." Id. at 385.[4]

It is, of course, not the case that the mere reference to a federal statute "regulating organizations or activities affecting interstate commerce," 28 U.S.C. § 157(d), will trigger mandatory withdrawal. The statute

> has been construed narrowly. "Withdrawal under 28 U.S.C. § 157(d) is not available merely whenever

---

[4] Judge Gerber does not address the BHCA claims in the Housecraft decision.

> non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."

In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990) (quoting In re Ionosphere Clubs, Inc., 103 B.R. 416, 418-19 (S.D.N.Y. 1989)) (other citation omitted). But the requisite "substantial and material consideration," id., or "significant interpretation," Exxon, 932 F.2d at 1026, of the statute in question, does not, in the Court's view, mean that there must necessarily be "'complicated interpretative issues, often of first impression.'" (CC & EC Joint Mem. at 43 (quoting In re Adelphia Inst., Inc., 112 B.R. 534, 537 (S.D.N.Y. 1990)).)

There is no meaningful doubt that the Committees' claims under RICO and BHCA will -- even if issues of first impression are not present, although that is hardly guaranteed -- require substantial and material consideration and significant interpretation. Withdrawal is mandatory.

**5.**

In considering permissive withdrawal, the first and most important relevant factor is whether the claim sought to be withdrawn is core or non-core. Burger Boys, 94 F.3d at 762.[5]

---

[5] The core/non-core issue is not dispositive, however. In re Complete Mgmt., Inc., No. 02 Civ. 1736, 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002).
    The Committees take the position that the core/non-core issue

The Committees argue that the first 39 claims are "classic bankruptcy causes of action" (CC & EC Joint Mem. at 12), while "[t]he remaining thirteen tort and statutory claims also are core claims, because they are in the nature of counterclaims to Defendants' proofs of claim." (Id. at 29 (citing 28 U.S.C. § 157(b)(2)(C)).

District courts in the Second Circuit have come to different conclusions as to whether "counterclaims by the estate against persons filing claims against the estate," 157(b)(2)(C), should, without more, be treated as core matters. In In re Nanodata Corp., 74 B.R. 766, 768-770 (W.D.N.Y. 1987), the court found that such a counterclaim -- characterized by the counterclaiming debtor as "a 'multi-million dollar' breach of contract claim against a creditor which had filed a proof of claim," id. at 770 -- was not a core matter: the Section 157(b)(2) categories, according to the court, "must be read in light of the definition of core proceedings in subsection 157(b)(1)," id. at 769, and "'the linchpin to deciding whether a cause of action arises under Title 11 or arises in a case under Title 11 is the underlying nature of the cause of action itself and not merely the importance of that cause of action to the debtor or its

---

should be resolved by the Bankruptcy Court. (CC & EC Joint Mem. at 25-27.)  In Orion, however, the Second Circuit says that "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core. . . ." 4 F.3d at 1101.

creditors.'"  Id. at 770 (quoting In re Nanodata Computer Corp., 52 B.R. 334, 342 (Bankr. W.D.N.Y. 1985)).  See also Complete Mgmt., 2002 WL 31163878, at *2-*3.  In In re CBI Holding Co., 311 B.R. 350 (S.D.N.Y. 2004), on the other hand, the court concluded that "'[a] response to a proof of claim which is, in essence, a counterclaim, is a core proceeding under 28 U.S.C. § 157(b)(2)(C).'"  311 B.R. at 363 (quoting In re Baudoin, 981 F.2d 736, 741 (5th Cir. 1993)).

In In re United States Lines, Inc., 197 F.3d 631 (2d Cir. 1999), the Second Circuit summarized its case law on the core/non-core distinction.

> [U]nder [Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982)], whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on "the nature of the proceeding."  Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.  Core bankruptcy functions of particular import to the instant proceedings include "[f]ixing the order of priority of creditor claims against a debtor," "'plac[ing] the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,'" and "administer[ing] all property in the bankrupt's possession."

197 F.3d at 637 (quoting In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 706, 707 (2d Cir. 1995); In re Best Products Co., 68 F.3d 26, 31 (2d Cir. 1995); MacArthur Co. v. Johns-Manville Corp. 837 F.2d 89, 91 (2d Cir. 1988); and Straton v. New, 283 U.S. 318, 321

(1931)). While United States Lines dealt with contract claims, the principles there set forth apply here by analogy. See CBI, 311 B.R. at 361 n.3.

Under United States Lines, the Committees' BHCA, RICO and state law tort claims are non-core. The Committees' BHCA, RICO and state law tort claims are based on conduct antecedent to the reorganization petition and are independent of the reorganization;[6] and they are not unique to or uniquely affected by the bankruptcy proceedings, nor do they affect core bankruptcy functions of the sort described by the Second Circuit in United States Lines, 197 F.3d at 637. As Judge Marrero put it in Adelphia Comm. Corp. v. Rigas, No. 02 Civ. 8495, 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003), in finding claims under RICO, the Exchange Act and state law to be non-core, the BHCA and RICO claims here "are not unique to a bankruptcy proceeding, they do not directly affect a core bankruptcy function, nor are they matters [with] which the bankruptcy court would ordinarily be expected to have greater familiarity or expertise." 2003 U.S. Dist. LEXIS 9349, at *5-*6.[7]

---

[6] The Fourth Amended Joint Plan of Reorganization now under consideration contemplates the establishment of a "Contingent Value Vehicle" which will, upon confirmation, prosecute litigation on behalf of the Debtors, including the adversary proceeding here under consideration. (CC & EC Joint Mem. at 9-10.)

[7] In Adelphia, Judge Marrero denied, "with leave to renew upon future appropriate developments, or should the case proceed to jury trial," id. at *15 (footnote omitted), a motion to withdraw the reference of another adversary proceeding commenced in the same bankruptcy proceeding as that involved here.

Further, even if all of the Committees' claims could be properly classified as core, there are other factors which strongly favor withdrawal. See, for a similar conclusion, Complete Mgmt., 2002 WL 31163878, at *2.

The Committees' claims must be seen in a larger context which includes the many cases in or related to the above captioned multidistrict litigation. Very significantly, almost all of the financial institutions named as defendants in the Committees' adversary proceeding are defendants in the class action at the center of the multidistrict litigation. (Bank of America Joint Motion to Withdraw the Reference at 8 & Ex. B.) There are many allegations of fact in the adversary proceeding that are quite similar to those in the class action. (Id. & Ex. C.) Such "overlapping of facts, transactions, and issues" favors withdrawal, and consolidation with the multidistrict litigation. In re Wedtech Corp., 81 B.R. 237, 239 (S.D.N.Y. 1987).

In such circumstances as those present here, two of the Burger Boys factors to be considered on motions for permissive withdrawal -- "what is the most efficient use of judicial resources" and "what are the costs to the parties," 94 F.3d at 762 -- are very significant.

In the first place, to the extent that any of the Committees' claims are non-core, then, absent withdrawal, or the parties' consent, "the bankruptcy court can only make recommended

findings of fact and conclusions of law which are subject to <u>de novo</u> review in the district court." <u>S.G. Phillips</u>, 45 F.3d at 704. <u>See</u> <u>Solutia, Inc. v. FMC Corp.</u>, No. 04 Civ. 2842, 2004 WL 1661115, at *3-*4 (S.D.N.Y. Jul. 27, 2004). Withdrawal will eliminate that duplication of effort.

In the second place, there will be great savings to the parties who are defendants both in the Committees' cases and in the multidistrict litigation if discovery can be consolidated in one court rather than having to proceed with duplicative discovery on two independent tracks. Furthermore, the district court can enlist the aid of a Magistrate Judge to whom supervision of discovery and the resolution of discovery disputes can be referred. The parties (not to mention the Bankruptcy Judge) will, in the Court's estimation, benefit greatly from consolidated discovery under such supervision.

In the third place, there is already in place, in this Court, a mediation process under the aegis of an experienced mediator already familiar with the various categories of cases involving Adelphia. Judge Cote pointed out in <u>In re Enron</u>, No. 03 Civ. 5078, 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003), that a mediation process in the bankruptcy court was one (not the only, of course) reason for not withdrawing the reference. 2003 WL 22171695, at *2. Here, the converse is true: the mediation

11

process already proceeding in this Court is a reason for withdrawal of the reference.

In the fourth place, withdrawal of the reference will obviate any issues that may arise about jury trial.

There is no serious "forum-shopping" issue here: the usual objectives of "forum-shopping" -- finding a jurisdiction with more favorable law, and geographical convenience -- do not apply, both the bankruptcy court and the district court being bound to follow Second Circuit law, and both courts being located in downtown Manhattan. Nor does the Court see any reason why withdrawal will affect the uniformity of bankruptcy administration.

* * *

For the foregoing reasons, the motions for withdrawal of the reference are granted, and the adversary proceeding (Bankruptcy Court Case No. 02-41729: Adversary No. 03-04942) is removed to this Court.[8] The Clerk will assign the case to the undersigned, as related to the above-captioned multidistrict litigation.

SO ORDERED.

Dated: February 9, 2006

Lawrence M. McKenna
U.S.D.J.

---

[8] However, the motions for dismissal pending in the Bankruptcy Court, to which Judge Gerber refers in the Housecraft decision, will (with the consent of the moving defendants) remain for decision with Judge Gerber, who has clearly devoted considerable time and effort to them already.