**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br>　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>BANK OF AMERICA, N.A., <u>et al.</u><br>　　　　　　　Defendants. | )　Adversary Proceeding<br>)<br>)<br>)<br>)　No. 05 Civ. 9050 (LMM)<br>)<br>)<br>)<br>) |

**<u>JOINT BRIEF FOR CERTAIN INVESTMENT BANK APPELLANTS</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ............................... 1

STATEMENT OF THE ISSUES PRESENTED .................................................. 3

APPLICABLE STANDARD OF APPELLATE REVIEW ........................................ 4

STATEMENT OF THE CASE ................................................................. 4

    I.  Nature of the Case ................................................................. 4

    II.  Course of Proceedings ........................................................... 5

    III.  The Bankruptcy Court's Decision ............................................. 7

    IV.  Leave to Appeal ................................................................ 8

STATEMENT OF FACTS ..................................................................... 9

PRELIMINARY STATEMENT ................................................................ 9

ARGUMENT ................................................................................. 10

    POINT I: THE BANK HOLDING COMPANY ACT DOES NOT APPLY TO
        INVESTMENT BANKS ................................................. 10

    POINT II: THE DECISION'S FAILURE TO APPLY THE *IN PARI DELICTO*
        DOCTRINE WAS ERRONEOUS .......................................... 13

        A.  The Bankruptcy Court Ignored Binding Authority ...................... 15

        B.  The Bankruptcy Court Misapplied The *In Pari Delicto* Doctrine ........ 19

            1. The Adverse Interest Exception Does Not Apply ..................... 19

            2. The Sole Actor Rule Bars The Adverse Interest Exception ............ 21

            3. There Is No Innocent Decsion-Maker Exception Available ............ 23

            4. The *In Pari Delicto* Doctrine Is Available Under Section 541 ......... 24

**TABLE OF CONTENTS (continued)**

Page

POINT III: THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
CLAIM SHOULD HAVE BEEN DISMISSED BECAUSE THE
BANKRUPTCY COURT FOUND A NECESSARY ELEMENT
INSUFFICIENTLY PLEADED ................................................................. 27

POINT IV: THE BANKRUPTCY CODE DOES NOT PROVIDE FOR – AND
INDEED BARS – ANY CLAIM FOR "EQUITABLE
DISALLOWANCE" ................................................................................ 29

CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 541 .................................................................................... 24

12 U.S.C. § 1972 (1) ........................................................................... 10, 11

12 U.S.C. § 1841(c)(1) ........................................................................ 10

12 U.S.C. § 1844(b) ............................................................................. 11

12 U.S.C. § 1971 et. seq. ..................................................................... passim

28 U.S.C. § 158(a)(3) .......................................................................... 1

68 F.R. 52024 ...................................................................................... 11

62 F.R. 9290 ........................................................................................ 11

Fed. R. Bankr. P. 7012(b) ................................................................... 4

Fed. R. Bankr. P. 8001(b) ................................................................... 1

Fed. R. Bankr. P. 8002(c) ................................................................... 1

Fed. R. Bankr. P. 8003 ........................................................................ 8

Fed. R. Civ. P. 9(b) .............................................................................7, 10, 28, 29

Fed. R. Civ. P. 12(b)(6) ...................................................................... 4, 14


**Cases**

1115 Third Ave. Rest. Corp. v. N.Y. Life Ins. Co.,
No. 03 Civ. 0586, 2004 WL 1542261 (S.D.N.Y. July 8, 2004) (McKenna, J.) ................ 4

ACC Bondholder Group v. Adelphia Commc'ns Corp.,
361 B.R. 337 (S.D.N.Y. 2007)............................................................. 6

Aiello v. Ed Saxe Real Estate, Inc.,
499 A.2d 282 (Pa. 1985)...................................................................... 19

Am. Trade Partners, L.P. v. A-1 Int'l Importing Enter., Ltd.,
770 F. Supp. 273 (E.D. Pa. 1991) ....................................................... 18

Baena v. KPMG LLP,
453 F.3d 1 (1st Cir. 2006).................................................................... 25

**Page(s)**

**Cases (continued)**

Bank of Tokyo-Mitsubishi Ltd. v. Enron Corp. (In re Enron Corp.),
04 Civ. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) ................................... 4

Bieber v. State Bank of Terry,
928 F.2d 328 (9th Cir. 1991) ...................................................................... 11-12

Booking v. Gen. Star Mgmt. Co.,
254 F.3d 414 (2d Cir. 2001).......................................................................... 15

Cenco, Inc. v. Seidman & Seidman,
686 F.2d 449 (7th Cir. 1982) (Posner, J.) ............................................................ 23

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
467 U.S. 837 (1984)................................................................................... 11

Citibank, N.A. v. Emery (In re Emery),
201 B.R. 37 (E.D.N.Y. 1996) ......................................................................... 4

Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.,
187 F. Supp. 2d 400 (W.D. Pa. 2002)................................................................. 29

Dibidale of La., Inc. v. Am. Bank & Trust Co., New Orleans,
916 F.2d 300 (5th Cir. 1990),
opinion amended and reinstated on rehearing, 941 F.2d 308 (1991)................................... 12

Ernst & Young v. Bankr. Servs., Inc. (In re CBI Holding Co.),
311 B.R. 350 (S.D.N.Y. 2004)........................................................................ 20

Factors Etc., Inc. v. Pro Arts, Inc.,
652 F.2d 278 (2d Cir. 1981).......................................................................... 15-16

Flintridge Stations Assocs. v. Am. Fletcher Mortgage Co.,
761 F.2d 434 (7th Cir. 1985) ......................................................................... 12

Gaudiosi v. Mellon,
269 F.2d 873 (3d Cir. 1959)........................................................................... 17

Grassmueck v. Am. Shorthorn Ass'n,
402 F.3d 833 (8th Cir. 2005) ........................................................................ 8, 27

Hirsch v. Arthur Andersen & Co.,
72 F.3d 1085 (2d Cir. 1995).......................................................................... 14

In re Adelphia Comm'cns Corp. Sec. And Deriv. Litig.,
No. 03 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)......................... 1, 6

iv

**Page(s)**

**Cases (continued)**

In re Cendant Corp. Litig.,
264 F.3d 201 (3d Cir. 2001)..................................................................... 23

In re Donahue Secs., Inc.,
304 B.R. 797 (Bankr. S.D. Ohio 2003).................................................... 8, 27

In re Greater Se. Cmty. Hosp. Corp. I,
353 B.R. 324 (Bankr. D.D.C. 2006) ........................................................ 26

In re Ionosphere Clubs, Inc.,
922 F.2d 984 (2d. Cir. 1990)................................................................... 4

In re Motorwerks, Inc.,
371 B.R. 281 (Bankr. S.D. Ohio 2007)................................................... 27

In re Phar-Mor, Inc. Sec. Litig.,
900 F. Supp. 784 (W.D. Pa. 1995).......................................................... 20

Jacobs v. Halloran,
710 A.2d 1098 (Pa. 1998) ........................................................................ 17

Kaufman v. Cohen,
760 N.Y.S.2d 157 (1st Dep't 2003) ......................................................... 28

Kolbeck v. LIT Am., Inc.,
939 F. Supp. 240 (S.D.N.Y. 1996),
aff'd, 152 F.3d 918 (2d Cir. 1998)........................................................... 27

Mantilla v. U.S.,
302 F.3d 182 (3d Cir. 2002).................................................................... 18

Mas v. Coca-Cola Co.,
163 F.2d 505 (4th Cir. 1947) ................................................................... 17

MCA Fin. Corp. v. Grant Thornton, LLP,
687 N.W.2d 850 (Mich. App. 2004)....................................................... 25-26

The Mediators, Inc. v. Manney (In re Mediators, Inc.),
105 F.3d 822 (2d Cir. 1997)................................................................... 14

Nisselson v. Lernout,
469 F.3d 143 (1st Cir. 2006)................................................................... 25-26

Nordic Bank PLC v. The Trend Group, Ltd.,
619 F. Supp. 542 (S.D.N.Y. 1985)......................................................... 12

Page(s)

**Cases (continued)**

Official Comm. of Unsecured Creditors of Allegheny Health, Ed. & Research Found. v.
Pricewaterhouse Coopers, LLP,
No. 2:00cv684, 2007 WL 141059 (W.D. Pa. Jan. 17, 2007) ............................................. 13, 20, 23, 25

Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003) ................................................................................. 15, 17, 24

Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,
437 F.3d 1145 (11th Cir. 2006),
cert. denied sub nom., Laddin v. Reliance Trust Co., 127 S. Ct. 45 (2006) ...................... 26

Official Comm. of Equity Sec. Holders of Adelphia Comm'cns Corp. v. Adelphia
Comm'cns Corp.,
No. 07 Civ. 1018 (SAS), 2007 WL 1468514 (S.D.N.Y. May 17, 2007) ........................... 6

Official Comm. of Unsecured Creditors of Adelphia Comm'cns Corp. v. Bank of Am.,
N.A.,
330 B.R. 364 (Bankr. S.D.N.Y. 2005) ............................................................................. 6

Official Comm. of Unsecured Creditors of Adelphia Commc'ns Corp. v. Bank of Am.,
N.A.,
No. 03-04942 (REG), 2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) .................... 7

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,
267 F.3d 340 (3d Cir. 2001) ........................................................................................ passim

Pan Am World Airways, Inc. v. Cont'l Bank,
435 F. Supp. 642 (E.D. Pa. 1977) ................................................................................. 22-23

Rochez Bros., Inc. v. Rhoades,
527 F.2d 880 (3d Cir. 1975) .......................................................................................... 19

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004) .......................................................................................... 28

Secs. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.,
847 F.2d 890 (D.C. Cir. 1988) ...................................................................................... 11

Seidman & Seidman v. Gee,
625 So. 2d 1 (Fla. Dist. Ct. App. 1992) ......................................................................... 25-26

Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),
281 B.R. 506 (Bankr. E.D.N.Y. 2002) ........................................................................... 28

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991) ................................................................................. 13, 14, 18

Page(s)

**Cases (continued)**

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
907 F.2d 1280 (2d Cir. 1990).................................................................... 2

Tarasi v. Pittsburgh Nat'l Bank,
555 F.2d 1152 (3d Cir. 1977),
overruled on other grounds, Bateman Eichler, Hill Richards, Inc. v. Berner,
472 U.S. 299 (1985)................................................................................ 17, 18

Todd v. Skelly,
120 A.2d 906 (Pa. 1956)......................................................................... 20

Tose v. First Pa. Bank, N.A.,
648 F.2d 879 (3d Cir. 1981),
cert. denied, 454 U.S. 893 (1981) .......................................................... 12

Travelers Cas. & Sur. Co. v. Castegnaro,
772 A.2d 456 (Pa. 2001)......................................................................... 19

Universal Builders, Inc. v. Moon Motor Lodge, Inc.,
244 A.2d 10 (Pa. 1968)............................................................16, 17, 18, 24

Waslow v. Grant Thornton LLP (In re Jack Greenberg, Inc.),
240 B.R. 486 (E.D. Pa. 1999) ................................................................ 16

Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,
212 B.R. 34 (S.D.N.Y. 1997)................................................................... 23-24


**Other Authorities**

1 Pennsylvania Law Encyclopedia Equity § 34.................................... 16-17

14 Standard Pennsylvania Practice § 79:12 (2007) ............................. 17

E. Thomas Sullivan, Antitrust Regulation of Land Use:  Federalism's Triumph Over
Competition, The Last Fifty Years, 3 Wash. U. J. L. & Pol'y 473 (2000)...................... 18

Restatement (Third) of Agency § 5.04 (2006).................................... 21

## <u>STATEMENT OF THE BASIS OF APPELLATE JURISDICTION</u>

This Court has jurisdiction over the Decision and Order on Motions to Dismiss entered on June 11, 2007 (the "<u>Decision</u>") by the United States Bankruptcy Court for the Southern District of New York (Hon. Robert E. Gerber) (the "<u>Bankruptcy Court</u>") pursuant to 28 U.S.C. § 158(a)(3).  Section 158(a)(3) grants district courts jurisdiction to hear appeals, with leave of court, from interlocutory orders and decrees entered in cases and proceedings referred to bankruptcy judges.  The Court previously ordered that the reference over the above-captioned adversary proceeding be withdrawn from the Bankruptcy Court, but provided that the Bankruptcy Court retain its reference to decide the motions to dismiss the complaint that is the subject of this appeal.[1]  Following entry of the Decision, the Investment Banks[2] timely filed notices of appeal and a joint motion for leave to appeal on July 10, 2007, pursuant to Rule 8001(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").[3]  On September 5, 2007, the Court entered an order granting in part that joint motion for leave to appeal, pursuant to Section 158(a)(3).[4]  Leave having been so granted, this Court now has jurisdiction to hear the appeal under Section 158(a)(3) and Bankruptcy Rule 8001(b).  <u>See, e.g.</u>,

---

[1]     See <u>In re Adelphia Comm'cns Corp. Sec. And Deriv. Litig.</u>, No. 03 MDL 1529 (LMM), 2006 WL 337667, at *5 n.8 (S.D.N.Y. Feb. 10, 2006).

[2]     The "Investment Banks" include: ABN AMRO Inc., Banc of America Securities LLC, BNY Capital Markets, Inc., Barclays Capital Inc., Citigroup Global Markets Holdings Inc., CIBC World Markets Corp., Deutsche Bank Securities, Inc. (f/k/a Deutsche Bank Alex.Brown, Inc.), Fleet Securities, Inc. (whose liabilities have been assumed by Bank of America, N.A.), Morgan Stanley & Co. Incorporated, PNC Capital Markets LLC, Scotia Capital (USA) Inc., SunTrust Capital Markets, Inc. (f/k/a SunTrust Equitable Securities), TD Securities (USA) LLC (f/k/a TD Securities (USA) Inc.), JPMorgan Securities, Inc., Merrill Lynch & Co., Inc., Cowen and Company, LLC (f/k/a SG Cowen Securities Corporation), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (USA), Inc. and Donaldson, Lufkin & Jenrette, Inc.), as well as, to the extent they are sued as "Investment Banks," BNY Capital Corp., The Royal Bank of Scotland PLC and Citigroup Financial Products Inc. (collectively, the "<u>Investment Banks</u>").

[3]     The Bankruptcy Court had previously extended the time within which to file notices of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002(c).  See Order on Motion for Extension of Time to Seek Leave to Appeal from and Object to Decision on Motions to Dismiss (D.I. 487, Bankruptcy Court Case No. 03-04942 (REG)), entered June 15, 2007.

[4]     See Memorandum and Order (D.I. 79, District Court Case No. 05-9050 (LMM)), entered September 5, 2007.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1283 n.1 (2d Cir. 1990) (noting that Section 158(a) "authorizes district courts to hear appeals from interlocutory orders by discretionary leave of the district court").

## STATEMENT OF THE ISSUES PRESENTED

Appellants Investment Banks present the following issues on appeal, resolution of which requires reversal of the Decision:

1.     Whether the Bankruptcy Court erred in failing to dismiss the claim against the Investment Banks for violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1971 et seq. ("BHCA"), since: (a) by its own terms, the BHCA does not apply to the Investment Banks, which are not "banks" as defined in the BHCA; and (b) the complaint alleges that Adelphia's management – rather than any defendants – required the supposed tie.

2.     Whether the Bankruptcy Court erred when it declined to follow the Third Circuit and failed to dismiss claims for aiding and abetting breach of fiduciary duty and other Pennsylvania state-law causes of action under the doctrine of *in pari delicto*, where the Second Circuit has directed that courts in this circuit are bound by the Third Circuit's interpretations of Pennsylvania law, and the complaint's own allegations demonstrate that no exception to *in pari delicto* applies.

3.     Whether the Bankruptcy Court erred in holding that the complaint properly pled the elements of a claim for aiding and abetting breach of fiduciary duty.

4.     Whether the Bankruptcy Court erred in predicting that the Pennsylvania Supreme Court would recognize the existence of a cause of action for aiding and abetting a breach of fiduciary duty.

5.     Whether the Bankruptcy Court erred in failing to dismiss the cause of action for "equitable disallowance", a remedy that the Bankruptcy Code does not provide, and indeed, bars.

**APPLICABLE STANDARD OF APPELLATE REVIEW**

A district court reviews a bankruptcy court's conclusions of law *de novo*.  See In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d. Cir. 1990); 1115 Third Ave. Rest. Corp. v. N.Y. Life Ins. Co., No. 03 Civ. 0586, 2004 WL 1542261, at *1 (S.D.N.Y. July 8, 2004) (McKenna, J.).  Here, the Decision resolved no disputed issues of fact, but rather determined pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012(b), whether, as a matter of law, the complaint sufficiently stated claims upon which relief could be granted.  Accordingly, this Court's review is strictly *de novo*. See, e.g., Bank of Tokyo-Mitsubishi Ltd. v. Enron Corp. (In re Enron Corp.), 04 Civ. 1367 (NRB), 2005 WL 356985, at *5 (S.D.N.Y. Feb. 15, 2005) ("In deciding the standing issue presented by appellees' motion to dismiss the [c]omplaint, the bankruptcy court did not resolve any disputed issue of fact.  The only issues before us, therefore, are issues of law, which we review *de novo*."); Citibank, N.A. v. Emery (In re Emery), 201 B.R. 37, 40 (E.D.N.Y. 1996) ("[T]he Bankruptcy Court's order granting Emery's motion to dismiss Citibank's second amended complaint pursuant to Fed. R. Bankr. P. 7012(b) – which incorporates by reference Rule 12(b)(6) of the Federal Rules of Civil Procedure and its standards for evaluating the legal sufficiency of a complaint – is subject to *de novo* review.").

**STATEMENT OF THE CASE**

**I.     Nature of the Case**

The Investment Banks appeal the Bankruptcy Court's Decision on the motions to dismiss an adversary complaint (the "Complaint") that asserted fifty-two claims for relief against hundreds of the pre-petition lenders and underwriters of the above-captioned debtors (collectively the "Debtors").  Against the Investment Banks, the Complaint asserts a claim alleging that the Investment Banks' affiliated commercial banks conditioned extensions of credit

4

to the Debtors on the acceptance of investment banking services in violation of the anti-tying statute of the BHCA, but the Investment Banks are not subject to that provision under the clear language of the statute (and as explained in the separate Joint Appellants' Brief of Certain Lenders (the "Agent Bank Brief"), the Complaint alleges that any tying was initiated by Adelphia itself.  In addition, the Complaint asserts various state law tort claims, including for aiding and abetting breach of fiduciary duty, aiding and abetting fraud (which was dismissed with leave to replead by the Bankruptcy Court), breach of fiduciary duty, and gross negligence, based on allegations that the Investment Banks knew of the Rigases' misconduct with respect to the co-borrowing facilities and failed to inform Adelphia's independent Board members.  Under controlling Third Circuit authority, which the Bankruptcy Court erroneously rejected, those claims are barred by the *in pari delicto* doctrine in Pennsylvania.  This Court granted leave to appeal parts of that Decision, finding that the Bankruptcy Court's resolution of certain legal questions raised substantial grounds for difference of opinion.  The Investment Banks seek the reversal of the Decision to the extent it failed to dismiss (i) a claim for violation of the BHCA, (ii) the remaining state law tort claims based on application of the *in pari delicto* doctrine, and (iii) a claim for so-called "equitable disallowance."

## II.    Course of Proceedings

In June 2002, the Debtors filed for bankruptcy protection.  In July 2003, the Official Committee of Unsecured Creditors (the "Creditors' Committee") filed its Complaint, provisionally commencing this action.  Separately, the Official Committee of Equity Security Holders of Adelphia Communications Corporation (the "Equity Committee," and collectively with the Creditors' Committee, the "Committees") filed an intervenor complaint provisionally asserting additional claims.  Beginning in October 2003, the Investment Banks and certain other defendants both challenged the authority of the Committees to pursue claims on behalf of the

Debtors and filed motions to dismiss.  By stipulation, the rights of the remaining hundreds of defendants to move to dismiss or otherwise respond to the Complaint were reserved until after resolution of the pending motions to dismiss.  In August 2005, the Bankruptcy Court decided the threshold issue, finding that the Committees had standing.  Official Comm. of Unsecured Creditors of Adelphia Comm'cns Corp. v. Bank of Am., N.A., 330 B.R. 364 (Bankr. S.D.N.Y. 2005).  Doing so ripened the question of which court had jurisdiction over the claims the Committees asserted.  This Court concluded that it did, finding in its February 2006 Memorandum and Order that withdrawal of the reference was compelled on both mandatory and discretionary grounds, but providing that the "motions for dismissal pending in the Bankruptcy Court . . . will (with the consent of the moving defendants) remain for decision with Judge Gerber."  In re Adelphia Comm'cns Corp. Sec. And Deriv. Litig., 2006 WL 337667, at *5 n.8.

On January 5, 2007, the Bankruptcy Court confirmed the Debtors' First Modified Fifth Amended Joint Chapter 11 Plan (the "Plan").  The confirmation decision was appealed by two constituencies – the Equity Committee and a group of Adelphia bondholders.  The reviewing district court, in granting the bondholders' application for a stay pending resolution of their appeal (but conditioning the stay on the posting of a $1.3 billion bond), found that the appellants had shown a substantial possibility that the Bankruptcy Court had erred as a matter of law with respect to a number of material issues.  ACC Bondholder Group v. Adelphia Commc'ns Corp., 361 B.R. 337 (S.D.N.Y. 2007).  But because the bondholder appellants determined not to post the required bond, the stay was lifted, the Plan became effective, and their appeal was not pursued further.  Separately, the District Court dismissed the Equity Committee's appeal, largely on equitable mootness grounds.[5]  Pursuant to the Plan, the claims originally asserted by both the

---

[5]     See Official Comm. of Equity Sec. Holders of Adelphia Comm'cns Corp. v. Adelphia Comm'cns Corp., No. 07 Civ. 1018 (SAS), 2007 WL 1468514 (S.D.N.Y. May 17, 2007).  By notice of appeal dated June 12, 2007, the Equity Committee has further appealed the District Court's dismissal to the United States Court of Appeals for the

Creditors' Committee and the Equity Committee have been transferred to the Adelphia Recovery Trust ("Adelphia" or "Plaintiffs"), the entity now prosecuting this litigation.

### III.    The Bankruptcy Court's Decision

On June 11, 2007, the Bankruptcy Court rendered its Decision on the motions challenging the pleading filed by the Creditors' Committee.[6]  In many respects, the Decision flies in the face of established precedent; in others, it simply fails to address the parties' contentions at all (which, if the Bankruptcy Court had considered them, would have mandated a different holding).  With respect to the claims now on appeal, the Decision upheld a claim for violation of the BHCA without addressing the primary argument asserted by the Investment Banks – that because the Investment Banks are not "banks" as defined in the statute, the BHCA simply does not apply to them.

The Decision also declined to dismiss causes of action for aiding and abetting breach of fiduciary duty and other state tort claims based on the *in pari delicto* doctrine, by rejecting the Third Circuit's interpretation of Pennsylvania law that – under established precedent – was in fact controlling on the Bankruptcy Court.  Moreover, Adelphia's own pleadings dictated that *in pari delicto* bars the remaining tort claims.  The Bankruptcy Court further found, in reviewing the claim for aiding and abetting fraud, that the element of the defendants' knowledge had been insufficiently pleaded under Rule 9(b).  But in dismissing that claim, the Bankruptcy Court failed to consider (and similarly dismiss) the aiding and abetting breach of fiduciary duty claim, which also required adequate pleading of the same element.

---

Second Circuit, which appeal remains pending under Circuit Case No. 07-2604.  See Notice of Appeal (D.I. 14, District Court Case No. 07-Civ-1018 (SAS)).

[6]      In a subsequent decision entered on August 17, 2007, the Bankruptcy Court dismissed nearly all of the claims asserted by the Equity Committee in its intervenor complaint.  Official Comm. of Unsecured Creditors of Adelphia Commc'ns Corp. v. Bank of Am., N.A., No. 03-04942 (REG), 2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) (the "Equity Committee Decision").  No party has sought leave to appeal the Equity Committee Decision, and it is not now on appeal before this Court.

Finally, the Bankruptcy Court permitted claims for "equitable disallowance" to proceed, although both the terms of the Bankruptcy Code and the Bankruptcy Court's own precedent dictated a contrary conclusion.[7]

## IV.    Leave to Appeal

In light of these deficiencies, the Investment Banks and other defendants sought leave to appeal the Decision, pursuant to Bankruptcy Rule 8003.  In a September 5, 2007 Memorandum and Order (the "Leave Order"), this Court granted in part leave to appeal. Specifically, the Court granted leave to appeal on claims for equitable disallowance, violation of the BHCA, aiding and abetting breach of fiduciary duty, and the Bankruptcy Court's application of the *in pari delicto* doctrine.[8]  The Court found that there were substantial grounds for difference of opinion regarding whether the BHCA applies at all to the Investment Banks, as well as how the BHCA could apply where the Complaint alleges that Adelphia's own management required the supposed anti-competitive "tie."  The Court also granted leave on the question of whether the claim for aiding and abetting breach of fiduciary duty should be dismissed, including whether the *in pari delicto* doctrine bars the claim.  Finally, the Court granted leave on the issue of whether the Bankruptcy Code permits equitable disallowance at all.

Leave to appeal having been granted, the Investment Banks seek a reversal of the Bankruptcy Court's holdings on each of these issues.

---

[7]    Among other claims addressed by the Decision but not presently on appeal, the Bankruptcy Court dismissed claims for aiding and abetting fraud (Claim 38) with leave to replead.  Although Adelphia initially indicated that it would file an amended pleading within 30 days of issuance of the decision (see June 18, 2007 Status Conf. Tr. at 9:21-10:4) – i.e., on or before July 18, 2007 – more than two months have passed, and Plaintiffs have yet to file an amended complaint.

[8]    Although the Court granted leave to appeal on *in pari delicto* in reference to the aiding and abetting breach of fiduciary duty claim, as a matter of law the doctrine applies equally to all tort claims.  Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346, 360 (3d Cir. 2001) (*in pari delicto* bars breach of fiduciary duty claim); Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 841-842 (8th Cir. 2005) (negligence claim); In re Donahue Secs., Inc., 304 B.R. 797, 799 n.4 (Bankr. S.D. Ohio 2003) (negligence claim).

## STATEMENT OF FACTS

Because this is an appeal of a decision on a motion to dismiss, this Court need consider only legal questions; there are no facts outside of the allegations in the complaint that are necessary for this Court to review.  The substance of those allegations, to the extent relevant, are set forth more fully herein.

## PRELIMINARY STATEMENT

The Decision of the Bankruptcy Court with respect to the Investment Banks erred for three main reasons.  First, the Bankruptcy Court simply ignored the primary and dispositive argument made by the Investment Banks in connection with the BHCA claim – namely, that the statute does not apply to the Investment Banks because they are not "banks" within the meaning of the BHCA.  All relevant legal authority, including the plain language of the statute, the statements by the Federal Reserve, the agency responsible for enforcing and monitoring the statute, and the caselaw, uniformly dictate that the anti-tying provisions of the BHCA do not apply to the Investment Banks.  Nevertheless, the Bankruptcy Court failed entirely to address the argument or any of the supporting authority.

Second, the Bankruptcy Court declined to dismiss state law claims as barred by the *in pari delicto* doctrine by rejecting as "unpersuasive" a decision by the Third Circuit that would have compelled the dismissal of state law claims were the Bankruptcy Court sitting within that circuit.  But the Second Circuit has mandated that courts in this circuit follow decisions by sister circuits on issues of state law within those other circuits.  The Bankruptcy Court was not free to simply disagree with, and decline to follow, the Third Circuit on the scope of *in pari delicto* under Pennsylvania law.  Under binding Third Circuit precedent, the allegations in the Complaint bar all of the tort claims through the *in pari delicto* doctrine.

Third, the Decision is internally inconsistent, dismissing the aiding and abetting fraud claim under Rule 9(b) on the basis of the Complaint's failure to adequately allege a requisite element of that claim, but never addressing how an aiding and abetting breach of fiduciary duty claim – equally dependent on particularized allegations of actual knowledge of the primary violation and requiring the same insufficiently pleaded element – could survive dismissal.

## ARGUMENT

### POINT I

### THE BANK HOLDING COMPANY ACT DOES NOT APPLY TO INVESTMENT BANKS

The Bankruptcy Court erred in failing to dismiss the claim against the Investment Banks for their alleged violation of the anti-tying provisions of the BHCA, 12 U.S.C. § 1971 et seq. (the "Anti-Tying Statute" or "Section 106") (Claim No. 32).  In sustaining the claim, the Bankruptcy Court ignored the Investment Banks' primary argument:  the Investment Banks simply are not subject to Section 106 of the BHCA. The BHCA's anti-tying provisions[9] apply only to "banks" – a term the BHCA defines to include only institutions that either (1) are FDIC insured or (2) accept demand (or certain other withdrawable) deposits and are "engaged in the business of making commercial loans."  12 U.S.C. §§ 1971, 1841(c)(1).  The Investment Banks are neither, and the Complaint does not – and cannot – allege otherwise.[10]

---

[9]     The anti-tying provisions of the BHCA prohibit a "bank" from conditioning the availability of one product on a requirement that the customer purchase another product from the same bank or affiliate of the bank.  12 U.S.C. §§ 1972(1)(A) and (B).

[10]     Compare Complaint ¶ 811 (alleging that "each of the Agent Banks is a 'bank' within the meaning of sections 1841(c) and 1971") with Complaint ¶ 812 (alleging only that "[e]ach of the Investment Banks and its affiliated Agent Bank is a subsidiary of the same bank holding company").  The Complaint does not allege that the Investment Banks are FDIC-insured, because they are not.  Additionally, the Complaint alleges that the Investment Banks are in the business of trading securities, Complaint ¶¶ 518, 519, not in the business of making commercial loans.

The Board of Governors of the Federal Reserve System – the agency to which Congress has delegated authority to enforce and monitor the Anti-Tying Statute, see 12 U.S.C. §§ 1844(b), 1972(1) – expressly held in August 2003 that "Section 106 does not apply to the nonbank affiliates of a bank." Anti-Tying Restrictions of Section 106 of the Bank Holding Company Act Amendments of 1970, 68 F.R. 52024, 52024 (Aug. 29, 2003) (emphasis added).[11] Moreover, in 1997, the Federal Reserve considered, and expressly overturned, a prior extension of the anti-tying provisions to bank holding companies and nonbank affiliates of banks. See Bank Holding Companies and Change in Bank Control (Regulation Y), 62 F.R. 9290, 9312, 9313, 9314 (Feb. 28, 1997). The Federal Reserve concluded that "while the legislative history of section 106 may evince concern with the competitive practices of banks and their affiliates, the statute itself clearly applies only to tying by banks themselves." Id. at 9314 (emphasis added). Courts must give such pronouncements by the Federal Reserve – clear and directly on point – substantial deference. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844-45 (1984) (seminal case holding that administrative agency's construction of statutory scheme it is entrusted to administer is entitled to "considerable weight"); Secs. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys., 847 F.2d 890, 896 (D.C. Cir. 1988) (holding that substantial deference be given to the Federal Reserve's interpretation of the scope of Glass-Steagall Act).

In addition, an unwavering line of judicial authority confirms that, consistent with the plain reading of the statute and the Federal Reserve's interpretation, the BHCA's Anti-Tying Statute applies only to entities defined as "banks." See, e.g., Bieber v. State Bank of Terry, 928

---

[11]     This may not apply to The Royal Bank of Scotland PLC, which did not use a nonbank affiliate when it underwrote only $1000 in a $500 million offering. See October 19, 2001 Underwriting Agreement (attached as Exhibit A to Declaration of Theresa Titolo, filed in support of the Memorandum of Law in Support of Motion To Dismiss of Defendants Credit Suisse First Boston (USA), Inc. and The Royal Bank of Scotland PLC, Adv. Proc. 03-04942 (REG) (Bankr. S.D.N.Y. June 25, 2004) (D.I. 229)). In any event, the BHCA claim against RBS still fails

F.2d 328 (9th Cir. 1991) (Anti-Tying Statute does not apply to natural persons); Dibidale of La., Inc. v. Am. Bank & Trust Co., New Orleans, 916 F.2d 300 (5th Cir. 1990), opinion amended and reinstated on rehearing, 941 F.2d 308 (1991) (affirming the district court's dismissal of a Section 106 action against corporation and individuals on grounds that they are not "banks" within meaning of the Anti-Tying Statute); Flintridge Stations Assocs. v. Am. Fletcher Mortgage Co., 761 F.2d 434 (7th Cir. 1985) (affirming district court's holding that a mortgage company affiliate of a "bank" could not be liable under the BHCA because it "is not a bank within the terms of the Act"); Tose v. First Pa. Bank, N.A., 648 F.2d 879 (3d Cir. 1991), cert. denied, 454 U.S. 893 (1981) (affirming dismissal of individuals alleged to have violated Anti-Tying Statute as not "banks" within meaning of BHCA); Nordic Bank PLC v. The Trend Group, Ltd., 619 F. Supp. 542 (S.D.N.Y. 1985) (dismissing anti-tying claims against foreign banks that did not operate in United States as not within the definition of "bank" under the BHCA).  The Investment Banks found no case – nor did the Bankruptcy Court or Adelphia cite any such case – that applied the BHCA's Anti-Tying Statute to non-bank investment banks.

In short, every applicable legal authority – from the plain and unambiguous language of the statute to courts and the Federal Reserve – uniformly rejects the assertion of anti-tying claims against non-banks, and specifically against non-bank affiliates of banks.  The Bankruptcy Court's clear error in failing to dismiss this claim against the Investment Banks – without a mention of any of the legal authority expressly precluding such a claim, Decision at 74 to 79 – must be corrected.[12]

---

because the Complaint lacks any allegations of tying activities by RBS (see  Agent Bank Brief at [11-14]), which is hardly surprising given its *de minimus* investment banking relationship with Adelphia.

[12]        The Investment Banks join in the arguments made in the Agent Bank Brief that the BCHA claim should have been dismissed also because "members of the Rigas Family," and not the defendants, "expressly conditioned the granting of investment banking business on participation in the Co-Borrowing Facilities."  Complaint ¶ 511.  The Investment Banks also join in the other arguments set forth in the Agent Bank Brief generally to the extent that such arguments apply to the claims against the Investment Banks.

## POINT II

### THE DECISION'S FAILURE TO APPLY
### THE *IN PARI DELICTO* DOCTRINE WAS ERRONEOUS

The Investment Banks argued below that the *in pari delicto* doctrine applied to

bar Adelphia – and the Committees, standing in the shoes of Adelphia – from bringing *all* of the

state law claims against them arising out of Adelphia's own management's wrongdoing.  "The

common law doctrine of *in pari delicto*, literally meaning 'in equal fault,' provides that a

plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim."

Official Comm. of Unsecured Creditors of Allegheny Health, Ed. & Research Found. v.

Pricewaterhouse Coopers, LLP, No. 2:00cv684, 2007 WL 141059, at *10 (W.D. Pa. Jan. 17,

2007) ("Allegheny") (citing Pinter v. Dahl, 486 U.S. 622, 632 (1988); Official Comm. of

Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 354 (3d Cir. 2001)); see also

Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991) ("A claim against a

third party for defrauding a corporation with the cooperation of management accrues to creditors,

not to the guilty corporation.").  Each of the common law claims asserted against the Investment

Banks seeks recovery against the Investment Banks for allegedly aiding and abetting the

misconduct of the Rigas family (who dominated Adelphia's management and Board of

Directors) and failing to inform Adelphia's Board of the Rigases' fraud.[13]   As such, the *in pari*

*delicto* doctrine operates to bar Adelphia from recovering on claims against the Investment

Banks based on the Debtors' own management's wrongdoing.

---

[13]      See, e.g., Complaint ¶¶ 854 (alleging breach of fiduciary duty by Investment Banks for "failing to fully inform Adelphia's independent Board of Directors . . . that (i) the Co-Borrowing Facilities were fraudulently structured to give the Rigas Family access to billions of dollars on the Debtors' credit . . .); 860-65 (alleging that Investment Banks aided and abetted Rigases' breach of fiduciary duty); 868-874 (alleging that Investment Banks aided and abetted Rigases' fraud); 887 (alleging Investment Banks' gross negligence by "failing to keep Adelphia's independent Board of Directors fully informed . . . that (i) each of the Co-Borrowing Facilities were fraudulently structured to give the Rigas Family access to billions of dollars on the Debtors' credit").

The Court of Appeals for the Third Circuit – the decisions of which, as discussed below, are binding on courts in this circuit (but which the Bankruptcy Court refused to follow) – has applied the *in pari delicto* doctrine under Pennsylvania law to bar a debtor or bankruptcy trustee (standing in the shoes of the debtor, which they do as a matter of law) from asserting claims against third parties based on the conduct of debtor's pre-bankruptcy management, and indeed, has done so as a matter of law on a motion to dismiss based on the pleadings alone. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001) (affirming 12(b)(6) dismissal based on finding that debtors' management's fraudulent conduct barred Committee, standing in shoes of debtors, from bringing claims). The Second Circuit similarly has dismissed claims brought on behalf of a debtor based on the debtor's own management's misconduct. See, e.g., The Mediators, Inc. v. Manney (In re Mediators, Inc.), 105 F.3d 822, 826-7 (2d Cir. 1997) (affirming dismissal under Rule 12(b)(6) based on finding that creditors' committee, standing in debtor's shoes, lacked standing to bring claims against professional defendants for aiding and abetting debtor's management's breach of fiduciary duty); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1094 (2d Cir. 1995) (bankruptcy trustee's claims barred on motion to dismiss "because of the Debtors' collaboration with the defendants-appellees in promulgating and promoting" ponzi schemes); Wagoner, 944 F.2d at 120 (bankruptcy trustee lacked standing to bring claim based on broker's participation in management's fraud).

The Bankruptcy Court erred in failing to dismiss Adelphia's tort claims against the Investment Banks as barred under the *in pari delicto* doctrine because (1) it refused to follow the above-cited binding authority of the Third Circuit in its interpretation of Pennsylvania law, and (2) it failed correctly to apply the elements of *in pari delicto* under Pennsylvania law to the Complaint.

A.    **The Bankruptcy Court Ignored Binding Authority**

The Bankruptcy Court's error in denying the Investment Banks' argument that the *in pari delicto* doctrine bars all of Adelphia's state law claims begins with its refusal to follow the Third Circuit's binding interpretation of Pennsylvania state law. The Second Circuit has directed federal courts considering a question of state law (such as *in pari delicto*) to "conclusively defer[] to a federal court of appeals's interpretation of the law of a state that is within its circuit." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 157 n.4 (2d Cir. 2003) ("Color Tile"); see also Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 421 (2d Cir. 2001) (same). The Bankruptcy Court correctly determined that Pennsylvania law applies to the tort claims. See Decision at 17-18. Having done so, it was bound to follow the Third Circuit's interpretation of Pennsylvania law on *in pari delicto* as set forth in Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001).

The Bankruptcy Court was directly confronted at oral argument with the Second Circuit's directive,[14] but in its Decision – without any acknowledgement, much less discussion, of Color Tile – the Bankruptcy Court determined that it "[could] not bring itself to agree with the decision of the Lafferty majority" in its interpretation of Pennsylvania law. Decision at 39. Under Color Tile, the Bankruptcy Court simply did not have authority to disregard Lafferty.

There are only two exceptions to the Second Circuit's Color Tile directive: a federal court need not follow a circuit court decision on an issue of the law of a state within that circuit if (1) the holding was "superseded by a later pronouncement from state legislative or judicial sources" or (2) "prior state court decisions [were] inadvertently overlooked by the

---

[14]      See Dec. 20, 2004 Transcript at 257 (COURT: You said that the Second Circuit has told me, and the Second Circuit of course gives me my marching orders, that I should defer to a Circuit Court of Appeals' interpretation of state law within its judicial circuit. Is that what you said? MS. GRANFIELD: That is correct. . . .).

pertinent court of appeals." <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 652 F.2d 278, 283 (2d Cir. 1981) (emphasis added).  Neither exception is present here.

First, <u>Universal Builders, Inc. v. Moon Motor Lodge, Inc.</u>, 244 A.2d 10 (Pa. 1968), the Pennsylvania Supreme Court case that the Bankruptcy Court erroneously relied upon in rejecting <u>Lafferty</u>'s interpretation of Pennsylvania *in pari delicto* law, was decided more than three decades <u>before</u> <u>Lafferty</u>.  The Bankruptcy Court could not cite any on-point decision of the Pennsylvania Supreme Court that was decided <u>after</u> <u>Lafferty</u> (and neither could Plaintiffs).

Second, the <u>Lafferty</u> court did not "inadvertently overlook" <u>Universal Builders</u>. To the contrary, the Third Circuit directly confronted <u>Waslow v. Grant Thornton LLP (In re Jack Greenberg, Inc.)</u>, 240 B.R. 486 (E.D. Pa. 1999) ("<u>Jack Greenberg</u>"), a decision that, as the Bankruptcy Court acknowledged, discussed <u>Universal Builders</u> "at length."  Decision at 39.  As the Bankruptcy Court observed, "the <u>Lafferty</u> court noted that the Creditors' Committee was relying on <u>Jack Greenberg</u> on the in pari delicto issue."  <u>Id.</u>

Indeed, the Third Circuit in <u>Lafferty</u>, in interpreting Pennsylvania *in pari delicto* law, correctly disregarded <u>Jack Greenberg</u> and, by extension, <u>Universal Builders</u>, because <u>Universal Builders</u> has nothing to do with the doctrine of *in pari delicto*, but rather deals with the legally distinct doctrine of unclean hands.  Under Pennsylvania's *in pari delicto* doctrine, courts impute the fraud of an officer to the corporation "when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation."  <u>Lafferty</u>, 267 F.3d at 358 (citations omitted).  By contrast, unclean hands is a concept that applies where a party seeking equitable relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the parties' conduct <u>during the litigation proceedings at issue</u>.[15]  1 <u>Pennsylvania Law</u>

---

[15]    It is telling that in the thirty-one years before the Pennsylvania bankruptcy court's decision in <u>Jack Greenberg</u>, <u>Universal Builders</u> was never cited in any published opinion construing either *in pari delicto* or imputation.

Encyclopedia Equity § 34 ("The maxim that he who comes into a court of equity must come with clean hands is confined to misconduct in regard to or connected with the matter in litigation.") (emphasis added); see also Universal Builders, 244 A.2d at 13 (considering whether to apply unclean hands where plaintiff had "manufactur[ed] . . . evidence" in the litigation at issue).[16]

Without citing any supporting authority, the Bankruptcy Court simply decided that it would "regard[] references to 'clean hands,' 'unclean hands' and '*in pari delicto*' as alternative ways of saying the same thing." Decision at 27 n.75. The Bankruptcy Court's decision to conflate the two doctrines was wrong; under Pennsylvania law, unclean hands is a completely separate doctrine from *in pari delicto*. See, e.g., Tarasi v. Pittsburgh Nat'l Bank, 555 F.2d 1152, 1157, n.9 (3d Cir. 1977) (treating unclean hands as distinct from *in pari delicto* and finding claim barred by *in pari delicto* but not unclean hands), overruled on other grounds, Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299 (1985); see also 14 Standard Pennsylvania Practice § 79:12 (2007) (explaining that *in pari delicto* and unclean hands are "companion," but separate, principles).

Because Universal Builders only addressed the doctrine of unclean hands, the Third Circuit in Lafferty – a precedent the Bankruptcy Court under Color Tile was not free to disregard – was justified in rejecting Jack Greenberg's application of Universal Builders to the principle of *in pari delicto*. The Bankruptcy Court's decision to reject Lafferty's interpretation of Pennsylvania *in pari delicto* law in favor of an earlier decision that was based on a legally distinct doctrine, however, cannot be justified.[17]

---

[16]    See also, e.g., Jacobs v. Halloran, 710 A.2d 1098, 1103-04 (Pa. 1998) (barring plaintiff under unclean hands doctrine where plaintiff lied about identity of driver in personal-injury suit relating to car accident); Gaudiosi v. Mellon, 269 F.2d 873, 881 (3d Cir. 1959) (employing unclean hands doctrine to bar claims of plaintiff who, during the pendency of the litigation, engaged in "'deliberate and malicious' wrongdoing with intent to 'intimidate' in violation of the Rules of the Securities and Exchange Commission in proxy contests"); Mas v. Coca-Cola Co., 163 F.2d 505 (4th Cir. 1947) (plaintiff used forged documents and perjured testimony to prove claim)

[17]    Nor does the Bankruptcy Court's determination that application of the *in pari delicto* doctrine would "penalize innocent creditors," Decision at 37, have merit. Barring Adelphia's claims against the Investment Banks

The Bankruptcy Court's conflation of *in pari delicto* and unclean hands led to yet another error, its determination – citing only Universal Builders – that the doctrine denies only equitable, and not legal, remedies and thus has no application to this case.  Decision at 29.  But while the unclean hands doctrine bars only equitable relief, the doctrine of *in pari delicto* also bars legal remedies.  As the Third Circuit has explained, under Pennsylvania law, "[*i*]*n pari delicto* . . . is . . . [a] common law doctrine[ ] fashioned to assure that transgressors will not be allowed to profit from their own wrongdoing.  Under this construct, a party is barred from recovering damages if his losses are substantially caused by 'activities the law forbade him to engage in.'"  Tarasi, 555 F.2d at 1156-1157, 1157 n.9 (emphasis added) ("Since the plaintiffs in this appeal only seek damages, the 'unclean hands' doctrine is not relevant."); see also Mantilla v. U.S., 302 F.3d 182, 183 n.2 (3d Cir. 2002) (*in pari delicto* "[r]ecognized as a defense in both law and equity"); Am. Trade Partners, L.P. v. A-1 Int'l Importing Enter., Ltd., 770 F. Supp. 273 (E.D. Pa. 1991) (dismissing claim for contribution as barred under *in pari delicto* doctrine, and claim seeking accounting as barred by unclean hands doctrine); E. Thomas Sullivan, Antitrust Regulation of Land Use:  Federalism's Triumph Over Competition, The Last Fifty Years, 3 Wash. U. J. L. & Pol'y 473, 492-93 (2000) ("Unclean hands, or the 'innocent party' requirement, is the equitable counterpart to the doctrine of *in pari delicto*.  Unclean hands is distinct, however, because it is only a defense in equity.") (footnote omitted).

---

under the *in pari delicto* doctrine does not have any effect on the ability of Adelphia's creditors and investors to sue the defendants.  As the Second Circuit has stated, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  Wagoner, 944 F.2d at 120 (citations omitted).  Indeed, the Bankruptcy Court ignored the fact that not only do creditors have the right to bring claims and potentially recover against third parties who allegedly participated in the wrongdoing of the Rigases, but many creditors, including certain members of the Creditors' Committee, in fact have brought such suits against many of the Investment Banks and certain of their affiliates based on the very conduct alleged in the Complaint, in actions consolidated for pre-trial purposes before this Court.  Moreover, those Investment Banks have *settled* many of them, including claims asserted in the class action.

**B.**     **The Bankruptcy Court Misapplied The *In Pari Delicto* Doctrine**

The Bankruptcy Court also erred in its *dicta* application of the *in pari delicto* doctrine under <u>Lafferty</u>.  Decision at 40-44.  The Bankruptcy Court reasoned that, even if <u>Lafferty</u> applies, issues of fact concerning the so-called "adverse interest" and "innocent decision-maker" exceptions to the *in pari delicto* doctrine preclude dismissal.  <u>Id.</u>  This determination was also based on an incorrect interpretation of Pennsylvania law.  In fact, the Court need look no further than the Complaint's own allegations to determine that those exceptions are barred by the pleadings.

**1.**     **The Adverse Interest Exception Does Not Apply**

Adverse interest is an exception to the general rule under Pennsylvania law that an agent's conduct is to be imputed to its principal.  <u>See</u> <u>Aiello v. Ed Saxe Real Estate, Inc.</u>, 499 A.2d 282, 285 (Pa. 1985) ("[A] principal is liable to third parties for the frauds, . . . torts, . . . and other malfeasances . . . of his agent committed within the scope of his employment . . . , as long as they occurred within the agent's scope of employment."); <u>Travelers Cas. & Sur. Co. v. Castegnaro</u>, 772 A.2d 456, 460 (Pa. 2001) (same).  Traditional agency doctrine thus imputes an agent's wrongdoing "even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them."  <u>Aiello</u>, 499 A.2d at 285; <u>Rochez Bros., Inc. v. Rhoades</u>, 527 F.2d 880, 884 (3d Cir. 1975) (fraud imputed "even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions.  The underlying reason is that a corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business.") (footnote omitted).

The adverse interest exception simply states that, as an exception to this general rule, "fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and 'not for the benefit of the corporation.'"  Lafferty, 267 F.3d at 359 (citation omitted).  The Bankruptcy Court conclusorily stated, without any articulated analysis of the allegations in the Complaint, that "[t]his Court is not of a mind to hold at this point in time, on motion, that even a peppercorn of benefit to a corporation from the wrongful conduct would provide total dispensation to defendants. . . ."  Decision at 42.  This conclusion is erroneous for at least two reasons.

First, whether the Rigases' conduct should be imputed if there was any benefit to Adelphia or only if there was substantial benefit to the Company presents a purely legal question that can and should be decided on a motion to dismiss.  And Pennsylvania law clearly provides that the adverse interest exception does not apply if "any benefit accrued to [the debtors]."  Allegheny, 2007 WL 141059, at *10; see also Todd v. Skelly, 120 A.2d 906, 909 (Pa. 1956) (explaining where an "agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a matter which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act") (emphasis added); In re Phar-Mor, Inc. Sec. Litig., 900 F. Supp. 784, 786 (W.D. Pa. 1995) ("A corporation is not imputed with the 'knowledge of an agent in a transaction in which the agent secretly is acting adversely to the [corporation] and entirely for his own or another's purposes.'") (emphasis added) (citation omitted); accord Ernst & Young v. Bankr. Servs., Inc. (In re CBI Holding Co.), 311 B.R. 350, 370 (S.D.N.Y. 2004) (adverse interest exception requires finding that "the corporation's interests were 'totally abandoned' by managers acting 'entirely' for their own or another's interest") (emphasis added) (citing Center v. Hampton Affiliates, Inc., 497 N.Y.S.2d 898 (N.Y. 1985); Wight v. Bankamerica Corp., 219

20

F.3d 79, 87 (2d Cir. 2000); In re Mediators, Inc., 105 F.3d 822, 827 (2d Cir. 1997)); Restatement

(Third) of Agency § 5.04 (2006) ("For purposes of determining a principal's legal relations with

a third party, notice of a fact that an agent knows or has reason to know is not imputed to the

principal if the agent acts adversely to the principal in a transaction or matter, intending to act

solely for the agent's own purposes or those of another person.") (emphasis added).

          Second, by framing the issue as one of whether a mere "peppercorn of benefit" is

enough, the Bankruptcy Court simply misread the Complaint.  The Complaint alleges that at

least $1.5275 billion of the funds available under the co-borrowing facilities – the same

transactions that Adelphia complains were fraudulent – was used for the benefit of the Debtors.

See Complaint ¶¶ 452, 456, 459.  Moreover, the public offerings underwritten by the Investment

Banks, through which Adelphia complains the Investment Banks aided and abetted the Rigases'

conduct, Complaint ¶ 865, indisputably injected Adelphia with billions of dollars from investors.

See, e.g., Complaint ¶¶ 503, 519.  If these sums of money constitute a "peppercorn," it is the

largest one in history.  Because the Complaint itself alleges some benefit – indeed, substantial

benefit – to the Debtors, the adverse interest exception does not apply.

        **2.**     **The Sole Actor Rule Bars The Adverse Interest Exception**

          Even if the adverse interest exception could apply on the facts alleged in the

Complaint – and it cannot – the Bankruptcy Court failed even to address whether the "sole actor

rule" barred its application (an issue extensively briefed and argued before the Bankruptcy

Court).  The "sole actor" exception to the adverse interest exception provides that "if an agent is

the sole representative of a principal, then that agent's fraudulent conduct is imputable to the

principal regardless of whether the agent's conduct was adverse to the principal's interests."

Lafferty, 267 F.3d at 359.  "Courts have . . . applied the exception to cases in which the agent

'dominated' the corporation."  Id. at 360.

Had the Bankruptcy Court considered the "sole actor" rule at all, it would have found that the Complaint painstakingly alleges – over and over – that the Rigases dominated the Debtors.  See, e.g.:

- "At all relevant times, <u>members of the Rigas Family</u>, principally John Rigas and his three sons, Timothy, Michael and James Rigas (collectively, the 'Rigas Family'), with substantial assistance from two senior Adelphia executives, James Brown . . . and Michael Mulcahey . . ., <u>held all of the most senior positions of the Debtors</u>. . . . The Rigas Family <u>controlled the operations</u> of each of Adelphia's direct and indirect subsidiaries and the RFEs, and <u>made, or approved of, the major business decisions</u> on behalf of the Debtors.  <u>The Rigas Family caused the Debtors</u> to engage in all acts or omissions alleged herein to have been made by the Debtors, with the assistance of Brown, Mulcahey and other senior executives of the Debtors who were complicit in the fraud."  Compl. ¶ 413 (emphases added).

- "<u>The Rigas Family also maintained a majority of the voting power of Adelphia's shares</u> through its ownership of nearly all of Adelphia's issued and outstanding Class B shares of common stock, each of which carried ten times the voting power of an Adelphia Class A share."  Compl. ¶ 414 (emphasis added).

- "Prior to each of their resignations in May 2002, <u>members of the Rigas Family had a majority of the nine seats on Adelphia's Board of Directors and occupied all of its senior management positions</u>. John Rigas was Chairman of the Board of Adelphia, and Michael, Timothy and James Rigas each were directors of Adelphia. A relative of the Rigas Family, Peter Venetis, also was a director and under the control of the Rigas Family."  Compl. ¶ 415 (emphasis added).

- "<u>The Rigas Family's ubiquitous position within Adelphia</u> enabled it to conceal the nature and extent of its fraudulent conduct from the independent members of Adelphia's Board of Directors, creditors (other than Defendants) and other constituents." Compl. ¶¶ 416 (emphasis added).

Under <u>Lafferty</u>, the inquiry ends there.  See <u>Lafferty</u>, 267 F.3d at 360 ("[A]ccording to the Amended Complaint, the Shapiros dominated the ownership and control of Walnut and ELCOA.  Thus, the 'sole actor' exception applies.") (affirming grant of motion to dismiss).  The Rigases' domination of Adelphia's management positions – repeatedly acknowledged in the Complaint – mandates imputation of their knowledge and conduct to Adelphia.  See <u>Pan Am World Airways, Inc. v. Cont'l Bank</u>, 435 F. Supp. 642, 649 (E.D. Pa.

1977) ("The courts of Pennsylvania . . . have followed the general rule that the knowledge of high-ranking corporate officials must be imputed to the corporation itself."); see also In re Cendant Corp. Litig., 264 F.3d 201, 238 (3d Cir. 2001) ("[I]t would not seem difficult . . . to establish that the high-ranking CUC officers who published . . . in CUC's name were acting within the apparent scope of their authority and were transacting corporate business, whether or not they were feathering their own nest."); Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 456 (7th Cir. 1982) (Posner, J.) (imputing fraud where "the uncontested facts show fraud permeating the top management of Cenco").

### 3.   There Is No Innocent Decision-Maker Exception Available

Rather than examine the "sole actor" rule, the Bankruptcy Court just ignored that exception and stated, without analysis or citation to any legal authority, that the Complaint pleaded the so-called "innocent director" exception to the sole actor rule.  Decision at 44.  This was error in at least two respects.  First, Pennsylvania does not recognize any innocent insider exception.  The Allegheny court, applying Pennsylvania law, was "unable to find support for the innocent decision-maker limitation to imputation and/or in pari delicto in either Pennsylvania or Third Circuit decisions."  2007 WL 141059, at *14.  Allegheny further found that "this limitation clearly deviates from traditional agency doctrine, as well as Pennsylvania agency law."  Id.  Likewise, the Third Circuit in Lafferty "reject[ed] the Committee's argument that the exception should not apply because several of the Debtors' directors merely acted negligently and did not perpetrate the fraud.  The possible existence of any innocent independent directors does not alter the fact that the Shapiros controlled and dominated the debtors."  267 F.3d at 360.

Second, even the few courts outside Pennsylvania that have recognized the exception under the law of other states have required the plaintiff to identify a specific innocent insider who had the power and willingness to stop the fraud.  See, e.g., Wechsler v. Squadron,

Ellenoff, Plesent & Sheinfeld, L.L.P., 212 B.R. 34, 36 (S.D.N.Y. 1997) (dismissing complaint for failing to "actually allege[] the existence of an innocent member of . . . management who would have been able to prevent the fraud had he known about it").  Neither the 977-paragraph Complaint nor the Bankruptcy Court's 86-page Decision makes any such identification.

### 4.    The *In Pari Delicto* Doctrine Is Available Under Section 541

Finally, because Pennsylvania law mandates imputation of the Rigases' conduct to the Debtors, the *in pari delicto* doctrine applies under 11 U.S.C. § 541, which includes as part of an estate's property "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Bankruptcy Court, in its holding with respect to section 541, properly recognized that a doctrine such as *in pari delicto* could be imposed with respect to claims that otherwise would belong to the Debtors to the extent such doctrine was available under applicable state law or other nonbankruptcy law.  Decision at 35. The Bankruptcy Court's error lies in its finding that *in pari delicto* is unavailable under Pennsylvania law because it improperly followed Universal Builders rather than Lafferty.  See Decision at 37-39 (finding that state law defines applicable defenses and following Universal Builders on interpretation of Pennsylvania *in pari delicto* law).  Because, as explained above, under Lafferty (binding in this Circuit under Color Tile), the *in pari delicto* doctrine applies in this case (and the exceptions to that doctrine are unavailable), even under the Bankruptcy Court's own reading of section 541, the *in pari delicto* doctrine applies to bar all of the tort claims in this case.  No further equitable considerations are permitted.  Lafferty, 267 F.3d at 356-58 (rejecting creditors' committee's argument that because it was an innocent successor pursuing litigation, *in pari delicto* "lost its sting").

Nor do the prepetition resignations of the Rigases from Adelphia's management – cited in *dicta* by the Bankruptcy Court as an additional reason not to follow Lafferty, Decision at

41 – change that result.  The Bankruptcy Court's *dictum* distinguished <u>Lafferty</u> as having focused on the effect of the postpetition removal of the debtors' management on the application of *in pari delicto*.  Decision at 40-41.  But the timing of the removal of the debtors' management was <u>not</u> the focus of <u>Lafferty</u>'s reasoning.  The creditors' committee in <u>Lafferty</u> argued that *it* had become an "innocent successor" to the claims of the debtors following the commencement of the debtors' bankruptcy cases.  <u>Lafferty</u>, 267 F.3d at 356-57.  The Third Circuit rejected this argument, finding that the filing of the bankruptcy petitions and the subsequent status of the committee as successor to the debtors' claims could not be considered for purposes of *in pari delicto*.  <u>Id</u>.  Each of the cases the <u>Lafferty</u> court reviewed in connection with this issue likewise dealt with whether the status of the respective plaintiff as bankruptcy trustee affected the availability of the *in pari delicto* doctrine, and in <u>Lafferty</u>'s discussion of those cases, the timing of the removal of management is never mentioned.  <u>Id</u>. at 357-58 (citing <u>In re Hedged-Investments Assocs., Inc.</u>, 84 F.3d 1281 (10th Cir.1996); <u>Terlecky v. Hurd (In re Dublin Secs. Inc.)</u>, 133 F.3d 377, 380 (6th Cir. 1997); <u>Hirsch v. Arthur Andersen & Co.</u>, 72 F.3d 1085, 1093-94 (2d Cir. 1995); <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 120 (2d Cir. 1991); <u>In re Mediators, Inc.</u>, 105 F.3d 822, 825-27 (2d Cir. 1997)).

Had Adelphia not filed for bankruptcy, it is clear that under Pennsylvania law, *in pari delicto* would bar the tort claims regardless of the Rigases' departures, since the Rigases are alleged in the Complaint to have dominated the Debtors during the period of the alleged wrongdoing.  Accordingly, courts have repeatedly found the timing of the malfeasors' departure (whether before or after the filing of a bankruptcy petition) to be irrelevant to the application of *in pari delicto*.  <u>See</u> <u>Allegheny</u>, 2007 WL 141059, at *1-3 (*in pari delicto* barred claims where wrongdoers left company weeks before petition was filed); <u>Baena v. KPMG LLP</u>, 453 F.3d 1, 3 (1st Cir. 2006) (*in pari delicto* applied where wrongdoer left company before bankruptcy);

Nisselson v. Lernout, 469 F.3d 143, 151-56 (1st Cir. 2006) (affirming dismissal under *in pari delicto* even though wrongdoers left surviving company three weeks before bankruptcy); Seidman & Seidman v. Gee, 625 So. 2d 1, 1 (Fla. Dist. Ct. App. 1992) (imputing fraud of corporate officer who left company "just prior to its liquidation"); MCA Fin. Corp. v. Grant Thornton, LLP, 687 N.W.2d 850, 852 (Mich. App. 2004) (imputing conduct of officers who were terminated before bankruptcy); see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1156 (11th Cir. 2006), cert. denied sub nom, Laddin v. Reliance Trust Co., 127 S. Ct. 45 (2006) (where "complaint brought by [debtor-corporation], outside of bankruptcy, . . . would have been barred by the doctrine of *in pari delicto*, [successor bankruptcy trustee] is likewise barred from recovery within bankruptcy").

That Adelphia should not be able to avoid the imposition of the *in pari delicto* doctrine simply by virtue of its bankruptcy filing is consistent with public policy.  To hold otherwise "would only provide an incentive for companies that would otherwise stand *in pari delicto* with respect to third parties to file for bankruptcy.  Congress has made clear . . . that bankruptcy should be an option of last resort.  Any reading of the Bankruptcy Code that makes bankruptcy more appetizing to a potential debtor than what the text of the Code explicitly permits should be viewed with skepticism."  In re Greater Se. Cmty. Hosp. Corp. I, 353 B.R. 324, 363-364 (Bankr. D.D.C. 2006) (citing H.R. Rep. No. 109-31, at 2 n.1 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 n.1).

Because the *in pari delicto* doctrine applies for the reasons set forth above, the Bankruptcy Court erred in failing to dismiss the aiding and abetting breach of fiduciary duty claim.  See, e.g., Lafferty, 267 F.3d at 346, 360 (*in pari delicto* bars aiding and abetting breach of fiduciary duty claim).  Moreover, the Bankruptcy Court further erred in failing to dismiss the

other state law claims for the same reason.[18]  See, e.g., id. at 346, 360 (in pari delicto bars breach

of fiduciary duty claim); Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 841-842 (8th Cir.

2005) (negligence claim); In re Donahue Secs., Inc., 304 B.R. 797, 799 n.4 (Bankr. S.D. Ohio

2003) (negligence claim).

**POINT III**

**THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM
SHOULD HAVE BEEN DISMISSED BECAUSE THE BANKRUPTCY COURT FOUND
A NECESSARY ELEMENT INSUFFICIENTLY PLEADED**

The Bankruptcy Court erred in an additional respect with respect to the aiding and

abetting breach of fiduciary duty claim, by failing entirely to review the claim to determine

whether its elements had been pleaded adequately against each of the Investment Banks.[19]  The

Complaint bases the aiding and abetting breach of fiduciary duty claim on allegations of fraud.

See Complaint ¶¶ 859-66 (alleging that Rigases, Brown, and Mulcahey breached their fiduciary

duties to Debtors by, inter alia, pursuing fraudulent course of conduct, and that Agent and

Investment Banks aided and abetted those breaches by assisting them with knowledge of their

unlawfulness).  Thus, putting aside whether the cause of action exists under Pennsylvania law,

Rule 9(b) clearly applies.  See, e.g., Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 245 (S.D.N.Y.

1996), aff'd, 152 F.3d 918 (2d Cir. 1998) ("To the extent the underlying primary violations [of

an aiding and abetting breach of fiduciary duty claim] are based on fraud, the allegations of

aiding and abetting liability must meet the particularity requirements of Fed. R. Civ. P. 9(b).");

---

[18]     To the extent Plaintiffs replead the dismissed aiding and abetting fraud claim, the in pari delicto doctrine applies equally to bar that claim.  See, e.g., In re Motorwerks, Inc., 371 B.R. 281, 291 n.6 (Bankr. S.D. Ohio 2007) (in pari delicto applies to aiding and abetting fraud claim).

[19]     Plaintiffs filed a motion to strike this issue from the Investment Banks' and other defendants' Statements of Issues On Appeal.  The Investment Banks believe that this Court clearly granted leave to appeal this issue, see Leave Order at 9 n.4 ("Section 1292 'authorizes the certification of orders, not questions.' . . .  Any argument as to Claim 37 [for aiding and abetting breach of fiduciary duty] is therefore arguably permissible on appeal.") (citations omitted), and therefore have objected to Plaintiffs' motion to strike by the response deadline for that motion and have briefed this issue for the Court's consideration pending a decision by the Court on such motion.

see also Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to "averments of fraud" set forth in aid of Securities Act claims that are grounded in fraud.).

The Bankruptcy Court found that Adelphia insufficiently pled the aiding and abetting fraud claim (Claim 38), holding that both the underlying fraud as well as the defendants' knowledge of fraudulent activity had not been pled with sufficient specificity:

> The Court has similar, and perhaps more serious, concerns as to the Rule 9(b) deficiencies of the effort to impose secondary liability, for the aiding and abetting of the alleged fraud. If there are allegations concerning the knowledge, if any, of Defendants regarding what the Rigases told and did not tell the independent directors, and the extent to which the Defendants knew that the Rigases were concealing things from the independent directors, the Court has missed them. In the Court's view, they must be provided in order to satisfy Rule 9(b)."

Decision at 50-51 (emphasis added).

One of the very elements that the Bankruptcy Court correctly found absent – defendants' actual knowledge of the primary violation – is equally an essential (and identically deficiently pleaded) element of aiding and abetting breach of fiduciary duty.[20] See Complaint ¶ 862 ("each of the Investment Banks aided and abetted the foregoing breaches of fiduciary duties [including the fraudulent course of conduct of Adelphia management] by substantially assisting in those breaches with ***knowledge*** of their unlawfulness") (emphasis added); compare id. ¶ 860 ("Each member of the Rigas Family breached his fiduciary duties to the Debtors . . . by, among other things, causing the Debtors to enter into the fraudulently structured Co-Borrowing Facilities, causing certain RFEs to draw down in excess of $3.4 billion under the Co-Borrowing Facilities to be used for the sole benefit of the Rigas Family, using such funds for purposes that

---

[20]    See, e.g., Kaufman v. Cohen, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) (affirming dismissal of aiding and abetting breach of fiduciary duty claim in part because plaintiff's allegations as to defendants' knowledge of breach were "extremely sparse and wholly conclusory" and there were "no facts in the complaint from which it could be inferred that the . . . defendants had actual knowledge"); Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 281 B.R. 506, 515-17 (Bankr. E.D.N.Y. 2002) (dismissing aiding and abetting breach of fiduciary duty claim for failure to adequately allege knowledge of primary wrongdoing).

provided no benefit to the Debtors, and failing to fully inform the independent members of Adelphia's Board of Directors of the circumstances surrounding such conduct.") (alleging primary violation with respect to Claim 37) with id. ¶ 868 ("[E]ach member of the Rigas Family . . . made fraudulent misrepresentations and omissions of material facts by, among other things, causing the Debtors to enter into the fraudulently structured Co-Borrowing Facilities and failing to disclose to Adelphia's independent Board of Directors the true purpose and effect of the facilities, causing certain RFEs to draw down in excess of $3.4 billion under the Co-Borrowing Facilities to be used for the sole benefit of the Rigas Family, using such funds for purposes that provided no benefit to the Debtors, and failing to fully inform the independent members of Adelphia's Board of Directors of the circumstances surrounding such conduct.") (alleging primary violation with respect to Claim 38).[21]  Therefore, for the very reasons that the Bankruptcy Court dismissed Claim 38 under Rule 9(b), Claim 37 also should have been dismissed, and the unexplained failure of the Bankruptcy Court to do so was error.[22]

## POINT IV

### THE BANKRUPTCY CODE DOES NOT PROVIDE FOR – AND INDEED BARS – ANY CLAIM FOR "EQUITABLE DISALLOWANCE"

The Investment Banks join in the arguments made in the Agent Bank Brief that the Bankruptcy Court erred in upholding claims for so-called "Equitable Disallowance".

---

[21]     See also Complaint ¶ 864 ("the acts and omissions of . . . each of the Investment Banks were committed with actual malice and/or a wanton and willful disregard of the Debtors' rights. . . .").

[22]     The Bankruptcy Court committed further error when it found that Pennsylvania recognizes a cause of action for aiding and abetting breach of fiduciary duty.  See, e.g., Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc., 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002).  The Investment Banks join in the arguments made in the Agent Bank Brief on that issue.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court:
(a) reverse the Bankruptcy Court's Decision to the extent that it failed to dismiss the claim against the Investment Banks for violation of the BHCA, declined to apply the *in pari delicto* doctrine to Adelphia's aiding and abetting breach of fiduciary duty and other state law tort claims, and otherwise failed to dismiss the aiding and abetting breach of fiduciary duty claim as well as the claim against the Investment Banks for equitable disallowance; and (b) grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       September 28, 2007

           Respectfully submitted,

           CLEARY GOTTLIEB STEEN & HAMILTON LLP

           By:  /s/ Lindsee P. Granfield
                Mitchell A. Lowenthal
                Deborah M. Buell
                Lindsee P. Granfield
                Lisa M. Schweitzer
                Members of the Firm

            One Liberty Plaza
            New York, New York 10006
            Telephone:  (212) 225-2000
            Facsimile: (212) 225-3999

            Attorneys for ABN AMRO Inc., Banc of America
            Securities LLC, BNY Capital Corp., BNY Capital
            Markets, Inc., Barclays Capital Inc., Citigroup
            Financial Products Inc., Citigroup Global Markets
            Holdings Inc., CIBC World Markets Corp., Deutsche
            Bank Securities, Inc., Fleet Securities, Inc., Morgan
            Stanley & Co. Incorporated, PNC Capital Markets
            LLC, Scotia Capital (USA) Inc., SunTrust Capital
            Markets, Inc., and TD Securities (USA) LLC

MILBANK, TWEED, HADLEY & McCLOY LLP

By:  /s/ Thomas A. Arena
    David R. Gelfand
    Thomas A. Arena

1 Chase Manhattan Plaza
New York, New York  10005
Telephone:  (212) 530-5000
Facsimile: (212) 530-5219

Attorneys for JPMorgan Securities, Inc. (sued herein
as Chase Securities Inc.)

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Marshall R. King
     Jonathan M. Landers
     Robert F. Serio
     Marshall R. King

200 Park Avenue
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Defendant Merrill Lynch & Co., Inc.

DUANE MORRIS LLP

By:  /s/ Lawrence J. Kotler
      Lawrence J. Kotler

1540 Broadway, Suite 1400
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

-and-

John F. Horstmann
J. Manly Parks

30 South 17th Street
Philadelphia, PA 19103-1020
Telephone: (215) 979-1000
Facsimile: (215) 979-1020

Attorneys for Cowen and Company, LLC (f/k/a SG
Cowen Securities Corporation)

WILMER CUTLER PICKERING HALE AND DORR LLP


By:  /s/ Philip D. Anker
        Philip D. Anker
        John A. Valentine
        Theresa Titolo

    399 Park Avenue
    New York, New York  10022
    Telephone:  (212) 230-8800
    Facsimile: (212) 230-8888

    Attorneys for Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (USA), Inc. and Donaldson, Lufkin & Jenrette, Inc.) and The Royal Bank of Scotland PLC (in its capacity as an Investment Bank)