**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05 Civ. 9050 (LMM) |
| | ) | |
| vs. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., *et al.*, | ) | (Related to 03 MDL 1529) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## JOINT APPELLANTS' BRIEF OF CERTAIN LENDERS

## Table of Contents

Table Of Cases ..................................................................................................................... iii

Basis Of Appellate Jurisdiction ........................................................................................... 1

Issues Presented ................................................................................................................... 1

Standard Of Review .............................................................................................................. 2

Statement Of The Case ......................................................................................................... 3

Statement Of Facts ............................................................................................................... 3

Argument .............................................................................................................................. 4

    I.    The Bankruptcy Court Erred In Refusing To Dismiss A Nonexistent Cause Of
        Action For Equitable Disallowance (Claim 33) .................................................. 4

        A.  The Bankruptcy Code Does Not Permit Equitable Disallowance. ................ 4

        B.  The Bankruptcy Court Wrongly Relied On Legislative History And, In Any
            Case, Misconstrued Pepper. .................................................................... 7

    II.   The Bankruptcy Court Erred In Refusing To Dismiss The BHCA Claim Where
        Plaintiffs' Own Allegations Establish That It Does Not Apply (Claim 32) ............ 10

        A.  The Complaint Does Not Allege Tying By The Commercial Banks ............ 11

        B.  Plaintiffs Have Not Pleaded Any Damage From Any Alleged Tie. ............ 13

    III.  The Bankruptcy Court Erred In Failing To Dismiss The Aiding And Abetting
        Breach Of Fiduciary Duty Claim (Count 37) .................................................... 14

        A.  Aiding And Abetting A Breach Of Fiduciary Duty Is Not Recognized In
            Pennsylvania. ......................................................................................... 14

            1.   The Pennsylvania Supreme Court Has Not Recognized Civil Aiding And
               Abetting ....................................................................................... 16

            2.   Federal Courts Applying Pennsylvania Law Have Refused To Recognize
               A Cause Of Action For Aiding And Abetting. ....................................... 17

            3.   Pennsylvania Intermediate Court Decisions Conflict with the Authority
               Relied Upon By The Bankruptcy Court ............................................... 19

        B.  The Bankruptcy Court Erred In Failing To Apply The Wagoner Rule To The
            Aiding And Abetting Breach Of Fiduciary Duty Claim. ............................. 21

C.  The Bankruptcy Court Erred When It Declined To Follow Third Circuit Precedent And Failed To Dismiss The Claim For Aiding And Abetting A Breach Of Fiduciary Duty Under The *In Pari Delicto* Doctrine. ................................22

    1.  Section 541 Of The Bankruptcy Code Bars Consideration Of Creditors' "Innocent" Status. ................................................................................................23

    2.  The Bankruptcy Court Misinterpreted Pennsylvania Law....................................24

    3.  Pennsylvania's "Exceptions" To *In Pari Delicto* Are Inapplicable.....................28

D.  Plaintiffs Cannot Satisfy The Elements Of Aiding And Abetting A Breach Of Fiduciary Duty. ................................................................................................29

Conclusion ................................................................................................................................30

## Table of Cases

### Federal Cases

*Aiello v. Ed Saxe Real Estate, Inc.*,
      499 A.2d 282 (Pa. 1985) ................................................................................. 22, 26, 27

*Anderson Bros. Ford v. Valencia*
      452 U.S. 205 (1981) ......................................................................................... 12

*Baena v. KPMG LLP*,
      453 F.3d 1 (1st Cir. 2006) ................................................................................ 24-25

*Bell Atlantic Corp. v. Twombly*,
      127 S. Ct. 1955 (2007) ..................................................................................... 2, 13

*Booking v. Gen. Star Mgmt. Co.*,
      254 F.3d 414 (2d Cir. 2001) .............................................................................. 24

*Briarpatch Ltd. v. Geisler Roberdeau, Inc.*,
      No. 99 Civ. 9623, 2007 WL 1040809 (S.D.N.Y. Apr.. 4, 2007) ..................................... 30

*Buckley v. Deloitte & Touche USA, LLP*,
      No. 06 Civ. 3291 (SHS), 2007 WL 1491403 (S.D.N.Y. May 22, 2007) ......................... 24

*Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*,
      865 F. Supp. 194 (S.D.N.Y. 1994) ...................................................................... 14

*Chicago Title Ins. co. v. Lexington & Concord Search and Abstract, LLC*,
      Civil Action No. 06-2177, 2007 WL 1118322 (E.D. Pa. Apr. 13, 2007) ........................ 15

*City of Philadelphia v. Beretta U.S.A. Corp.*,
      277 F.3d 415 (3d Cir. 2002) .............................................................................. 15

*Clayton v. McCullough*,
      670 A.2d 710 (Pa. Sup. Ct. 1996) ...................................................................... 19, 20

*Crosby v. U.S.*,
      506 U.S. 255 (1993) ......................................................................................... 8

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*
      187 F.Supp.2d 400 (W.D. Pa. 2002) .................................................................... 15, 17

*Daniel Boone Area Sch. Dist. v. Kutak Rock*
      No. 1999-4899 (Pa. Comm. Pl. Aug. 16, 2000) ..................................................... 17

*Davis v. U.S. Gypsum Co.*,
    451 F.2d 659 (3d Cir. 1971)........................................................... 22

*Dilworth v. Metropolitan Life Ins. Co.*,
    418 F.3d 345 (3d Cir. 2005)........................................................... 15

*Dunes Hotel Associates v. Hyatt Corp.*,
    245 B.R. 492 (D.S.C. 2000)........................................................... 10

*Factors Etc., Inc. v. Pro Arts, Inc.*
    652 F.2d 278 (2d Cir. 1981)........................................................... 27

*Flood v. Makowski*,
    No. Civ.A. 3:CV-03-1803, 2004 WL 1908221
    (M.D. Pa. Aug. 24, 2004)........................................ 15, 17, 18, 19, 20

*Gambardella v. G. Fox & Co.*,
    716 F.2d 104 (2d Cir. 1983)........................................................... 12

*Grassmueck v. Am. Shorthorn Ass'n*,
    402 F.3d 833 (8th Cir. 2005) ......................................................... 24

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .................................................. 16, 17

*Highland Capital, Inc. v. Franklin Nat. Bank*,
    350 F.3d 558 (6th cir. 2003) ........................................................ 12

*Home Valu, Inc. v. Pep Boys*,
    213 F.3d 960 (7th Cir. 2000) ......................................................... 15

*I.N.S. v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)......................................................................... 6

*In re Adler, Coleman Clearing Corp.*,
    277 B.R. 520 (Bankr. S.D.N.Y. 2002)............................................. 7

*In re Baker & Getty Financial Services, Inc.*,
    974 F.2d 712 (6th Cir. 1992) ........................................................... 9

*In re Bennett Funding Group, Inc.*,
    336 F.3d 94 (2d Cir. 2003).............................................................. 22

*In re C.R. Amusements, LLC*,
    259 B.R. 523 (Bankr. D.R.I. 2001).................................................. 6

*In re Caldor Corp.*,
    303 F.3d 161 (2d Cir. 2002)............................................................. 8

*In re Educators Group Health Trust ("Educators Group"),*
    25 F.3d 1281 (5th Cir. 1994) ....................................................... 23

*In re Emergency Monitoring Techs, Inc.,*
    366 B.R. 476 (Bankr. W.D. Pa. 2007) ............................................ 6

*In re Enron Corp.,*
    No. 06 Civ. 7828  (S.D.N.Y., Aug. 27, 2007) ................................ 7

*In re Grumman Olson Indus., Inc.,*
    329 B.R. 411 (Bankr. S.D.N.Y. 2005) ............................................ 21

*In re Jack Greenberg, Inc.,*
    212 B.R. 76 (Bankr. E.D. Pa. 1997) ..................................... 24, 27

*In re Lifschultz Fast Freight,*
    132 F.3d 339 (7th Cir. 1997) ......................................................... 9

*In re Mediators, Inc.,*
    105 F.3d 822 (2d Cir. 1997) ................................................... 21, 22

*In re Mobile Steel Co.,*
    563 F.2d 692 (5th Cir. 1977) ............................................... 6, 9, 10

*In re New Haven Projects Ltd. Liability Co.,*
    225 F.3d 283 (2d Cir. 2000) ........................................................... 5

*In re Smart World Techs, LLC,*
    423 F.3d 166 (2d Cir. 2005) ........................................................... 9

*In re Town & Country Co.,*
    BAP No. 99-030 (B.A.P. 1st Cir. 2000) ........................................ 6

*Jaasma v. Shell Oil Co.,*
    412 F.3d 501 (3d Cir. 2005) ......................................................... 15

*Johnstone v. First Bank Nat. Ass'n,*
    1998 WL 565193 (N.D. Ill. Aug. 31, 1998) ................................ 12

*Klein v. Boyd,*
    1996 WL 675554 (E.d. Pa. Nov. 19, 1996) ................................. 18

*Koken v. Steinberg,*
    825 A.2d 723 (Pa. Commw. Ct. 2003) ............................. 16, 18, 20

*Kolbeck v. LIT Am., Inc.,*
    939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d. 918 (2d Cir. 1998) ................... 29, 30

*Leo v. Kerr-McGee Chem. Corp.*,
    37 F.3d 96 (3d Cir. 1994) ............................................................ 15

*Lichtman v. Taufer*,
    2004 WL 1632574 (Pa. com. Pl. July 13, 2004) .............................................. 18

*Lokay v. Lehigh Valley Co-op. Farmers, Inc.*,
    492 A.2d 405 (Pa. Super. Ct. 1985) ......................................................... 22

*Mazzaro de Abreu v. Bank of Am. Corp.*,
    No. 06 Civ. 673, 2007 WL 2609535 (S.D.N.Y. Sept. 10, 2007) ................................. 2, 30

*Miller v. N.Y. Produce Exch.*,
    550 F.2d 762 (2d Cir. 1977) ................................................................ 24

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................. 2

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
    267 F.3d 340 (3d Cir. 2001) ........................................................... passim

*Official Committee of Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, LLP ("Color Tile")*,
    322 F.3d 147 (2d Cir. 2003) ........................................................ 21, 24, 25, 27

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,
    437 F.3d 1145 (11th Cir. 2006) ............................................................. 24

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994) ......................................................................... 24

*Pepper v. Litton*,
    308 U.S. 295 (1939) ............................................................... 4, 8, 9, 10

*Reis v. Barley, Snyder, Senft & Cohen, LLC*,
    484 F.Supp.2d 337 (E.D. Pa. Apr. 2, 2007) ................................................... 15

*S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*,
    1996 WL 325894 (E.D. Pa. June 13, 1996) ................................................... 18

*Schock v. Nash*,
    732 A.2d 217 (Del. Supr. 1999) ............................................................. 30

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ................................................................ 24

*Sender v. Buchanan (In re Hedged-Investments Assocs.)*,
    84 F.3d 1281 (10th Cir. 1996) .............................................................. 24

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991)............................................................................ 21, 22, 23

*Skipworth v. Lead Industries Ass'n, Inc.*,
    690 A.2d 169 (Pa. 1997) ........................................................................ 16, 17, 18, 20

*Solomon v. Gibson*,
    615 A.2d 367 (Pa. Super. Ct. 1992) ...................................................................... 28

*Stanziale v. Pepper, Hamilton, LLP (In re Student Fin. Corp.)*,
    335 B.R. 539 (D. Del. 2005) .................................................................. 14, 18, 19, 20

*Stefiuk v. First Union Nat'l Bank of Florida*,
    61 F. Supp. 2d 1294 (S.D. Fla. 1999), aff'd, 207 F.3d 664 (11th Cir. 2000) ................... 12

*Terlecky v. Hurd (In re Dublin Sec.)*,
    133 F.3d 377 (6th Cir.1997) ................................................................................ 24

*Toussie v. Powell*,
    323 F.3d 178 (2d Cir. 2003)................................................................................... 2

*Travelers Cas. & Sur. Co. v. Castegnaro*,
    772 A.2d 456 (Pa. 2001) ............................................................................... 22, 26

*Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Electric Co.*,
    127 S. Ct. 1199 (2007)......................................................................................... 5

*United States v. Rigas*,
    499 F.3d 208 (2d Cir. 2007).................................................................................. 26

*United States v. Ten Cartons, More or Less, of an Article Ener-B Vitamin B-12*,
    72 F.3d 285 (2d Cir. 1995)..................................................................................... 6

*Universal Builders, Inc. v. Moon Motor Lodge, Inc.*,
    244 A.2d 10 (Pa. 1968) .................................................................. 22, 23, 25, 26, 27

*U.S. v. Noland*,
    517 U.S. 535 (1996)........................................................................................... 9

*U.S. v. Ron Pair Enters., Inc.*,
    489 U.S. 235 (1989)........................................................................................... 8

*Welc v. Porter*,
    675 A.2d 334 (Pa. Sup. Ct. 1996) ................................................................... 19, 20

*WM High Yield Fund v. O'Hanlon*,
    2005 WL 1017811 (E.D. Pa. Apr. 29, 2005) ............................................................ 18

*Yaindl v. Ingersoll-Rand Co.*,
    422 A.2d 611 ................................................................................................ 28

*Yentsch v. Texaco, Inc.*,
    630 F.2d 46 (2d Cir. 1980) ........................................................................... 12

## Federal Statutes

11 U.S.C. § 105(a) ................................................................................................ 9

11 U.S.C. § 502(b) ......................................................................................... 4, 5, 8, 9

11 U.S.C. § 502(d)-(k) .......................................................................................... 4

11 U.S.C. § 510(c) ......................................................................................... passim

11 U.S.C. § 541 ........................................................................................ 23, 24, 25

12 U.S.C. § 1971 ................................................................................................... 1

12 U.S.C. § 1972 (1) ....................................................................................... 11, 12

28 U.S.C. § 158 .................................................................................................... 1

28 U.S.C. § 1331 .................................................................................................. 1

28 U.S.C. § 1334 .................................................................................................. 1

Del. Code Ann. § 144 ......................................................................................... 30

Federal Rules of Civil Procedure 9(b) ............................................................ 2, 29

Federal Rules of Civil Procedure 12(b)(6) ........................................................... 2

## Other Authorities

1 *Pennsylvania Law Encyclopedia Equity § 34* ................................................. 26

4 Collier ¶ 510.05 ............................................................................................... 6

4 Collier ¶ 510.05 [1] ......................................................................................... 9

5 Collier ¶ 541.03 [2] [b] .................................................................................... 5

Collier ¶ 122.03 [2] ............................................................................................. 5

Alam, *"Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How In Pari Delicto Has Been Perverted to Prevent Recovery for Innocent Creditors,"* 77 Am. Bankr. L.J. 305 (2003) .............................................................................23

Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory Court in Bankruptcy, Not a Court of Equity,* 79 Am. Bankr. L.J. 1 (2005) ...........................................................................9

Black's Law Dictionary (8th ed. 2004) ...........................................................................26

Nathan Isaac Combs, *Note, Civil Aiding and Abetting Liability,* 58 Vand. L. Rev. 241 (2005) ................................................................... 16

Restatement (Second) of Torts § 876(a) .................................................... 16, 17, 18, 20

Restatement (Second) of Torts § 876(b) .................................................... 16, 17, 19, 20

Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U. Pa. L. Rev. 597 (1972) ...........................................................................17

### Legislative Materials

Anti-Tying Restriction of Section 106 of the Bank Holding Company Act Amendments of 1970 (Docket No. OP-1158), at 15 (Aug. 25, 2003) ....................................................12

Bank Holding Company Act Amendments of 1970, Pub. L. No. 91-607, § 106 (b), 94 Stat. 1760 (1970) ........................................................11

H.R. Rep. No. 595, 95th Congr., 1st Sess. 359 (1977) ...................................................... 7

S.B. 2266, 95th Cong. (1977) ........................................................................................ 6

Defendants-Appellants Bank of America, N.A., Bank of Montreal, BMO Capital Markets Corp. (f/k/a BMO Nesbitt Burns Corp.), Wachovia Bank, National Association, Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.), and Bank of Nova Scotia[1] (the "Lenders") submit this Joint Appellants' Brief pursuant to the Court's Order, entered September 5, 2007 (the "Order Granting Leave"), which granted the Lenders leave to appeal from certain portions of the Decision and Order on Motions to Dismiss (the "Decision" or "Dec."), entered June 11, 2007 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]

**Basis of Appellate Jurisdiction**

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158. Further, having withdrawn the reference from the Bankruptcy Court, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1334.

**Issues Presented**

1.     Did the Bankruptcy Court err in failing to dismiss the cause of action for equitable disallowance as no such remedy is permitted under the Bankruptcy Code.

2.     Did the Bankruptcy Court err in failing to dismiss the cause of action for violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1971 et seq. ("BHCA"), where the complaint alleges only that Adelphia's management enticed the Lenders to provide competitive lending services through promises of later investment banking opportunities, conduct not prohibited under the BHCA.

---

[1] The Bank of Nova Scotia, as a lender and administrative agent under the Parnassos credit facility, joins in this brief with respect to Claim 32 (Bank Holding Company Act), the sole remaining claim currently on appeal to this Court in connection with the Parnassos facility.

[2] In addition to the arguments presented in this Joint Appellants' Brief and as permitted by the Order Granting Leave to Appeal, the Lenders hereby adopt and incorporate by reference those arguments raised in the Joint Brief for Certain Investment Bank Appellants.

3.      Did the Bankruptcy Court err in failing to dismiss the cause of action for aiding and abetting breach of fiduciary duty for one or more of the following reasons:

a.      A claim for aiding and abetting a breach of fiduciary duty has not been recognized by the Pennsylvania Supreme Court.

b.      Plaintiffs' claims are barred under the *Wagoner* Rule.

c.      The Bankruptcy Court failed to follow the controlling Third Circuit authorities and failed to dismiss claims for aiding and abetting a breach of fiduciary duty under the doctrine of *in pari delicto* even though the Complaint squarely alleges conduct by Adelphia's management that invokes the *in pari delicto* doctrine and does not fit within any exception.

d.      The Complaint fails to allege the necessary elements of a claim for aiding and abetting a breach of fiduciary duty.

## Standard of Review

The Bankruptcy Court's denial of a motion to dismiss raises questions of law reviewed *de novo*. *See Toussie v. Powell*, 323 F.3d 178, 181 (2d Cir. 2003)

The Lenders challenge Plaintiffs' Complaint under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  In evaluating the sufficiency of the Complaint, the Court must "read the complaint generously, accepting the truth of, and drawing all reasonable inferences from, well-pleaded factual allegations."  *Mazzaro de Abreu v. Bank of Am. Corp.*, No. 06 Civ. 673, 2007 WL 2609535, at *3 (S.D.N.Y. Sept. 10, 2007) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  Dismissal under Rule 12(b)(6) is no longer limited solely to those instances where the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007).  Rather, as the United States Supreme Court recently stated in *Twombly*, Plaintiffs must plead "plausible grounds" to support the allegations and provide sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support them.  *Id.*

**Statement of the Case**

***Nature of the Case:***  This case arises from an adversary proceeding related to the bankruptcy of Adelphia Communications Corporation and hundreds of its subsidiaries (collectively "Adelphia" or the "Debtors").  Adelphia's creditors' committee, standing in the shoes of Adelphia, sued the Lenders and hundreds of other commercial and investment banks in a complaint asserting fifty-two causes of action (the "Complaint"), including various avoidance claims under the Bankruptcy Code, intentional torts, equitable claims, and statutory violations. A second complaint filed by the Adelphia's equity committee sought to add thirteen additional causes of action including various RICO, fraud and contract claims against the Defendants.[3]

***Course of Proceedings and Disposition Below:***  On June 11, 2007, the Bankruptcy Court issued its Decision on the Lenders' motions to dismiss, dismissing certain claims against the Lenders but declining to dismiss claims for constructive and intentional fraudulent transfers, equitable subordination, equitable disallowance, violation of the Bank Holding Company Act, and aiding and abetting a breach of fiduciary duty.[4]

The Lenders sought leave to appeal the portions of the Decision denying the motions to dismiss.  On September 5, 2007, this Court granted the Lenders leave to appeal the Decision to the extent it denied dismissal of Count 33 (Equitable Disallowance), Count 32 (Violations of the Bank Holding Company Act), and Count 37 (Aiding and Abetting Breach of Fiduciary Duty).

**Statement of Facts**

This appeal challenges the legal sufficiency of Plaintiffs' pleadings.  As a result, there are no "facts" relevant to this appeal.

---

[3] Pursuant to Adelphia's Plan of Reorganization, the claims asserted in the Complaint have been transferred to the Adelphia Recovery Trust (the "Plaintiffs").

[4] In a subsequent decision, the Bankruptcy Court further dismissed all  RICO and fraud claims against the Lenders.

**Argument**

**I.    The Bankruptcy Court Erred in Refusing to Dismiss a Nonexistant Cause of Action for Equitable Disallowance (Claim 33)**

The Bankruptcy Court erred by failing to dismiss Plaintiffs' equitable disallowance claim.  The claims allowance provisions of Section 502(b) and the equitable subordination provisions of Section 510(c) of the Bankruptcy Code preclude an equitable disallowance remedy. Because the statute is clear, its language controls and a bankruptcy court has no ability to use notions of equity to determine otherwise.  The Bankruptcy Court also misconstrued the Supreme Court's decision in *Pepper v. Litton*, a case upon which the Bankruptcy Court heavily relied to create an equitable disallowance remedy.  308 U.S. 295 (1939).  Nothing in *Pepper* gives a debtor the equitable right to disallow otherwise valid, enforceable obligations.

**A.    The Bankruptcy Code Does Not Permit Equitable Disallowance.**

Claims may not be equitably disallowed under the Bankruptcy Code.

<u>*Section 502 (b)*</u>

Claims are allowed or disallowed pursuant to Section 502(b), which provides:

> [T]he court . . . ***shall*** allow such claim in such amount, ***except to the extent that*** (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ."[5]

This language could not be plainer: "the court . . . ***shall*** allow such claim . . . ***except to the extent that*** . . . ***such claim is unenforceable***."[6]  Recently, the Supreme Court read these

---

[5]  11 U.S.C. § 502(b) (emphasis supplied).  Section 502(b) is the primary Bankruptcy Code provision governing claims allowance.  There are other provisions in Section 502 that may disallow claims in specific stated circumstances, none of which apply here.  *See, e.g.,* 11 U.S.C. § 502(d)-(k).

[6]  11 U.S.C. § 502(b) (emphasis supplied).  The Bankruptcy Court burdened its equitable disallowance analysis by searching for – and apparently not finding – language in the equitable subordination provisions of Section 510(c) that expressly prohibited equitable disallowance.  (*See* Dec. at 69 ("Thus the Court is not in a position to conclude that by expressly addressing equitable ***subordination*** in section 510(c), Congress intended to foreclose the possibility of invocation of equitable ***disallowance***, under *Pepper* and its progeny.") (emphasis in original)).  Apart from whether the Bankruptcy Court reached the right answer, it started the search in the wrong place.  Section

4

words to mean exactly what they say:

> Under the Bankruptcy Code, the bankruptcy court "shall allow" a creditor's claim "except to the extent that" the claim implicates any of the nine enumerated exceptions.  Because Travelers' attorney's fees claim has nothing to do with the exceptions set forth in Section 502(b)(2) – (9), ***it must be allowed*** unless it is unenforceable under Section 502(b)(1)....[7]

The only time a court may disallow a claim is if the claim is subject to disallowance for any of the reasons specified in Section 502(b).  In all other cases, the claim "must be allowed."[8] Because "equitable" grounds are not among the enumerated exceptions to allowability, a claim which is otherwise enforceable under non bankruptcy law cannot be "equitably disallowed."[9]

### *Section 510 (c)*

Section 510(c) provides for equitable subordination:

> [T]he court may –

> (1)       under principles of equitable subordination, ***subordinate*** for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ***or*** all or part of an allowed interest to all or part of another allowed interest....[10]

There are two things about this language relevant to, and at direct odds with, an equitable

---

502(b), not Section 510(c), controls disallowance.  Section 502(b)'s plain language prohibits disallowance on equitable grounds.

[7] *See Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199, 1204-05 (2007) (emphasis supplied).  *See also In re New Haven Projects L.L.C.*, 225 F.3d 283, 287 (2d Cir. 2000) ("Congress . . . in the Bankruptcy Code has chosen the word 'shall' to denote ***mandatory requirements***") (emphasis supplied).

[8] *Id.*  As the Supreme Court further explained: "This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that '[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.'"  *Travelers*, 127 S. Ct. at 1204-05.

[9] "Enforceability" under Section 502 (b) takes into account debtor defenses to liability, but only those which could be asserted absent bankruptcy.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 356 (3d Cir. 2001) ("As these authorities demonstrate, the explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy"); 5 COLLIER ¶ 541.03 [2] [b] ("In short, for the purposes of determining the allowability of a claim, the trustee is given the benefit of any defenses available to the debtor of a personal nature which the debtor could have interposed, absent bankruptcy, in a suit on the claim by the creditor.").

[10] 11 U.S.C. § 510(c) (emphasis supplied).  The word "interest" means an equity interest.  *See* COLLIER ¶ 122.03[2].

disallowance theory.  First, the statute speaks only of subordination, not disallowance.  Congress considered, and then rejected, language in Section 510(c) which would have provided for equitable disallowance.[11]  This language, which shows that Congress expressly rejected the equitable disallowance remedy, is an obvious reason to conclude that it plainly does not exist.[12]

Second, although Section 510(c) permits claims to be subordinated to other claims, it does not permit claims to be subordinated to equity interests.[13]  This limitation repudiates the viability of an equitable disallowance remedy because, in disallowing a claim, a bankruptcy court is effectively subordinating that claim to a debtor's equity interests.[14]  Claim subordination provides complete creditor protection; disallowance adds only the prospect of a windfall for equity.  *See In re Mobile Steel Co.*, 563 F.2d 692, 699, n. 10 (5th Cir. 1977).  Equitably disallowing a claim would effectively achieve the very result the statute precludes:  the equitable subordination of debt to equity.[15]

---

[11]  *See* S.B. 2266, 95th Cong. (1977) (Section 510(c)(3)("After notice and a hearing the court may – disallow, in part or in whole, any claim or interest in accordance with the equities of the case.")).  This language was removed from the bill that became Section 510(c) of the current Bankruptcy Code.

[12]  *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silento* to enact statutory language that it has earlier discarded in favor of other language"); *United States v. Ten Cartons, More or Less, of an Article Ener-B Vitamin B-12*, 72 F.3d 285, 287 (2d Cir. 1995) (per curiam) ("We are reluctant to give a statute a meaning that Congress has considered and rejected, and we decline to do so here.").

[13]  *See In re Emergency Monitoring Techs., Inc.*, 366 B.R. 476, 504 (Bankr. W.D. Pa. 2007) ("Tepsic appears to be correct when he argues that Section 510(c) only authorizes the subordination of **claims to other claims** or **interests to other interests** but its language does not extend to treatment of interests vis a vis claims"); *In re C.R. Amusements, LLC*, 259 B.R. 523, 529 (Bankr. D.R.I. 2001) ([Section 510(c)] "authorizes the subordination of **claims to other claims** or **interests to other interests**, but its language does not extend to treatment of interests vis a vis claims because equity interests are already subordinate to claims …. The court will not import some other interpretation to Section 510(c) when its language is clear and unambiguous on its face.") (emphasis in original) (citing *In re Town & Country Co.*, BAP No. 99-030, slip. op. at 16 (B.A.P. 1st Cir. 2000); 4 COLLIER ¶ 510.05 ("Under subsection (c)(1), claims may be subordinated to claims, and interests may be subordinated to interests, but claims may not be subordinated to interests.").

[14]  Notably, the Bankruptcy Court considered and then dismissed Plaintiffs' action to recharacterize the Lenders' claims as equity interests, and Plaintiffs do not challenge this dismissal.

[15]  Although the Court need not reach the issue here, the equity windfall to the Adelphia parent corporation (and its affiliates) in this case would be particularly indefensible.  Many (if not all) in line for this windfall are investors who

Thus, although the Bankruptcy Court retreated from its prior holdings on this issue,[16] it got it right the first time it opined on this issue: "[t]he equitable subordination doctrine, codified in part in § 510(c) of the Bankruptcy Code, is limited to reordering priorities; ***it does not permit the disallowance of claims***."[17]

### B.   The Bankruptcy Court Wrongly Relied On Legislative History And, In Any Case, Misconstrued *Pepper.*

The Bankruptcy Court did not conclude that there was anything ambiguous about the statute's plain words.  To the contrary, the Bankruptcy Court said that "if this Court were writing on a clean slate, arguments based on the maxim "*expresso unius*" would have some force, especially in the context of section 502 . . . ."  (Dec. at 68.)  Instead, the Bankruptcy Court read ambiguity into the face of the Bankruptcy Code's plain words because of the following piece of Section 510(c)'s legislative history:

> This section is intended to codify case law, such as *Pepper v. Litton*, 308 U.S. 295 (1939) and *Taylor v. Standard Gas and Electric Co.*, 306 U.S. 307 (1938), and is not intended to limit the court's power in any way. . . .  Nor does this subsection preclude a bankruptcy court from completely disallowing a claim in appropriate circumstances.[18]

The Bankruptcy Court was wrong to look beyond the statute and rely upon legislative history of another code section to create ambiguity.  Where, as here, the statute is clear, a dispute over the meaning of a Bankruptcy Code section must begin and end with the language of the

---

acquired claims against Adelphia parent corporation (or its affiliates) post-bankruptcy and have suffered no injury and would be entitled to no equitable relief.  *See In re Enron Corp.*, S.D.N.Y. No. 06 Civ. 7828 (SAS), slip. op. at 26 (S.D.N.Y., Aug. 27, 2007) (". . . [B]ecause *Mobile Steel* dictates that equitable subordination is not available to creditors who suffered no injury, creditors who acquired their claims post-petition and after the alleged misconduct that forms the basis for the equitable subordination may not be entitled to that remedy.") (citing cases).

[16]   *See* Decision at n.201 and accompanying text.

[17]   *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520, 563 (Bankr. S.D.N.Y. 2002) (Gerber, J.) (emphasis supplied).

[18]   H.R. Rep. No. 595, 95th Congr., 1st Sess. 359 (1977).

Bankruptcy Code itself:

> [T]he task of resolving the dispute over the meaning of [a Bankruptcy Code section] begins where all such inquiries must begin: with the language of the statute itself . . . this . . . is also where the inquiry should end, for . . . the sole function of the courts is to enforce it according to its terms.[19]

The Bankruptcy Court's analysis should have started and stopped with a simple reading of the mandatory allowance provisions of Section 502(b) and the express equitable limits in Section 510(c).[20]   Instead, the Bankruptcy Court went beyond the statute's plain language in search of a remedy which does not exist, and which the statute itself prohibits.[21]

Moreover, the Bankruptcy Court's analysis, especially its reliance on *Pepper,* to conclude that the Bankruptcy Code permits equitable disallowance, was wrong.   *Pepper* upheld the disallowance of an insider's sham claim, a claim asserted against the debtor's estate for the sole purpose of defrauding a valid creditor.   Although *Pepper* generally refers to "disallowance" and "subordination" interchangeably, as if they were the same remedy, it recognizes disallowance as the appropriate remedy for claims that "are fictitious or a sham."   308 U.S. at 310.   And it recognizes subordination, or, in the Court's words, "the question of order of payment," as the remedy for valid claims that nonetheless may be subject to equitable attack:

---

[19]   *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *In re Caldor Corp.*, 303 F.3d 161, 167 (2d Cir. 2002) ("The task of resolving a dispute over the meaning of a provision of the Bankruptcy Code begins where all such inquiries must begin: with the language of the statute itself.").

[20]   Apart from this, in reviewing Section 510(c)'s legislative history, the Bankruptcy Court also should have, but failed to, consider the legislative history cited above that shows that Congress expressly considered, and then rejected, an equitable disallowance remedy.  *See supra* at 6.

[21]   Indeed, Section 502(b)'s clear mandate to allow enforceable claims renders the Bankruptcy Court's "*expresso unius*" reference irrelevant.  Section 502(b) is exclusive not by the "expression of one" but by the limiting phrase "shall allow such claim . . . except to the extent that  . . . ."  *See Crosby v. U.S.*, 506 U.S. 255, 258-59 (1993) ("Crosby's position rests not on the express provisions of Rule 43, but solely on the maxim *expressio unius est exclusio alterius*.  We disagree.  It is not necessary to invoke that maxim in order to conclude that Rule 43 does not allow full trials *in absentia.*  The Rule declares explicitly: 'The defendant shall be present … at every stage of the trial … *except as otherwise provided* by this rule.'  The list of situations in which the trial may proceed without the defendant is marked as exclusive not by the 'expression of one' circumstance, but rather by the express use of a limiting phrase.  In that respect the language and structure of the Rule could not be more clear."  (internal citations omitted) (emphasis in original)).

Though disallowance of such claims will be ordered **where they are fictitious or a sham**, these cases do not turn on the existence or non-existence of debt. **Rather they involve simply the question of order of payment**.[22]

*Pepper* dealt with a patently invalid claim and nothing in *Pepper* supports the Bankruptcy Court's conclusion that a valid claim could be equitably disallowed.  Indeed, courts have expressly rejected this.  The Fifth Circuit in *Mobile Steel*,[23] a decision described as "magisterial"[24] and widely credited with defining the "principles of equitable subordination" upon which Section 510(c) is based,[25] said:

> Disallowance of claims on equitable grounds would add nothing to the protection against unfairness already afforded the bankrupt and its creditors.   If the claimant's inequitable conduct is directed against the creditors, they are fully protected by subordination.  If the misconduct directed against the bankrupt is so

---

[22]  *Id.* (emphasis supplied).  The Supreme Court described the act of disallowing the insider's sham claim as an "equitable" act inasmuch as in *Pepper's* day, under the former Bankruptcy Act, bankruptcy courts were "essentially courts of equity, and their proceedings inherently proceedings in equity."  *Id* at 304 (citations omitted).  However, the former Act's broad grant of equity jurisdiction, upon which *Pepper* relied, was repealed with the Bankruptcy Code's enactment.  *See* Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory Court in Bankruptcy, Not a Court of Equity*, 79 Am. Bankr. L.J. 1, 22 (2005) ("Congress repealed the 1898 Act and replaced it with the Bankruptcy Reform Act of 1978.  Therefore, the jurisdictional provisions upon which the Supreme Court has explicitly relied to declare that bankruptcy proceedings are equitable in nature **no longer exist**.") (emphasis original).  Thus, under Section 502(b) of the Bankruptcy Code, "fictitious or sham" claims are disallowed on legal, not equitable, grounds.  They are disallowed under Section 502 because they are not unenforceable under applicable law.  Indeed for this reason, one could argue that the Bankruptcy Code supports *Pepper's* result, but on different grounds.  And although bankruptcy courts under Section 105(a) of the Bankruptcy Code arguably continue to possess certain residual equitable powers, those powers cannot be used to create remedies that either conflict with the statute or extend its substantive reach.  *See In re Smart World Techs, LLC*, 423 F.3d 166, 184 (2d Cir. 2005) ("This Court has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code.  It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.").

[23]  563 F.2d 692 (5th Cir. 1977).

[24]  *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997) (Cudahy, J.) ("What general principles guide a court's use of this power [the power of equitable subordination]? We turn to the most influential discussion of equitable subordination, the magisterial *Mobile Steel*.").

[25]  *See U.S. v. Noland*, 517 U.S. 535, 539 (1996) ("The District Courts and Courts of Appeals have generally followed the *Mobile Steel* formulation."); *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 717-18 (6th Cir. 1992) ("Most courts have uniformly followed and applied the Mobile Steel test . . ..");  Dec. at 63 ("Courts in this district, and elsewhere, regularly apply the standards set forth in the Fifth Circuit's decision in *Mobile Steel* . . ..") (citing cases); 4 COLLIER ¶ 510.05[1] ([The *Mobile Steel*] formula has been implicitly endorsed by the United States Supreme Court as recently as 1996, and remains an accurate expression of the conditions under which subordination is considered equitable.").

extreme that disallowance might appear to be warranted, then surely the claim is either invalid or the bankrupt possesses a clear defense against it. Thus, where the bankrupt is the victim it has an adequate remedy at law. *It follows that disallowance of a wrongdoer's claim on nonstatutory grounds would be an inappropriate form of equitable relief*.[26]

Indeed, relying on *Pepper* to equitably disallow valid third party claims turns *Pepper's* equitable principle on its head.  The disallowed claim in *Pepper* was an insider's fictitious or sham claim.  The remedy of disallowance was extended to protect an innocent creditor from debtor's insider asserting an invalid claim.  Quoting case law, the Supreme Court explained that, "[to] allow claims under such circumstances in effect would permit bankrupts to collect on claims against their own bankrupt estate."  *Pepper*, 308 U.S. at 310 n. 19.  The equitable disallowance claim at issue here is asserted against creditors who hold valid, enforceable claims. But there is nothing equitable about allowing a debtor to evade valid obligations that are enforceable under applicable law, and there is nothing in the statute, the legislative history, or the case law that provides otherwise.[27]  In fact, the statute plainly says the opposite.  Thus the Bankruptcy Court's conclusion that *Pepper*, "or other applicable common law,"[28] might support an equitable disallowance remedy based on the Complaint's allegations, is simply wrong.

## II.   The Bankruptcy Court Erred in Refusing to Dismiss The BHCA Claim Where Plaintiffs' Own Allegations Establish That It Does Not Apply (Claim 32)

The Bankruptcy Court's determination that the BHCA claim should proceed against the commercial banks is erroneous because Plaintiffs' own allegations state that it was Adelphia – not the Lenders – who proposed any purported tying of products and because Plaintiffs have not demonstrated and cannot demonstrate that the alleged conduct caused Adelphia any damage.

---

[26] *Mobile Steel*, 563 F.2d at 699 n. 10 (emphasis supplied) (citations omitted).

[27] *Cf. Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 511 (D.S.C. 2000) ("the debtor or its equity holders are the *last category of persons or entities which the code is designed to benefit*") (emphasis supplied).

These two deficiencies are fatal as a matter of law and the claim, therefore, should be dismissed.

### A.      The Complaint Does Not Allege Tying By the Commercial Banks

The  anti-tying provisions of Section 1972(1) (Section 106(b) as enacted) of the BHCA

provide, in relevant part:

(1)      *A bank shall not in any manner extend* credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, *on the condition or requirement* –

(A)      that the customer shall obtain some additional credit, property or service from such bank other than a loan, discount deposit or trust service; or

(B)      that the customer shall obtain some additional credit, property or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company.

12 U.S.C. § 1972(1) (emphasis added); Bank Holding Company Act Amendments of 1970, Pub.

L. No. 91-607, § 106(b), 94 Stat. 1760 (1970).

The Complaint alleges that the Lenders ran afoul of this statute because they supposedly

acquiesced in a "tying" of loan and investment products *demanded by Adelphia*.  The Complaint

alleges that:

- "[T]he Agent Banks acquiesced to lending terms (duration, interest rates, etc.) that were … effectively dictated by the Rigas Family to the Agent Banks."  (Complaint, ¶ 509)

- "The Agent Banks acceded to these terms …." (Complaint ¶ 510)

- "[M]embers of the Rigas Family expressly conditioned the granting of investment banking business on the participation in the Co-Borrowing Facilities …" (Complaint ¶ 511)

- "The Rigas Family clearly recognized that offering the enticement of investment banking fees would cause the Agent Banks to participate in the Co-Borrowing Facilities."  (Complaint ¶ 514)

---

[28]  Decision at 69.

The plain language of the statute, as well as cases applying this statute, demonstrate that a supposed "tie" of products *dictated by a client*, like that pleaded here, does *not* violate the BHCA.  *See* 12 U.S.C. 1972(1) ("A bank shall not extend credit . . . on the condition or requirement ....").  *See also Johnstone v. First Bank Nat. Ass'n*, 1998 WL 565193, *6 (N.D. Ill. Aug. 31, 1998) (rejecting BHCA claim where "it [wa]s undisputed that it was not defendants but [plaintiffs' affiliate] who initially proposed the terms and conditions ...."); *Stefiuk v. First Union Nat'l Bank of Fl.*, 61 F. Supp. 2d 1294, 1299 (S.D. Fla. 1999), *aff'd*, 207 F.3d 664 (11th Cir. 2000) (rejected tying claim because plaintiff "was not 'forced' to get the 'tied' product").

These holdings are further underscored by, and are wholly consistent with, the Board of Governors of the Federal Reserve System's proposed interpretation and supervisory guidance on the anti-tying provisions of the BHCA, which states, in relevant part:[29]

> [I]f a condition or requirement was voluntarily sought or imposed by the customer, then the arrangement results from the free choice of the customer and no violation of Section 106 has occurred.  Thus, for example, a violation of section 106 does not occur if a large corporate customer of a bank demands that the bank provide the customer one product (such as a loan) in order for the bank or its affiliates to obtain other business from the customer (such as bond underwriting business), and the bank agrees to the customer's condition.

Anti-Tying Restrictions of Section 106 of the Bank Holding Company Act Amendments of 1970 (Docket No. OP-1158), at 15 (Aug. 25, 2003).[30]

---

[29] While it is not binding, this proposed interpretation offers relevant guidance to a court.  *See Anderson Bros. Ford v. Valencia* 452 U.S. 205, 212-13 (1981); *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 109 n.5 (2d Cir. 1983).

[30] This statutory regime is also wholly consistent with the Sherman and Clayton antitrust statutes on which the anti-tying provisions of the BHCA were modeled.  *See e.g., Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) ("Congress enacted [the BHCA antitying] provision to apply the general principles of the Sherman Antitrust Act prohibiting anticompetitive tying arrangements specifically to the field of commercial banking.").  In the antitrust arena, a "tie" only violates the antitrust laws where the seller forces a customer to purchase a product and where the seller has sufficient economic power in the market for the desired product to enable it to restrain trade in the market for the other product.  *See Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir. 1980).

Although the Bankruptcy Court appeared to acknowledge the requirement of a bank (not customer) initiated tie, the court nevertheless inexplicably ignored the clear, unambiguous nature of the Complaint's own allegations concerning this element of the claim.  The court instead simply speculated that "[t]here will undoubtedly be issues of fact as to whether the Agent Banks . . . were conditioning their delivery of commercial banking services on investment banking services opportunities, on the one hand, or the Rigases were using the link as an enticement to the Agent Banks, on the other."  (Dec. at 75-76.)   Notably, however, the court's decision does not reference one such issue of fact raised in the Complaint.  Factual development is plainly not necessary or appropriate where, as here, the Plaintiffs have alleged in crystal-clear language in their own Complaint that it was Adelphia who "dictated" the terms and conditions of the lending because it had all of the relevant market power to do so.

Because the Complaint itself demonstrates on its face that the circumstances at issue here do not constitute an illegal tie under the BHCA, the claim fails as a matter of law and should be dismissed.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007) ("Factual allegations [of a complaint] must be enough to raise a right to relief above the speculative level").

**B.      Plaintiffs Have Not Pleaded Any Damage From Any Alleged Tie.**

Because the Complaint alleges that Adelphia used its own considerable market power to force the banks to acquiesce in giving it favorable terms and pricing Adelphia has not alleged and cannot allege any damage resulting from the alleged BHCA violation.  Although the Bankruptcy Court acknowledged that a BHCA claim is not a defense to the duty to repay a loan and that only damages proximately caused by the alleged tie can be recovered, the Court failed to

address the fact that there are no such damages alleged anywhere in the Complaint.  (Dec. at 75-76.)

Accordingly, far from alleging any damages, the Complaint on its face demonstrates the lack of any damage theory sufficient to support a BHCA claim, and the claim therefore should be dismissed.  *See, e.g., Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*, 865 F. Supp. 194, 199-200 (S.D.N.Y. 1994) (dismissing BHCA counterclaim as a matter of law because "[t]he statute does not absolve successful § 1975 plaintiffs from the obligation to fulfill contracts that resulted from a tying arrangement" and because no other damages were alleged).

## III. The Bankruptcy Court Erred in Failing to Dismiss the Aiding and Abetting Breach of Fiduciary Duty Claim (Count 37)

Plaintiffs' aiding and abetting breach of fiduciary duty theory fails for numerous reasons. First, the claim is not recognized under the controlling Pennsylvania law.  By finding that the Pennsylvania Supreme Court would recognize such a theory, the Bankruptcy Court ignored the majority of federal district courts exercising judicial restraint in refusing to expand Pennsylvania law beyond its existing boundaries.  Second, the tort claim would be barred in any event by the *Wagoner* Rule and the *in pari delicto* doctrine, a doctrine rejected by the Bankruptcy Court despite controlling Third Circuit authority dictating its application.  Finally, even if the tort of aiding and abetting were recognized in Pennsylvania, the Complaint fails to allege the elements of such a theory.

### A. Aiding and Abetting a Breach of Fiduciary Duty Is Not Recognized in Pennsylvania.

The Bankruptcy Court failed to exercise judicial restraint, in direct conflict with similarly situated federal courts,[31] and erred in holding that aiding and abetting a breach of fiduciary duty

---

[31] *See, e.g., Stanziale v. Pepper, Hamilton, LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 551 (D. Del. 2005) ("there is an insufficient basis to conclude that the Pennsylvania Supreme Court would decide that aiding and abetting

is actionable in Pennsylvania.  When deciding issues of state law, federal courts must step into the shoes of a state court by applying common law as constructed by the state and by interpreting novel questions as it believes the state's highest court would.  *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 507 n.5 (3d Cir. 2005).  However, in this context, "federal courts may ***not*** engage in judicial activism.  Federalism concerns ***require*** that [federal courts] permit state courts to decide whether and to what extent they will expand state common law."  *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994) (emphasis added).  Therefore, on appeal, this Court should refrain from "expand[ing] state law in ways not foreshadowed by state precedent."  *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002).

In analyzing whether the Pennsylvania Supreme Court would recognize this claim, a court must examine the Pennsylvania Supreme Court's decisions in related areas; the opinions of federal courts interpreting Pennsylvania law; and the "decisional" law of Pennsylvania's intermediate appellate courts.  *See Dilworth v. Metropolitan Life Ins. Co.*, 418 F.3d 345, 349 (3d Cir. 2005).  When "faced with two equally plausible interpretations of state law, [federal courts] generally choose the narrower interpretation which restricts liability, rather than a more expansive interpretation which creates substantially more liability."  *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000).  The Bankruptcy Court's failure to exercise such restraint should be remedied.

---

breach of fiduciary duty is a valid cause of action under Pennsylvania law."); *Flood v. Makowski*, No. Civ.A. 3:CV-03-1803, 2004 WL 1908221, at *36 (M.D. Pa. Aug. 24, 2004) ("Pennsylvania has not recognized a cause of action for aiding and abetting breach of fiduciary duty, and neither will I."); *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F.Supp.2d 400, 413 (W.D. Pa. 2002) ("As a federal court sitting in diversity, it is not for me to say whether the common law of Pennsylvania should include an action under § 876(b)."). *But see, e.g.*, *Reis v. Barley, Snyder, Senft & Cohen, LLC*, 484 F. Supp. 2d 337, 352 (E.D. Pa. Apr. 2, 2007) (finding decisions of other district courts unpersuasive because "*those judges do not want to expand Pennsylvania law.*") (emphasis added); *Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC*, Civil Action No. 06-2177, 2007 WL 1118322, at n.13 (E.D. Pa. Apr. 13, 2007) (ignoring the W.D. of Pennsylvania and the District of Delaware's refusal to recognize aiding and abetting breach of fiduciary duty.).

### 1. The Pennsylvania Supreme Court Has Not Recognized Civil Aiding and Abetting.

The Bankruptcy Court acknowledges that the Pennsylvania Supreme Court has neither recognized civil aiding and abetting nor section 876(b) of the Restatement (Second) of Torts. (*See* Dec. at 18.)  In addition, Pennsylvania Supreme Court precedent from related areas provides no support for the Bankruptcy Court's active expansion of state law.

Pennsylvania has adopted section 876(a) of the Restatement (Second) of Torts, which creates liability for civil conspiracy, i.e. "concert of action," but not section 876(b), which imposes civil liability for aiding and abetting a breach of duty.  *See Skipworth v. Lead Industries Ass'n, Inc.*, 690 A.2d 169 (Pa. 1997).  The Bankruptcy Court indirectly relies on *Skipworth* in mistakenly predicting that the Pennsylvania Supreme Court would also adopt civil aiding and abetting,[32] but conspiracy and aiding and abetting are distinct theories outlined in separate subsections of the Restatement.[33]  As the U.S. Court of Appeals for the District of Columbia noted in *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983), "[a]s pristine legal concepts, conspiracy and aiding and abetting can be distinguished clearly enough."  *Halberstam* clarifies these differences by explaining that "[t]he prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct."  *Id.*  These distinctions are important, and courts must avoid blurring the

---

[32] *Dec.* at 20-21, 23 (relying on *Koken v. Steinberg*, 825 A.2d 723 (Pa. Commw. Ct. 2003) and its adoption of *Skipworth*).

[33] *See* Nathan Isaac Combs, Note, *Civil Aiding and Abetting Liability*, 58 VAND. L. REV. 241, 256-59 (2005) (detailing the distinctions between civil liability for conspiracy and aiding and abetting and stressing the importance of segregating the two theories).

lines between conspiracy and aiding and abetting,[34] as the Bankruptcy Court has done.  Neither Pennsylvania's decision in *Skipworth*, adopting civil conspiracy under 876(a), nor any other Pennsylvania Supreme Court decision serves as a predictor of Pennsylvania's willingness to formally adopt civil aiding and abetting under section 876(b).

> ### 2.    Federal Courts Applying Pennsylvania Law Have Refused to Recognize a Cause of Action for Aiding and Abetting.

Most federal districts addressing aiding and abetting under Pennsylvania law (including the Western and Middle Districts of Pennsylvania and the District of Delaware) exercise restraint in concluding that aiding and abetting breach of fiduciary duty is ***not*** actionable in Pennsylvania. In *Daniel Boone Area Sch. Dist. v. Lehman*, the Western District of Pennsylvania dismissed the plaintiff's aiding and abetting claim under section 876(b) of the Restatement (Second) of Torts "because it has not been recognized as part of Pennsylvania law."  187 F. Supp. 2d at 413.  The Western District appropriately differentiated between sections 876(a) of the Restatement (conspiracy) and 876(b) (aiding and abetting), noting that "the adoption of § 876(b) would represent a significant expansion of Pennsylvania tort liability."  *Id.* (quoting *Daniel Boone Area Sch. Dist. v. Kutak Rock*, No. 1999-4899, slip op. at 7 (Pa. Ct. Comm. Pl. Aug. 16, 2000) ("As we read Section 876(b), it represents a considerable expansion of Section 876(a).").

Similarly, in *Flood v. Makowski*, the plaintiffs "urge[d] the Court to expand the law" and recognize aiding and abetting breach of fiduciary duty.  2004 WL 1908221 at *36.  Despite noting that the Eastern District of Pennsylvania and certain Pennsylvania state courts recognized claims for civil aiding and abetting, the Middle District of Pennsylvania is "hesitant to create an entirely new cause of action."  The court states that it is

---

[34] *See Halberstam*, 705 F.2d at n.9 (citing Ruder, *Multiple Defendants in Securities Law Fraud Cases:  Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution*, 120 U. PA. L. REV. 597, 639-641 (1972) (urging an effort to maintain the dichotomy between aiding-abetting and conspiracy)).

aware that the United States District Court for the Eastern District of
Pennsylvania has been more willing to expand Pennsylvania law to include aiding
and abetting breach of fiduciary duty.  However, I am more persuaded **by the
caution urged by the Court of Appeals for the Third Circuit** than I am **by the
non-binding decisions of the United States District Court for the Eastern
District of Pennsylvania**.  Pennsylvania has not recognized a cause of action for
aiding and abetting breach of fiduciary duty, and neither will I.

*Id.* (emphasis added) (internal citations omitted).

The Eastern District of Pennsylvania is the **only** federal district court to conclude that
Pennsylvania would recognize a claim for aiding and abetting a breach of fiduciary.[35]  However,
the Eastern District's opinions recognizing this claim rely on the flawed reasoning of lower
Pennsylvania courts, which expand liability based exclusively on *Skipworth's* adoption of section
876(a).[36]  Despite this, the Bankruptcy Court rejected the guidance of other federal districts and
relied exclusively on the Eastern District to expand Pennsylvania law to recognize a claim for
civil aiding and abetting in this case.  (Dec. at 23.)

Unlike the Bankruptcy Court and the Eastern District of Pennsylvania, when presented
with this issue, the District Court for the District of Delaware most recently refused to recognize
aiding and abetting breach of fiduciary duty in Pennsylvania.  *Stanziale v. Pepper, Hamilton,
LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 551 (D. Del. 2005).  In doing so, the District of
Delaware succinctly summarized relevant precedent as follows:

Neither the Pennsylvania Supreme Court nor the Court of Appeals for the Third
Circuit has considered whether aiding and abetting a breach of fiduciary duty is a
valid cause of action under Pennsylvania law. …

One of Pennsylvania's two intermediate courts, the Commonwealth Court, has
concluded that aiding and abetting a breach of fiduciary duty is a valid cause of

---

[35] Although the Eastern District of Pennsylvania has recognized claims for aiding and abetting a breach of fiduciary
duty, even that district refuses to recognize claims for aiding and abetting fraud.  *See WM High Yield Fund v.
O'Hanlon*, 2005 WL 1017811, at *15 (E.D. Pa. Apr. 29, 2005); *Klein v. Boyd*, 1996 WL 675554, at *33 (E.D. Pa.
Nov. 19, 1996); *S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*, 1996 WL 325894, at *9 (E.D. Pa.
June 13, 1996).

[36] *See Koken*, 825 A.2d at 723; *Lichtman v. Taufer*, 2004 WL 1632574, at *8 (Pa. Com. Pl. July 13, 2004).

18

> action under Pennsylvania common law, …. Pennsylvania's other intermediate court, the Superior Court, has been more equivocal …. More recently, the Superior Court has made it clear that § 876 has not yet been adopted as law in Pennsylvania. The United States District Court for the Eastern District of Pennsylvania has predicted that the Pennsylvania Supreme Court would recognize a claim for aiding and abetting breach of fiduciary duty. However, Pennsylvania's other two Federal District Courts have refused to expand Pennsylvania law to include that cause of action.

*Id.* at 550-51 (internal citations omitted).

This Court should follow the majority of districts in exercising "the caution urged by the Court of Appeals for the Third Circuit" rather than being persuaded "by the non-binding decisions of the Eastern District of Pennsylvania," and should decline to extend aiding and abetting liability to a jurisdiction that has never recognized it. *Flood*, 2004 WL 1908221, at *36.

### 3. Pennsylvania Intermediate Court Decisions Conflict with the Authority Relied Upon By the Bankruptcy Court.

In considering the rulings of Pennsylvania intermediate courts, the Bankruptcy Court mistakenly relied on one opinion from the intermediate Commonwealth Court without considering conflicting Superior Court opinions that have refused to recognize liability under section 876(b). Indeed, in predicting that Pennsylvania would adopt section 876(b), the Bankruptcy Court failed to consider or even acknowledge the Superior Court's decisions in *Clayton v. McCullough*, 670 A.2d 710 (Pa. Sup. Ct. 1996) and *Welc v. Porter*, 675 A.2d 334, 340-41 (Pa. Sup. Ct. 1996). In *Clayton*, the plaintiff sought to impose civil liability pursuant to section 876(b) on the passenger of a vehicle operated by an intoxicated driver. However, the Superior Court affirmed the trial court's dismissal of the plaintiff's claim and refused to adopt section 876(b), noting that it was not bound by 876(b) because the Pennsylvania Supreme Court has not adopted that section and would not hold the passenger responsible for aiding and abetting the driver's breach of duty *Clayton*, 670 A.2d at 713. In *Welc*, the Superior Court cited *Clayton*

favorably and, again, refused to assess civil liability under section 876(b) against the passenger of a vehicle operated by an intoxicated driver.  675 A.2d at 338.  Thus, the Superior Court is consistent in its refusal to recognize section 876(b) and civil claims for aiding and abetting.

In contrast, the Bankruptcy Court relies primarily on the Commonwealth Court of Pennsylvania's decision in *Koken* to predict Pennsylvania's recognition of aiding and abetting breach of fiduciary duty.  *Koken*'s flawed analysis conflicts with *Clayton* and *Welc* without addressing either case.  In recognizing aiding and abetting, *Koken* quotes section 876 in its entirety before simply stating that "[o]ur Supreme Court addressed Section 876 in *Skipworth* …, and this Court is convinced by this language in *Skipworth* that Section 876 is a viable cause of action in Pennsylvania."  *Id.* at 731.  *Koken*'s remaining analysis consists of a long quote from *Skipworth*, which limits its discussion only to section 876(a) and fails to differentiate between civil conspiracy and aiding and abetting.  By failing to differentiate between the two, *Koken* significantly expands Pennsylvania law without any real analysis, with no supporting Supreme Court authority, and without addressing *Clayton* and *Welc*.  It is on this flawed analysis in *Koken* that some other Pennsylvania lower courts and the Eastern District of Pennsylvania mistakenly conclude that aiding and abetting is actionable in Pennsylvania.[37]

As a result, the Bankruptcy Court erred in finding that Pennsylvania would recognize a claim for aiding and abetting.  This Court should correct the Bankruptcy Court's error by declining to expand Pennsylvania law to allow civil liability for aiding and abetting.

---

[37] Although *Clayton* and *Welc* predate *Skipworth* and *Koken*, no other Pennsylvania Superior Court case has discussed section 876(b) to date.  As discussed above, *Skipworth* addresses 876(a) and thus necessarily does not address *Clayton* or *Welc*, and *Koken* simply ignores the two opinions altogether.  Furthermore, *Flood* and *In re Student Fin. Corp.* were decided subsequent to *Koken* and consider it along with *Clayton* and *Welc* in refusing to recognize claims for aiding and abetting breach of fiduciary duty.

### B. The Bankruptcy Court Erred in Failing to Apply the *Wagoner* Rule to the Aiding and Abetting a Breach of Fiduciary Duty Claim.

The Bankruptcy Court erred in concluding that the *Wagoner* Rule does not apply to bar the Plaintiffs' claims against the Agent Banks. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2nd Cir. 1991). Based on non-controlling authority and its "doubts" as to whether the Second Circuit is likely to continue applying *Wagoner*, the Bankruptcy Court summarily concluded that a bankrupt corporation's alleged wrongdoing is irrelevant in determining whether someone standing in the shoes of that corporation has standing to sue third parties for damages arising out of the wrongdoing of the corporation through its management. *See id.* at 24-26.[38] This conclusion is flatly contradicted by *Wagoner* and binding Second Circuit authority.

The *Wagoner* Rule is a rule of federal standing[39] which mandates that courts consider, as a threshold matter, whether a claim belongs to a debtor or its creditors.[40] Under controlling Pennsylvania law, when a corporation's acts injure its creditors, the action to recover for such

---

[38] The Bankruptcy Court misconstrued the *Wagoner* Rule as having two prongs, one addressing ownership of, or federal standing to prosecute, claims and another addressing equitable defenses under state law. *See* Dec. at 23-24. The Bankruptcy Court then concluded that the Debtors' "ownership" of the common law claims was not an issue in this case and that *Wagoner*, which did not apply Pennsylvania law, was merely persuasive authority as to the lenders' "equitable defenses." *Id.* at 24-26. This unprecedented "two pronged interpretation" of *Wagoner* is unsupported by any authority. Significantly, the *Wagoner* Rule applies **only** to standing and does not implicate affirmative defenses. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP ("Color Tile")*, 322 F.3d 147, 157 n.5 (2d Cir. 2003) ("*Wagoner* had nothing to do with affirmative defenses."); *Wagoner*, 944 F.2d at 119.

[39] Although *in pari delicto* (*i.e.*, in case of equal or mutual fault, the position of the defending party is the better one) and the *Wagoner* Rule involve similar considerations, *in pari delicto* is an affirmative defense under state law, whereas *Wagoner* is a rule of federal standing. *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 424 (Bankr. S.D.N.Y. 2005) (holding such and noting, "if the *Wagoner* Rule deprives the trustee of standing, a threshold issue, it is unnecessary to consider whether it also supports the equitable defense of *in pari delicto*.").

[40] Given the Plaintiffs' status, in order to satisfy the "case or controversy" doctrine of Article III of the U. S. Constitution and the Bankruptcy Code, it may only assert claims that belong to the Debtors. *See Wagoner*, 944 F.2d at 118 (a trustee may only bring claims belonging to the bankrupt estate); *In re Mediators, Inc.*, 105 F.3d 822, 826 (2d Cir. 1997) (a committee asserting claims on behalf of a debtor is analogous to a trustee, and, thus, subject to the same restrictions).

injuries accrues to the creditors.  *See, e.g.*, *Davis v. U.S. Gypsum Co.*, 451 F.2d 659, 662 (3d Cir. 1971) (under Pennsylvania law "where a corporation tortiously conspires with others to damage an individual and does so a cause of action arises which belongs to the individual"); *see also In re Mediators, Inc.*, 105 F.3d 822, 825 (2d Cir. 1997) ("State law determines whether a right to sue belongs to the debtor or to the individuals creditors.").    Consistent with controlling Pennsylvania authority, the *Wagoner* Rule dictates that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors."  *Wagoner*, 944 F.2d at 118; *In re Bennett Funding Group, Inc.*, 336 F.3d 94, 100 (2d Cir. 2003).

Accordingly, because the Plaintiffs allege that "*the Debtors* . . . used the bank debt they incurred to perpetrate a *massive fraud on creditors* other than Defendants"[41]    (Compl. at ¶ 417)(emphasis added), Plaintiffs lack standing to bring the common law claim.  Therefore, the Bankruptcy Court erred when it failed to apply the *Wagoner* Rule to dismiss the Plaintiffs' aiding and abetting breach of fiduciary duty claim.

### C.    The Bankruptcy Court Erred When It Declined to Follow Third Circuit Precedent and Failed to Dismiss the Claim for Aiding and Abetting a Breach of Fiduciary Duty Under the *In Pari Delicto* Doctrine.

The Bankruptcy Court erroneously relied on *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, which considered the legally distinct equitable defense of unclean hands and

---

[41]  In addition to the allegations of the Debtors direct misconduct, the misconduct of Adelphia's management would also be imputed to Adelphia under Pennsylvania law.  Indeed, pursuant to recent pronouncements concerning Pennsylvania's law of imputation, a principal is responsible for the acts of its agents committed in the course of their employment, even if the principal forbade the acts.  *Aiello v. Ed Saxe Real Estate, Inc.*, 499 A.2d 282, 287 (Pa. 1985) (affirming principal's liability based on misrepresentations of its agent made in course of his employment); *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 460 (Pa. 2001) (affirming imputation of agent's receipt of insurance premiums to principal); *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 409 (Pa. Super. Ct. 1985) ("a corporation is bound by its agent's acts, if those acts were performed within the agent's implied or apparent scope of authority, unless the agent acted for his own benefit without the corporation's ratification of his action.").  As noted below, because the Rigases acted, at least in part, for the Debtors' benefit, their acts were within the scope of their employment.  *See, infra*, at II(C)(3).

concluded that the *in pari delicto* doctrine should not apply to the detriment of "innocent" creditors of a bankrupt debtor.[42]  244 A.2d 10 (Pa. 1968)  The Bankruptcy Court's reasoning directly conflicts with dispositive authority that, under section 541 of the Bankruptcy Code, a trustee takes common law claims and defenses (including *in pari delicto*) of a debtor as they existed ***prior to*** bankruptcy and without reference to any equitable considerations that might impact the creditors.  As a result, the Bankruptcy Court erred in failing to dismiss the aiding and abetting claim under the doctrine of *in pari delicto*.

### 1.     Section 541 of the Bankruptcy Code bars consideration of creditors' "innocent" status.

The Bankruptcy Court erred when it disregarded *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 348 (3d Cir. 2001), and all other federal circuit decisions that have interpreted Section 541(a)(1) in the context of the *in pari delicto* doctrine.  Specifically, Section 541(a)(1) states: "[t]he commencement of a case under . . . this title creates an estate. Such estate is comprised of . . . (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  Every United States Court of Appeals that has considered this issue,[43] including the Third Circuit, has concluded that the *in pari delicto* defense applies with equal force to bar a debtor's and a trustee's claim, without regard to the

---

[42] As noted above, however, most of the unpaid creditors in this case would not fall within this definition as they purchased their interests after learning of the fraud allegations in this case.

[43] The Decision's citation to *In re Educators Group Health Trust ("Educators Group")*, 25 F.3d 1281 (5th Cir. 1994), is inapposite.  *Educators Group* merely sets forth the Fifth Circuit's disagreement with *Wagoner*, which the Bankruptcy Court correctly quotes in the first block quote on page 34 of its Decision.  *See id.* at 1286.  *Educators Group*, however, does not even address Section 541.  Indeed, the second block quote on page 34 comes not from *Educators Group*, but from commentary in the "Alam" article cited in footnote. 101.  *See* Alam, *"Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How In Pari Delicto Has Been Perverted to Prevent Recovery for Innocent Creditors,"* 77 Am. Bankr. L.J. 305, 322 (2003) ("*Alam*").  As demonstrated in *Lafferty*, *Educators Group's* disagreement with *Wagoner* does not necessarily signal that court's willingness to disregard the plain text, clear congressional record, and unanimous circuit court support in applying Section 541(a)(1)'s limitations to all defenses.  *See Alam*, 77 Am. Bankr. L.J. at 324.

trustee's alleged "innocent" status.[44]   Moreover, the legislative intent of Section 541(a)(1),

clearly mandates this outcome.   *See Lafferty*, 267 F.3d at 356.   Accordingly, the Bankruptcy

Court's consideration of the Committee's alleged "innocent" status, arising in the course of a

post-petition event, was in error.[45]

### 2.        The Bankruptcy Court misinterpreted Pennsylvania law.

Controlling Second Circuit authority compelled the Bankruptcy Court to "conclusively

defer [] to a federal court of appeals' interpretation of the law of a state that is within its circuit."

*Color Tile*, 322 F.3d at 157 n.4; *see also Booking v. Gen. Star Mgmt. Co.*, 254 F3d 414, 421 (2d

Cir. 2001).   The Bankruptcy Court, however, ignored the clear holding of *Lafferty* and the

jurisprudence of other federal courts when it concluded (based upon inapplicable authority) that

Pennsylvania law would consider the equities to creditors to determine whether to apply the *in*

*pari delicto* doctrine.   The Bankruptcy Court relied upon this erroneous conclusion in

determining that it could not apply *in pari delicto* at this point in the case to bar Plaintiffs' tort

---

[44] *See Lafferty*, 267 F.3d at 356-57 ("we must evaluate the *in pari delicto* defense without regard to whether the Committee is an innocent successor"); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006) ("our sister circuits that have considered the issue have unanimously concluded that *in pari delicto* applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy"); *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005) ("equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor."); *Sender v. Buchanan (In re Hedged-Investments Assocs.),* 84 F.3d 1281, 1285 (10th Cir.1996) ("[T]o the extent [that the trustee] must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from the wrongdoing of [the debtors and their sole owner]."); *Terlecky v. Hurd (In re Dublin Sec.),* 133 F.3d 377, 380 (6th Cir.1997) (applying the *in pari delicto* doctrine to ban claims by trustee); *see also Miller v. N.Y. Produce Exch.*, 550 F.2d 762, 768 (2d Cir. 1977) ("plaintiff stands in the bankrupt's shoes and is subject to all claims and defenses which might have been asserted against the bankrupt.") (internal quotation marks and citations omitted throughout).

[45] The cases relied upon by the Bankruptcy Court to conclude that the Plaintiffs' status as an innocent successor may be considered in an *in pari delicto* analysis – specifically: (a) *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994); (b) *In re Jack Greenberg, Inc.*, 212 B.R. 76 (Bankr. E.D. Pa. 1997); (c) *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995); and (d) *Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291(SHS), 2007 WL 1491403 (S.D.N.Y. May 22, 2007) -- have been expressly rejected by circuit courts and/or do not purport to interpret or apply Section 541(a)(1).   *See, e.g., Lafferty*, 267 F.3d at 358 (rejecting *Scholes*, *O'Melveny*, and *Jack Greenberg*); *Buckley*, 2007 WL 1491403, at *8 (not interpreting Section 541).   Moreover, the Rigases' pre-petition resignations from the Debtors do not absolve the Debtors of responsibility for the Rigases' wrongful acts.   *See, e.g., Baena v. KPMG LLP*,

claims.  The Bankruptcy Court dealt with the Third Circuit's holding by simply noting that it disagreed with *Lafferty*.  Under clear Second Circuit authority, however, the Bankruptcy Corut was not free to do so.  *Color Tile*, 322 F.3d at 157 n.4.

If the Bankruptcy Court had applied *Lafferty* properly, it would have dismissed Plaintiffs' aiding and abetting breach of fiduciary duty claim as *Lafferty* mandates.  In *Lafferty*, the Third Circuit affirmed the district court's dismissal of an aiding and abetting fiduciary duty claim brought by a creditors' committee on behalf of the debtor against certain third parties that allegedly assisted the debtor and its principals in operating a ponzi scheme.  267 F.3d 358.  In concluding that the committee was barred from bringing its claims, the court, as discussed above, noted that section 541 of the Bankruptcy Code directs evaluation of claims and defenses as they existed at the commencement of the bankruptcy case.  *Id.* at 357.  As a result, the Third Circuit rejected the committee's argument that the court should consider the removal of the debtor's principals and the committee's status as an "innocent successor" when applying the *in pari delicto* defense.  *Id.*  Furthermore, the Third Circuit concluded that the bad acts of the debtor's principals must be imputed to the debtor, thus barring the committee's claim because (i) the principals' misconduct was committed in the course of their employment; and (ii) the "adverse interest" exception did not apply given that the principals were the "sole actors" and dominated the corporation.  *Id.* at 359-60.  The Bankruptcy Court was bound to follow this controlling authority but erroneously refused to do so.

Instead, the Bankruptcy Court looked to *Universal Builders*, a case that is inapposite because the court there considered the narrow issue of whether the unclean hands doctrine would bar a bankrupt corporation's claim when its officer, *during the course of the litigation*,

---

453 F.3d 1, 9-10 (1st Cir. 2006) (rejecting different treatment under *in pari delicto* when corporation replaces tainted management).  Accordingly, neither the Debtors nor their successors in bankruptcy can be viewed as "innocents."

manufactured evidence to support its claim. 244 A.2d at 13. There, the alleged wrongful act of manufacturing evidence was completely ancillary to the corporation's claim in seeking payment for construction of a motel. *Id.*

Further, the unclean hands doctrine addressed in *Universal Builders* is legally distinct from *in pari delicto*. Unclean hands stands for "the principle that a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith during the litigation proceedings at issue;" whereas the *in pari delicto* doctrine focuses on pre-litigation conduct, "the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary (8th ed. 2004); *see also* 1 *Pennysvlania Law Encyclopedia Equity §34.* The Bankruptcy Court erred in treating these concepts as interchangeable.[46] (Dec. at 27, n.75.)

Furthermore, the Bankruptcy Court ignored more recent decisions of the Pennsylvania Supreme Court leaving little doubt that the acts of management are imputed to the corporation. For example, in *Aiello*, 499 A.2d at 285 , the Pennsylvania Supreme Court affirmed the rule that "a principal is liable to third parties for the. . . torts, and other malfeasances . . . of his agent committed within the scope of his employment." *Id.* The court explained that "[t]his result can be reached [] on the familiar ground that when an agent exceeds his authority, his principal cannot benefit of his act and at the same time repudiate his authority. He must take the benefit to be derived from the transaction subject to his agent's fraud." *Id.* at 285-86. More recently, in *Castegnaro,* the Pennsylvania Supreme Court applied this axiomatic imputation analysis to

---

[46] Moreover, in *Universal Builders*, unlike here, (a) the bankrupt corporation was not seeking recovery for alleged damages caused by its own officer; and (b) the dishonest officer did not perpetrate a massive fraud; here, Debtors defrauded the Lenders by misrepresenting their true financial condition to, for example, reduce their interest payments to the Lenders and are now seeking a recovery from those Lenders based upon the wrongdoing of the Debtors' own officers and employees. *See United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007). Accordingly, *Universal Builders* is entirely distinguishable.

determine that an "innocent" principal could be charged with the receipt of insurance premiums by his agent specifically holding, "[a]lthough the issue at hand concerns contract interpretation and not vicarious liability, the reasoning in *Aiello* is clearly applicable to the circumstances of this case … it is reasonable to impute the [agent's] receipt of [] money to [the principal], even though [the principal] was unaware of [the agent's] fraudulent scheme." *Id.* at 460. Accordingly, and as confirmed by the most recent decisions of the Pennsylvania Supreme Court, a principal is imputed with the acts of its agent performed in the course of his employment, without regard to subsequent events.

Under the Second Circuit's *Color Tile* decision, the Bankruptcy Court had no authority to simply disregard the Third Circuit's clear holding in *Lafferty*.  *Color Tile* sets forth only two exceptions that would permit a court to ignore the Third Circuit's interpretation of Pennsylvania law.  A federal court need not follow a circuit court decision on an issue of another state's laws if:  (1) the holding was "superseded by a *later* pronouncement from state legislative or judicial sources" or (2) "prior state court decisions [were] *inadvertently* overlooked by the pertinent court of appeals."  *Factors Etc., Inc. v. Pro Arts, Inc*. 652 F2d 278, 283 (2d Cir. 1981)(emphasis added).  Neither of these exceptions applies here.  First, because the Bankruptcy Court concluded that Pennsylvania law applies to the tort claim, it was legally bound to follow *Lafferty*, which was decided 33 years after *Universal Builders* and is controlling Third Circuit precedent concerning Pennsylvania law on *in pari delicto*.  Second, because *Lafferty* considered and rejected *In re Jack Greenberg, Inc.*, 212 B.R. 76 (Bankr. E.D. Pa. 1997), which, as the Bankruptcy Court acknowledged, discussed *Universal Builders* "at length" (Dec. at 39), it did not "inadvertently overlook[]" *Universal Builders*.  Accordingly, the Bankruptcy Court erred in concluding that it could "not agree with [Lafferty's] view."  (Dec. at 33.)

### 3. Pennsylvania's "Exceptions" to *In Pari Delicto* are inapplicable.

The Bankruptcy Court also erred in applying the "adverse interest" exception to the *in pari delicto* doctrine because the Complaint alleges the Rigases' conduct clearly conferred a benefit on Adelphia.[47]  Pennsylvania law is clear that, even if the agent acts for his own benefit, a corporation is still responsible for his acts unless the agent conferred "no benefit" on the corporation.  *See Solomon v. Gibson*, 615 A.2d 367, 371-72 (Pa. Super. Ct. 1992) (where an "agent acts in his own interest which is antagonistic to that of his principal, . . . the principal who has received *no benefit* therefrom will not be liable for the agent's tortious act."); *but see Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611 (Pa. Super. Ct. 1980) (a principal is responsible for agent's acts that in part benefit principal), *rev'd on other grounds* (*citing* Restatement (Second) of Agency § 236, cmt. b (1958)) ("The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.")  The Bankruptcy Court overlooked numerous admissions in the Complaint that acknowledge the substantial benefits received by the Debtors in concluding "[t]his Court is not of a mind to hold at this point in time, on motion, that even a peppercorn of benefit to a corporation from the wrongful conduct would provide total dispensation to defendants . . ." (Dec. at 42)  Indisputably, the Complaint itself concedes that the Debtors received more than a "peppercorn" of benefit from the Rigases' conduct.  (Compl. at ¶¶ 449, 452, 456, 459.)

Moreover, even assuming that the "adverse interest" exception *somehow* applies, the claim is plainly barred by the "sole actor" rule, which negates the "adverse interest" exception.

---

[47]  The Bankruptcy Court erroneously concluded that there exists a factual dispute concerning the "adverse interest" exception.  The allegations in the Complaint make clear that the Debtors received huge financial benefit from the complained of conduct.  For example, the Complaint asserts that the Debtors had the right to borrow the full amount under the Credit Facilities and they in fact used 40% of the proceeds from the credit facilities at issue for their own benefit, resulting in more than $1.5 billion in benefits.  (Compl. at ¶¶ 449, 452, 456, 459.)

*See Lafferty*, 267 F.3d at 360 (where the wrongful agents dominate the corporation, the agents' wrongful acts are imputed to the corporation even if such acts were adverse to the corporation's interests).[48]  "The general principle of the 'sole actor' exception provides that, if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests." *Lafferty*, 267 F.3d at 359.  "Courts have applied the exception to cases in which the agent 'dominated' the corporation." *Id.* at 360.  Indeed, Plaintiffs concede that the Rigases controlled the management and dominated Adelphia's board of directors.  (*See* Compl. at ¶¶ 413-16.)

> **D.** **Plaintiffs Cannot Satisfy the Elements of Aiding and Abetting a Breach of Fiduciary Duty.**

Even if Pennsylvania did recognize aiding and abetting liability, Plaintiffs have not stated a claim for aiding and abetting a breach of fiduciary duty.  Plaintiffs' aiding and abetting breach of fiduciary duty claim is premised on allegations of fraud.  (*See* Complt. at ¶¶ 859-66.)  Thus, the claim is subject to the heightened pleading requirements of Rule 9(b).  *See, e.g., Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).  The Bankruptcy Court dismissed Plaintiffs' aiding and abetting fraud claim for failure to plead with the specificity required by FED. R. CIV. P. 9(b).  (Dec. at 7.)  The court expressed "serious concerns as to the Rule 9(b) deficiencies of the effort to impose secondary liability, for the aiding and abetting of alleged fraud."  (Dec. at 51.)  The court went on to conclude that the Complaint failed to allege any facts showing the lenders had any knowledge of what the Rigases did or did not tell Adelphia's independent directors.  (Dec. at 50-51.)  Because the court found that such specific allegations were required to satisfy the specificity requirements of Rule 9(b), it dismissed the aiding and abetting fraud claims.

---

[48] Contrary to the Decision, no Pennsylvania case has ever recognized any so-called "innocent insider" exception to

As with the aiding and abetting fraud claim, knowledge by the Lenders of what the Rigases did or did not tell Adelphia's independent directors is a critical element of the aiding and abetting breach of fiduciary duty claim.  Indeed, to impose liability for aiding and abetting a breach of fiduciary duty, the Plaintiffs must show that each of the Defendants had actual knowledge both of the existence of a fiduciary duty and that the conduct at issue breached that duty.  *Mazzaro*, 2007 WL 2609535, at *9 (citing *Kolbeck*, 939 F. Supp. at 246).  To know that a corporate officer or director has breached a fiduciary duty, a defendant would have to know not only that the fiduciary was transacting business with its corporation, but also that the fiduciary's conduct was not disclosed to or approved by the board of directors.  *See, e.g.,* DEL. CODE ANN. § 144; *Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623, 2007 WL 1040809, at *23 (S.D.N.Y. Apr. 4, 2007); *Schock v. Nash*, 732 A.2d 217, 225 n. 21 (Del. Supr. 1999) (directors have safe harbor from self-dealing "if the transaction is approved by a majority of the informed and disinterested directors").  Thus, what the Lenders knew or did not know about what was disclosed to and approved by the board of directors – a fact the Bankruptcy Court found absent from the Complaint – is as much of a critical element of the aiding and abetting a breach of fiduciary duty claim as it is of the dismissed aiding and abetting fraud claim.

### Conclusion

For the foregoing reasons, Plaintiffs have failed to state a claim for equitable disallowance (Count 33), violations of the Bank Holding Company Act (Count 32) or aiding and abetting breach of fiduciary duty (Count 37).  Each of these claims should therefore be dismissed.

---

the "sole actor" rule.  (*See* Dec. at 43-44.)

Dated: New York, New York


September 28, 2007

Respectfully submitted,

**HAYNES AND BOONE, LLP**

By:  _/s/ Richard D. Anigian_
Thomas E. Kurth
Richard D. Anigian
Debra J. McComas
901 Main Street, Suite 3100
Dallas, Texas 75202
(214) 651-5000


Judith Elkin
153 E. 53rd Street, Suite 4900
New York, New York 10022
(212) 659-7300


Glenn M. Kurtz
Karen M. Asner
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 819-8200

**Attorneys for BANK OF AMERICA, N.A.,**


**MAYER BROWN LLP**

By:  _/s/  Robert J. Ward_
J. Robert Stoll
Robert J. Ward
Kenneth E. Noble
1675 Broadway, Suite 1900
New York, New York  10019
(212) 506-2500


**Attorneys for BANK OF MONTREAL and
BMO CAPITAL MARKETS CORP. (f/k/a
BMO NESBITT BURNS CORP.)**

**SIMPSON THACHER & BARTLETT LLP**

By:  _/s/ William T. Russell, Jr._
Peter V. Pantaleo
William T. Russell, Jr.
Elisha D. Graff
425 Lexington Avenue
New York, New York  10017
(212) 455-2000

**Attorneys for WACHOVIA BANK,
NATIONAL ASSOCIATION and
WACHOVIA CAPITAL MARKETS, LLC
(f/k/a WACHOVIA SECURITIES, INC.)**


**LUSKIN, STERN & EISLER, LLP**

By:_/s/  Michael Luskin_
Michael Luskin
Trevor Hoffmann (TH 5876)
330 Madison Avenue
 New York, New York  10017
(212) 293-2700

Attorneys for **THE BANK OF NOVA
SCOTIA**