**The Failure By NFHLP To Pay Sabres, Inc. Any Of The
Monies Due And Owing Under The Construction And Revolver Loans.**

1613.   From March 17, 2000 forward (the date the Adelphia subsidiary Sabres, Inc.

became the owner of the Buffalo Sabres Loans), NFHLP (still the obligor under the Buffalo

Sabres Loans) never paid Sabres, Inc. any of the monies due and owing under the Construction

and Revolver Loans.   Only eight months later, in November 2000, at the direction of Tim Rigas

(who at the time was President of NFHLP), the $34.1 million was written down and classified by

Adelphia as a loan that would never be repaid.   Moreover, at the time the Buffalo Sabres Banks

sold the Construction and Revolver Loans to Sabres, Inc. (if not before), the Buffalo Sabres

Banks were aware that NFHLP did not have the financial capability, willingness, or intent to pay

Sabres, Inc. monies owed under the Construction and Revolver Loans.

1614.   Following the execution of the Junior Participation Agreements in March 2000,

NFHLP owed Sabres, Inc., under the Construction Loan approximately $30 million, which was

never paid.   NFHLP owed Sabres, Inc., under the Revolver Loan approximately $10 million,

which was also never paid.

**The Payments By Adelphia To The Buffalo Sabres
Banks Of Principal And Interest On The Buffalo Sabres Loans.**

1615.   The Rigas Family caused Adelphia, and at times Sabres, Inc., and/or other

Adelphia subsidiaries, to pay the Buffalo Sabres Banks the principal and interest payments due

to them under the Buffalo Sabres Loans from the CMS from June 14, 1999 to May 1, 2002.   The

dates and amounts of these payments are set forth in detail in Claims 17-24 of this complaint,

and are incorporated herein by reference.   At the time of the payments, however, the obligor

451

under the Buffalo Sabres Loans was NFHLP which was neither an affiliate nor a subsidiary of Adelphia.

1616.    To the extent that any of the principal and interest payments made to the Buffalo Sabres Banks on the Buffalo Sabres Loans were transferred from NFHLP, NFHLP did not have dominion and control over the funds transferred to it by Adelphia for the purpose of making the payments.  NFHLP was, therefore, a conduit for Adelphia.  The Buffalo Sabres Banks were the entities for whose benefit the transfers were made.

1617.    At no time was Adelphia, its subsidiaries or affiliates an obligor or borrower under the Buffalo Sabres Loans.

1618.    The principal and interest payments made by Adelphia to Fleet under the Buffalo Sabres Loans from June 14, 1999 through May 1, 2002 totaled $11,988,843.17.

1619.    The principal and interest payments made by Adelphia to HSBC under the Buffalo Sabres Loans from June 28, 1999 to March 22, 2000 totaled $1,789,821.83.

1620.    The principal and interest payments made by Adelphia to Key Bank under the Buffalo Sabres Loans from June 28, 1999 to December 1, 1999 totaled $875,750.41.

**The Recapitalization And Sale Of NFHLP To John Rigas**
**And Members Of The Rigas Family Was A Breach Of The Fiduciary**
**Duties Owed To Adelphia By John Rigas And Members Of The Rigas Family.**

1621.    The recapitalization of NFHLP and sale of NFHLP to John Rigas and members of the Rigas Family were made at the behest and under the direction of John Rigas and members of the Rigas Family, who owed fiduciary duties to Adelphia.

452

1622.   The transactions that resulted in the Rigas Family holding all of the equity in NFHLP, while leaving Adelphia with only debt, were a breach of the fiduciary duties owed to Adelphia by John Rigas and members of the Rigas Family.  The transactions caused Adelphia to pour even more money into NFHLP while no funds or equity interests were transferred in return. Only debt was left.  The debt was incurred at a time when John Rigas, his sons, and the Buffalo Sabres Banks knew that NFHLP did not have the financial capability, willingness, or intent of ever paying it.  That debt was never repaid to Adelphia by NFHLP.

1623.   The Buffalo Sabres Banks were parties to the negotiations that resulted in the recapitalization and sale of NFHLP and, upon information and belief, they were aware that the sale of NFHLP to John Rigas and members of the Rigas Family would place all of NFHLP's equity into the Rigas Family, leaving Adelphia with only debt.

1624.   The recapitalization of NFHLP and the sale of NFHLP to John Rigas and members of the Rigas Family was a breach of the fiduciary duties John Rigas and members of the Rigas Family owed to Adelphia because the transactions drained Adelphia of money, created no benefit for Adelphia, converted Sabres, Inc.'s ownership interest in NFHLP into debt, and enabled John Rigas, in his personal capacity, and his company Patmos, Inc. to enjoy all of the ownership of NFHLP and its assets.  These transactions could not have occurred without the knowledge, consent, and substantial assistance of the Buffalo Sabres Banks.

453

**The Loan Purchases Were Breaches Of The Fiduciary Duties**
**Owed To Adelphia By John Rigas And Members Of The Rigas Family.**

1625.   The Loan Purchases were breaches of the fiduciary duties owed to Adelphia by

John Rigas and members of the Rigas Family.  The Loan Purchases did not benefit Adelphia

because, among other reasons:

- The purchase of the Buffalo Sabres Loans drained money from Sabres, Inc. while no funds flowed back from NFHLP to Adelphia or Sabres, Inc.;

- NFHLP could not afford to pay to Adelphia the monies used by Sabres, Inc. to make the Loan Purchases and it had no reasonable prospect of doing so in the future;

- The purchase of the Buffalo Sabres Loans caused Adelphia to transfer funds to organizations and entities (NFHLP, the Buffalo Sabres and the HSBC Arena), that had been losing money and value for years and which were projected to continue to lose money and value in the coming five years;

- The value of the loans purchased was less than the $34.1 million that Sabres, Inc. paid for the loans; and,

- Protecting NFHLP from going into bankruptcy did not improve or aid in the growth, income or stability of Adelphia.

1626.   The decision and action by John Rigas and members of the Rigas Family to cause

Sabres, Inc. to purchase the Construction and Revolver Loans for approximately $34.1 million in

March 2000 from the Buffalo Sabres Banks was a breach of their fiduciary duties to Adelphia.

**The Payment Of The Principal And Interest On The**
**Buffalo Sabres Loans By Sabres, Inc. Was A Breach Of The Fiduciary**
**Duties Owed By John Rigas And Members Of The Rigas Family To Adelphia.**

1627.   The principal and interest payments made by Adelphia to the Buffalo Sabres

Banks under the Buffalo Sabres Loans did not benefit Adelphia because, among other reasons,

NFHLP was not a subsidiary of Adelphia, and Adelphia and its subsidiaries were not the obligors or borrowers under the Buffalo Sabres Loans.

1628.    At no time did NFHLP repay Adelphia for these principal and interest payments. Furthermore, the Buffalo Sabres Banks were aware at the time of the payments that NFHLP did not have the financial ability to pay the principal and interest on the Buffalo Sabres Loans.

1629.    The principal and interest payments made by Adelphia to the Buffalo Sabres Banks under the Buffalo Sabres Loans were made at the behest and under the direction of John Rigas and members of the Rigas Family who had a fiduciary duty to Adelphia.  Causing Adelphia to make these payments to the Buffalo Sabres Banks was a breach of the fiduciary duties John Rigas and members of the Rigas Family owed to Adelphia.

1630.    John Rigas and the Rigas Family deceived the Independent Directors in obtaining authority to have Sabres, Inc.: (i) make principal and interest payments on the Buffalo Sabres Loans, (ii) make the Loan Purchases, (iii) recapitalize NFHLP, and (iv) fund the cash portion of the sale of NFHLP to John Rigas and the Rigas Family, by, among other things, withholding material information concerning the terms of the transactions and the negative effects and implications to Adelphia flowing from those transactions.

1631.    Had the Independent Directors been informed of the terms and effects of the transactions they would not have permitted the transactions to occur.

**The Buffalo Sabres Banks Substantially Assisted John Rigas And Members
Of The Rigas Family In The Foregoing Breaches of Their Fiduciary Duties.**

1632.  The Buffalo Sabres Banks had actual knowledge of, knowingly participated in,

and affirmatively, knowingly and substantially assisted and encouraged John Rigas and members

of the Rigas Family in breaching their fiduciary duties set forth above.  The substantial assistance

was executed as follows:

      **(i)**    **Preparing The Junior Participation Agreements**

1633.  Between 1997 and 2000, there were many meetings, telephone calls, letters,

conferences, and exchanges of documents between the Buffalo Sabres Banks and the Rigas

Family concerning the terms of the Loan Purchases.  The Buffalo Sabres Banks drafted the

Junior Participation Agreements.  During the negotiations, the Buffalo Sabres Banks were aware

that the 95% junior participation interests in the Construction and Revolver Loans were being

sold to Sabres, Inc. and that Sabres, Inc. was a wholly-owned subsidiary of Adelphia.

1634.  Employees of the Buffalo Sabres Banks testified in related litigation that (i) the

Junior Participation Agreements were the result of "constant negotiations" with the Rigas

Family; (ii) they had meetings and discussions amongst themselves regarding the structure and

terms of the sale of the Construction and Revolver Loans to Sabres, Inc.; (iii) they met with

representatives of Sabres, Inc. on numerous occasions to discuss the sale; and (iv) they originally

withheld approval of the sale of NFHLP to John Rigas, but then changed their minds when they

knew that Sabres, Inc., and not NFHLP, would be purchasing the 95% junior participation

interests in the loans.

1635.   The Junior Participation Agreements, which were negotiated and structured by the Buffalo Sabres Banks, were the mechanisms by which John Rigas and the members of the Rigas Family breached their fiduciary duties to Adelphia when they caused an Adelphia subsidiary, Sabres, Inc., to purchase the Construction and Revolver Loans for $34.1 million when, among other things, the loans were worth less than $34.1 million.  At all relevant times, the Buffalo Sabres Banks knew that the Construction and Revolver Loans were worth materially less than the price Adelphia paid for them.  The Junior Participation Agreements required the approval of the Buffalo Sabres Banks and they were signatories to the documents.

### (ii)   Buffalo Sabres Banks Insisted There Would Be No Sale Of NFHLP Unless Adelphia Bought The Loans

1636.   By making the sale of the Construction and Revolver Loans a condition to the sale of NFHLP to John Rigas and members of the Rigas Family, the Buffalo Sabres Banks substantially assisted in making sure that the Rigas Family structured the sale and recapitalized NFHLP in a way that gave the Rigas Family all the equity in NFHLP and left Adelphia with only the debt.  The Buffalo Sabres Banks made the sale of the Construction and Revolver Loans a part of the deal and threatened to stop the transfer of ownership of NFHLP to the Rigas Family if the Construction and Revolver Loans were not bought by Adelphia.

1637.   The Buffalo Sabres Banks specifically told the Rigas Family that they would consent to the sale of NFHLP to the Rigas Family only if the Rigas Family caused Adelphia to buy out the Construction and Revolver Loans.

1638.   In a bank group meeting, Fleet and Key Bank made it clear to HSBC that consent to the ownership transfer of NFHLP to John Rigas would not take place until the parties had

reached an understanding of and agreement to Adelphia's plans for repaying the Construction

Loan. Schedule 5.5 of the Purchase Agreement states in relevant part as well that the NFHLP's

limited partners "have been notified by HSBC, as Agent for the [Construction Loan that] . . . the

lenders have taken the position that their consent to the transaction is required."

1639.   The Buffalo Sabres Banks decided not to foreclose on the assets securing the

Buffalo Sabres Loans as long as principal and interest payments were being made by Adelphia

even though NFHLP was the obligor. The Buffalo Sabres Banks consistently and deliberately

encouraged John Rigas and members of the Rigas Family to transfer millions of dollars into

financially failing organizations and entities (NFHLP, the Buffalo Sabres and the HSBC Arena),

while at the same time knowing that the funds were coming from Adelphia.

### (iii)   The Buffalo Sabres Banks' Actual Knowledge Of The Rigases' Breaches Of Their Fiduciary Duties

1640.   The Buffalo Sabres Banks knew that the Rigases were improperly using Adelphia

money to fund the Loan Purchases, principal and interest payments, and recapitalization. The

Buffalo Sabres Banks were so concerned about the financial role of Sabres, Inc. in NFHLP, that

Fleet "indicated that we might want to consider hiring [an] outside source to review the internal

flow of funds with the Sabres organization so that we can be in a better position to make further

decisions."

1641.   The Buffalo Sabres Banks consented to the transfer of ownership and to the sale

of the loans while at the same time they knew that (i) Sabres, Inc. had been assuming the

substantial financial burdens of the soon-to-be Rigas-owned and Rigas-controlled NFHLP, and

(ii) the value of the organizations and assets that Sabres, Inc. was bailing out had been eroding

for years, had been projected to incur further losses in the upcoming five years, and had been subject to going concern warnings issued by NFHLP's auditors for years.

1642.   The Buffalo Sabres Banks also consented to the transfer of ownership and the sale of the loans while at the same time knowing that NFHLP could not pay the monies due and owing under the Construction and Revolver Loans to Sabres, Inc., and while questioning among themselves whether payments from Adelphia in connection with NFHLP and the Buffalo Sabres benefited Adelphia in any way.

1643.   The Buffalo Sabres Banks made the sale of the loans possible by insisting on a quid-pro-quo by threatening to block the sale of NFHLP to the Rigas Family unless Sabres, Inc. purchased 95% junior participation interests in the Construction and Revolver Loans.

1644.   The assistance of the Buffalo Sabres Banks was a substantial factor in causing John Rigas and members of the Rigas Family to breach their fiduciary duties to Adelphia by having Adelphia pay the principal and interest under the Buffalo Sabres Loans when NFHLP was responsible under those loans, by making the recapitalization possible, and by consenting to the transfer of ownership of NFHLP to the Rigas Family which resulted in Adelphia holding only debt in the partnership.  But for the substantial assistance of the Buffalo Sabres Banks, the Rigas Family could not have breached their fiduciary duties to Adelphia in these ways.

1645.   The Buffalo Sabres Banks substantially assisted John Rigas and members of the Rigas Family in breaching their fiduciary duties to Adelphia and its wholly-owned subsidiary Sabres, Inc. by committing the above-referenced acts in New York State.

459

1646.  By reason of the foregoing, the ART has been damaged in the amount of at least $48 million, or such other amount to be determined at trial.

## FIFTY-SEVENTH CLAIM FOR RELIEF

### (Equitable Disallowance of HSBC's, Fleet's, and Key Bank's Administrative Claims or, Alternatively, Equitable Subordination Of Those Claims Under 11 U.S.C. § 510(c))

1647.  Plaintiff realleges paragraphs 1 through 1078 as if fully set forth herein.

1648.  On March 23, 2007, Fleet and HSBC filed Administrative Claim Notices in In re Adelphia Communications Corporation (Chapter 11), Case No. 02-417-29 (REG) in the Bankruptcy Court for the Southern District of New York (the "Adelphia Bankruptcy") and on March 26, 2007, Key Bank filed an Administrative Claim Notice in the Adelphia Bankruptcy (collectively, the "Buffalo Sabres Banks' Administrative Claims").

1649.  The Buffalo Sabres Banks' Administrative Claims are based on alleged post-petition torts by Adelphia.

1650.  As alleged herein, however, each of the Buffalo Sabres Banks engaged in wrongful conduct directed towards Adelphia by, among other things, aiding and abetting the breach of fiduciary duties owed to Adelphia by John Rigas and members of the Rigas Family. Each of the Buffalo Sabres Banks acted callously and with reckless disregard or conscious avoidance of the consequences of their inequitable conduct.

1651.  The Buffalo Sabres Banks' misconduct has damaged Adelphia and its unsecured creditors who extended credit or performed services without knowledge of the Buffalo Sabres Banks' actions and who, unlike the Buffalo Sabres Banks, played no role in damaging Adelphia.

460

1652. There were substantial assets of Adelphia including, but not limited to, equipment, accounts receivable, human resources, contract rights, avoidance actions and derivative actions that could have been used to satisfy the claims of unsecured creditors if the Buffalo Sabres Banks' Administrative Claims were equitably disallowed or subordinated.

1653. If the Buffalo Sabres Banks' Administrative Claims are allowed, those claims would consume a portion of the value of the Adelphia estates, while Adelphia's other creditors will receive a smaller distribution.

1654. Equitable disallowance of each of the Buffalo Sabres Banks' Administrative Claims is consistent with the Bankruptcy Code.

1655. By reason of the foregoing, Plaintiff is entitled to judgment (a) equitably disallowing the Buffalo Sabres Banks' Administrative Claims in their entirety; or (b) alternatively, pursuant to Section 510(c) of the Bankruptcy Code, Plaintiff is entitled to judgment subordinating the Buffalo Sabres Banks' Administrative Claims to the prior payment in full of all claims of unsecured creditors of Adelphia, including, but not limited to any intercompany claims, as provided for in the Plan.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff:

(i)        on its First Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all UCA/HHC Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, and all UCA/HHC Co-Borrowing Security

461

Interests securing UCA/HHC Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, together with all interest paid in respect of the obligations avoided hereunder;

(ii)      on its Second Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all UCA/HHC Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, in an amount not less than $400 million, and all UCA/HHC Co-Borrowing Security Interests securing UCA/HHC Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, together with all interest paid in respect of the obligations avoided hereunder;

(iii)      on its Third Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates:  (A) (i) all UCA/HHC Co-Borrowing Obligations, and (ii) all UCA/HHC Co-Borrowing Security Interests securing UCA/HHC Co-Borrowing Obligations; or, alternatively, (B) (i) all UCA/HHC Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all UCA/HHC Co-Borrowing Security Interests securing UCA/HHC Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(iv)      on its Fourth Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates:  (A) (i) all UCA/HHC Co-Borrowing Obligations, and (ii) all UCA/HHC Co-Borrowing Security Interests securing UCA/HHC Co-Borrowing

462

Obligations; or, alternatively, (B) (i) all UCA/HHC Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all UCA/HHC Co-Borrowing Security Interests securing UCA/HHC Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(v)      on its Fifth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all CCH Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, in an amount not less than $600 million, and all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, together with all interest paid in respect of the obligations avoided hereunder;

(vi)     on its Sixth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all CCH Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, in an amount not less than $600 million, and all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, together with all interest paid in respect of the obligations avoided hereunder;

(vii)    on its Seventh Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates: (A) (i) all CCH Co-Borrowing Obligations, and (ii) all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations; or,

463

alternatively, (B) (i) all CCH Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(viii)    on its Eighth Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates: (A) (i) all CCH Co-Borrowing Obligations, and (ii) all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations; or, alternatively, (B) (i) all CCH Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all CCH Co-Borrowing Security Interests securing CCH Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(ix)    on its Ninth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all Olympus Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, and all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date in an amount not less than $500 million, together with all interest paid in respect of the obligations avoided hereunder;

(x)    on its Tenth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates all Olympus Co-Borrowing Obligations incurred or granted on or

within the year preceding the Petition Date, in an amount not less than $500 million, and all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations incurred or granted on or within the year preceding the Petition Date, together with all interest paid in respect of the obligations avoided hereunder;

(xi)    on its Eleventh Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates:  (A) (i) all Olympus Co-Borrowing Obligations, and (ii) all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations; or, alternatively, (B) (i) all Olympus Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(xii)    on its Twelfth Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, preserving and recovering for the benefit of Plaintiff, as successor in interest to the Debtors' estates:  (A) (i) all Olympus Co-Borrowing Obligations, and (ii) all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations; or, alternatively, (B) (i) all Olympus Co-Borrowing Obligations incurred for the benefit of the Rigas Family, and (ii) all Olympus Co-Borrowing Security Interests securing Olympus Co-Borrowing Obligations incurred for the benefit of the Rigas Family, together with all interest paid in respect of the obligations avoided hereunder;

(xiii)    on its Thirteenth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, recovering and preserving for the benefit of Plaintiff, as

465

successor in interest to the Debtors' estates (i) the Century-TCI Securities Transfer, and (ii) all Century-TCI Security Interests securing the Century-TCI Securities Transfer, together with all interest paid in respect of the obligations avoided hereunder;

(xiv)     on its Fourteenth Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, recovering and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates (i) the Century-TCI Securities Transfer, and (ii) all Century-TCI Security Interests securing the Century-TCI Securities Transfer, together with all interest paid in respect of the obligations avoided hereunder;

(xv)     on its Fifteenth Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, recovering and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates (i) the Century-TCI Securities Transfer and the Century-TCI Prestige Transfer, and (ii) all Century-TCI Security Interests securing the Century-TCI Securities Transfer and the Century-TCI Prestige Transfer, together with all interest paid in respect of the obligations avoided hereunder;

(xvi)     on its Sixteenth Claim for Relief, pursuant to sections 544(b), 550, and 551 of the Bankruptcy Code, avoiding, recovering and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates (i) the Century-TCI Securities Transfer and the Century-TCI Prestige Transfer, and (ii) all Century-TCI Security Interests securing the Century-TCI Securities Transfer and the Century-TCI Prestige Transfer, together with all interest paid in respect of the obligations avoided hereunder;

(xvii)      on its Seventeenth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the Fleet Payments;

(xviii)      on its Eighteenth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the Fleet Payments;

(xix)      on its Nineteenth Claim for Relief, pursuant to sections 548 and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates at least $3,121,043.89;

(xx)      on its Twentieth Claim for Relief, pursuant to sections 548 and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates at least $3,121,043.89;

(xxi)      on its Twenty-First Claim for Relief,  pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the HSBC Payments;

(xxii)      on its Twenty-Second Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the HSBC Payments;

(xxiii)      on its Twenty-Third Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the Key Bank Payments;

(xxiv)    on its Twenty-Fourth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the Key Bank Payments;

(xxv)    on its Twenty-Fifth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the BNS Payments;

(xxvi)    on its Twenty-Sixth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the BNS Payments;

(xxvii)    on its Twenty-Seventh Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates at least $10,446,935.69;

(xxviii)    on its Twenty-Eighth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates at least $10,446,935.69;

(xxix)    on its Twenty-Ninth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the CIBC Payments;

(xxx)    on its Thirtieth Claim for Relief, pursuant to sections 544(b) and 550 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the CIBC Payments;

468

(xxxi)     on its Thirty-First Claim for Relief, pursuant to sections 548, 550, and 551 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates all Margin Loan Payments made on or within one year preceding the Petition Date;

(xxxii)    on its Thirty-Second Claim for Relief, pursuant to section 1975 of title 12 of the United States Code, an amount that is three times the amount of the damages sustained, in an amount to be determined at trial, plus costs and attorneys' fees;

(xxxiii)   on its Thirty-Third Claim for Relief, (a) judgment equitably disallowing Defendants' claims in their entirety; or, alternatively, (b) pursuant to Section 510(c) of the Bankruptcy Code, judgment: (i) subordinating Defendants' claims to the prior payment in full of the claims of unsecured creditors of the Debtors, including, but not limited to any intercompany claims, and (ii) preserving the liens granted under the Co-Borrowing Facilities for the benefit of Plaintiff, as successor in interest to the Debtors' estates;

(xxxiv)    on its Thirty-Fourth Claim for Relief, recharacterizing that portion of the Co-Borrowing Facilities used for the purchase of stock as an equity contribution to Adelphia in an amount not less than $2 billion;

(xxxv)     on its Thirty-Fifth Claim for Relief, recharacterizing that portion of the Century-TCI Facility used for the purchase of stock as an equity contribution to Adelphia in an amount not less than $400 million;

(xxxvi)    on its Thirty-Sixth Claim for Relief, awarding Plaintiff damages in the amount of at least $5 billion, or such other amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(xxxvii)    on its Thirty-Seventh Claim for Relief, awarding Plaintiff damages in the amount of at least $5 billion, or such other amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(xxxviii)    on its Thirty-Eighth Claim for Relief, awarding Plaintiff damages in the amount of at least $5 billion, or such other amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(xxxix)    on its Thirty-Ninth Claim for Relief, awarding Plaintiff damages in the amount of at least $5 billion, or such other amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(xl)    on its Fortieth Claim for Relief, awarding Plaintiff damages in the amount of at least $5 billion, or such other amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(xli)    on its Forty-First Claim for Relief, granting Plaintiff a declaration that the Debtors are not liable for any of the Obligations under the CCH Credit Agreement in excess of those permitted by the CCH Credit Agreement;

(xlii)    on its Forty-Second Claim for Relief, granting Plaintiff a declaration that the Debtors are not liable for any of the Obligations under the Olympus Credit Agreement in excess of those permitted by the Olympus Credit Agreement;

470

(xliii)    on its Forty-Third Claim for Relief, pursuant to sections 547, 550, and 551 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates, the Century-TCI Payments;

(xliv)    on its Forty-Fourth Claim for Relief, pursuant to sections 547, 550, and 551 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates, the Parnassos Payments;

(xlv)    on its Forty-Fifth Claim for Relief, terminating the UCA/HHC Co-Borrowing Security Interests, returning to the Debtors all amounts paid by the Debtors in respect of funds drawn under the UCA/HHC Co-Borrowing Facility that were used by the Rigas Family, plus interest from the date of each payment made by the Debtors to the UCA/HHC Co-Borrowing Lenders, and terminating any purported right of the UCA/HHC Co-Borrowing Lenders to payment from the Debtors for amounts drawn under the UCA/HHC Co-Borrowing Facility by the Rigas Family;

(xlvi)    on its Forty-Sixth Claim for Relief, terminating the CCH Co-Borrowing Security Interests, returning to the Debtors all amounts paid by the Debtors in respect of funds drawn under the CCH Co-Borrowing Facility that were used by the Rigas Family, plus interest from the date of each payment made by the Debtors to the CCH Co-Borrowing Lenders, and terminating any purported right of the CCH Co-Borrowing Lenders to payment from the Debtors for amounts drawn under the CCH Co-Borrowing Facility by the Rigas Family;

(xlvii)    on its Forty-Seventh Claim for Relief, terminating the Olympus Co-Borrowing Security Interests, returning to the Debtors all amounts paid by the Debtors in respect of funds drawn under the Olympus Co-Borrowing Facility that were used by the Rigas Family,

471

plus interest from the date of each payment made by the Debtors to the Olympus Co-Borrowing Lenders, and terminating any purported right of the Olympus Co-Borrowing Lenders to payment from the Debtors for amounts drawn under the Olympus Co-Borrowing Facility by the Rigas Family;

(xlviii)     on its Forty-Eighth Claim for Relief, estopping the Co-Borrowing Lenders from retaining and enforcing the Co-Borrowing Security Interests, from retaining principal and interest payments made by the Debtors in respect of amounts drawn down under the Co-Borrowing Facilities for the benefit of the Rigas Family, and from seeking to recover outstanding principal and interest payments from the Debtors with respect to funds drawn under the Co-Borrowing Facilities for the benefit of the Rigas Family;

(xlix)      on its Forty-Ninth Claim for Relief, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the FrontierVision Preferential Transfers;

(l)           on its Fiftieth Claim for Relief, avoiding, recovering, and preserving for the benefit of the Plaintiff, as successor in interest to the Debtors' estates the CCH Preferential Transfers;

(li)          on its Fifty-First Claim for Relief, pursuant to sections 547, 550, and 551 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the Olympus Preferential Transfers;

472

(lii)        on its Fifty-Second Claim for Relief, pursuant to sections 547, 550, and 551 of the Bankruptcy Code, avoiding, recovering, and preserving for the benefit of Plaintiff, as successor in interest to the Debtors' estates the UCA/HHC Preferential Transfers;

(liii)        on its Fifty-Third Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial;

(liv)        on its Fifty-Fourth Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial not less than $3.625 billion;

(lv)        on its Fifty-Fifth Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial not less than $5 billion;

(lvi)        on its Fifty-Sixth Claim for Relief, awarding Plaintiff damages in the amount of at least $48 million, or such other amount to be determined at trial;

(lvii)        on its Fifty-Seventh Claim for Relief, (a) equitably disallowing the Buffalo Sabres Banks' Administrative Claims in their entirety; or (b) alternatively, pursuant to Section 510(c) of the Bankruptcy Code, Plaintiff is entitled to judgment subordinating the Buffalo Sabres Banks' Administrative Claims to the prior payment in full of the administrative claims of unsecured creditors of Adelphia, including, but not limited to, any intercompany claims, as provided for in the Plan;

(lviii)        awarding Plaintiff pre-judgment interest on its claims together with its costs and attorneys' fees, to the fullest extent allowed by law; and

     (lix)      awarding Plaintiff such other and further relief, including punitive damages,

as the Court may deem just and proper and appropriate to redress the harm caused by

Defendants' conduct.

Dated: New York, New York
       October 31, 2007

                            KASOWITZ, BENSON, TORRES
                            & FRIEDMAN LLP

                            By: _____
                               David M. Friedman (DF-4278)
                               Michael C. Harwood (MH-4227)
                               Howard W. Schub (HS-1600)
                               Jonathan E. Minsker (JM-8535)
                         1633 Broadway
                         New York, New York  10019
                         Tel:  (212) 506-1700
                         Fax:  (212) 506-1800

                         Counsel for Adelphia Recovery Trust as to all
                         claims except for claims against defendants CIBC,
                         Inc.; CIBC World Markets Corp.; Rabobank
                         Nederland, New York; Société Générale; Amaranth
                         Fund, L.P.; Avenue Special Situations Fund II, LP;
                         Bear, Stearns & Co., Inc.; Bear Stearns Credit
                         Products; Bear Stearns Investment Products;
                         Cedarview Opportunities Master Fund; Contrarian
                         Funds, LLC; Gabriel Capital LP; Hartford Floating
                         Rate Fund, T; Key Bank of New York; Latigo
                         Master Fund, Ltd.; Longacre Capital Partners;
                         Longacre Master Fund, Ltd.; MetLife Insurance Co.
                         of Connecticut; New York Life Insurance Co.; New
                         York Life Insurance and Annuity Corporation;
                         Nomura Bond & Loan Fund; Cooperatieve Centrale
                         Raiffeisen-Boerenleenbank B.A.; Royal Bank of
                         Canada; SPCP Group; Satellite Senior Income
                         Fund, LLC; Satellite Senior Income Fund II, LLC;
                         Cowen and Company, LLC

JENNER & BLOCK LLP

By: _____ (by)
     Deirdre E. Connell
     Vincent E. Lazar
     Robert J. Blazejowski
330 N. Wabash Avenue
Chicago, Illinois 60611-7603
Tel: (312) 222-9350
Fax: (312) 527-0484

Counsel for Adelphia Recovery Trust as to all
claims except for claims against defendants
Deutsche Bank AG and affiliated defendants,
HSBC Bank USA, Nuveen Floating Rate Income
Fund, Nuveen Senior Income Fund, Nuveen
Floating Rate Income Opportunity Fund, National
City Bank, and National City Bank of Pennsylvania

475

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
David M. Friedman (DF-4278)
Michael C. Harwood (MH-4227)
Howard W. Schub (HS-1600)
Jonathan E. Minsker (JM-8535)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

Counsel for Adelphia Recovery Trust as to all claims
except for claims against defendants CIBC, Inc.;
CIBC World Markets Corp.; Rabobank Nederland,
New York; Société Générale; Amaranth Fund, L.P.;
Avenue Special Situations Fund II, LP; Bear,
Stearns & Co., Inc.; Bear Stearns Credit Products;
Bear Stearns Investment Products; Cedarview
Opportunities Master Fund; Contrarian Funds, LLC;
Gabriel Capital LP; Hartford Floating Rate Fund, T;
Key Bank of New York; Latigo Master Fund, Ltd.;
Longacre Capital Partners; Longacre Master Fund,
Ltd.; MetLife Insurance Co. of Connecticut; New
York Life Insurance Co.; New York Life Insurance
and Annuity Corporation; Nomura Bond & Loan
Fund; Cooperatieve Centrale Raiffeisen-
Boerenleenbank B.A.; Royal Bank of Canada; SPCP
Group; Satellite Senior Income Fund, LLC; Satellite
Senior Income Fund II, LLC; Cowen and Company,
LLC

JENNER & BLOCK LLP
Deirdre E. Connell
Vincent E. Lazar
Robert J. Blazejowski
330 N. Wabash Avenue
Chicago, Illinois 60611-7603
Tel: (312) 222-9350
Fax: (312) 527-0484

Counsel for Adelphia Recovery Trust as to all claims
except for claims against defendants Deutsche Bank
AG and affiliated defendants, HSBC Bank USA,
Nuveen Floating Rate Income Fund, Nuveen Senior
Income Fund, Nuveen Floating Rate Income
Opportunity Fund, National City Bank, and National
City Bank of Pennsylvania

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | ) | No. 05 Civ. 9050 (LMM) |
| | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT** |
| | ) | |
| - against - | ) | **Jury Trial Demanded** |
| | ) | |
| BANK OF AMERICA, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

SUMMARY OF ACTION ....................................................................................18

JURISDICTION AND VENUE ...........................................................................26

THE PARTIES AND OTHER KEY PARTICIPANTS ........................................28

    The Agent Banks And The Investment Banks .................................................33

    The Syndicate Banks ........................................................................................44

    The Non-Co-Borrowing Banks ........................................................................54

    The Assignees ..................................................................................................59

    The Rigas Family Entities ..............................................................................220

FACTS ...............................................................................................................222

    A.    The Rigas Family's Ownership And Control Of Adelphia.................222

    B.    Adelphia's Credit Facilities. .............................................................225

        1.    The Publicly-Traded Debt. ....................................................226

        2.    Bank Debt. .............................................................................229

            a.    The Non-Co-Borrowing Facilities.............................229

            b.    The Co-Borrowing Facilities.....................................233

        3.    The Rigas Family Intended That The Co-Borrowing Facilities Would Be Used For Fraudulent Purposes. .............................280

            a.    UCA/HHC. .................................................................280

            b.    CCH.............................................................................282

            c.    Olympus.....................................................................284

# TABLE OF CONTENTS
(continued)

| | | | Page |
|---|---|---|---|

4. The Fraudulent Uses Of The Co-Borrowing Facilities By The Rigas Family....................................................................285

    a. The Rigas Family's Purchase Of $1.9 Billion Of ACC Securities. ...............................................................285

    b. Adelphia's Payment Of Approximately $351 Million Of Margin Loans On Behalf Of The Rigas Family. ......................287

    c. The Rigas Family's Purchase Of $710 Million Of Cable Systems.................................................................289

    d. Other Uses By The Rigas Family Of Funds From The Co-Borrowing Facilities. ...........................................290

5. The Rigas Family's Fraudulent Use Of The Century-TCI Non-Co-Borrowing Facility. ................................................291

C. The Rigas Family Concealed From Creditors Other Than Defendants The True Amount Outstanding Under The Co-Borrowing Facilities.................292

    1. Adelphia Simply Omitted The RFE Uses Of The Co-Borrowing Facilities And Other Amounts From Its Balance Sheets........................293

    2. The Fraudulent Use Of The CMS.....................................294

    3. The Rigas Family Created The False Appearance Of "Deleveraging". .......................................................296

D. Defendants Knew Of Or Consciously Avoided Knowledge of The Fraud. .......298

    1. The Rigas Family Specifically Informed Defendants Of Their Fraudulent Activities. .......................................................298

    2. Defendants Knew That The Rigas Family Concealed Adelphia's Co-Borrowing Debt. .......................................................299

    3. Defendants Knew That The Rigas Family Was Using The CMS To Facilitate The Fraud.......................................................302

    4. Defendants Knew That The Proceeds Of The Non-Co-Borrowing Facilities Were Used For Fraudulent Purposes. .....................303

E. Many Defendants Assisted In, Or Consciously Ignored, The Rigas Family's Fraud To Benefit Themselves. ...........................................304

    1. The Unity Of Interest Between Each Agent Bank And Its Affiliated Investment Bank. .......................................................304

    2. The Agent Banks' And Investment Banks' Close Relationship With Adelphia And The Rigas Family.......................................307

F. Defendants Rewarded The Rigas Family With Extensive Margin Loans..........316

**TABLE OF CONTENTS**
(continued)

Page

G.   The Investment Banks' Fraudulent Solicitation Of Adelphia's Notes................317

H.   The Fraud Is Disclosed. .......................................................................319

I.   The Inevitable Result Of The Fraud:  Adelphia Files Chapter 11......................320

J.   Indictment Of The Rigas Family. .............................................................321

K.   Litigation Against The Rigas Family And The Plan Of Reorganization. ..........322

FIRST CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the UCA/HHC Co-Borrowing Lenders)............................................................................323

SECOND CLAIM FOR RELIEF (Avoidance and Recovery of Constructively Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the UCA/HHC Co-Borrowing Lenders)............................................................326

THIRD CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551 Against the UCA/HHC Co-Borrowing Lenders)............................................................328

FOURTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551 Against the UCA/HHC Co-Borrowing Lenders)............................................................332

FIFTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the CCH Co-Borrowing Lenders)............................................................................334

SIXTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the CCH Co-Borrowing Lenders)............................................................................337

SEVENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551 Against the CCH Co-Borrowing Lenders) ............................................................339

EIGHTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551 Against the CCH Co-Borrowing Lenders) ............................................................342

NINTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the Olympus Co-Borrowing Lenders) ............................................................345

TENTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551 Against the Olympus Co-Borrowing Lenders) ............................................................348

# TABLE OF CONTENTS
(continued)

Page

ELEVENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551
Against the Olympus Co-Borrowing Lenders)..............................................................350

TWELFTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551
Against the Olympus Co-Borrowing Lenders)..............................................................353

THIRTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551
Against the Century-TCI Lenders) ...............................................................................356

FOURTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548, 550 and 551
Against the Century-TCI Lenders) ...............................................................................358

FIFTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551
Against the Century-TCI Lenders) ...............................................................................360

SIXTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b), 550 and 551
Against the Century-TCI Lenders) ...............................................................................362

SEVENTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
Fleet)............................................................................................................................364

EIGHTEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
Fleet)............................................................................................................................368

NINETEENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548 and 550 Against
Fleet)............................................................................................................................370

TWENTIETH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548 And 550 Against
Fleet)............................................................................................................................371

TWENTY-FIRST CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
HSBC) ..........................................................................................................................372

TWENTY-SECOND CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
HSBC) ..........................................................................................................................375

**TABLE OF CONTENTS**
(continued)

Page

TWENTY-THIRD CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    Key Bank)..................................................................................................................376

TWENTY-FOURTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    Key Bank)..................................................................................................................379

TWENTY-FIFTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    BNS) ..........................................................................................................................380

TWENTY-SIXTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    BNS) ..........................................................................................................................382

TWENTY-SEVENTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548 and 550 Against
    BNS) ..........................................................................................................................383

TWENTY-EIGHTH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548 and 550 Against
    BNS) ..........................................................................................................................384

TWENTY-NINTH CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    CIBC).........................................................................................................................385

THIRTIETH CLAIM FOR RELIEF (Avoidance and Recovery of Constructively
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 544(b) and 550 Against
    CIBC).........................................................................................................................386

THIRTY-FIRST CLAIM FOR RELIEF (Avoidance and Recovery of Intentionally
    Fraudulent Obligations and Transfers Under 11 U.S.C. §§ 548 and 550 Against
    the Margin Lenders) ..................................................................................................387

THIRTY-SECOND CLAIM FOR RELIEF (Violation of the Bank Holding Company Act
    Against the Agent Banks and the Investment Banks) ....................................................390

THIRTY-THIRD CLAIM FOR RELIEF (Equitable Disallowance of Defendants' Claims
    or, Alternatively, Equitable Subordination Under 11 U.S.C. § 510(c) Against All
    Defendants)................................................................................................................392

THIRTY-FOURTH CLAIM FOR RELIEF (Recharacterization of Debt as Equity
    Against the Co-Borrowing Lenders) ...........................................................................398

THIRTY-FIFTH CLAIM FOR RELIEF (Recharacterization of Debt as Equity Against
    the Century-TCI Lenders) ..........................................................................................399

**TABLE OF CONTENTS**
(continued)

Page

THIRTY-SIXTH CLAIM FOR RELIEF (Breach of Fiduciary Duty Against the Agent Banks and the Investment Banks) ..................................................................401

THIRTY-SEVENTH CLAIM FOR RELIEF (Aiding and Abetting Breach of Fiduciary Duty Against the Agent Banks and the Investment Banks) ..........................................404

THIRTY-EIGHTH CLAIM FOR RELIEF (Aiding and Abetting Fraud Against the Agent Banks and the Investment Banks) ..................................................................406

THIRTY-NINTH CLAIM FOR RELIEF (Gross Negligence Against the Agent Banks) .........411

FORTIETH CLAIM FOR RELIEF (Gross Negligence Against the Investment Banks) ..........413

FORTY-FIRST CLAIM FOR RELIEF (Declaratory Judgment Against the CCH Co-Borrowing Lenders)..................................................................416

FORTY-SECOND CLAIM FOR RELIEF (Declaratory Judgment Against the Olympus Co-Borrowing Lenders)..................................................................417

FORTY-THIRD CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547 and 550 Against the Century-TCI Lenders)........418

FORTY-FOURTH CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547 and 550 Against the Parnassos Lenders)............419

FORTY-FIFTH CLAIM FOR RELIEF (Unjust Enrichment Against the UCA/HHC Lenders) ..................................................................420

FORTY-SIXTH CLAIM FOR RELIEF (Unjust Enrichment Against the CCH Co-Borrowing Lenders)..................................................................421

FORTY-SEVENTH CLAIM FOR RELIEF (Unjust Enrichment Against the Olympus Lenders)..................................................................423

FORTY-EIGHTH CLAIM FOR RELIEF (Equitable Estoppel Against the Co-Borrowing Lenders)..................................................................424

FORTY-NINTH CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547, 550 and 551 Against the FrontierVision Lenders)..................................................................427

FIFTIETH CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547 and 550 Against the CCH Lenders)....................................429

FIFTY-FIRST CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547, 550 and 551 Against the Olympus Lenders) ........................429

FIFTY-SECOND CLAIM FOR RELIEF (Avoidance and Recovery of Voidable Preferences Under 11 U.S.C. §§ 547, 550 and 551 Against the UCA/HHC Lenders)..................................................................431

FIFTY-THIRD CLAIM FOR RELIEF (Negligence – Against SSB).......................................432

## TABLE OF CONTENTS
(continued)

**Page**

FIFTY-FOURTH CLAIM FOR RELIEF (Fraudulent Concealment Against the
Investment Banks) ...................................................................................................436

FIFTY-FIFTH CLAIM FOR RELIEF (Fraud Against the Agent Banks and the
Investment Banks) .....................................................................................................439

FIFTY-SIXTH CLAIM FOR RELIEF (Aiding and Abetting Breach of Fiduciary Duty
Against Fleet, HSBC, and Key Bank) ........................................................................442

FIFTY-SEVENTH CLAIM FOR RELIEF (Equitable Disallowance of HSBC's, Fleet's,
and Key Bank's Administrative Claims or, Alternatively, Equitable Subordination
Of Those Claims Under 11 U.S.C. § 510(c)) ..............................................................460