KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Richard L. Wynne (RW 5630)
Bennett L. Spiegel (BS 7153)

-and-

777 South Figueroa Street
Los Angeles, California  90017
Telephone:     (213) 680-8400
Facsimile:     (213) 680-8500
Melissa D. Ingalls (*admitted pro hac vice*)
Erin Brady (*pro hac vice motion pending*)
Laura A. Thomas (*admitted pro hac vice*)

Attorneys for The Non-Agent Lenders

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>         Plaintiff,<br><br>   vs.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>         Defendants. | No. 05-CV-9050 (LMM) |

## THE PARNASSOS NON-AGENT LENDERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE COUNT 33 AND DISMISS COUNT 44 OF PLAINTIFFS'[1] AMENDED COMPLAINT

### (Non-Agent Lenders' Motion to Dismiss No. 4 of 6)

---

[1]   The Adelphia Recovery Trust (the "ART") represents the separate and unique interests of more than 250 individual Adelphia entities in this litigation.  Because these entitites' interests in this lawsuit are, indeed, separate — and not consolidated — the Parnassos Non-Agent Lenders refer to the ART as "Plaintiffs" rather than "Plaintiff" throughout this Motion.

TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................1

I.   BACKGROUND FACTS...............................................................................2

     A.   The Parnassos Credit Facility ....................................................2

     B.   Parnassos' Confirmed Plan Of Reorganization And Indemnity
          Provisions.....................................................................................5

     C.   The Plan of Reorganization For The Remaining Adelphia Entities ...........8

     D.   The Initial Complaint And Subsequent Motions To Dismiss....................9

     E.   The Amended Complaint And Absence Of Any Alleged
          Wrongdoing By The Parnassos Non-Agent Lenders.................................10

II.  THE COURT SHOULD STRIKE COUNT 33 AS AGAINST THE
     PARNASSOS NON-AGENT LENDERS BECAUSE THE
     BANKRUPTCY COURT ALREADY DISMISSED IT WITH
     PREJUDICE. ........................................................................................12

III. THE COURT SHOULD DISMISS COUNT 44 OF THE COMPLAINT. ...........13

     A.   Legal Standards For Assessing The Parnassos Non-Agent Lenders'
          Motion To Dismiss .....................................................................13

     B.   Pursuant To The Plan And Confirmation Order, This Court Must
          Dismiss The Preference Claim Against The Parnassos Non-Agent
          Lenders Because The Parnassos Non-Agent Lenders Would Be
          Indemnified Under The Parnassos Credit Agreement. .............................14

          1.   The JV Plan, which expressly adopts the indemnity
               provisions of the Parnassos Credit Agreement, requires
               dismissal of all claims that do not arise from the Parnassos
               Non-Agent Lenders' gross negligence or willful
               misconduct. .......................................................................16

          2.   As the Bankruptcy Court already found in dismissing the
               equitable subordination claim, Plaintiffs do not allege gross
               negligence or willful misconduct against the Parnassos
               Non-Agent Lenders with respect to the Parnassos Credit
               Facility. .............................................................................17

          3.   Plaintiffs' preference claim does not arise from the
               Parnassos Non-Agent Lenders' gross negligence or willful
               misconduct. .......................................................................18

C.    The Preference Claim Against The Parnassos Non-Agent Lenders Must Be Dismissed Because Plaintiffs Do Not Have Standing To Bring It. ...................................................................................................19

1.    Plaintiffs do not have standing to prosecute their preference claim on behalf of Parnassos' creditors because none of Parnassos' creditors suffered a "personal injury." .......................21

a.    Parnassos' creditors were not injured on account of Parnassos' allegedly preferential transfer. .........................21

b.    Plaintiffs cannot manufacture creditors to establish standing. ..........................................................................23

2.    Plaintiffs do not have standing to prosecute the Parnassos preference claim because the requested relief cannot redress Parnassos' creditors' injuries. ...............................25

a.    Where Parnassos cannot recover on behalf of and for the benefit of its creditors, Plaintiffs cannot pursue a preference claim on Parnassos' creditors behalf. ..............................................................................25

b.    The fact that creditors of affiliated debtor entities could benefit from a recovery on Parnassos' preference claim does not invest Plaintiffs with standing to pursue it. ..........................................................25

c.    The operation of section of the Bankruptcy Code reaffirms that Plaintiffs do not have standing to bring the Parnassos preference claim because the requested relief will not redress Parnassos' creditors' injuries. ..........................................................26

CONCLUSION .............................................................................................................28

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelphia Commc'ns Corp. v. Bank of Am., N.A.*,
　365 B.R. 24 (Bankr. S.D.N.Y. 2007) ............................................................ 10, 12, 13, 17

*Allen v. Wright*,
　468 U.S. 731 (1984) .......................................................................................... 19

*Associated Gen'l Contractors of Cal. Inc. v. Cal. State Council of Carpenters*,
　459 U.S. 519 (1983) .......................................................................................... 14

*Bartang Bank and Trust Co. v. Caiola*,
　No. 04 Civ. 2402, 2006 WL 2708453 (S.D.N.Y. Sept. 18, 2006) .................... 14

*Bear, Stearns Sec. Corp. v. Gredd*,
　275 B.R. 190 (S.D.N.Y. 2002) ...................................................................... 21, 22

*Bell Atl. Corp. v. Twombly*,
　127 S. Ct. 1955 (2007) ...................................................................................... 14

*Colotone Liquidating Trust v. Bankers Trust New York Corp.*,
　243 B.R. 620 (S.D.N.Y. 2000) .......................................................................... 22

*Corporate Food Mgt., Inc. v. Suffolk Cmty. College*,
　223 B.R. 635, (Bankr. E.D.N.Y. 1998) ............................................................ 22

*Cortec Indus., Inc. v. Sum Holding L.P.*,
　949 F.2d 42  (2d Cir.1991) ................................................................................. 3

*DaimlerChrysler Corp. v. Cuno*,
　126 S. Ct. 1854 (2006) ................................................................................ 19, 20, 21

*DeJesus v. Sears, Roebuck & Co., Inc.*,
　87 F.3d 65 (2d Cir. 1996) .................................................................................. 14

*Esoimeme v. United Airlines, Inc.*,
　369 B.R. 531 (N.D. Cal. 2007) .......................................................................... 22

*F.D.I.C. v. Colonial Realty Co.*,
　966 F.2d 57 (2d Cir. 1992) .................................................................................. 7

*Fleet Nat'l Bank v. Gray*,
　375 F.3d 51 (1st Cir. 2004) ............................................................................... 27

*Gerber v. Computer Assocs. Int'l, Inc.*,
　860 F. Supp. 27 (E.D.N.Y. 1994) ..................................................................... 13

*Hartford Ins. Co. v. Holmes Prot. Group*,
　673 N.Y.S.2d 132  (App. Div. 1998) ................................................................ 16

-iii-

*Hawkins Home Groups, Inc. v. S. Energy Homes, Inc.*,
  714 N.Y.S.2d 539 (App. Div. 2000) ................................................................ 14

*In re Adelphia Commc'ns Corp. Secs. and Derivative Litig.*,
  No. 03 MD 1529, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ................................... 13

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) ............................................................ 20

*In re Alstom SA Sec. Litig.*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006) ............................................................ 13

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
  238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y.) .......................... 25

*In re Buttes Gas & Oil, Co.*,
  182 B.R. 493 (Bankr. S.D. Tex. 1994) ........................................................... 22

*In re Forte*,
  234 B.R. 607 (Bankr. E.D.N.Y. 1999) ............................................................ 22

*In re Maxwell Commc'n Corp.*,
  170 B.R. 800 (S.D.N.Y., 1994) ................................................................. 18

*In re Messamore*,
  250 B.R. 913 (Bankr. S.D. Ill. 2000) ........................................................... 21

*In re Oceana Int'l, Inc.*,
  376 F. Supp. 956  (D.C.N.Y. 1974) .............................................................. 24

*Metro. Life Ins. Co. v. Noble Lowndes Int'l., Inc.*,
  600 N.Y.S.2d 212 (App. Div. 1993) ............................................................. 16

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ................................................................... 13

*Motor Carriers Inc., v. MCI Telecomms.*,
  231 B.R. 874 (Bankr. D. Del. 1999) ............................................................. 26

*Official Comm. of Equity Sec. Holders of Adelphia Commc'ns Corp. v. Adelphia
Commc'ns Corp.*,
  371 B.R. 660 (S.D.N.Y. 2007) ................................................................. 24

*Olin Corp. v. Consol. Aluminum Corp.*,
  5 F.3d 10 (2nd Cir. 1993) ..................................................................... 15

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (N.Y. 1995) ..................................................................... 15

*People v. Williams*,
  668 N.Y.2d. 305 (Sup. Ct. 1997) .............................................................. 15

*Raines v. Byrd*,
  521 U.S. 811 (1997) .......................................................................... 19

*Rent Stabilization Ass'n of N.Y. v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ............................................................................... 14

*Rosenberg v. XO Commc'ns, Inc.,*
    330 B.R. 394 (Bankr. S.D.N.Y. 2005) ......................................................... 22

*Siler v. N. Trust Co.,*
    80 F. Supp. 2d 906 (N.D. Ill. 2000) ............................................................. 15

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) .......................................................................................... 19

*Southgate Owners Corp. v. Pub. Serv. Mut. Ins. Co.,*
    660 N.Y.S.2d 129 (App. Div. 1997) ............................................................. 15

*State v. Barclays Bank of N.Y., N.A.,*
    563 N.E.2d 11 (N.Y. 1990) ........................................................................... 15

*Thompson v. County of Franklin,*
    15 F.3d 245 (2d Cir. 1994) ........................................................................... 14

*Union Sav. Bank v. Augie/Restivo Baking Co., Ltd.,*
    860 F.2d 515 (2d Cir. 1988) ......................................................................... 23

*Whiteford Plastics Co. v. Chase Nat'l Bank of N.Y. City,*
    179 F.2d 582 (2d Cir. 1950) ......................................................................... 25

## Statutes

11 U.S.C. § 502(h) ......................................................................................... 26, 27

11 U.S.C. § 547(b) (2006) ............................................................................. 18, 22

## Other Authorities

3 Norton Bankr. L. & Prac. 2d § 57:1 .......................................................... 18

5 *Collier on Bankruptcy*, ¶ 547.03.[2] (15th ed. rev. 2000) ...................... 21

William L. Prosser, *Torts* § 34 (4th ed. 1971) ............................................ 16

**<u>INTRODUCTION</u>**

Of the 57 claims Plaintiffs assert in their Amended Complaint, they assert just ***two*** against the Parnassos Non-Agent Lenders:[2]  an equitable subordination claim and a preference claim.  The mere presence of the equitable subordination claim in the Amended Complaint is itself remarkable, given that the Bankruptcy Court already dismissed that claim, without leave to amend, on the initial complaint.  Plaintiffs have not appealed that ruling.  They cannot now ignore that Court's prior ruling and continue to maintain their equitable subordination claim. The claim should be stricken.

That leaves just ***one*** (equally flawed) claim against the Parnassos Non-Agent Lenders — a preference claim.  By that claim, and on the basis of nine paragraphs in an Amended Complaint that contains more than 1,655 paragraphs, Plaintiffs seek to recover from the Parnassos Non-Agent Lenders more than $25 million in alleged preferential loan repayments.  They are not entitled to do so.

Preference claims are, by definition, creditor remedies that exist solely to ensure that all ***creditors*** receive a fair and equal distribution of a debtor's available assets.  A preference claim — which allows a trustee to avoid certain payments that a debtor made in the 90 days before filing for bankruptcy — arises when a debtor's payment to one creditor diminishes or depletes the assets available to satisfy other, similarly situated creditors.  Preference claims require no negligence or misconduct on the part of the paying debtor, much less on the part of the passive creditor recipient.

---

[2]   For purposes of this brief, the Non-Agent Lenders or Parnassos Non-Agent Lenders moving to dismiss are those defendants represented by Kirkland & Ellis LLP and sued in their capacity as "Syndicate Banks" or "Assignees" in relation to the Parnassos Credit Facility.  To the extent that any Kirkland & Ellis LLP represented defendant is alleged to be a "John Doe" lender in the Parnassos Credit Facility, that defendant is also a moving party here.  A list of Kirkland & Ellis LLP represented defendants in all credit facilities appears as Exhibit 22 to the Request for Judicial Notice and Joint Appendix of Exhibits.  Kirkland & Ellis LLP represents approximately 400 Non-Agent Lenders across all six credit facilities, who received payments of approximately $4.1 billion in relation to the Adelphia debt paper.  All Exhibits referenced herein are attached to the Request for Judicial Notice and Joint Appendix of Exhibits ("Joint App."), filed concurrently.

In light of these principles, the Court should dismiss Plaintiffs' preference claim against the Parnassos Non-Agent Lenders for two reasons.  *First*, Parnassos' plan of reorganization — which expressly adopts as new the lender-indemnity provisions contained in the Parnassos Credit Agreement — requires the Court to dismiss all claims Plaintiffs make against the Parnassos Non-Agent Lenders relating to the Parnassos Credit Agreement, unless those claims arise from the "particular" Parnassos Non-Agent Lenders' individual gross negligence or willful misconduct. Because Plaintiffs never allege that the Parnassos Non-Agent Lenders did anything improper, and because the preference claim, by definition, does not arise from the Parnassos Non-Agent Lenders' gross negligence or willful misconduct (but rather arises on account of scheduled loan repayments), Parnassos' plan requires that the preference claim be dismissed.

*Second*, Plaintiffs do not have standing to bring a preference claim on Parnassos' creditors' behalf.  Again, preference claims are intended to remedy creditor injury by ensuring equal distribution of a debtor's assets among similarly situated creditors.  Thus, to establish standing, Plaintiffs must allege and prove both that Parnassos' allegedly preferential loan repayments caused at least one Parnassos creditor to receive less than it would have absent the repayments, and that this lawsuit can redress that injury.  They have not so alleged, nor could they.  Parnassos has paid, or has reserved amounts sufficient to pay, all of its creditors in full. By definition, therefore, the allegedly preferential loan repayments did not result in the sort of unequal distribution that would cause injury to any creditor of Parnassos.  But even if they had, this lawsuit could not redress any such injury because Parnassos' creditors will not be entitled to receive any recovery from this litigation; instead, any recovery will inure only to the benefit of Parnassos' corporate great grandparents and their creditors.  Accordingly, Plaintiffs do not have standing to assert their Parnassos preference claim.  It must be dismissed.

## I.    BACKGROUND FACTS

### A.    The Parnassos Credit Facility

Parnassos, L.P. ("Parnassos"), as borrower, entered into a $700 million facility in December 1998 with various lenders, comprising a $350 million term loan and a $350 million

revolving line of credit (the "Parnassos Credit Agreement").[3]  Am. Compl. ¶ 819.  The Parnassos Credit Agreement, along with all Guaranties, Pledge Agreements, and related agreements are referred to as the "Parnassos Credit Facility."   As of the Petition Date, approximately $623 million was outstanding under the Parnassos Credit Facility.  *Id*. ¶ 821.

Unlike some of the other credit facilities implicated in this lawsuit, the Parnassos Credit Facility was not a so-called "co-borrowing facility."  *Id*. ¶ 815.  This means that neither the Rigas Family nor any of its privately-owned companies were able to borrow funds from the Parnassos Credit Facility.  And Plaintiffs never allege that the Rigas Family did, in fact, access any funds from the Parnassos Credit Facility.

As part of the consideration provided in exchange for the $700 million credit facility, Parnassos agreed that if any claims were asserted against a lender thereto (including a Non-Agent Lender) on the basis of its involvement in the Parnassos Credit Facility, Parnassos would indemnify and defend that lender from and against all claims, losses, damages and expenses, including attorneys' fees, unless the claim arose by reason of that individual lender's gross negligence or willful misconduct.  Joint App., Ex. 5 § 10.4 (Parnassos Credit Agreement);[4] *see also* Ex. 5 § 10.11.1 (Parnassos Credit Agreement) (extending Lender status under the Agreement to Non-Agent Lenders who purchase the debt in the secondary market).  Section 10.4 of the Parnassos Credit Agreement states in relevant part:

> [T]he Borrower hereby indemnifies, exonerates and holds each Secured Party [which includes Lenders] and each of their respective officers, directors, employees and agents (collectively, the "Indemnified Parties") free and harmless from and against any and all actions, causes of action, suits, losses, costs, liabilities and damages, and expenses incurred in connection therewith (irrespective of whether any such Indemnified Party

---

[3]  Other indirect ACC subsidiaries pledged their respective partnership interests in Parnassos to secure repayment. *See* Am. Compl. ¶ 819.

[4]  "[O]n a motion to dismiss, a court may consider certain documents in addition to the complaint, including the contents of any documents attached to the complaint or incorporated by reference." *Adelphia Commc'ns Corp. v. Bank of Am., N.A.* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 34 (Bankr. S.D.N.Y. 2007); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992).

is a party to the action for which indemnification hereunder is sought), including reasonable attorneys' fees and disbursements, whether incurred in connection with actions between or among the parties hereto or the parties hereto and third parties (collectively, the "Indemnified Liabilities"), incurred by the Indemnified Parties or any of them as a result of, or arising out of, or relating to

(a) any transaction financed or to be financed in whole or in part, directly or indirectly, with the proceeds of any Credit Extension, including all Indemnified Liabilities arising in connection with the entering into and performance of this Agreement;

(b) the entering into and performance of this Agreement and any other Loan Document by any of the Indemnified Parties (including any action brought by or on behalf of the Borrower as the result of any determination by the Required Lenders pursuant to Article V not to fund any Credit Extension, provided that any such action is resolved in favor of such Indemnified Party);

(c) any investigation, litigation or proceeding related to any acquisition or proposed acquisition by the Borrower or any of its Subsidiaries of all or any portion of the stock or assets of any Person, whether or not an Indemnified Party is party thereto;

. . .

except for any such Indemnified Liabilities **_arising for the account of_** a **_particular_** Indemnified Party by reason of **_the relevant Indemnified Party's gross negligence or willful misconduct_** . . . .

*Id.* § 10.4 (Parnassos Credit Agreement) (emphasis added).  Parnassos also agreed to the same indemnification obligations for each purchaser of the Parnassos debt in the secondary market. Section 10.11.1 of the Parnassos Credit Agreement states, in relevant part, "[f]rom and after the date that the Administrative Agent accepts [a] Lender Assignment Agreement . . . the Assignee Lender thereunder shall be deemed automatically to have become a party [to the Parnassos Credit Agreement] and to the extent that rights and obligations hereunder have been assigned and delegated to such Assignee Lender in connection with such Lender Assignment Agreement, shall have the rights and obligations of a Lender [under the Parnassos Credit Agreement] and under the other Loan Documents."  Moreover, each lender's right to indemnity from Parnassos survived any assignment from one lender to another, as well as the termination of the Parnassos Credit Agreement. *Id.* § 10.5.

**B.      Parnassos' Confirmed Plan Of Reorganization And Indemnity Provisions**

Almost four years after entering into the Parnassos Credit Facility, Parnassos filed a voluntary Chapter 11 bankruptcy case in the Bankruptcy Court for the Southern District of New York on June 25, 2002.  Am. Compl. ¶ 1067.  The Bankruptcy Court jointly administered Parnassos' bankruptcy case with those of other Adelphia entities who had also filed for bankruptcy.  *See* Joint App., Ex. 7 (Joint Administration Order).

In April 2005, each of the Adelphia entities agreed to sell substantially all of their assets, including (to the extent they held any) their equity in Parnassos and certain other entities held in a joint venture (collectively, the "JV Entities"), to Time Warner NY Cable LLC and Comcast Corporation (together, the "Buyers").  Joint App., Ex. 8 at DSS2-8 (Second Disclosure Statement Supplement).  Pursuant to that agreement, the Buyers required the Adelphia entities to consummate the agreed-upon sale through a confirmed plan of reorganization by no later than July 31, 2006.  *Id.*

That was easier said than done.  After a year of trying to formulate and confirm a joint plan of reorganization that would appease the creditors of more than 250 separate entities, the Adelphia entities and the Buyers ultimately agreed upon an alternative path.  *Id.*  Rather than continue trying to push through a plan for all Adelphia entities before the deadline, the parties agreed that they would consummate the sale through (i) a plan of reorganization (the "JV Plan") that dealt only with the JV Entities, including Parnassos; and (ii) a separate Bankruptcy Court order permitting the remaining Adelphia entities to sell their assets to the Buyers free and clear of liens.  *Id.* at DSS2-9.  Not surprisingly, the JV Plan received the support necessary for confirmation; it did, after all, provide that *all* JV Entity creditors would be *paid in full*, in cash, from the sale proceeds and that substantial funds would be generated for the JV Entities' equity holders.  *Id.*

Several provisions of the JV Plan are particularly relevant to this lawsuit.  *First,* the JV Plan cancels and extinguishes the Parnassos Credit Facility as it relates to the Parnassos Debtors (Joint App., Ex. 21 § 6.07 (JV Plan)), with one important caveat.  The JV Plan expressly

obligates Parnassos to indemnify each of its Non-Agent Lenders on virtually the same terms as were contained in the now extinguished Parnassos Credit Agreement.[5]  It does this through the definition of "Dismissed Bank Actions," which provides:

> Dismissed Bank Actions means the Bank Actions [which term includes this litigation] or one or more Claims asserted therein, if any: . . . (ii) with respect to a particular defendant as to which there is a determination by a court of competent jurisdiction pursuant to a Final Order that such defendant as to such Bank Actions, is (or would be, but for any limitation on indemnification pursuant to the Plan) entitled to indemnification (*whether under a Prepetition Credit Agreement* or under another agreement or principle of law), either by a Debtor or by a Person who is (or would be, but for any limitation on indemnification pursuant to the Plan) entitled to indemnification by a Debtor, but only to the extent of such indemnification.

*Id.* at 11 (emphasis added) (referencing "Prepetition Credit Agreement" as basis for indemnification).  Additionally, the JV Plan also states "on the Effective Date, all Dismissed Bank Actions shall, with respect to the Debtor Parties only, be ***dismissed . . . with prejudice*** and the Debtor Parties shall be deemed to release the Bank Lenders with respect to the Dismissed Bank Actions, effective as of the Effective Date."  *Id.* § 6.04(b)(ii) (emphasis added).  Thus, under the JV Plan, the Parnassos Non-Agent Lenders are entitled to dismissal of the preference claim to the extent that Parnassos would have been required to indemnify them under the now extinguished Parnassos Credit Agreement.

***Second***, the JV Plan effectuated the JV Entities' assignment of certain claims and causes of action (including the causes of action implicated in this lawsuit) to "Distribution Companies," who could then prosecute them on the JV Entities' behalf.  *Id.* § 7.03(a).  ***Third,*** the JV Plan required these Distribution Companies to assume any intercompany claims (after paying all of the JV Entities' creditors in full) against Parnassos and to treat them as provided in any subsequent resolution to the then-ongoing dispute regarding the validity of intercompany claims. *Id.* § 4.92.

---

[5]   The one change in Parnassos' indemnity obligation under the JV Plan is that the Parnassos Non-Agent Lenders may no longer seek money damages under the indemnification clauses.  See id. §§ 6.04(b)(iv), 7.03(b).

***Finally***, the JV Plan did not effectuate a merger or so-called "substantive consolidation" of the JV Entities (or, for that matter, any of the Adelphia entities).[6]  Rather, the JV Plan specifically provides that each JV Entity remains a ***separate legal entity*** and that the JV Plan does not effectuate any substantive consolidation of the estates.  *See id*. § 5.01.  That means that each debtor, including Parnassos, is responsible only for satisfying its own creditors' claims — no more, no less.  *Id*.

Parnassos has had ample funds to satisfy its creditors' claims.[7]  The following chart summarizes the JV Plan's treatment of the various classes of Parnassos creditors — showing that all are or will be paid in full.

| Class of Claims | Treatment Under The JV Plan |
|---|---|
| Other Priority Claims | An amount equal to payment in full, in cash.  Joint App., Ex. 21 § 4.01(b) (JV Plan). |
| Secured Tax Claims | An amount equal to payment in full, in cash or other consideration.  Joint App., Ex. 21 § 4.02(c) (JV Plan). |
| Other Secured Claims | Paid in full, in cash, with postpetition interest or satisfaction by the Buyers under the sale agreement.  Joint App., Ex. 21 § 4.03(b) (JV Plan). |
| Parnassos Bank Claims | An amount equal to payment in full, in cash, with postpetition interest (but subject to disgorgement).  Joint App., Ex. 21 § 4.17(c) (JV Plan). |
| Parnassos Trade Claims | An amount equal to payment in full, in cash, with postpetition interest *or* satisfaction by the Buyers under the sale agreement.  Joint App., Ex. 21 § 4.18(b) (JV Plan). |

---

[6]  Substantive consolidation occurs when the assets and liabilities of two or more distinct bankruptcy entities are combined in a single pool and treated as if they belong to one entity.  Therefore, substantive consolidation generally results in the satisfaction of liabilities from the resulting common fund of assets and also the elimination of intercompany claims between and among the substantively consolidated entities.  *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 58-59 (2d Cir. 1992).

[7]  Even Parnassos' equity holders were unimpaired under the Main Plan.  *See* Joint App., Ex. 21 § 4.20 (JV Plan).

| Class of Claims | Treatment Under The JV Plan |
|---|---|
| Parnassos Other Unsecured Claims | An amount equal to payment in full, in cash, with postpetition interest *or* satisfaction by the Buyers under the sale agreement.  (Joint App., Ex. 21 § 4.19(b) (JV Plan)) |

### C.      The Plan of Reorganization For The Remaining Adelphia Entities

After the sale closed on July 31, 2006, the remaining Adelphia entities attempted once again to negotiate a joint plan of reorganization.  After months of additional negotiations, they reached the compromise embodied in the First Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of Its Affiliated Debtors (the "Main Plan"), which the Bankruptcy Court ultimately confirmed on January 5, 2007.  Joint App., Ex 8 at DSS2-12–DSS2-13 (Second Disclosure Statement Supplement); *see also* Joint App., Ex. 10 (Main Plan).  The Main Plan, like the JV Plan, did not effectuate a substantive consolidation of the debtors party thereto; each remains a separate legal entity.  Joint App., Ex. 10 § 2.2 (Main Plan).

The Main Plan calls for the participating Adelphia entities to create a Contingent Value Vehicle (the "CVV"), and assigns certain creditors and equity holders (notably, none of whom are Parnassos creditors or equity holders) an interest in the CVV.  *See id.* § 9.1.  The CVV is comprised of, among other things, (i) the claims and causes of action held by the Adelphia entities party to the Main Plan; and (ii) the claims and causes of action held by the JV Plan's Distribution Companies, to the extent the proceeds of those claims and causes of action are unnecessary to satisfy a JV Entity's creditors.  *Id.* §§ 8.9, 9.2.  Of course, because Parnassos' creditors were paid in full, no proceeds from this litigation will be necessary to satisfy Parnassos' creditors, and as a result any and all recovery will flow to the CVV for the benefit of CVV beneficiaries.  Am. Compl. ¶¶ 1370-1390, 1470-1475.

The Main Plan also embodies a global resolution of alleged intercompany claims amongst the various Adelphia entities.  Pursuant to that global resolution, all Adelphia entities

(including the JV Entities) released all claims or potential claims they may have held against any other Adelphia entity.  Joint App., Ex. 10 §§ 2.3, 5.3 (Main Plan).

### D.     The Initial Complaint And Subsequent Motions To Dismiss

In the midst of the bankruptcy case, the Unsecured Creditors Committee, on behalf of Parnassos and certain other Adelphia affiliates (collectively, the "Plaintiffs"),[8] filed suit against hundreds of parties, including some Parnassos Non-Agent Lenders.  Plaintiffs asserted, on Parnassos' behalf, several claims, including a preference claim under Section 547 of the Bankruptcy Code and a claim for equitable subordination.  Given the sheer number of defendants named in the suit, the Bankruptcy Court entered a briefing schedule requiring the "administrative agents" of each credit facility, including the Parnassos Credit Facility, to file the first round of motions to dismiss.  *See* Joint App., Ex. 19 at 4-5 (Briefing Schedule Order).  The briefing schedule contemplated that the remaining parties, including the Parnassos Non-Agent Lenders, would file their own motions to dismiss once the first round of motions had been decided.  *Id*. at 5-6.  This motion is the Parnassos Non-Agent Lenders' first legal challenge to Plaintiffs' allegations.

The Bank of Nova Scotia ("BNS"), as the administrative agent to the Parnassos Credit Facility, filed its motion to dismiss the Complaint as to the Parnassos lenders on October 3, 2003.  In its brief, BNS argued (among other things) that (i) the allegations against the Parnassos Lenders did not support a finding of wrongdoing, and as a result, Plaintiffs, on behalf of Parnassos, could not maintain their equitable subordination claim; and (ii) the initial complaint itself demonstrated that the payments subject to the preference claim were made in the ordinary course of business pursuant to Bankruptcy Code Section 547(c)(2).  BNS Mot. to Dismiss, Docket No. 15 in Case No. 03-04942 (Bankr. S.D.N.Y.).

---

[8]   After the Bankruptcy Court confirmed the Main Plan, the Adelphia Recovery Trust (the "ART"), on behalf of Parnassos and certain other Adelphia affiliates, took over as the Plaintiffs in this action.

The Bankruptcy Court decided BNS' motion (as well as those of the other administrative agents) in June 2007. *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007). As part of that decision, the Court dismissed Plaintiffs' equitable subordination claim in relation to the Parnassos Credit Facility on the basis that the Complaint contained "insufficient allegations of wrongdoing" with respect to the Parnassos Credit Facility. *Id.* at 70. At the same time, it let stand Plaintiffs' preference claim (brought on Parnassos' behalf) on the basis that it could not determine, as a matter of law, whether the ordinary course defense could apply to the preference claims Plaintiffs alleged in the initial complaint. *Id.* at 79.

### E.   The Amended Complaint And Absence Of Any Alleged Wrongdoing By The Parnassos Non-Agent Lenders

Plaintiffs filed an Amended Complaint on October 31, 2007, more than 15 months after the JV Plan became effective. Plaintiffs assert against the Parnassos Non-Agent Lenders, on Parnassos' behalf, a preference claim under Section 547 of the Bankruptcy Code and (apparently in error, given its earlier dismissal) a claim for equitable subordination and disallowance. Am. Compl. ¶¶ 1370-1390, 1470-1475. As relief, Plaintiffs seek to avoid and recover certain allegedly preferential loan repayments Parnassos made to the Parnassos Non-Agent Lenders during the 90 days before its bankruptcy filing. *Id.* ¶¶ 1471, 1475. Notably, because the Plan provides that any recovery Plaintiffs receive on the Parnassos preference claim will be distributed to the beneficiaries of the CVV — which do not include Parnassos' creditors — Parnassos' creditors will receive nothing on account of this action. *See* Joint App., Ex. 10 §§ 9.2-9.3 (Main Plan).

The Amended Complaint contains 1,655 paragraphs and is nearly 500 pages long. Allegations regarding the lenders' involvement in the Parnassos Credit Facility, including the rote element allegations of the preference count, comprise just nine paragraphs of the Amended Complaint. Am. Compl. ¶¶ 819-821, 1470-1475. In these nine paragraphs, Plaintiffs allege merely the existence of the Parnassos Credit Facility, the amount outstanding under the facility at

the time of the bankruptcy, and the amount of the loan repayments Parnassos made to its lenders during the 90 days before its bankruptcy. *See id*. ¶¶ 1470-1475. They also take one paragraph to identify approximately 25 lenders to the Parnassos Credit Facility — including the administrative and nominal agents, but only a handful of Parnassos Non-Agent Lenders. *Id*. ¶ 820.

Despite the absence of any meaningful factual allegations regarding the Parnassos Non-Agent Lenders, Plaintiffs attempt to create the impression that the Parnassos Non-Agent Lenders somehow were "bad" (and thus are likely to argue that they are not entitled to indemnity under the Parnassos Credit Agreement or dismissal under the JV Plan) by lumping them in with lenders to the various co-borrowing facilities (i.e., those credit facilities that included Rigas Family Entities). To do this, they slide overarching definitional terms like "Defendants" or "Non-Co-Borrowing Lenders" (which include the Parnassos Non-Agent Lenders) into paragraphs that, while replete with factual allegations of wrongdoing against some parties (primarily the Rigas Family and Adelphia itself), in no way discuss or relate to the Parnassos Non-Agent Lenders. Perhaps one of the most blatant examples of this tactic occurs in paragraph 1015, where Plaintiffs allege (emphasis added):

> Through the CMS, the **Rigas Family misappropriated** over $3.4 billion from the Co-Borrowing Facilities for its own benefit. Adelphia's banking and wire transfer records reflect that the Rigas Family obtained funds from the Co-Borrowing Facilities by transferring funds from the CMS to an account maintained at Wachovia by Highland Holdings or some other RFE, followed by a transfer from the RFE either directly to individual members of the Rigas Family or to other RFEs, many of which also maintained accounts at Wachovia. Typically, these transfers occurred on the same business day. Thus, on any given business day in which an RFE received cash transfers from Adelphia, the RFE's account balance at Wachovia would fluctuate from zero, to the amount transferred in from Adelphia, and back to zero after the RFE funneled those funds out to the Rigas Family. **Defendant Wachovia**, an agent bank or lender under each of Adelphia's credit facilities (including the Co-Borrowing Facilities), thus was in a **unique position to observe** the fraudulent transfer of funds from Adelphia to the Rigas Family. **In accordance with its role as an Agent Bank, Wachovia, upon information and belief, shared its knowledge of these transactions with other Co-Borrowing and Non-Co-Borrowing Lenders**.

This paragraph, like others of its kind, attempts, merely on information and belief, to impart the Rigas Family's intent and Wachovia's alleged knowledge of that intent (based solely on the fact

-11-

that it held the accounts for Adelphia's cash management system) on the Parnassos Non-Agent Lenders by use of a simple conclusory summary statement — without any facts that even suggest that the statement could be true.

The paucity of Plaintiffs' "allegations" specifically regarding the Parnassos Non-Agent Lenders and their participation in the Parnassos Credit Facility — and the complete absence of any factual allegations regarding their wrongdoing — is indicative of the fact that Parnassos and the Parnassos Credit Facility are wholly tangential to the story of woe that Plaintiffs attempt to plead in the Amended Complaint.[9]  As contrasted with Plaintiffs' claims attempting to implicate the Agent Banks of the various co-borrowing facilities, which allegations focus on the Rigas Family and Adelphia's alleged orchestration of fraud on innocent creditors and investors, Plaintiffs' claim against the Parnassos Non-Agent Lenders seeks only the technical remedy of avoiding and recovering allegedly preferential loan repayments made in the 90 days before bankruptcy.  *See, e.g.*, Am. Compl. ¶¶ 1-17, 1470-1475.  The pages upon pages of allegations relating to the co-borrowing facilities are simply not relevant to the preference allegations against the Parnassos Non-Agent Lenders.

## II.   THE COURT SHOULD STRIKE COUNT 33 AS AGAINST THE PARNASSOS NON-AGENT LENDERS BECAUSE THE BANKRUPTCY COURT ALREADY DISMISSED IT WITH PREJUDICE.

On June 11, 2007, the Bankruptcy Court dismissed, with prejudice, Count 33 of the initial complaint, which set forth Plaintiffs' equitable subordination and equitable disallowance claims against the lenders to the Parnassos Credit Facility.  *See Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 365 B.R. 24, 70 (Bankr. S.D.N.Y. 2007).  The Bankruptcy Court concluded that there were "insufficient allegations of inequitable conduct in connection with [the Parnassos Credit Facility] to support equitable subordination."[10]  Plaintiffs

---

[9]   In fact, other than in its claim for relief, the Amended Complaint only references Parnassos or the Parnassos Credit Facility in three paragraphs:  paragraphs 819, 820, and 821.

[10]   Although Judge Gerber's opinion mistakenly cites Claim 39 — as opposed to Claim 33 — in the section of the opinion where he discusses the dismissal of the Parnassos equitable subordination claim, the opinion itself is clear

(Continued…)

did not seek interlocutory appeal.  Nonetheless, Plaintiffs reasserted equitable subordination and equitable disallowance claims against the Parnassos Non-Agent Lenders in their Amended Complaint.  *See* Am. Compl. Count 33 (pleaded against "all Defendants").  This is improper.

"Once a count is dismissed . . . against certain parties it no longer should appear against those parties."  *Gerber v. Computer Assocs. Int'l, Inc.*, 860 F. Supp. 27, 29 (E.D.N.Y. 1994).  A dismissed claim, which is repled, should be stricken.  *See In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 216-17 (S.D.N.Y. 2006) ("strik[ing] portions of the complaint relating to previously dismissed claims and parties.").  Because the Bankruptcy Court has already dismissed, with prejudice, Count 33 as it relates to the Parnassos Lenders, this Court should strike it from the Amended Complaint.[11]

## III.   THE COURT SHOULD DISMISS COUNT 44 OF THE COMPLAINT.

### A.   Legal Standards For Assessing The Parnassos Non-Agent Lenders' Motion To Dismiss

The Court, in reviewing the Amended Complaint in response to the Parnassos' Non-Agent Lenders' Rule 12(b) motion to dismiss, must accept as true the *factual* allegations of the Amended Complaint, and draw all inferences in favor of it.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).  Plaintiffs' Amended Complaint must "provide 'plausible grounds' for the allegations with 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support them."  *In re Adelphia Commc'ns Corp. Secs. and Derivative Litig.*, No. 03 MD 1529, 2007 WL 2615928, at *1 (S.D.N.Y. Sept. 10, 2007) (McKenna, J.)

---

that Judge Gerber intended for Claim 33 to be dismissed with respect to the Parnassos Credit Facility.  First, the section in which the decision occurs is titled, "Equitable Subordination and Disallowance Claims (Claim 33)."  *In re Adelphia Commc'ns Corp.*, 365 B.R. at 67.  Moreover, the chart at the end of the opinion, which Judge Gerber expressly incorporates into his conclusion, states that Claim 33 is dismissed with respect to the Parnassos Credit Facility.  *See id.* at 81.

[11]   In the event the Court chooses to not strike this improperly repled count, the Parnassos Non-Agent Lenders reiterate that the Amended Complaint contains **no factual allegations of any wrongdoing at all by the Parnassos Non-Agent Lenders** — and certainly none that would support claims for equitable subordination and disallowance.  Movants incorporate by reference the arguments made in the CCH Non-Agent Lenders' Motion To Dismiss Part V, filed concurrently, articulating why this count should be dismissed.

(quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  Courts should not assume that plaintiffs can prove facts they have not alleged.  *See Associated Gen'l Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Factually unsupported and conclusory allegations are not adequate to state a claim.  *See DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996).

Courts in the Second Circuit have found dismissal for lack of standing to be properly raised by Rule 12(b)(1) and Rule 12(b)(6) motions.  *See Rent Stabilization Ass'n of N.Y. v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993) (noting that district courts in the Second Circuit have dismissed for lack of standing under both Rule 12(b)(1) and Rule 12(b)(6)); *Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir. 1994) (same).  In either case, "like other jurisdictional inquiries, [standing] cannot be inferred argumentatively from averments in the pleadings, but rather must appear affirmatively in the record, so that, on a motion to dismiss, it is the burden of the party asserting standing to sue clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  *Bartang Bank and Trust Co. v. Caiola*, No. 04 Civ. 2402, 2006 WL 2708453, at *4 (S.D.N.Y. Sept. 18, 2006) (quoting *Thompson*, 15 F.3d at 249) (internal punctuation omitted).  If after considering all relevant materials this Court cannot discern a basis for Plaintiffs' standing, the Amended Complaint must be dismissed.  *See Thompson*, 15 F.3d at 249.

> **B.** **Pursuant To The Plan And Confirmation Order, This Court Must Dismiss The Preference Claim Against The Parnassos Non-Agent Lenders Because The Parnassos Non-Agent Lenders Would Be Indemnified Under The Parnassos Credit Agreement.**

In interpreting indemnification clauses, New York[12] courts "first look to the express contract language used" to effectuate the intention of the parties.  *Hawkins Home Groups, Inc. v. S. Energy Homes, Inc.*, 714 N.Y.S.2d 539, 540 (App. Div. 2000).  "[W]here the language of a

---

[12]  The Parnassos Credit Agreement is governed by New York law.  *See* Joint App., Ex. 5 § 10.9 (Parnassos Credit Agreement).

contract is clear and unambiguous, the court will construe and discern that intent from the document itself as a matter of law." *Id.*; *see also Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 16 (2nd Cir. 1993). And "in the absence of countervailing public policy concerns, there is no reason to relieve [sophisticated parties] of the consequences of their bargain. If they are dissatisfied with the consequences of their agreement, 'the time to say so [was] at the bargaining table.'" *Southgate Owners Corp. v. Pub. Serv. Mut. Ins. Co.*, 660 N.Y.S.2d 129, 131 (App. Div. 1997) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 695 (N.Y. 1995)).

In addition, futile indemnification actions have long been disfavored by courts. *See State v. Barclays Bank of N.Y., N.A.*, 563 N.E.2d 11, 14 (N.Y. 1990) (reasoning that a particular course of action would avoid circuity of action); *see also Siler v. N. Trust Co.*, 80 F. Supp. 2d 906, 908 (N.D. Ill. 2000) ("A circuity of obligation will defeat a plaintiff's claim as a matter of law. A circuity is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendants for claims including the plaintiff's own claim."). Moreover, courts seek to avoid parties undertaking vain or useless acts. *See People v. Williams*, 668 N.Y.2d. 305, 306 (Sup. Ct. 1997) (reasoning that a hearing should be denied because the law does not compel one to do "vain or useless" things).

For these very reasons, the JV Plan makes clear that Plaintiffs cannot maintain their preference claim against the Parnassos Non-Agent Lenders if those lenders would have been entitled to indemnification for that claim under the now extinguished Parnassos Credit Agreement. *See* Joint App., Ex. 21 § 6.04(b)(ii) (JV Plan). And for at least two reasons, the Parnassos Non-Agent Lenders would have been entitled to indemnity. ***First***, as the Bankruptcy Court already found when it dismissed Plaintiffs' equitable subordination and equitable disallowance claims against the Parnassos Lenders, Plaintiffs have not alleged that the Parnassos Non-Agent Lenders acted in any improper way. So, there is no basis for any exception to Parnassos' indemnity obligation. ***Second***, preference claims themselves, by definition, do not arise from any party's gross negligence or willful misconduct. Rather, they arise simply on

account of the fact that a debtor's payment to one creditor diminishes the assets it has available for distribution to other creditors. Thus, without a single allegation that the Parnassos Non-Agent Lenders acted with gross negligence or willful misconduct, and with one remaining cause of action that does not even require such allegations, the Parnassos Non-Agent Lenders are entitled to indemnification and, therefore, dismissal.

> **1.     The JV Plan, which expressly adopts the indemnity provisions of the Parnassos Credit Agreement, requires dismissal of all claims that do not arise from the Parnassos Non-Agent Lenders' gross negligence or willful misconduct.**

The Parnassos Credit Agreement obligates Parnassos to indemnify each Parnassos Non-Agent Lender from all actions, costs, damages, and expenses arising out of or relating to the Parnassos Credit Facility. *See* Joint App, Ex. 5 § 10.4 (Parnassos Credit Agreement). The only exception to Parnassos' indemnity obligation is the extent to which a claim against a Non-Agent Lender arises from that individual lender's gross negligence or willful misconduct. *See id.* Gross negligence requires acting in a manner that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. *See e.g.*, *Hartford Ins. Co. v. Holmes Prot. Group*, 673 N.Y.S.2d. 132, 133 (App. Div. 1998). Willful misconduct requires intentionally committing an act of an unreasonable character in disregard of a risk known or so obvious and so great as to make it highly probable that harm would follow. *See e.g.*, *Metro. Life Ins. Co. v. Noble Lowndes Int'l., Inc.*, 600 N.Y.S.2d 212, 216 (App. Div. 1993) (citing William L. Prosser, *Torts* § 34 (4th ed. 1971)). Said another way, unless the claim against a Parnassos Non-Agent Lender relating to the Parnassos Credit Facility arises from that particular Parnassos Non-Agent Lender's "bad acts" (i.e. gross negligence or willful misconduct), the Parnassos Credit Agreement requires Parnassos to indemnify that Non-Agent Lender against all losses as a result of, arising out of, or relating to that claim.

Having already agreed to indemnify the Parnassos Non-Agent Lenders in the Credit Agreement, Parnassos agreed to it a second time in the JV Plan. Although the JV Plan cancels and extinguishes the Parnassos Credit Agreement with respect to Parnassos, the JV Plan

expressly provides for Parnassos to indemnify the Non-Agent Lenders on virtually the same terms as in the Parnassos Credit Agreement.  Joint App., Ex. 21 at 11 (JV Plan) (stating that one criterion of Dismissed Bank Actions is whether the party would be entitled to indemnification "under a Prepetition Credit Agreement").  The one change in Parnassos' indemnity obligation under the JV Plan is that the Parnassos Non-Agent Lenders may no longer seek money damages under the indemnification clauses.  *See id.* §§ 6.04(b)(iv), 7.03(b).  Instead, upon establishing their right to indemnification from Parnassos in "a court of competent jurisdiction," any indemnified claims against the Parnassos Non-Agent Lenders must be dismissed.  *See id.* at 11. In short, if Plaintiffs' preference claim against a Parnassos Non-Agent Lender does not arise from that "particular" Non-Agent Lender's gross negligence or willful misconduct, the JV Plan requires that it be dismissed.

> **2.    As the Bankruptcy Court already found in dismissing the equitable subordination claim, Plaintiffs do not allege gross negligence or willful misconduct against the Parnassos Non-Agent Lenders with respect to the Parnassos Credit Facility.**

Plaintiffs do not allege any facts that the Parnassos Non-Agent Lenders — passive investors in an arms-length financial transaction — engaged in either gross negligence or willful misconduct.  While Plaintiffs tell two stories of fraud at Adelphia, one of which focuses on the Rigas Family's abuse of the Adelphia Cash Management System and one of which focuses on allegations regarding the structure of the co-borrowing facilities, Plaintiffs never allege facts that the Non-Agent Lenders to the earlier, non-co-borrowing Parnassos Credit Facility knew of or participated in any of this.  It is for this very reason that the Bankruptcy Court dismissed, with prejudice, Plaintiffs' equitable subordination claim against the Parnassos Lenders, finding that the complaint contained "***insufficient allegations of inequitable conduct*** in connection with [the Parnassos Credit Facility] to support equitable subordination."  *See In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 70 (Bankr. S.D.N.Y. 2007) (emphasis added).  With the Bankruptcy Court's finding, and the utter lack of a single allegation of any wrongdoing whatsoever by the Parnassos

Non-Agent Lenders, there is no exception to the Non-Agent Lenders' rights to indemnity and they are entitled to dismissal from this case.

### 3. Plaintiffs' preference claim does not arise from the Parnassos Non-Agent Lenders' gross negligence or willful misconduct.

By their very definition, preference claims do not arise out of any party's gross negligence or willful misconduct.

> [T]he law of preferences frequently reverses and avoids transactions that are entirely valid outside of bankruptcy. . . . [T]hese transfers violate neither overt moral, nor explicit legal proscriptions.  Rather, they may be fully consistent with principles of debt collection, but nevertheless avoidable in bankruptcy.  *Generally, the debtor's or creditor's motives with respect to preferential transfers are irrelevant. . . . The effect of the transfer rather than the intent is the controlling factor*.

3 Norton Bankr. L. & Prac. 2d § 57:1 (emphasis added); *see also In re Maxwell Commc'n Corp.*, 170 B.R. 800, 808 (S.D.N.Y. 1994) ("[I]t is the effect of the transaction, rather than the debtor's or creditor's intent or state of mind in making the transfer, that is controlling.").  Instead, preference claims arise when the result of a pre-bankruptcy transaction is that one creditor receives more than other similarly situated creditors.  *See* 11 U.S.C. § 547(b) (2006).[13]  Because preference claims, by definition, do not arise from any party's gross negligence or willful misconduct, the Parnassos Credit Agreement requires Parnassos, as a matter of law, to indemnify the Parnassos Non-Agent Lenders on account of the preference claims asserted herein.  That indemnification obligation triggers the JV Plan's dismissal provisions, which requires dismissal of the preference claim here.

In sum, because Plaintiffs' preference claim do not arise from the Parnassos Non-Agent Lenders' gross negligence or willful misconduct — and because the Amended Complaint contains no allegations of such wrongful acts — the Parnassos Non-Agent Lenders are entitled to

---

[13] To plead a preference claim, Plaintiffs must allege (1) a transfer of debtor's interest in property, (2) to or for the benefit of a creditor, (3) for or on account of antecedent debt, (4) made while debtor was insolvent, (5) made on or within 90 days prior to petition date, (6) that enabled creditor to receive more than this creditor would have received in Chapter 7 liquidation.  *See* 11 U.S.C. § 547(b).

indemnification for the preference claim Plaintiffs assert against them.  Plaintiffs' pursuit of the Parnassos preference claim is, therefore, circuitous and wasteful of the Court's and the parties' time because the Non-Agent Lenders' indemnification rights require that this Court dismiss the preference claim in accordance with the JV Plan.  The Court should therefore dismiss the preference claim.[14]

### C.    The Preference Claim Against The Parnassos Non-Agent Lenders Must Be Dismissed Because Plaintiffs Do Not Have Standing To Bring It.

There is yet another reason to dismiss the preference claim:  Plaintiffs have no standing to bring it.  "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).  To establish an actual case or controversy, a litigant seeking relief in the federal courts "must allege ***personal injury*** fairly traceable to the defendant's allegedly unlawful conduct and ***likely to be redressed*** by the requested relief."  *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006) (emphasis added) (citing *Allen v. Wright*, 468 U.S. 731, 751 (1984)).  Where a litigant fails to make these fundamental allegations, the federal courts have no subject matter jurisdiction over its claim, and the claim must be dismissed.  *Simon*, 426 U.S. at 37-38.

Plaintiffs (under the guise of a non-existent, agglomerated "Adelphia") assert a preference claim in this case on behalf of and for the benefit of Parnassos' creditors.[15]  To

---

[14]  As discussed in the CCH Non-Agent Lenders' Motion to Dismiss, Plaintiffs have previously argued that liability can be found against innocent down stream purchasers who purchased "tainted" debt.  *See* CCH Motion to Dismiss, Part III.D (which argument is incorporated herein to the extent the Court finds it relevant).  As discussed there, even if the Court finds that an "*Enron* taint" exists, that theory of liability is limited to actions for equitable subordination and has no application here.

[15]  In earlier motions filed in this case, Plaintiffs have asserted that all payments they seek to avoid "were funneled through one debtor entity, Adelphia Communications LLC, also known as the 'Bank of Adelphia,'" and that the Bank of Adelphia "had extensive obligations to other Adelphia debtors that remained unpaid."  *See* Pls.' Opp'n to Motions for Leave to Appeal at 36, Docket No. 60 in Case No. 05 Civ. 9050 (S.D.N.Y.).  That assertion is contrary to the Amended Complaint.  As an initial matter, there is no Adelphia debtor known as "Adelphia Communications LLC."  But to the extent the Plaintiffs may have meant "Adelphia Cablevision, LLC," which Judge Gerber identified

(Continued…)

establish their standing to maintain this claim, they must establish both that ***Parnassos' creditors were injured*** on account of the Parnassos Non-Agent Lenders' alleged unlawful acts and that the relief they seek can ***redress that injury***. *DaimlerChrysler Corp.*, 126 S. Ct. at 1856 (noting that it is the plaintiff's burden to establish constitutional standing). They fail to do so.

*First*, no Parnassos creditors were injured on account of the alleged preferential loan repayments Plaintiffs allege in their Amended Complaint. Parnassos had sufficient assets not only to satisfy, in full, all of its creditors' claims, but also to pass value upstream to its parent entities. *Second*, even if Parnassos had not been able to satisfy all of its creditors — thus hypothetically giving rise to a creditor injury — any damages Parnassos receives in this action will do nothing to redress that hypothetical injury. Instead, because the Main Plan provides that any recovery in this action will be distributed to CVV beneficiaries (i.e., Parnassos' corporate great-great grandparent and it's creditors), Parnassos' creditors — the real parties in interest with the hypothetical injury — have absolutely no stake in the resolution of these matters.[16] In short, Plaintiffs do not have standing to assert and maintain their preference claim on behalf of Parnassos' creditors and, as a result, the claim must be dismissed.

---

as the "Bank of Adelphia" in his confirmation decision, *see In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 151 (Bankr. S.D.N.Y. 2007), the Amended Complaint fails to allege that Adelphia Cablevision, LLC made any of the payments Plaintiffs seek to avoid. In any event, Adelphia Cablevision, LLC, like Parnassos, has no unpaid creditor that would benefit from the avoidance of any such payments. In fact, Adelphia Cablevision, LLC — like each of the CCH Debtors — is one of the "Subsidiary Debtors" under the Main Plan, whose creditors (if any) were paid in full and are not beneficiaries of the CVV. See Joint App., Ex. 8 at Schedule II (Second Disclosure Statement).

[16]   As already discussed, the more than 250 Adelphia bankruptcy estates are not substantively consolidated. Rather, all of the various debtor and respective creditor bodies remain separate and can only recover if they can individually establish standing. *See* Joint App., Ex. 21 § 5.01 (JV Plan); Joint App., Ex. 10 § 2.2 (Main Plan) (recognizing that "all Debtors shall continue to exist as separate legal entities"). As a result, the Court must separately assess the standing of each debtor entity or representative to sue on behalf of its creditors.

1.     **Plaintiffs do not have standing to prosecute their preference claim on behalf of Parnassos' creditors because none of Parnassos' creditors suffered a "personal injury."**

a.     **Parnassos' creditors were not injured on account of Parnassos' allegedly preferential transfer.**

The Court should dismiss Plaintiffs' preference claim against the Parnassos Non-Agent Lenders because Parnassos' alleged preferential transfers did not injure any of its creditors. Instead, the JV Plan and accompanying Disclosure Statement are clear that Parnassos has or will pay all of its creditors in full.  The Amended Complaint does not allege otherwise.[17]

The fact that Parnassos has paid (or has reserved funds with which to pay) all of its creditors in full is dispositive of the standing question.  Preference actions are "creditor remedies" designed to redress the injury a debtor causes to its general creditor body when it satisfies all or part of one creditor's claim — to the exclusion of others — during the 90 days before filing for bankruptcy, thereby depleting the pool of assets ultimately available to satisfy other creditors in the bankruptcy case. *See Bear, Stearns Sec. Corp. v. Gredd,* 275 B.R. 190, 194 (S.D.N.Y. 2002) (stating that "[i]n order to determine whether property that is transferred belongs to the debtor for purposes of § 547, we apply the 'diminution of estate' doctrine.") (citation omitted); *In re Messamore*, 250 B.R. 913, 916 (Bankr. S.D. Ill. 2000)  (stating that "a transfer is preferential only if it diminishes the fund to which other creditors can look for payments of their debts, thus making it impossible for similarly situated creditors to obtain as great a percentage as the favored creditor." (citing 5 *Collier on Bankruptcy*, ¶ 547.03.[2] (15th ed. rev. 2000)).

In light of the purpose underlying preference actions — ensuring that all creditors receive a fair distribution, courts in this circuit are clear that trustees or other estate representatives can assert bankruptcy claims only when a debtor's preferential, pre-bankruptcy payment to one

---

17     Plaintiffs do not allege that Parnassos has any unpaid creditors.  *See* Am. Compl. ¶¶ 1470-1475.  As it is Plaintiffs' burden to allege and, ultimately, prove the existence of unpaid creditors to establish standing with respect to its preference claim, the claim must be dismissed. *DaimlerChrysler Corp.*, 126 S.Ct. at 1861.

creditor precludes other similarly situated creditors from equally recovering on their claims. *Bear, Stearns Sec. Corp.*, 275 B.R. at 194 (holding that a debtor does not have standing to bring avoidance claims if all creditors are paid). Where all creditors are paid in full notwithstanding the alleged preferential transfer, no creditor is injured within the scope of the law, and as a result no party has standing to assert claims thereunder. 11 U.S.C. § 547(b)(5) (2006) (explaining that a trustee can pursue a preference action against a creditor only when a preferential payment allowed the creditor to receive more than it would have in a chapter 7 liquidation, thus precluding preference actions in bankruptcy cases where all creditors are paid in full).

Under this well-developed body of law, Plaintiffs do not have standing to maintain their preference claim on behalf of Parnassos' creditors. The JV Plan and its accompanying Disclosure Statement — both documents of which the Court may take judicial notice — make it clear that no Parnassos creditors were injured on account of Parnassos' loan repayments to the Parnassos Non-Agent Lenders during the 90 days before its bankruptcy.[18] Joint App., Ex. 21 (JV Plan); Joint App., Ex. 8 (Second Disclosure Statement Supplement). Instead, Parnassos has paid (or reserved amounts sufficient to pay) each and every creditor of its estate in full — without even a single cent of recovery from the preference action. Because none of these creditors, having been paid in full and having received equal distributions, has suffered the injury

---

[18] Courts routinely take judicial notice of bankruptcy court dockets, and pleadings filed therein, including plans of reorganization. *See, e.g., Esoimeme v. United Airlines, Inc.*, 369 B.R. 531, 533 n. 2 (N.D. Cal. 2007) (taking judicial notice of the bankruptcy petition and various bankruptcy court orders); *Colotone Liquidating Trust v. Bankers Trust New York Corp.*, 243 B.R. 620, 622 n.2 (S.D.N.Y. 2000) (taking judicial notice of the confirmation order, plan of reorganization and the related trust instrument); *Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.)*, 330 B.R. 394, 418 (Bankr. S.D.N.Y. 2005) (taking judicial notice of the debtor's disclosure statement); *In re Forte*, 234 B.R. 607, 613 n.11 (Bankr. E.D.N.Y. 1999) (taking judicial notice of the schedules to determine who owned the relevant property); *Corporate Food Mgmt., Inc. v. Suffolk Cmty. College (In re Corporate Food Mgmt., Inc.)*, 223 B.R. 635, 646 (Bankr. E.D.N.Y. 1998) (taking judicial notice of the Debtor's bankruptcy schedules and concluding therefrom that the unsecured creditors "would have received less than a one hundred percent distribution at the time the Debtor converted the involuntary Chapter 7 bankruptcy proceeding to a case under Chapter 11."); *In re Buttes Gas & Oil, Co.*, 182 B.R. 493, 494 (Bankr. S.D. Tex. 1994) (taking judicial notice of the docket sheet and Bankruptcy Court file, and concluding there from that all of the debtor's creditors are being paid pursuant to the plan).

preference claims were designed to remedy, Plaintiffs' Parnassos preference claim must be dismissed as a matter of law.

### b.    Plaintiffs cannot manufacture creditors to establish standing.

Because Parnassos has no injured creditors, Plaintiffs attempt to manufacture creditors on behalf of whom they may assert Parnassos' preference claims.  They do this — in both their Amended Complaint and in motions defending the initial complaint — in two ways.  First, they pretend that the more than 250 individual Adelphia entities are one and the same, depicting a scenario in which Parnassos not only has to satisfy its own creditors, but also must satisfy its corporate great-great grandparents' creditors as well. *See* Joint App., Ex. 11 (Adelphia Corporate Organization Chart).  And second they invoke the existence of alleged intercompany claims, arguing that various Adelphia affiliates have direct creditor claims against Parnassos.  Pls.' Opp'n to Motions for Leave to Appeal at 35, Docket No. 60 in Case No. 05 Civ. 9050 (S.D.N.Y.) ("[T]here are numerous inter-company claims that were not paid under the Plan.").  These imaginings are no more than flights of fancy, and are ineffective to "create" creditors where none exist.[19]

First, the more than 250 Adelphia entities *are not* one and the same.  Rather, the Bankruptcy Court has already ruled that each Adelphia entity is a separate legal entity, with its own assets, liabilities and creditors.  Joint App., Ex. 21 (Confirmation Order of JV Plan); Ex. 9 (Confirmation Order of Main Plan).  In fact, both the JV Plan and the Main Plan specifically provide that each debtor must pay only those claims asserted against its respective estate.[20]  Joint

---

[19]   Notably, the two theories are mutually exclusive.  If the estates were substantively consolidated, the assets and liabilities of each of the more than 250 individual Adelphia entities would be combined, making the existence of intercompany claims an impossibility.  *See Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 (2d Cir. 1988) ("Substantive consolidation usually results in . . . eliminating inter-company claims . . .") (citation omitted).

[20]   The Main Plan further specified that its terms "shall not affect any Debtor's status as a *separate legal entity*, . . . cause a merger or consolidation of any legal entities, nor cause the transfer of any assets." Joint App., Ex. 10 § 2.2 (Main Plan) (emphasis added).

App., Ex. 10 § 2.2 (Main Plan); Joint App., Ex. 21 § 5.01 (JV Plan).  The Plans do not permit, much less obligate, Parnassos to pay claims asserted against its parent entities.  *Id*.  If the Adelphia entities hoped to merge or "substantively consolidate" their estates, pooling their collective assets to satisfy their collective creditors, they were required to seek and obtain court approval of such consolidation before they distributed even one dime to their respective creditors.  *See Official Comm. of Equity Sec. Holders of Adelphia Commc'ns Corp. v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), 371 B.R. 660, 677 (S.D.N.Y. 2007) (finding that the Adelphia Plan could not be unraveled after payments had been made).  They did not do so.  Accordingly, Parnassos must satisfy its own creditors — no more, no less.

    Additionally, there are no unresolved intercompany claims pending against Parnassos.[21] On this point, the Main Plan is clear:  when the Main Plan becomes effective, all "Intercompany Claims shall be deemed resolved," and, as a result, the holders of such claims "shall not be entitled to . . . receive any Plan Distributions or other allocations of value."  Joint App., Ex. 10 §§ 2.3, 5.3 (Main Plan).[22]  The fact that the Main Plan resolved these claims pursuant to a release and compromise, rather than by requiring payment in full, does not change the reality that the holders of those resolved claims are no longer Parnassos creditors.  *In re Oceana Int'l, Inc.*, 376 F. Supp. 956, 962 (D.C.N.Y. 1974) (in a case where creditors' recoveries were capped at ten percent, and where the plan does not provide for "any retained interest for the benefit of creditors in the proceeds of a recovery [from an avoidance claim]," the court had no jurisdiction over the

---

[21]  Plaintiffs have argued in prior pleadings that intercompany claims exist against Adelphia Cablevision, LLC., the entity that it claims made loan repayments to Parnassos.  *See, e.g.,* Pls.' Opp'n to Motions for Leave to Appeal at 35, Docket No. 60 in Case No. 05 Civ. 9050 (S.D.N.Y.) ("[T]here are numerous inter-company claims that were not paid under the Plan.").  This is irrelevant as the Main Plan released all intercompany claims.  Joint App., Ex. 10 § 2.2 (Main Plan); Joint App., Ex. 8 at Schedule II (Second Disclosure Statement Supplement).  As a result, the discussion in this section applies equally to both Adelphia Cablevision, LLC and Parnassos.

[22]  The JV Plan required the Distribution Companies to assume the intercompany claims (after paying all of the JV Entities' creditors in full) and to treat them as provided in the intercreditor dispute resolution, which was ultimately incorporated in the Main Plan.  Accordingly, the terms of the Main Plan govern this point for all Adelphia entities.

claims).  There are no intercompany creditors.  And without creditors, Plaintiffs do not have standing to assert the Parnassos preference claim.  The claim must be dismissed.

> **2.**     **Plaintiffs do not have standing to prosecute the Parnassos preference claim because the requested relief cannot redress Parnassos' creditors' injuries.**

>> **a.**     **Where Parnassos cannot recover on behalf of and for the benefit of its creditors, Plaintiffs cannot pursue a preference claim on Parnassos' creditors behalf.**

Even assuming that Plaintiffs could show that Parnassos' creditors suffered an actual injury (i.e., that Parnassos could not satisfy all of its creditors' claims), they still would not be able to show that their prosecution of their preference action would remedy that injury.  Pursuant to the Plan, any and all proceeds of this litigation will inure solely to the benefit of parties with an interest in the CVV.  *See* Joint App., Ex. 10 §§ 9.2 - 9.3 (Plan) (explaining that beneficiaries of the CVV will be entitled to the proceeds from this and other lawsuits).  Parnassos' creditors, however, are not beneficiaries of the CVV, and as a result, will never realize any recovery on account of the bankruptcy claims Plaintiffs assert in this action.  As this lawsuit cannot serve to redress their injuries, Plaintiffs have no standing to bring their bankruptcy claims.  *Whiteford Plastics Co. v. Chase Nat'l Bank of N.Y. City*, 179 F.2d 582, 584 (2d Cir. 1950) (holding that the debtor could not avoid the lien of a creditor where creditors would obtain no benefit from avoidance).

>> **b.**     **The fact that creditors of affiliated debtor entities could benefit from a recovery on Parnassos' preference claim does not invest Plaintiffs with standing to pursue it.**

Plaintiffs may argue that the beneficiaries of the CVV will benefit from a recovery on Parnassos' preference claim.  As no Parnassos creditor is a beneficiary of the CVV, this is irrelevant.

Preference claims belong solely to creditors, and a trustee or estate representative may not avoid preferential transfers for the benefit of non-creditor third parties.  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 55 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y.) ("There is no need to recover assets in order to ensure equality of distribution when there is a

large enough roast in the oven to feed all the hungry mouths.  For this reason . . . a trustee's or debtor in possession's avoidance powers can only be exercised for the benefit of creditors.");  *Motor Carriers Inc., v. MCI Telecomms.*(*In re Burlington Motor Holdings, Inc.*), 231 B.R. 874, 877-78 (Bankr. D. Del. 1999) (finding that plaintiff did not have standing to prosecute preference claims because recovery of preferential payments would not benefit estate or creditors).  This is true regardless of whether a third party was or claims it was somehow injured as a result of the alleged preferential transfer.  Simply put, if there are no injured creditors, there is no standing to sue.  Third party injuries are irrelevant.

Here, there is no dispute that the beneficiaries of the CVV are third parties.  Despite Plaintiffs' painstaking efforts to create the illusion that the more than 250 individual Adelphia entities are really one and the same, creating a pool of needy "Adelphia" creditors, they are not.  Neither the JV Plan nor the Main Plan effectuates a substantive consolidation of the Adelphia entities.  Instead, both are clear that "all Debtors shall continue to exist as separate legal entities." *See* Joint App., Ex. 10 § 2.2 (Main Plan); Joint App., Ex. 21 § 5.01 (JV Plan); Joint App., Ex. 11 (Adelphia Corporate Organization Chart).  Accordingly, to the extent Plaintiffs seek to assert claims on behalf of Parnassos' creditors, they must show that those creditors — not some other, amorphous "Adelphia" creditors — suffered an injury that the lawsuit can redress.  Where, as here, they cannot, they do not have standing to maintain their claims.

### c. The operation of section of the Bankruptcy Code reaffirms that Plaintiffs do not have standing to bring the Parnassos preference claim because the requested relief will not redress Parnassos' creditors' injuries.

If Plaintiffs somehow win their preference action against the Parnassos Non-Agent Lenders, they will have the right to recover from the Parnassos Non-Agent Lenders any amounts that Parnassos paid them during the 90 days before its bankruptcy filing.  That right, however, does not exist in a vacuum.  Instead, if Plaintiffs obtain a preference recovery from the Parnassos Non-Agent Lenders, section 502(h) of the Bankruptcy Code will allow the Parnassos Non-Agent Lenders to assert their own corresponding claims against Parnassos' estate for the amount

Plaintiffs recover.[23]  *Fleet Nat'l Bank v. Gray* (*In re Bankvest Capital Corp.*), 375 F.3d 51, 69 (1st Cir. 2004) ("The trustee's recovery of the transfer restores the original claim, with the transferee's status becoming that of the holder of a prepetition claim existing at the time of the filing of the debtor's petition.").

With these corresponding 502(h) claims, the Parnassos Non-Agent Lenders will be entitled to payment from Parnassos' estate in an amount equal to Plaintiffs' recovery in this lawsuit.  As already discussed, *Parnassos has satisfied each and every one of its creditors*.  With no existing creditors to satisfy — and given the Bankruptcy Code's strict rule that debtors must pay creditors before equity holders — the Parnassos Non-Agent Lenders' 502(h) claims will be the first (and only) claims in line for payment from the proceeds of the Plaintiffs' recovery from the Parnassos Non-Agent Lenders.  Simply put, Plaintiffs will have to use their recovery from the Parnassos Non-Agent Lenders to satisfy the Parnassos Non-Agent Lenders' resulting 502(h) claims.

Thus, Plaintiffs' pursuit of its preference claim against the Parnassos Non-Agent Lenders is pointless.  *In re Bankvest Capital Corp.*, 375 F.3d at 71 (holding avoidance actions are "pointless" where a creditor "would be entitled to receive exactly what it would be forced to return through avoidance" pursuant to section 502(h)).  After spending what will undoubtedly be a significant amount of time and money pursuing this action (particularly given the sheer number of defendants they have elected to pursue), even if Plaintiffs win, they will never be entitled to any affirmative recovery.  There is no reason for Plaintiffs to waste the estate's assets or, for that matter, the Parnassos Non-Agent Lenders' money, on this senseless, circular endeavor.  The Court should dismiss the preference claim against the Parnassos Non-Agent Lenders.

---

[23]   Pursuant to Section 502(h) of the Bankruptcy Code, "[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."  11 U.S.C. § 502(h).

## CONCLUSION

For the foregoing reasons, the Parnassos Non-Agent Lenders respectfully request that the Court strike Count 33 and dismiss, without leave to amend, Count 44 of Plaintiffs' Amended Complaint as to the Parnassos Non-Agent Lenders.


Dated:  December 21, 2007

         /s/ Richard L. Wynne
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675
Richard L. Wynne (RW 5630)
Bennett L. Spiegel (BS 7153)

-and-

777 South Figueroa Street
Los Angeles, California  90017
Telephone:      (213) 680-8400
Facsimile:      (213) 680-8500
Melissa D. Ingalls (*admitted pro hac vice*)
Erin Brady (*pro hac vice motion pending*)
Laura Thomas (*admitted pro hac vice*)

Attorneys for The Non-Agent Lenders