UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST, | ) ) ) ) ) Adversary Proceeding ) ) ) No. 05 Civ. 9050 (LMM) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendants. | |

INVESTMENT BANKS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL SUMMARY ............................................................................ 3

   A.  The Prior Complaints And The Bankruptcy Court Decisions ............................. 3

   B.  Plaintiffs Receive Extensive Discovery In These And Other Related
       Proceedings ........................................................................................ 5

   C.  Plaintiffs' Amended Complaint ........................................................... 6

ARGUMENT ............................................................................................ 9

POINT I: THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED BECAUSE
THEY FAIL TO ALLEGE THE NECESSARY ELEMENTS WITH SUFFICIENT
PARTICULARITY ................................................................................... 9

   A.  The Applicable Pleading Standards .................................................... 9

   B.  The Fraud And Fraudulent Concealment Claims Should Be Dismissed
       (Counts 54 & 55) ............................................................................... 11

          1.  The Fraud Claim Should Be Dismissed Because Adelphia Does
              Not Allege That The Investment Banks Made Any
              Misrepresentations To The Non-Rigas Family Directors ................. 11

          2.  The Fraud And Fraudulent Concealment Claims Fail Because
              Adelphia Does Not Allege Fraudulent Intent With Sufficient
              Specificity (Counts 54 & 55) ............................................................ 12

          3.  Adelphia's Fraudulent Concealment Claim Also Fails Because
              The Investment Banks Owed No Duty To Disclose To The
              Non-Rigas Family Directors (Count 54) .......................................... 15

   C.  The Aiding And Abetting Fraud Claims Should Be Dismissed (Count 38) ........ 17

          1.  Adelphia Fails To Allege Knowledge With Sufficient Specificity .... 17

          2.  Adelphia Fails To Allege Substantial Assistance By The Investment
              Banks ................................................................................................. 21

i

POINT II: THE NEWLY ALLEGED "MARGIN LOAN" CLAIMS SHOULD BE
DISMISSED AS UNTIMELY (COUNT 31) .................................................................... 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 301(b) ........................................................................................ 23

11 U.S.C. § 546(a) ........................................................................................ 23

11 U.S.C. § 548 ............................................................................................. 23

Fed. R. Bankr. P. 2004 .................................................................................. 2, 6

Fed. R. Civ. P. 8(a) ....................................................................................... <u>passim</u>

Fed. R. Civ. P. 9(b) ....................................................................................... <u>passim</u>

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 15

Fed. R. Civ. P. 12(c) ..................................................................................... 1

Fed. R. Civ. P. 15(c) ..................................................................................... 24

Fed. R. Civ. P. 30(b)(6) ................................................................................ 6


**Cases**

<u>131 Main St. Assocs. v. Manko,</u>
897 F. Supp. 1507 (S.D.N.Y. 1995) ............................................................. 14

<u>Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.,</u>
No. 90 Civ. 8262 (MJL), 1997 WL 473382 (S.D.N.Y. Aug. 19, 1997) ........... 19

<u>Am. High-Income Trust v. Alliedsignal,</u>
329 F. Supp. 2d 534 (S.D.N.Y. 2004) ......................................................... 13, 20

<u>Arazie v. Mullane,</u>
2 F.3d 1456 (7th Cir. 1993) ......................................................................... 20

<u>Banks v. Consumer Home Mortg., Inc.,</u>
No. 01 Civ. 8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ......... 17

<u>Bell Atl. Corp. v. Twombly,</u>
___ U.S. ___, 127 S. Ct. 1955 (2007) ........................................................ 10-11, 22

<u>Billard v. Rockwell Int'l Corp.,</u>
683 F.2d 51 (2d Cir. 1982) .......................................................................... 10, 19

Page(s)

**Cases (continued)**

Burnette v. Carothers,
192 F.3d 52 (2d Cir. 1999)..................................................................................... 1

Caputo v. Pfizer, Inc.,
267 F.3d 181 (2d Cir. 2001).................................................................................. 9

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d. Cir. 2002)................................................................................ 23

Chill v. Gen. Elec. Co.,
101 F.3d 263 (2d Cir. 1996)................................................................................. 14

Concorde Funds, Inc. v. Value Line, Inc.,
No. 04 Civ. 9932 (NRB), 2006 WL 522466 (S.D.N.Y. Mar. 2, 2006)............................... 10

Congress Fin. Corp. v. John Morrell & Co.,
790 F. Supp. 459 (S.D.N.Y. 1992) ........................................................................ 17

Debbs v. Chrysler Corp.,
810 A.2d 137 (Pa. Super. 2002).......................................................................... 15-16

DiLeo v. Ernst & Young,
901 F.2d 624 (7th Cir. 1990) (Easterbrook, J.)........................................................ 9

Dirks v. S.E.C.,
463 U.S. 646 (1983)........................................................................................... 16

DiVittorio v. Equidyne Extractive Indus., Inc.,
822 F.2d 1242 (2d Cir. 1987)............................................................................... 9

Doehla v. Wathne Ltd., Inc.,
98 Civ. 6087 (CSH), 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999).................................... 15

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004)................................................................................. 22

Fisher v. Offerman & Co.,
No. 95 Civ. 2566 (JGK), 1996 WL 563141 (S.D.N.Y. Oct. 2, 1996) ............................... 13

Flood v. Makowski,
No. 03 Civ. 1803 (ARC), 2004 WL 1908221 (M.D. Pa. Aug. 24, 2004).......................... 11

Harris v. Emerson,
No. 75 Civ. 5263 (LBS), 1979 WL 1261 (S.D.N.Y. Dec. 3, 1979).................................. 1

Hottinger v. Amcoal Energy Corp.,
No. 89 Civ. 6391, 1992 WL 349851 (S.D.N.Y. Nov. 10, 1992) (McKenna, J.) ................. 15

Page(s)

**Cases (continued)**

ICN Pharm., Inc. v. Khan,
2 F.3d 484 (2d Cir. 1993)...................................................................................... 16

In re 360Networks,
367 B.R. 428 (S.D.N.Y. 2007)............................................................................. 24

In re Adelphia Commc'ns Corp.,
Nos. 02-41729 (REG), 03-04942 (REG), 2007 WL 2403553
(Bankr. S.D.N.Y. Aug. 17, 2007) .................................................................. passim

In re Adelphia Commc'ns Corp.,
317 B.R. 612 (Bankr. S.D.N.Y. 2004)..................................................................... 6

In re Adelphia Commc'ns Corp.,
365 B.R. 24 (Bankr. S.D.N.Y. 2007)............................................................... passim

In re Crude Oil Commodity Litig.,
No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)............................ 15

In re Parmalat Sec. Litig.,
501 F. Supp. 2d 560 (S.D.N.Y. 2007)................................................................... 15

In re WRT Energy Sec. Litig.,
Nos. 96 Civ. 3610, 3611 (JFK), 1997 WL 576023 (S.D.N.Y. Sept. 15, 1997),
vacated on other grounds, 75 F. App'x 839 (2d Cir. 2003) .............................. 13-14, 20

Iqbal v. Hasty,
490 F.3d 143 (2d Cir. 2007)........................................................................ 10-11, 15

Kramer v. Time Warner, Inc.,
937 F.2d 767 (2d Cir. 1991)................................................................................. 8

LaRoe v. Elms Sec. Corp.,
700 F. Supp. 688 (S.D.N.Y. 1988) .................................................................. 21-22

Lerner v. Fleet Bank, N.A.,
459 F.3d 273 (2d Cir. 2006)............................................................................... 17

Luce v. Edelstein,
802 F.2d 49 (2d Cir.1986)............................................................................. 15, 22

Mazzaro de Abreu v. Bank of Am. Corp.,
No. 06 Civ. 673, 2007 WL 2609535 (S.D.N.Y. Sept. 10, 2007) (McKenna, J.)............... 3, 13, 19, 22

Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler),
66 B.R. 977 (Bankr. S.D.N.Y. 1986).................................................................... 24

**Page(s)**

**Cases (continued)**

Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec., Corp.,
No. 99 Civ. 1944 (NRB), 2000 WL 709006 (S.D.N.Y. June 1, 2000) ............................. 20

Nakano v. Jamie Sadock, Inc.,
No. 98 Civ. 0515 (LBS), 2000 WL 680365 (S.D.N.Y. May 25, 2000) ........................... 1

Nat'l Westminster Bank USA v. Weksel,
124 A.D.2d 144 (1st Dep't 1987) ................................................................... 17, 20

Oechsner v. Connell Ltd. P'ship,
283 F. Supp. 2d 926 (S.D.N.Y. 2003) .............................................................. 17

Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc.,
No. 03 Civ. 9623 (JFK), 2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) ........................... 15

Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.),
67 B.R. 304 (Bankr. S.D.N.Y. 1986) ............................................................... 24

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,
507 F.3d 117 (2d Cir. 2007) ........................................................................ 10

Reichhold Chems., Inc. v. Millennium Int'l Techs., Inc.,
No. 99 Civ. 799 (CSG), 1999 WL 270391 (E.D. Pa. May 5, 1999) ................................. 16

Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,
68 F.3d 1478 (2d Cir. 1995) ........................................................................ 12

Renner v. Chase Manhattan Bank,
No. 98 Civ. 926 (CSH), 2000 WL 781081 (S.D.N.Y. June 16, 2000) ............................. 21

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004) ........................................................................ 9

S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.,
84 F.3d 629 (2d Cir. 1996) ......................................................................... 12

Saltzman v. Zern,
407 F. Supp. 49 (D. Pa. 1976) ...................................................................... 17

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,
75 F.3d 801 (2d Cir. 1996) ......................................................................... 19-20

Skylon Corp. v. Guilford Mills, Inc.,
No. 93 Civ. 5581 (LAP), 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997) ................................. 10

Page(s)

**Cases (continued)**

Steed Fin. L.D.C. v. Laser Advisers, Inc.,
258 F. Supp. 2d 272 (S.D.N.Y. 2003).....................................................................  19

The Limited, Inc. v. McCrory Corp.,
645 F. Supp. 1038 (S.D.N.Y. 1986)........................................................................  22

United States v. N.Y. City Health & Hosp. Corp.,
No. 95 Civ. 7649, 2000 WL 1610802 (S.D.N.Y. Oct. 27, 2000) (McKenna, J.) ...............  10

United States v. Rigas,
490 F.3d 208 (2d Cir. 2007)....................................................................................  4

USA Certified Merchants, LLC v. Koebel,
262 F. Supp. 2d 319 (S.D.N.Y. 2003)......................................................................  1

Varnberg v. Minnick,
760 F. Supp. 315 (S.D.N.Y. 1991) .........................................................................  21

Viguers v. Philip Morris USA, Inc.,
837 A.2d 534 (Pa. Super. Ct. 2003).........................................................................  12

Vogel v. Sands Bros. & Co.,
126 F. Supp. 2d 730 (S.D.N.Y. 2001) (Parker, J.)....................................................  13

Williams v. Bank Leumi Trust Co.,
No. 96 Civ. 6695, 1997 WL 289865 (S.D.N.Y. May 30, 1997) (McKenna, J.)................  18

The Investment Banks[1] submit this memorandum of law in support of their motion to dismiss (a) Counts 37 (aiding and abetting breach of fiduciary duty), 38 (aiding and abetting fraud), 54 (fraudulent concealment), and 55 (fraud) of the Amended Complaint (the "<u>AC</u>") as against the Investment Banks, and (b) Count 31 insofar as it asserts claims based upon newly pleaded transactions, pursuant to Federal Rule of Civil Procedure 12(c).[2]  At the outset, however, we note that because *all* of the tort claims asserted by Adelphia against the Investment Banks are barred by the *in pari delicto* doctrine, the resolution of the pending appeal of the Bankruptcy Court's decision can moot this aspect of the instant motion.

## PRELIMINARY STATEMENT

The Bankruptcy Court properly dismissed Adelphia's claims for fraud, fraudulent concealment, and aiding and abetting fraud because they failed to allege the specific facts required by Federal Rule of Civil Procedure 9(b), and Judge Gerber granted leave to reallege these claims *only* if Adelphia could correct the serious "Rule 9(b) deficiencies of [its] effort to impose secondary liability." <u>In re Adelphia Commc'ns Corp.</u>, 365 B.R. 24, 61-62 (Bankr. S.D.N.Y. 2007).

Adelphia responded with a 475-page, 1,655-paragraph AC that adds hundreds of pages and almost 400 new defendants to this already bloated action, but adds *none* of the particularized detail required by law in order for Adelphia to reassert its far-fetched fraud-based

---

[1]      The "Investment Banks" are defined in the accompanying Notice of Motion.

[2]      .  Although the Investment Banks could have simply moved under Rule 12(b)(6), in order to move the case forward, they filed answers to the AC and move to dismiss under Rule 12(c).  In reviewing a complaint for dismissal under Rule 12(c), the Court applies the same standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim.  <u>See Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999).  In their answers, the Investment Banks assert Adelphia's failure to satisfy Rule 9(b) as an affirmative defense.  Courts in this Circuit have recognized that filing a responsive pleading does not constitute a waiver of a Rule 9(b) motion to dismiss so long as Rule 9(b) is raised as an affirmative defense or in a motion to dismiss  <u>See USA Certified Merchants, LLC v Koebel</u>, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003) (waiver of Rule 9(b) grounds for dismissal occurs "only if a defendant fails to raise it as an affirmative defense in his answer or in a motion to dismiss"); <u>see also Nakano v. Jamie Sadock, Inc.</u>, No. 98 Civ. 0515 (LBS), 2000 WL 680365, at *8 (S.D.N.Y May 25, 2000); <u>Harris v Emerson</u>, No. 75 Civ. 5263 (LBS), 1979 WL 1261, at *1-*2 (S.D.N.Y. Dec. 3, 1979).

claims against the Investment Banks – even though Judge Gerber put Adelphia on specific notice of this requirement.  Indeed, notwithstanding what the Bankruptcy Court aptly described as "massive" discovery – close to a million pages of pre-complaint discovery under Bankruptcy Rule 2004, more than 100 related depositions, access to all of Adelphia's own records and witnesses, and a four-month criminal trial – the new pleading is devoid of any of the specifics required under Rule 9(b) and Rule 8(a).

In the AC, Adelphia bases its repleaded fraud claims against the Investment Banks on misrepresentations that the Rigases and other Adelphia insiders allegedly made to Adelphia's non-Rigas family directors during meetings at which they approved three of the co-borrowing facilities.  AC ¶¶ 849-52, 887-90, 933-36.  But Adelphia does not allege – and indeed cannot allege – that a single individual from any of the Investment Banks either attended any one of these meetings or was ever told what was said to the non-Rigas family directors at the meetings.  That critical deficiency – like the failure to allege, with *any* specificity, the Investment Banks' fraudulent intent or substantial assistance – is fatal to Adelphia's repleaded fraud claims.  Indeed, rather than attempt to replead any specifics regarding the individual Investment Banks sued, Adelphia simply tacks on the term "Investment Banks" – defined in the AC as 22 distinct (and highly competitive) institutions – to the preexisting generalized allegations concerning the conduct, scienter, and knowledge of the 25 "Agent Banks."  Such lumped allegations – implausible on their face and contradicted by other more specific allegations in the AC – make Adelphia's pleadings more vague and conclusory, not less, and directly contravene the Bankruptcy Court's clear – and correct – directive that Adelphia, to satisfy Rule 9(b), must "assert specific allegations against *each individual defendant*."  Adelphia Commc'ns Corp., Nos.

02-41729 (REG), 03-04942 (REG), 2007 WL 2403553, at *10 (Bankr. S.D.N.Y. Aug. 17, 2007) (emphasis added).  Adelphia's failings require dismissal of the repleaded Counts 38, 54, and 55.[3]

Similarly, Adelphia's amendment to Count 31 against SSB – adding $95 million of transfers to its existing "margin loan" claim against SSB – also fails as a matter of law.  Not only are these payments not margin loan payments – a fact that Adelphia itself has conceded elsewhere – but also any claims based on them are barred by the applicable statute of limitations.

Left unchecked, Adelphia has demonstrated that it will pursue as many claims against as many defendants for as long as it possibly can, regardless of whether the massive pre- and post-complaint discovery can support them.  Adelphia cannot sustain its AC on the basis of conclusory generalities.  Five years into this litigation, and after access to a mountain of discovery, Adelphia was required in the AC to allege plausible facts necessary to maintain its claims against *each* of the defendants from whom it seeks many millions of dollars.  Adelphia's latest attempt to supplement its deficient pleadings makes abundantly clear that the facts – and the law – simply do not support, and never will support, the AC's fraud-based claims against the Investment Banks or any of the newly alleged margin loan claims against SSB.  Accordingly, those claims should be dismissed with prejudice.

## FACTUAL SUMMARY

A.    The Prior Complaints And The Bankruptcy Court Decisions

In June 2002, on the heels of the corporate collapse precipitated by the misconduct of the Rigas family, Adelphia Communications Corporation and hundreds of its

---

[3]    For the reasons set forth in the Argument Section I C below, Adelphia's claim for aiding and abetting breach of fiduciary duty (Count 37), should also be dismissed under Rule 9(b)  See, e.g., Mazzaro de Abreu v. Bank of Am. Corp., No  06 Civ. 673, 2007 WL 2609535, at *9-*11 (S.D.N Y. Sept. 10, 2007) (McKenna, J ) (dismissing aiding and abetting breach of fiduciary claim on Rule 9(b) grounds where "primary violations based on fraud").  The decision on the motion to dismiss the aiding and abetting breach of fiduciary duty claim (based on the equally deficient prior complaint) is currently on appeal before the Court.  See, e.g., Joint Br. for Certain Investment Banks Appellants, dated Sept. 28, 2007, at 27-29.

subsidiaries filed for bankruptcy protection in the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court").[4]  In July 2003, the Official Committee

of Unsecured Creditors of Adelphia and the Official Committee of Equity Security Holders of

Adelphia (collectively, the "Committees") each filed largely duplicative complaints, together

asserting 65 different claims against more than 400 defendants.[5]  Twenty of these claims were

asserted against the Investment Banks, which jointly filed motions to dismiss.  The Bankruptcy

Court addressed the motions to dismiss the Creditors Committee's complaint and the Equity

Committee's complaint in decisions dated June 11 and August·17, 2007, respectively.  In re

Adelphia Commc'ns Corp., 365 B.R. 24 ("CC Decision"); In re Adelphia Commc'ns Corp.,

2007 WL 2403553 ("EC Decision").  The Bankruptcy Court dismissed ten of the claims brought

against the Investment Banks with prejudice:  unjust enrichment, breach of implied covenants of

good faith and fair dealing, four separate counts of breach of contract, and four RICO claims.

The Bankruptcy Court dismissed three other fraud-based claims against the Investment Banks

with leave to replead:  fraud, fraudulent concealment, and aiding and abetting fraud.[6]

        In dismissing these claims, the Bankruptcy Court held that the original pleadings

did not meet the requirements of Rule 9(b), because the allegations concerning the underlying

fraud were "too vague."  CC Decision, 365 B.R. at 61 (fraud claims failed to satisfy Rule 9(b)

---

[4]        Because of the Court's familiarity with the background circumstances that led to Adelphia's bankruptcy
and the various related actions, we summarize only those facts relevant to this motion.  See generally United States
v. Rigas, 490 F.3d 208, 212-19 (2d Cir. 2007) (telling "The Story of Adelphia").

[5]        On January 5, 2007, the Bankruptcy Court confirmed Adelphia's First Modified Fifth Amended Joint
Chapter 11 Plan (the "Plan") pursuant to which a Delaware statutory trust now named the Adelphia Recovery Trust
("Adelphia") was formed and presently holds and prosecutes the litigation claims previously asserted by the
Committees.

[6]        The Bankruptcy Court also dismissed the breach of fiduciary duty and gross negligence claims against two
of the Investment Banks – Banc of America Securities LLC ("BAS") and Salomon Smith Barney Holdings, Inc.
("SSB") – whose engagement letters specifically disclaimed the existence of any fiduciary relationship.  Of the
claims against the Investment Banks that were not dismissed, the Court granted leave to appeal three of them.  the
anti-tying claim under the Bank Holding Company Act, the claim for equitable disallowance, and the claim for
aiding and abetting breach of fiduciary duty  See Sept. 5, 2007 Order.  The appeal was fully briefed as of November
13, 2007.

because there were no allegations of "what was not disclosed, and to whom, when and under

what circumstances"). Moreover, with respect to the fraud claims against secondary actors such

as the Investment Banks, the Bankruptcy Court held that:

> The Court has similar, and perhaps more serious, concerns as to
> the Rule 9(b) deficiencies of the effort to impose secondary
> liability . . . . If there are allegations concerning the knowledge, if
> any, of Defendants regarding what the Rigases told and did not tell
> the independent directors, and the extent to which the Defendants
> knew that the Rigases were concealing things from the
> independent directors, the Court has missed them.

Id. at 61-62; see also EC Decision, 2007 WL 2403553, at *11 (complaint failed to allege "*what*

*fraudulent representations were made* (or not made) by the [Investment Banks], *to whom* and *by*

*whom*, *when* and under *what* circumstances") (emphasis added). The Bankruptcy Court also

rejected – as have a long line of decisions, including ones issued by this Court – Adelphia's

effort to mask the inadequacy of its pleading by substituting generalized allegations about dozens

of institutions for the specificity mandated by law. Putting Adelphia on clear notice, Judge

Gerber held that Adelphia's lumped pleading style flunked Rule 9(b) because "the complaint

must assert specific allegations *against each individual defendant* in order to satisfy Rule 9(b)."

EC Decision, 2007 WL 2403553, at *10 (emphasis added).

B.   Plaintiffs Receive Extensive Discovery In These And Other Related Proceedings

Since Adelphia filed for bankruptcy more than five years ago in June 2002,

Adelphia has had access to its own voluminous files and records (amounting to millions pages of

documents), as well as a plethora of discovery and testimony from a number of other sources,

including the four-month criminal trial of the Rigases, related regulatory and civil proceedings,

and discovery produced in Adelphia's Pennsylvania action against Deloitte & Touche LLP

("Deloitte"). The Deloitte action alone produced more than 100 depositions of witnesses from

Adelphia, its board of directors, Deloitte, Buchanan Ingersoll (Adelphia's law firm), and various

Investment Banks and Agent Banks sued in this litigation, who were deposed in the Deloitte case as third party witnesses.  Even earlier, almost a year before the Committees filed their original complaints, they served extensive formal discovery requests on various entities, including certain of the Investment Banks, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. In response, certain of the Investment Banks and a number of other banks sued by Adelphia produced almost a million pages of documents and made multiple employees available for Rule 2004 and 30(b)(6) depositions.  Additional discovery continued in this and other related actions during the years that the motions to dismiss were pending before the Bankruptcy Court.[7]  See In re Adelphia Commc'ns Corp., 317 B.R. 612, 619 (Bankr. S.D.N.Y. 2004) (detailing the "massive discovery" that had taken place as of that date).

C.      Plaintiffs' Amended Complaint

On October 22, 2007 – more than five months after the CC Decision and with the benefit of no less than five years of "massive" discovery since filing for bankruptcy – Adelphia served the AC.  The 475-page pleading consolidates the two original complaints filed by the Committees and broadens this action to include a total of *900 defendants* (including "John Doe" Nos. 1-100 and "John Doe, Inc." Nos. 1-100).  See AC ¶¶ 24-791.

Adelphia asserts nine claims against the Investment Banks, including repleaded claims of fraud, fraudulent concealment, and aiding and abetting fraud.  As explained in the appeal papers before the Court, all of these claims – indeed, all of the tort claims asserted by

---

[7]      Unfortunately, access to discovery has been largely one-sided in Adelphia's favor.  While receiving close to a million documents from the Agent Banks and Investment Banks in an organized and readily reviewable manner, Adelphia simply dumped millions of pages of documents into a database in a completely unusable fashion (including countless pages of irrelevant material such as telephone books, internet pop-up pages, and pornographic images, as well as tens of thousands of documents that were randomly grouped together without logical document or page breaks).  As the Court is aware, after ignoring for years the defendants' demands that it fix the myriad of problems with its document production, Adelphia finally agreed (after the mediator's intervention) to a plan that corrects some of the most serious issues with its production.  Adelphia still has not completed the fixes that it has promised.  Similarly, Adelphia has refused to produce – without justification – readily available and highly relevant material from its Pennsylvania action against Deloitte, forcing defendants to move this Court to compel production.

Adelphia against the Investment Banks – are barred by the clear dictates of Pennsylvania's law of *in pari delicto*.  Adelphia's attempt to cure the pleading deficiencies of those claims – properly rejected as insufficient as to the Investment Banks by the Bankruptcy Court – is based on the following factual allegations of fraud in the AC:

- The Rigases set up co-borrowing facilities, with Adelphia and the Rigas family entities as joint and several borrowers, with the intent to use them as instrumentalities "of simple theft for the benefit of the Rigas Family." See, e.g., AC ¶¶ 841, 878, 924.

- At the board meetings where the co-borrowing facilities were approved, Timothy Rigas and James Brown misled the non-Rigas family directors "regarding the structure, size and terms" of the agreements, including by falsely advising "that each of the co-borrowers could only borrow amounts that were commensurate with the amount of collateral that they were providing." See, e.g., id. ¶¶ 849-52, 887-90, 933-36.

- At the same meetings, Timothy Rigas and James Brown also presented the non-Rigas family directors with allegedly misleading term sheets related to the co-borrowing facilities. See, e.g., id. ¶¶ 849, 887, 933.

On their face, the AC's fraud allegations do not even directly implicate the Investment Banks.  Thus, the AC does not allege that the Investment Banks made any direct misrepresentations to Adelphia's non-Rigas family directors.  *Indeed, the AC does not even allege that anyone from any of Investment Banks attended any of the board meetings where those directors were allegedly misled.*  See, e.g., AC ¶¶ 848-52, 886-90, 933-36.  *The AC also does not allege that the Investment Banks were ever told what was said at the board meetings and the AC does not allege that the Investment Banks ever were lenders in the three co-borrowing facilities.*  To the contrary, the AC's allegations identifying the lenders in the co-borrowing facilities do not include any of the Investment Banks.  See id. ¶¶ 843, 1454, 1460.

Adelphia attempts to link the Investment Banks indirectly – through blunderbuss generalization – to what they admittedly had no direct hand in:

- The Agent Banks and Investment Banks "knew and/or consciously avoided knowledge" of the Rigases' fraud from "their meetings and discussions with the Rigas Family . . . and other ACC employees, their due diligence, [and] their review of the Co-Borrowing Facilities, public indentures and [Adelphia's] SEC filings." <u>See</u> AC ¶ 1424.

- The Agent Banks and Investment Banks were involved in "structuring" the co-borrowing facilities, <u>see id.</u> ¶ 1426, and "worked closely with the Rigas Family and James Brown" to prepare two of the term sheets. <u>See id.</u> ¶¶ 885, 931.

- The Agent Banks and Investment Banks permitted the Rigas Family to draw down excess amounts on the co-borrowing facilities and underwrote securities that they somehow knew the Rigases could not personally afford. <u>See id.</u> ¶ 1426.

These generalized allegations are not only inadequate as a matter of law, but they are contradicted by the AC's other more specific allegations.  For example, Adelphia alleges that the Investment Banks are responsible for defrauding Adelphia's non-Rigas family directors because the Investment Banks should have known of the Rigases' fraud from "their review of the Co-Borrowing Facilities, public indentures and [Adelphia's] SEC filings." AC ¶ 1424.  But this assertion ignores the AC's simultaneous allegation that the non-Rigas family directors themselves "had to approve" all of the company's public filings, which included the very same co-borrowing agreements (which were publicly filed) and other SEC filings.  <u>See id.</u> ¶¶ 873, 918, 964; <u>see also</u> Declaration of Joon H. Kim, dated December 21, 2007 ("Kim Decl.") ¶ 4.[8]

Finally, although no leave was granted to amend the margin loan claim, Adelphia amended that claim (Count 31) by adding six new purportedly fraudulent transfers made to SSB, even though in documents it previously provided to SSB in connection with a tolling agreement, Adelphia's predecessor-in-interest admitted that these very transfers were "overnight investment

---

[8]    The Court may take judicial notice of the fact that the co-borrowing facilities, and other documents relied upon in the AC, were publicly filed.  <u>See</u> <u>Kramer v. Time Warner, Inc.</u>, 937 F 2d 767, 774 (2d Cir. 1991)

account deposits," not margin loan payments.[9]  Kim Decl. Ex. B.  In any event, the period tolling

the statute of limitations expired on June 2, 2007, some five months before Adelphia filed the

AC.  Id. Ex A.

## ARGUMENT

## POINT I

## THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE THE NECESSARY ELEMENTS WITH SUFFICIENT PARTICULARITY

Adelphia's repleaded claims against the Investment Banks – fraudulent

concealment (Count 54), fraud (Count 55), and aiding and abetting fraud (Count 38) – should be

dismissed because they fail to meet the pleading standards of Rule 9(b) and Rule 8(a).[10]

A.     The Applicable Pleading Standards

Rule 9(b) requires all tort claims that "sound in fraud," Rombach v. Chang, 355

F.3d 164, 171 (2d Cir. 2004), to allege with specificity "the time, place, speaker and content of

the alleged misrepresentations." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)

(internal citation omitted); accord DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)

(Easterbrook, J.) (particularity "means the who, what, when, where, and how:  the first paragraph

of any newspaper story.").   Moreover, "[w]here multiple defendants are asked to respond to

allegations of fraud, the complaint should inform each defendant of the nature of his alleged

participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247

(2d Cir. 1987) (internal citation omitted).

---

[9]        Six of the new transfers alleged in the AC, totaling $95 million, were allegedly made to SSB.  The AC adds
another payment to its margin loan claim, an alleged transfer of $41,023,710.11, to Bank of America, N.A  (which is
not one of the Investment Banks).

[10]        As noted above, Count 37 for aiding and abetting breach of fiduciary duty should also be dismissed on
these grounds.  Currently pending before the Court is the Investment Banks' appeal of the Bankruptcy Court's
decision on the claim of aiding and abetting a breach of fiduciary duty.  As argued in that appeal, Pennsylvania's
law of in pari delicto bars all of Adelphia's tort claims.

Where a plaintiff has had access to substantial discovery prior to asserting its claims – as is the case here – the law requires even "greater precision" than the already heightened pleading requirements of Rule 9(b). See Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982) ("greater precision" required under Rule 9(b) where discovery has been conducted in related litigation); United States v. N.Y. City Health & Hosp. Corp., No. 95 Civ. 7649, 2000 WL 1610802, at *2 (S.D.N.Y. Oct. 27, 2000) (McKenna, J.) (same) (citing Billard, 683 F.2d at 57). More than that, where the plaintiff is in as good a position as the defendants to know the specifics of the alleged fraud – also the case here (indeed, Adelphia is in a better position, certainly than the Investment Banks, to know what alleged misrepresentations its own directors relied upon) – courts have applied Rule 9(b)'s requirements particularly strictly. See Concorde Funds, Inc. v. Value Line, Inc., No. 04 Civ. 9932 (NRB), 2006 WL 522466, at *5 n.8 (S.D.N.Y. Mar. 2, 2006) (dismissing under 9(b) where "plaintiff is in as good a position as the defendants are to recall the speakers, dates, and content of the alleged misrepresentations"); Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581 (LAP), 1997 WL 88894, at *2 (S.D.N.Y. Mar. 3, 1997) ("Because plaintiff alleges misrepresentations made to [itself] . . . the date, place and content of the statement are not facts peculiarly within the knowledge of the defendants, but facts shared by both parties.").

Aside from Rule 9(b)'s specificity requirements, the Supreme Court recently made clear in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (2007), that even Rule 8(a)'s more general notice pleading standard requires that plaintiffs make allegations which "are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 127 S. Ct. at 1966); see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (Twombly requires "a pleader to amplify a

claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") (emphasis in original).

B.    <u>The Fraud And Fraudulent Concealment Claims Should Be Dismissed (Counts 54 & 55)</u>

    1.    <u>The Fraud Claim Should Be Dismissed Because Adelphia Does Not Allege That The Investment Banks Made Any Misrepresentations To The Non-Rigas Family Directors</u>

The AC alleges that only the Rigases, James Brown, and Michael Mulcahey, *not* any of the Investment Banks, made the misrepresentations to the non-Rigas family directors concerning three of the co-borrowing facilities.  <u>See, e.g.</u>, AC ¶¶ 849-52 ("[a]t the meeting, Timothy Rigas and James Brown made verbal representations to the Independent Directors regarding the structure, size and terms of the UCA/HHC Co-Borrowing Facility"); <u>id.</u> ¶¶ 887-90 (same allegations concerning the CCH facility); <u>id.</u> ¶¶ 933-36 (same allegations concerning the Olympus Facility); <u>id.</u> ¶ 1415 (Brown and Mulcahey failed to "fully inform" the independent directors).  In dismissing the original fraud claim, the Bankruptcy Court held that a properly pleaded fraud claim must allege "who made a representation, to whom, and the general content of the misrepresentation.  Furthermore, the complaint must assert specific allegations against each individual defendant in order to satisfy Rule 9(b)."  <u>EC Decision</u>, 2007 WL 2403553, at *10 (citing <u>Flood v. Makowski</u>, No. 03 Civ. 1803 (ARC), 2004 WL 1908221, at *13 (M.D. Pa. Aug. 24, 2004)).  Despite this clear admonition, Adelphia still does not – and cannot – allege that the Investment Banks made *any* misrepresentations to the non-Rigas family directors of Adelphia.

Having failed to allege that any of the Investment Banks made *any* misrepresentations to Adelphia's directors – much less alleging them with the "greater precision"

required under Rule 9(b) for a plaintiff in Adelphia's position – the fraud claim should be dismissed.[11]

      2.     **The Fraud And Fraudulent Concealment Claims Fail Because Adelphia Does Not Allege Fraudulent Intent With Sufficient Specificity (Counts 54 & 55)**

      Claims of fraud and fraudulent concealment both require sufficiently specific allegations of scienter, namely "facts that give rise to a strong inference of fraudulent intent." S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996); see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995) (requiring fraudulent intent for claim of fraudulent concealment); Viguers v. Philip Morris USA, Inc., 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (same under Pennsylvania law).[12] The AC lacks any specific allegations of such scienter.

      Instead, the AC alleges that the Rigases (and James Brown and Michael Mulcahey) intended to defraud Adelphia's non-Rigas family directors. See, e.g., AC ¶ 1423 ("the Rigas Family and each of Brown and Mulcahey made such representations and omissions of material facts to Adelphia and the Independent Directors with the actual intent that Adelphia and the Independent Directors rely upon them"). The AC has no allegations establishing fraudulent intent by any of the Investment Banks (much less each of them specifically). With respect to the Investment Banks, the AC merely repeats the inadequate allegations of the original complaint – that they and the Agent Banks were motivated by a desire to "protect their sources of income" and that they "financially benefited" from the fees Adelphia paid for their services. Id. ¶¶ 1567-69, 1574-75.

---

[11]     Both the fraud and fraudulent concealment claims should also be dismissed because the Bankruptcy Court ruled that Adelphia could replead the claims only to the extent they were "not duplicative of the . . aiding and abetting claim." EC Decision, 2007 WL 2403553, at *11. But still, the entirety of the AC's fraud and fraudulent concealment claims rests on the Investment Banks' alleged facilitation of the Rigases' insider fraud, and thus are wholly duplicative of the aiding and abetting claims. See, e.g., AC ¶ 1573 (alleging, in the fraud count, that the Investment Banks "participated in the Rigas Family's fraudulent scheme").

[12]     As the Bankruptcy Court previously held, Pennsylvania tort law is the applicable substantive law under New York choice-of-law principles. See CC Decision, 365 B.R. at 39-41.

It is well-settled law that an economic motive to earn transactional fees "is not alone sufficient to sustain a strong inference of fraudulent intent. If it were, every underwriter, law firm, accountant, and investment advisor whose compensation or commission depended on the completion of a[] [securities] offering would have a motive to commit fraud, which would make Rule 9(b) wholly meaningless." Fisher v. Offerman & Co., No. 95 Civ. 2566 (JGK), 1996 WL 563141, at *7 (S.D.N.Y. Oct. 2, 1996); see also Mazzaro de Abreu v. Bank of Am. Corp., No. 06 Civ. 673, 2007 WL 2609535, at *5 (S.D.N.Y. Sept. 10, 2007) (McKenna, J.) ("plaintiff 'must allege more than an interest in bank fees . . . to create a reasonable inference of fraudulent intent'") (internal citation and alteration omitted); Vogel v. Sands Bros. & Co., 126 F. Supp. 2d 730, 739 (S.D.N.Y. 2001) (Parker, J.) (defendant's "alleged desire to realize greater transaction fees and its close relationship with [the plaintiff] are insufficient to show an improper motive"); In re WRT Energy Sec. Litig., Nos. 96 Civ. 3610, 3611 (JFK), 1997 WL 576023, at *12 (S.D.N.Y. Sept. 15, 1997) ("increased profits has been rejected repeatedly as a sufficient basis for alleging scienter") (collecting cases), vacated on other grounds, 75 F. App'x 839 (2d Cir. 2003).[13]

Similarly, courts in this District – faced with allegations suggesting that the role of underwriters who conducted diligence may alone create the necessary inference of fraudulent intent – have consistently held that such allegations do not establish the scienter required for a fraud claim. See, e.g., Am. High-Income Trust v. Alliedsignal, 329 F. Supp. 2d 534, 545 (S.D.N.Y. 2004) ("speculative allegations that [defendant's] own due diligence should have uncovered the fraud cannot support an inference of fraudulent intent."). "[T]he allegation that a

---

[13]      The AC's related allegation that the Investment Banks and their commercial bank affiliates were motivated by a desire to ensure repayment of loans that they made to Adelphia also fails, as a matter of law, to establish the necessary scienter for a fraud or fraudulent concealment claim. See Am. High-Income Trust v. Alliedsignal, 329 F. Supp. 2d 534, 545 (S.D.N.Y. 2004) (allegation that "NationsBanc had a motive in that the proceeds of the Private Placement were used in part to pay off debt to a NationsBanc affiliate" was insufficient to establish fraudulent scienter).

defendant's due diligence investigation 'should have turned up the asserted improprieties in the offering materials' is insufficient to satisfy Fed. R. Civ. P. 9(b)."   In re WRT Energy Sec. Litig., 1997 WL 576023, at *13 (internal citation omitted); see also Chill v. Gen. Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996) ("Fraud cannot be inferred simply because [defendant] might have been more curious . . . ."); 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1531 (S.D.N.Y. 1995) ("Needless to say, mere involvement with a business that happened to be run on a phony basis suggests only business association, not fraudulent intent.").

Moreover, despite Judge Gerber's specific admonition that Rule 9(b) requires Adelphia to "assert specific allegations *against each individual defendant*," EC Decision, 2007 WL 2403553, at *10 (emphasis added), the AC attempts nothing of the sort.  Rather, Adelphia actually takes its already deficient allegations one step further in the AC, by not only lumping all 22 Investment Banks together, but also lumping all of the Investment Banks with 25 Agent Banks (and at times the Rigases), even when such allegations directly contradict other specific allegations in the AC.  See, e.g., AC ¶ 1426 (allegations lumping all of the "Investment Banks" with all the "Agent Banks").  Thus, Adelphia alleges the Investment Banks' culpability for each of the co-borrowers' facilities, notwithstanding that (1) none of the Investment Banks were lenders in those facilities and (2) even their various affiliated commercial banks were themselves not all parties to each facility.  See AC ¶¶ 843, 1454, 1460.  If such generalized and facially implausible allegations, alleging that close to 50 distinct financial institutions acted together in lock-step for over half a decade, with the very same mental state (notwithstanding that the Investment Banks competed with each other fiercely for Adelphia's business), satisfied Rule 9(b), then the Rule would have no meaning at all.

Not surprisingly, pleading requirements set a higher standard.  Specifically, courts in this district have held that "[i]n situations where multiple defendants are alleged to have

14

committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement." In re Crude Oil Commodity Litig., No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) (citations omitted) (lumping 13 defendants failed to satisfy Rule 9(b)); see also Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc., No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) (lumping two defendants failed to satisfy Rule 9(b)) (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986)); Doehla v. Wathne Ltd., Inc., 98 Civ. 6087 (CSH), 1999 WL 566311, at *17-*18 (S.D.N.Y. Aug. 3, 1999) (lumping three defendants failed to satisfy Rule 9(b)).  Indeed, such clearly implausible allegations fail to satisfy even the more generous notice pleading standards of Rule 8(a).  See Hottinger v. Amcoal Energy Corp., No. 89 Civ. 6391, 1992 WL 349851, at *8 (S.D.N.Y. Nov. 10, 1992) (McKenna, J.) (dismissing RICO claim under a general Rule 12(b)(6) standard where "no allegations of fraudulent concealment have been made which do not lump together all the [five] defendants" and plaintiff "fails to make averments as to the role of the individual defendants"); see also Iqbal, 490 F.3d at 157-58 (Rule 8(a) requires "a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") (emphasis in original).[14]

3.    Adelphia's Fraudulent Concealment Claim Also Fails Because The Investment
      Banks Owed No Duty To Disclose To The Non-Rigas Family Directors (Count 54)

        In dismissing Adelphia's fraudulent concealment claim, the Bankruptcy Court correctly held that, under Pennsylvania law, "mere silence without a duty to speak will not constitute fraud," EC Decision, 2007 WL 2403553, at *12 (quoting Debbs v. Chrysler Corp., 810

---

[14]    This method of lumping close to 50 disparate financial institutions leads to similarly fatal deficiencies with respect to the other elements of the fraud-related claims, as discussed below.  In addition, the lumped allegations fail to properly allege how each defendant's alleged conduct proximately caused the alleged injury.  See In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 579 (S.D.N.Y. 2007) (conducting proximate cause analysis, i.e., whether the damages could have been reasonably foreseen, *defendant by defendant*).  Accordingly, Adelphia's tort claims also should be dismissed because the AC does not allege how each defendant's actions proximately caused the alleged damages.

A.2d 137, 155 (Pa. Super. 2002)), and that "a duty to speak may arise out of an agreement between parties or . . . if one party is the only source of information to the other party, or the problems are not discoverable by other reasonable means." EC Decision, 2007 WL 2403553, at *12 (quoting Reichhold Chems., Inc. v. Millennium Int'l Techs., Inc., No. 99 Civ. 799 (CSG), 1999 WL 270391, at *2 (E.D. Pa. May 5, 1999)).  The Bankruptcy Court held that Adelphia's fraudulent concealment claim failed because, as underwriters to Adelphia, the Investment Banks owed no fiduciary duties and they were not alleged to be "the only possible source of the allegedly concealed information." EC Decision, 2007 WL 2403553, at *12.

In its repleaded fraudulent concealment claim, Adelphia adds no allegations that would create a fiduciary duty from the Investment Banks' underwriting activities,[15] and actually includes allegations that make crystal clear that the Investment Banks in fact were *not* the only possible source of the allegedly concealed information.  Indeed, Adelphia alleges that the Rigases, James Brown, Michael Mulcahey, and supposedly all 25 Agent Banks (among others) had knowledge of the alleged fraud. See, e.g., AC ¶ 801 (alleging that the "Rigas family . . . Brown, Mulcahey and other senior executives of Adelphia . . . were complicit in the fraud"); id. ¶ 807 (same with respect to "the Agent Banks and the Investment Banks").  Far from being the only possible source of the allegedly concealed information, the AC alleges that literally dozens of people and entities (many, like the Rigases and Adelphia's executives, with much closer and regular contact with Adelphia's directors) shared the information.

---

[15]      To the extent the Investment Banks could have owed a fiduciary duty, such duty would have run only to the company's shareholders, not to a discrete group of so-called "innocent" directors.  See ICN Pharm., Inc. v  Khan, 2 F.3d 484, 492 (2d Cir. 1993) (underwriters' duty "as a fiduciary is owed to the shareholders of [the issuers] . . . rather than to their incumbent managements") (citing Dirks v. S E C., 463 U.S. 646, 655 n.14 (1983) ("where corporate information is revealed legitimately to an underwriter, accountant, lawyer, or consultant working for the corporation, these outsiders may become fiduciaries *of the shareholders*") (emphasis added)).  Because the fraudulent claims were dismissible on other grounds, the Bankruptcy Court did not decide the issue of whether a fraudulent concealment claim was actionable where it was "based on nondisclosure to independent directors of facts known to insider directors of a company." CC Decision, 365 B.R. at 50; see also id. at 61 ("assuming, without deciding," that "claims for fraud could lie based on nondisclosure to independent directors").

Failing to cure this defect clearly identified by the Bankruptcy Court in its decisions – and instead, making allegations that make the deficiency even more apparent – Adelphia nonetheless reasserts the dismissed claim for fraudulent concealment. The legally insufficient claim should be dismissed, once and for all.[16]

## C.    The Aiding And Abetting Fraud Claim Should Be Dismissed (Count 38)

### 1.    Adelphia Fails To Allege Knowledge With Sufficient Specificity

A claim of aiding and abetting fraud requires actual knowledge of the underlying fraud, see Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006), Saltzman v. Zern, 407 F. Supp. 49, 56 (D. Pa. 1976), and both the primary violation and defendants' actual knowledge must be pled with particularity.[17] See CC Decision, 365 B.R. at 61 (aiding and abetting allegations dismissed because they lacked "the requisite particularity *in each respect*") (emphasis added).

The allegation of actual knowledge for aiding and abetting fraud requires an even higher degree of scienter than for primary fraud liability. See Banks v. Consumer Home Mortg., Inc., No. 01 Civ. 8508 (ILG), 2003 WL 21251584, at *5 (E.D.N.Y. Mar. 28, 2003) (internal citation omitted); Nat'l Westminster Bank USA v. Weksel, 124 A.D.2d 144, 150 (1st Dep't 1987) (aiding and abetting fraud requires "high degree of scienter").

---

[16]    Significantly, even if a duty to disclose information to the non-Rigas family directors existed (which it did not), the fraudulent concealment claim also fails because the AC does not allege with the particularity required under Rule 9(b) when or where the Investment Banks should have disclosed the allegedly material information. See Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 933 (S.D.N.Y. 2003) (pleading misrepresentations by "[defendant] and others" at "various meetings" clearly does not satisfy "the time, place, speaker and content requirements necessary for allegations of fraudulent concealment pursuant to Rule 9(b)") (internal citation omitted). The AC does not allege any particular meeting at which any of the Investment Banks (much less each of them) was present and withheld information that it should have disclosed.

[17]    The AC's fraudulent concealment claim, which is based on a theory of nondisclosure rather than affirmative misrepresentation, also requires Adelphia to allege with particularity that the Investment Banks knew material facts that it was bound to disclose. See, e.g., Congress Fin. Corp. v. John Morrell & Co., 790 F. Supp. 459, 472-73 (S.D.N.Y. 1992). Thus, in addition to the AC's failure to sufficiently allege intent to defraud and a duty to disclose, the fraudulent concealment claim should also be dismissed for its failure to allege with specificity the knowledge element.

In dismissing the claim for aiding and abetting fraud, the Bankruptcy Court clearly identified Adelphia's failure to allege "the extent to which the Defendants knew that the Rigases were concealing things from the independent directors." CC Decision, 365 B.R. at 62. Nevertheless, after five years of gathering information (from its own millions of documents and sources, as well as close to a million pages of discovery and over a hundred depositions in this and related actions), Adelphia utterly fails to address that defect in its AC. Adelphia cannot make a *single* specific allegation that any individual at any one of the 22 Investment Banks ever knew "what the Rigases told and did not tell the independent directors," the very allegation that the Bankruptcy Court found lacking when it previously dismissed the claim. See id. at 61.

Instead, with respect to the Investment Banks' knowledge, Adelphia alleges only – in the most general and conclusory fashion – that *all* of the Investment Banks (along with *all* of the Agent Banks) "knew and/or consciously avoided knowledge that the Rigas Family, Brown, and Mulcahey" made misrepresentations to the non-Rigas family directors from: (i) "their meetings and discussions with the Rigas Family . . . and other [Adelphia] employees," (ii) "their due diligence," and (iii) "their review of the Co-Borrowing Facilities, public indentures and [Adelphia's] SEC filings." AC ¶ 1424. As a matter of law, these allegations fall far short of satisfying Rule 9(b)'s strict requirements.

First, Adelphia's pleading this knowledge requirement in the disjunctive, alleging that the Investment Banks knew "and/or consciously avoided knowledge" of the fraud, id., itself makes the pleadings deficient, and is an open concession that, after years of discovery, it still cannot allege that any of the Investment Banks (much less each of them) actually had knowledge of the alleged fraud. See Williams v. Bank Leumi Trust Co., No. 96 Civ. 6695, 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997) (McKenna, J.) (disjunctive allegations that the defendant "knew, or recklessly disregarded" or "knew or should have known" of the primary wrongdoing

"are insufficient under the actual knowledge standard."). Other than highlighting the deficiency in its allegations, this alternative pleading has no effect on the legal requirements of *actual knowledge* or the specificity and plausibility requirements of Rule 9(b) and 8(a). See Mazzaro, 2007 WL 2609535, at *4 ("Constructive knowledge is insufficient to create aiding and abetting liability; actual knowledge is required.") (citing Steed Fin. L.D.C. v. Laser Advisers, Inc., 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003)).

In any event, the different bases for the Investment Banks' alleged knowledge all fail to satisfy Rule 9(b)'s strict pleading requirements. The allegation that the Investment Banks gained the necessary knowledge through unspecified "meetings and discussions with the Rigas Family . . . and other ACC employees" exemplifies the type of generalized allegations that do not meet Rule 9(b), much less the "greater precision" required of a plaintiff in Adelphia's position. Billard, 683 F.2d at 57. The AC does not allege *when* or *where* these "meetings and discussions" took place, *who* specifically attended them, and *what* specifically was disclosed at these meetings. See Affiliated FM Ins. Co. v. Jou Jou Designs, Inc., No. 90 Civ. 8262 (MJL), 1997 WL 473382, at *3 (S.D.N.Y. Aug. 19, 1997) (fraud allegations fail under Rule 9(b) where plaintiff does not "identify a single individual [from defendant company] who participated in any discussions or meetings regarding [the fraud]").

Similarly, the AC's allegation that the Investment Banks could have obtained knowledge of the Rigases' fraudulent misrepresentations from "their due diligence" and "their review of Co-Borrowing Facilities public indentures and [Adelphia's] SEC filings" lacks the required precision. AC ¶ 1424. In San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801 (2d Cir. 1996), the Second Circuit held that a fraud plaintiff must allege the precise information or language of a document that purportedly disclosed the fraud to an alleged co-tortfeasor. Id. at 812 ("Plaintiffs' unsupported general claim

19

of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.").[18]   In addition, courts in this District have consistently held that "the allegation that a defendant's due diligence investigation 'should have turned up the asserted improprieties in the offering materials' is insufficient to satisfy Fed. R. Civ. P. 9(b)." In re WRT Energy Sec. Litig., 1997 WL 576023, at *13 (internal citation omitted); see also Am. High-Income, 329 F. Supp. 2d at 545 ("speculative allegations that [an underwriter's] own due diligence should have uncovered the fraud cannot support an inference of fraudulent intent."); Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec., Corp., No. 99 Civ. 1944 (NRB), 2000 WL 709006, at *4 n.5 (S.D.N.Y. June 1, 2000) ("pleading the mere fact of due diligence cannot meet the scienter requirement") (internal citation omitted).   Under these legal standards, the AC's allegations of knowledge are clearly insufficient.

Even if Adelphia had identified the sources of the alleged knowledge with sufficient specificity – which it clearly has not – Adelphia independently fails to satisfy Rule 9(b), because the AC alleges such knowledge collectively among *all* 22 of the Investment Banks (as well as all 25 Agent Banks).  AC ¶ 1245.  Such lumped pleadings – alleging, in essence, that 47 separate (and intensely competitive) financial institutions *all* gained knowledge, in an identical manner, of the alleged misrepresentations that the Rigases made to the independent directors during meetings at which *none* of them were even present – is implausible on its face and directly contradicted by other specific allegations in the AC.  Such allegations do not satisfy the pleading standards of Rule 9(b) or Rule 8(a).

---

[18]   Citing Arazie v. Mullane, 2 F.3d 1456, 1467 (7th Cir. 1993) ("[R]eferences to unreleased or internal information that allegedly contradict[s] [defendants] public statements" should indicate such matters as "who prepared the projected figures, when they were prepared, how firm the numbers were, or which [company] officers reviewed them.").  See also Nat'l Westminster Bank v. Weksel, 124 A.D.2d 144 (1st Dep't 1987) (plaintiff's allegation that a law firm had access to all of the client's papers did not adequately plead actual knowledge of the client's underlying fraud).

2.  <u>Adelphia Fails To Allege Substantial Assistance By The Investment Banks</u>

The claim for aiding and abetting fraud should also be dismissed because the AC fails to allege, with the precision required by Rule 9(b), how each of the Investment Banks substantially assisted the alleged fraud.  In addition to actual knowledge, the tort of aiding and abetting requires substantial assistance by the alleged aider and abettor that amounts to "active participation," <u>Renner v. Chase Manhattan Bank</u>, No. 98 Civ. 926 (CSH), 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000), which must be pleaded with particularity.  <u>See, e.g</u>, <u>Varnberg v. Minnick</u>, 760 F. Supp. 315, 331 (S.D.N.Y. 1991).

The AC's allegations on this issue – like the rest of the AC – consist entirely of generalized allegations that lump all 22 Investment Banks with the 25 Agent Banks.  Although on notice that Rule 9(b) requires specific allegations as to each defendant, Adelphia alleges, again in a wholly conclusory fashion, that *all* 22 of the Investment Banks (along with all 25 of the Agent Banks) substantially assisted the Rigases' fraud by: (i) "structuring the Co-Borrowing Facilities"; (ii) "preparing Term Sheets for review by the Independent Directors"; (iii) permitting the Rigas Family to draw down excess amounts on the co-borrowing facilities; and (iv) "by underwriting, engaging in, and marketing securities offerings in which the Rigas Family intended to purchase sufficiently large amounts to maintain their majority control of ACC despite their inability to pay for those purchases without the abuse of the Co-Borrowing Facilities."  AC ¶ 1426.

As discussed above, such generalized allegations do not satisfy Rule 9(b), particularly the "greater precision" that the Rule demands of a plaintiff in Adelphia's position, having benefited from years of discovery and having greater access to the relevant information than any of the defendants.  <u>See, e.g.</u>, <u>LaRoe v. Elms Sec. Corp.</u>, 700 F. Supp. 688, 694 (S.D.N.Y. 1988) ("In a case such as this one, with multiple defendants, Rule 9(b) requires that

each defendant receive *particularized notice of his alleged participation* in the alleged fraud.") (emphasis added); The Limited, Inc. v. McCrory Corp., 645 F. Supp. 1038, 1043-44 (S.D.N.Y. 1986).[19]  Moreover, the allegations that the Investment Banks structured the co-borrowing facilities, prepared the term sheets, and permitted the Rigases to draw down excess amounts from the co-borrowings are plainly contradicted by other *specific* allegations in the AC that established that the Investment Banks did *not* themselves participate as lenders in the co-borrowing facilities.  See AC ¶¶ 843, 1454, 1460 (listing the lenders in the co-borrowing facilities that does not include any of the Investment Banks).  See also Mazzaro, 2007 WL 2609535, at *8 (dismissing aiding and abetting claim under Twombly where plaintiffs did not allege substantial assistance with "enough facts to raise a reasonable expectation that discovery will reveal supporting evidence") (internal citation and alteration omitted).[20]

*     *     *

In sum, the Bankruptcy Court (and more than a decade of Second Circuit precedent) made clear that in order for Adelphia to maintain its fraud claims against the Investment Banks, it would have to allege with much "greater precision" each of the elements of the claims (including specific misrepresentations, scienter, and knowledge) as to each of the Investment Bank defendants.  In its AC, Adelphia has ignored this directive altogether,

---

[19]     Adelphia's allegations of substantial assistance also flunk Rule 9(b) because many of the allegations in the AC are based solely upon "information and belief."  See AC ¶ 1065 (allegations of excess draw downs based upon information and belief); id. ¶¶ 1381, 1383 (allegations that Investment Banks structured co-borrowing facilities based upon information and belief), see also AC at p.2 (*all* allegations based upon information and belief).  It is black-letter law in this Circuit that fraud claims based "upon information and belief" must be dismissed, because they do not have the requisite particularity mandated by Rule 9(b).  See, e.g., Luce, 802 F.2d at 54 (2d Cir. 1986); see also First Capital Asset Mgmt , Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir 2004).  The only exception is for "matters peculiarly within the opposing party's knowledge," Luce, 802 F 2d at 54, n.1, an exception that plainly does not apply here since Adelphia – for years – has had access to its own information and massive discovery from other parties, including the Investment Banks, and is in a better position than anyone to know what specific actions by the defendants contributed to the alleged fraud.

[20]     The allegation that the Investment Banks aided and abetted the Rigases by underwriting Adelphia securities in a manner that permitted the Rigases to abuse the co-borrowing facilities is just another way of claiming that the Investment Banks permitted improper draw-downs on the co-borrowing agreement and suffers from the same fatal "lumping" deficiencies.  See AC ¶ 1426.

22

continuing to pursue its unsupportable claims against dozens of secondary actors, without adding any of the specifics demanded by the Bankruptcy Court and required by Rule 9(b) and 8(a). Accordingly, Adelphia's repleaded fraud-based claims should be dismissed.[21]

**POINT II**

**THE NEWLY ALLEGED "MARGIN LOAN"**
**CLAIMS SHOULD BE DISMISSED AS UNTIMELY (COUNT 31)**

In Count 31 of the AC, Adelphia adds $95 million of allegedly fraudulent transfer payments to its margin loan claim against SSB brought under section 548 of the Bankruptcy Code. AC ¶ 1359 (adding alleged margin loan payments for $17 million on October 15, 2001, $5 million on November 2, 2001, $14 million on November 5, 2001, $31 million on November 15, 2001, $3 million on February 22, 2002, and $25 million on April 1, 2002). Under the Bankruptcy Code, section 548 avoidance actions are governed by a two-year statute of limitations that begins to run upon the entry of an order for relief. 11 U.S.C. § 546(a). The filing of a Chapter 11 petition constitutes such an order for relief. See 11 U.S.C. § 301(b).

Because Adelphia filed its voluntary petition for bankruptcy on June 26, 2002, the statute of limitations under section 546(a) would have expired on June 25, 2004. However, on June 24, 2004 – one day before the expiration of the limitations period – the parties entered into a tolling agreement. That agreement expired on June 1, 2007. Kim Decl. Ex. A.[22] Therefore, the statute of limitations for Adelphia's new "margin loan" claims expired the following day on

---

[21]     In addition, the Investment Banks join in the arguments made by the Agent Banks that all the fraud-based claims should be dismissed because the term sheets and the co-borrowing agreements themselves, incorporated by reference in the AC, preclude their claims of fraud, and that the aiding and abetting claims should be dismissed because Pennsylvania does not recognize such causes of action. See Memorandum of Law In Support of Joint Motion of the Agent Banks to Dismiss the Amended Complaint.

[22]     In deciding this motion, the Court clearly may rely on the documents provided to SSB by Adelphia's counsel pursuant to their tolling agreement because they are integral to Adelphia's claim and are within its possession and knowledge. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 (2d Cir. 2002) (court may consider documents, not attached to or explicitly referenced in the complaint, where they are integral to plaintiff's claims and plaintiff had knowledge or possession of them).

June 2, 2007, almost five months before Adelphia served the AC, and the new claims against SSB are time-barred.[23]

These new claims by Adelphia do not "relate back" to the filing of the original complaint because (even if the new transfers actually were repayments of margin loans, which they were not), for fraudulent transfer and preference claims, each transfer is a separate and distinct event. See Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler), 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986) ("Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c) . . . The same should be true of separate fraudulent transfers.") (internal citations omitted); In re 360Networks, 367 B.R. 428, 434 (S.D.N.Y. 2007) (same). Avoidance claims can only relate back if the original complaint indicates an intention to pursue all similar transactions, or if the claims arose out of the same underlying conduct. See Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.), 67 B.R. 304, 306 & 308 (Bankr. S.D.N.Y. 1986); 360Networks, 367 B.R. at 434. Here, nothing on the face of the original complaint put SSB on notice that Adelphia would seek to avoid additional transfers. See Compl. ¶ 805; 360 Networks (holding amended complaint's allegations time-barred where original complaint "fail[ed] to set forth any facts putting the defendant on notice that additional transactions may be challenged."). Indeed, as noted above, documents submitted by Adelphia's own counsel as part of the tolling agreement specifically identified these transfers as deposits

---

[23]   Not only are the claims time-barred, but also they actually do not even relate to the margin loans alleged in Count 31. The documents submitted by Adelphia's own counsel in connection with the June 24, 2004 tolling agreement indicate that these additional transfers were for "overnight investment account deposits" and *not* margin loan payments. Kim Decl. Ex. B. Moreover, the AC fails to specify which of the more than 200 "Adelphia" debtor entities made the transfers alleged in Count 31. See AC ¶¶ 1359-60. Not only does this violate the pleading requirements of Rules 9(b) and 8(a), but also to the extent the transfers at issue were made by any of the operating subsidiary debtors, as set forth in the memoranda submitted in support of joint motions to dismiss by ABN AMRO Bank, N.V., with various lenders, and by the Non-Agent Lenders, Adelphia lacks standing to even assert avoidance claims based on those transfers. Accordingly, the margin loan claims should also be dismissed because the non-specific allegations of the AC make it impossible to determine whether Adelphia even has standing to bring these claims.

into a separate "overnight investment account" – not a repayment of margin loans, the transfers at issue in the original complaint.[24]

## CONCLUSION

For the foregoing reasons, the Investment Banks respectfully request that the Court dismiss the claims for fraud (Count 55), fraudulent inducement (Count 54), aiding and abetting fraud (Count 38), and aiding and abetting breach of fiduciary duty (Count 37) against the Investment Banks, dismiss the newly alleged "margin loan" claims (Count 31), and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      December 21, 2007

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

    Mitchell A. Lowenthal
    Deborah M. Buell
    Lindsee P. Granfield
    Members of the Firm

    One Liberty Plaza
    New York, New York 10006
    Telephone: (212) 225-2000
    Facsimile: (212) 225-3999

    Attorneys for the Investment Banks

---

[24] These new transfer claims against SSB are not the only ones whose veracity is undermined by Adelphia's own records  Even though the AC alleges that all of the transfers listed in Count 31 were "made" by "Adelphia," AC ¶ 1359 – an allegation presumably made to establish the fraudulent nature of the repayment of the Rigases' margin loan obligations – documents produced to Adelphia in discovery, as well as Adelphia's own forensic accounting (summarized in the investigative report completed by the counsel for the Special Committee of Adelphia's outside directors) demonstrate that many of the margin loan payments (including all of the payments allegedly made to DBS) in fact were made directly by Rigas Family entities, and *not* by Adelphia as it alleges in the AC.

25