**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | ) | No. 05 Civ. 9050 (LMM) |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| - against - | ) | |
| | ) | |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE MOTION OF SOCIETE GENERALE, S.A.**
**TO DISMISS AMENDED COMPLAINT**

Defendant Societe Generale, S.A. ("SocGen"), by and through its attorneys, Duane Morris LLP, submits this Memorandum of Law in support of its Motion to Dismiss (the "Motion to Dismiss") the amended complaint (the "Amended Complaint") filed against it by Adelphia Communications Corporation ("ACC") and affiliated debtors through the Adelphia Recovery Trust (the "Plaintiffs"), and respectfully states as follows:

**I.     INTRODUCTION**

In addition to all of the other defects with Plaintiffs' claims as set forth in previously filed Motions to Dismiss[1], Plaintiffs' claims against SocGen must be dismissed because Plaintiffs' fundamental theory of this case simply does not "fit" the undisputed facts regarding SocGen's relationship with ACC.

This case principally involves three so-called "co-borrowing facilities" through which loans were made by a number of financial institutions to ACC-related and Rigas family owned entities ("RFEs"). According to the Amended Complaint, those three co-borrowing facilities, the

---

[1]  Concurrently with the filing of this Memorandum, SocGen has filed a joinder to a number of the currently pending motions to dismiss filed by other defendants.

DM3\637408.4

"UCA/HHC Facility," the "CCH Facility" and the "Olympus Facility" (the "Co-Borrowing Facilities"), are "at the heart of the fraud" asserted by Plaintiffs here, namely that the defendants assisted the Rigas family, who owned a controlling stake in ACC at the time, in "a scheme by which the Rigas Family and the RFEs could exploit Adelphia's credit to obtain access to funds that they otherwise could not have obtained." Amended Complaint ¶¶825, 841.

Plaintiffs' theory of the case is essentially that the Co-Borrowing Facilities were part of a "pay to play" arrangement whereby the Rigas family would be permitted to use the borrowing collateral of the Debtors to borrow funds for their own personal use in exchange for "lucrative" investment banking fees to be garnered by the investment bank affiliates of the Agent Banks.[2] In particular, Plaintiffs allege that the defendant "Agent Banks," including SocGen[3], assisted the Rigas family in perpetrating their "scheme" by loaning money to the RFEs via the Co-Borrowing Facilities in exchange for ACC's retention of their affiliated investment banks to provide "investment advisory services" for which the investment banks could charge "exorbitant rates." *See* Amended Complaint ¶¶1052, 1053, 1056.

However, the undisputed facts as set forth in the Amended Complaint demonstrate that SG Cowen Securities Corporation, n/k/a Cowen and Company, LLC ("Cowen"), an investment bank which was at the time related to SocGen, was participating in Adelphia offerings long

---

[2] *See, e.g.*, Amended Complaint ¶827 ("The Rigas Family and certain of the Agent Banks and Investment Banks purposefully structured each of the Co-Borrowing Facilities to leverage Adelphia's credit to provide the Rigas Family with access to billions of dollars for their own personal use...."); *See also* Amended Complaint ¶12 ("the Agent Banks' *quid pro quo* for funding the Co-Borrowing Facilities was the Rigas Family's promise of lucrative underwriting and other fees to the Investment Banks (each an affiliate of an Agent Bank).").

[3] SocGen rejects Plaintiffs' classification of it as an "Agent Bank." In point of fact, SocGen was merely a *nominal* agent in one Co-Borrowing Facility. As a nominal agent in the Olympus Facility, SocGen had the title of "agent" but lacked any administrative or fiduciary duties. *See* Olympus Credit Agreement §12.10 and note 11, *infra*.

*before* SocGen became an "Agent Bank" in any of the Co-Borrowing Facilities. As set forth in the Amended Complaint, Cowen participated in a series of underwritings for Adelphia related entities beginning in October of 1999. *See* Amended Complaint ¶¶1046, 1060. Of the five underwritings in which Cowen participated, four occurred prior to the date of the Olympus Facility, the first and only Co-Borrowing Facility in which SocGen served as an "Agent Bank."[4] Because Plaintiffs' "pay to play" theory cannot be reconciled with these undisputed facts, Plaintiffs' claims against SocGen as an "Agent Bank," namely Counts 37, 38, and 55, should be dismissed as against SocGen.

Furthermore, Counts 33, 37, 38 and 55 of the Amended Complaint should be dismissed as against SocGen because the Amended Complaint fails to allege those fraud-based claims against SocGen with the particularity required under Fed. R. Civ. P. 9(b).[5]

---

[4] SocGen was a participating lender (or, in the parlance of the Amended Complaint, a "Syndicated Bank") in the UCA/HHC Facility (dated 5/6/99) and the CCH Facility (dated 4/14/00) but did not possess even a nominal agent title in either of those facilities. Amended Complaint ¶¶ 843, 845, 881, 883.

[5] In addition to the deficiencies associated with the Plaintiffs' fraud claims against SocGen as an "Agent Bank" under the Olympus Co-Borrowing Facility, SocGen, to the extent necessary, also seeks to dismiss these claims against it by virtue of its role as an agent bank with respect to the Century TCI Facility. SocGen was a "nominal" agent bank under the Century TCI Facility. Amended Complaint ¶823. However, as noted by Bank of Nova Scotia in its Joinder in Support of the Agent Banks' Motion to Dismiss the Amended Complaint (Docket Nos. 207 and 208), it is unclear whether the Plaintiffs use of the phrase "Agent Bank" in the Amended Complaint encompasses defendants such as SocGen, who served as agent banks under non-co-borrowing facilities like the Century TCI Facility, especially since Paragraph 24 of the Amended Complaint specifically defines the term "Agent Banks" to refer to "various banks [who] provided services and advice to Adelphia in structuring, arranging, and managing *the Co-Borrowing Facilities.*" Amended Complaint ¶24 (emphasis added).

Since there are no specific allegations of any wrongdoing on behalf of any of the Century TCI agent banks in any of the 1,655 paragraphs of the Amended Complaint, and in light of Paragraph 24's definition of the phrase "Agent Banks," it appears that Plaintiffs deliberately elected to exclude non-co-borrowing banks from categorization as "Agent Banks." As such, SocGen should not be held liable, in its capacity as a nominal agent bank under the Century TCI Facility, for any of the tort claims asserted by the Plaintiffs against the "Agent Banks" in the Amended Complaint. To the extent that Plaintiffs are, in fact, still asserting those tort claims against SocGen in its capacity as an agent bank under the Century TCI Facility, then SocGen respectfully requests that those counts be dismissed for the reasons set forth herein.


DM3\637408.4

## II.     BACKGROUND

### A.     Procedural Background

Because the procedural background of this litigation has been described exhaustively elsewhere, SocGen will not repeat it here but rather will incorporate by reference the procedural background set forth in (i) the Memorandum of Law in Support of Joint Motion of Various Lenders to Dismiss the Tort Claims in the Amended Complaint, and (ii) the Memorandum of Law in Support of Joint Motion of Various Lenders to Dismiss the Avoidance and Subordination Claims.

It should be noted that, unlike some other defendants (the "Prior Movants"), SocGen[6] has not previously moved in the bankruptcy court to dismiss the original complaints filed by the Unsecured Creditors Committee and the Equity Committee of ACC.[7] This Motion represents the first response by SocGen to the allegations set forth in the various claims filed against it in this litigation.[8]

---

[6] Due to a conflict of interest involving the Kasowitz Benson firm and SocGen, Jenner & Block is representing Plaintiffs in their claims against SocGen. Although the Amended Complaint was filed on October 19, 2007, it was not served on counsel for SocGen until several days later. By agreement among counsel, SocGen was granted until January 4, 2008, to respond to the Amended Complaint.

[7] To the extent, if at all, necessary to protect the record, SocGen also hereby moves to dismiss the counts of the Amended Complaint that were dismissed in the bankruptcy court's order dismissing certain counts of the original complaint filed by the Creditors Committee, *see In re Adelphia Commc'ns Corp.*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007) (the "Dismissal Opinion"), including Counts 34-35 (Recharacterization), Count 36 (Breach of Fiduciary Duty), Count 37 (Aiding and Abetting Breach of Fiduciary Duty, with respect to the Century TCI Facility), Count 39 (Gross Negligence), Counts 45-47 (Unjust Enrichment), and Count 48 (Equitable Estoppel).

[8] By this Motion, SocGen joins in the arguments made by the Prior Movants in their appeals of the Dismissal Opinion, and SocGen also moves to dismiss all counts that the Court dismisses against any of the Prior Movants in their appeals of the Dismissal Opinion, including Count 32 (Bank Holding Company Act), Count 33 (Equitable Disallowance and Equitable Subordination), and Count 37 (Aiding and Abetting Breach of Fiduciary Duty, except which respect to the Century TCI Facility, which claim was dismissed in the Dismissal Opinion).

4

B.     **Factual Background**

SocGen was but one of the many lenders that participated in certain of the six prepetition credit facilities involving Adelphia – the three Co-Borrowing Facilities and three non-co-borrowing facilities – that form the basis of the Amended Complaint.  SocGen did not serve as a lead agent in any of those six facilities, and SocGen had absolutely no participation at all in two of the facilities (the Frontiervision Facility and the Parnassos Facility).  SocGen is not an "Investment Bank" as that term is used in the Amended Complaint and did not underwrite any public securities offerings of ACC or any of its related companies.[9]

A review of the Amended Complaint reveals that the sole basis for SocGen's involvement in this litigation is (i) SocGen's participation as a "Syndicated Bank" (formally an "Issuing Lender" in the language of the credit agreements) in two of the Co-Borrowing Facilities (the UCA/HHC Facility and the CCH Facility); and (ii) SocGen's participation as a nominal agent in the Olympus Facility.[10]  Ignoring the plain language of the credit agreement in the Olympus Facility, which states that despite having an "agent" title, SocGen had no duties or obligations beyond that of any Issuing Lender,[11] Plaintiffs categorize SocGen as an "Agent

---

[9]   Cowen, which was at the times relevant to the allegations in the Amended Complaint an affiliate of SocGen, is named as an Investment Bank defendant in the Amended Complaint.

[10]  SocGen also served as a nominal agent in the Century TCI Facility, which was *not* one of the Co-Borrowing Facilities that were, in the words of the Amended Complaint, "at the heart" of the alleged fraud asserted by Plaintiffs here.  Amended Complaint ¶825.  The Amended Complaint is devoid of allegations as to how SocGen's participation as a nominal agent in a non-co-borrowing credit facility such as the Century TCI Facility might have caused any harm to plaintiffs or been at all fraudulent.  Rather, the central allegations of the Amended Complaint stake out a theory of the case based on the Co-Borrowing Facilities alone.  *See, e.g.,* Amended Complaint ¶¶1051-1058.  Moreover, as addressed in note 5, *supra*, in light of Paragraph 24's definition of the phrase "Agent Bank" it appears that Plaintiffs are not asserting any such claims against defendants based on their participation as agent banks in non-co-borrowing facilities.

[11]  The relevant provisions of the Olympus credit agreement are attached as an exhibit to several of the pending Motions to Dismiss.  *See, e.g.,* Exhibit A to Memorandum of In Support of Motion of Toronto-Dominion Bank to Dismiss Amended Complaint.  The Court may take judicial notice of that document because it is relied upon in the Amended Complaint and is integral to its allegations.  *See International*

(Continued…)

Bank" in the Amended Complaint. This overly broad and inaccurate characterization of SocGen represents an apparent effort by Plaintiffs to expand the pool of defendants from which to seek recovery and is not based on any actual wrongdoing by SocGen, or even on any specific allegations of wrongdoing by SocGen. The fact that SocGen was assigned a nominal agent title in a single Co-Borrowing Facility offers no logical or legal basis for SocGen to be treated differently or exposed to greater liability than any of the other non-administrative agent banks that are referred to in the Amended Complaint as "Syndicated Banks."

### III.   ARGUMENT

#### A.   Plaintiffs' Theory of the Case Is Not Plausible In Light Of The Undisputed Facts Regarding SocGen

The gravamen of the Amended Complaint is that the Agent Banks and the Investment Banks acted in concert to: (i) assist the Rigas family in their looting of Adelphia assets; (ii) assist the Rigas family and others in their deception of the "Innocent Directors" through the use of misleading Term Sheets; (iii) permit the Rigas family to make excessive draws from the Co-Borrowing Facilities; and (iv) cover up of the "fraudulent use" of the Co-Borrowing Facilities. *See, e.g.*, Amended Complaint ¶¶1366, 1367, 1377, 1414, 1416, 1426, 1428, and 1430.

According to Plaintiffs, the reason for the Agent Banks' participation in the Co-Borrowing Facilities was "based primarily upon the fees being earned by its affiliated Investment Bank. . . ." with the implicit understanding that such participation was a *quid pro quo* for the

---

(Continued…)

    *Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)(holding that on a motion to dismiss a court may consider any document on which a complaint relies or that is integral to the complaint).

"lucrative investment banking fees" earned by the investment banking affiliates of the Agent Banks. *See, e.g.,* Amended Complaint ¶¶1038, 1040, 1042, 1051, 1052, 1053, 1054 and 1056.

However, Plaintiffs' "theory" does not hold up with respect to SocGen. At the times relevant to the allegations in the Amended Complaint, Cowen was SocGen's "affiliated" investment bank. Amended Complaint ¶1037. In Paragraphs 1046 and 1060 of the Amended Complaint, Plaintiffs set forth the "Adelphia-related Transactions financings" in which the "Investment Banks" participated.

According to Plaintiffs, Cowen participated in the following offerings/underwritings:

1. an October 1999 offering of Class A common stock;
2. an October 1999 offering of limited partnership interests in Century TCI;
3. a September 2000 offering of senior notes on behalf of ACC;
4. an April 2001 offering of convertible subordinated notes on behalf of ACC; and
5. an October 2001 offering of senior notes on behalf of ACC.

Importantly, SocGen was not an "Agent Bank" for any of the Co-Borrowing Facilities until the Olympus Facility, dated September 28, 2001. Amended Complaint ¶925. Thus, the undisputed facts reveal that Cowen was performing offering/underwriting services *well in advance* of SocGen becoming an "Agent Bank" in any of the Co-Borrowing Facilities. Indeed, until the Olympus Facility in late 2001, SocGen was merely a Syndicated Bank[12] – a status that Plaintiffs distinguish from that of the "Agent Banks" to which Plaintiffs assign a higher degree of culpability in the Amended Complaint.

---

[12] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Amended Complaint.

7

The undisputed sequence of events reveals the logical impossibility of Plaintiffs' theory, at least as applied to SocGen – namely, that Cowen's participation in Adelphia-related offerings was a *consequence* of SocGen's service as a nominal agent in a Co-Borrowing Facility.  On the contrary, as alleged by Plaintiffs themselves, Cowen had a well-established role providing investment banking services to Adelphia-related entities *long before* SocGen participated in any of the Co-Borrowing Facilities as an "Agent Bank."

In further support of their theory, Plaintiffs allege that "the Agent Banks acquiesced to lending terms (duration, interest rates, etc.) that were not the result of arm's length negotiations, but were agreed to between the Rigas Family and the Agent Banks as part of a package that included Adelphia acquiring investment advisory services at prices that more than compensated for the banking fees."  Amended Complaint ¶1051.[13]  Here again, Plaintiffs' theory of liability makes no sense (and indeed is explicitly contradicted by the undisputed facts) with respect to SocGen because Cowen was earning the allegedly "lucrative" underwriting fees in connection with Adelphia-related offerings/underwritings well *before* SocGen assumed even a nominal agent role in any of the Co-Borrowing Facilities.

Where a plaintiff's claim is not plausible in light of the undisputed facts, the complaint should be dismissed.  The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), addressed federal pleading standards in the context of a claim under Section 1 of the Sherman Antitrust Act.  Considering the general rule that a complaint need only set forth "a short and plain statement of the claim showing the petitioner is entitled to relief," the

---

[13] Paragraph 1052 of the Amended Complaint further explains the essence of the Plaintiffs' theory of the case, stating that "[t]he Agent Banks acceded to these terms because they required the Rigas Family to cause Adelphia to engage in other transactions with their affiliated Investment Banks, which carried the promise of lucrative fees to the Investment Banks and helped to eliminate any credit risk from the loan transactions, which was their primary motivation in their dealings with Adelphia."

Court explained that a plaintiff's obligation to provide the grounds of his "entitle[ment] to relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .." *Id.* at 1965.  In addition, the Court admonished that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.  Applying the clarified pleading standard in the context of the plaintiff's claim, the Court held that the plaintiff in *Twombly* failed to meet his obligation to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Plaintiffs' claims here fail to meet the Rule 8 plausibility standard set forth in *Twombly*. Plaintiffs' theory of liability is inconsistent with the undisputed facts as to SocGen and Cowen, and Plaintiffs have pled no facts that might suggest how the claims against SocGen are plausible in light of the disconnect between Plaintiffs' theory of the case and those undisputed facts.  For these reasons, this Court should dismiss Plaintiffs' claims against SocGen as an "Agent Bank."

### B. The Amended Complaint Fails to Plead Fraud-Based Claims Against SocGen With Sufficient Particularity

Counts 33, 37, 38 and 55 of the Amended Complaint against SocGen all sound in fraud. As such, they must be pled with particularity under Fed. R. Civ. P. 9(b).  Several of the motions to dismiss pending before the Court describe in detail the deficiencies of the Amended Complaint in that regard.  SocGen has joined those briefs and raises the issue here merely to point out that the fraud-related allegations in the Amended Complaint against SocGen are textbook examples of insufficient pleading under Rule 9(b).

9

### 1. The Amended Complaint Resorts to Improper "Group Pleading"

Nowhere in any of the 1,655 paragraphs of the Amended Complaint is there even a single specific allegation regarding individual conduct by SocGen that might support Plaintiffs' fraud based claims against it. Instead, Plaintiffs resort to impermissible "group pleading."

Plaintiffs label SocGen an "Agent Bank" merely because it was given a nominal agent title in the Olympus Facility in late 2001. Notwithstanding SocGen's "late arrival" into "Agent Bank" status (the Olympus Facility was the last of the Co-Borrowing Facilities and predated ACC's bankruptcy filing by only a handful of months), Plaintiffs level generic allegations at all of the "Agent Banks" collectively, without any specific allegations regarding how or why those group allegations apply or pertain to SocGen.

This is particularly troublesome because there are multiple allegations of wrongdoing against "Agent Banks" (*e.g.*, the UCA/HHC Agent Banks or the CCH Agent Banks), who Plaintiffs concede do not include SocGen. *See, e.g.*, Amended Complaint ¶¶861, 862, 864, 869, 870-874, 876, 897, 905, 908, 914-919, 921, and 922. In other words, the Amended Complaint sets forth claims with respect to the conduct of the UCA/HHC Agent Banks, the CCH Agent Banks, and the Olympus Agent Banks, respectively, but instead of asserting causes of action against each of those groups separately, Plaintiffs generically and collectively assert causes of action against all of the "Agent Banks" as if each one (or group) was somehow jointly and severally liable for the alleged wrongdoing, *even if that alleged wrongdoing occurred in connection with a Co-Borrowing Facility in which the defendant did not participate as an "Agent Bank."* Thus, Plaintiffs seek to recover against SocGen as an "Agent Bank" based on alleged wrongdoing by other "Agent Banks" in connection with Co-Borrowing Facilities in which SocGen was merely a "Syndicated Bank."

10

It is well-settled that group pleading of the sort employed by Plaintiffs here fails to satisfy the requirements of Rule 9(b).  *See, e.g., Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)("Rule 9(b) is not satisfied where the complaint attributes the alleged fraudulent statements to 'defendants.'"); *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir. 1987)("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of his alleged participation in the fraud."); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986)(allegations properly dismissed under Rule 9(b) where plaintiff failed to "connect allegations of fraudulent representations to particular defendants"). Moreover, allegations of fraudulent intent must be supported by sufficiently detailed factual allegations "giving rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

Here, not only is the Amended Complaint devoid of specific allegations of fraudulent intent, but the general allegations against the "Agent Banks" are inapplicable to SocGen due to the fact that its investment banking affiliate Cowen was engaged in Adelphia related underwritings/offerings several years before SocGen first became even a nominal agent in any of the Co-Borrowing Facilities.  As such, the alleged motive for the Agent Banks' claimed fraud is inoperative as to SocGen.

      **2.**    **The Amended Complaint Fails to Plead Aiding and Abetting Against SocGen With Sufficient Particularity**

The Amended Complaint fails to plead any actual knowledge by SocGen of the underlying fraud and breach of fiduciary duty on which counts 37 and 38 of the Amended Complaint are based and, further, fails to plead with specificity what assistance SocGen offered

11

to the primary wrongdoers.  These failures are fatal to Plaintiffs' claims under those counts.[14]  *See Varnberg v. Minnick*, 760 F. Supp. 315, 330 (S.D.N.Y. 1991)(aiding and abetting fraud); *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)(aiding and abetting breach of fiduciary duty).

### 3. The Amended Complaint Fails to Plead Actual Fraud Against SocGen With Sufficient Particularity

In the proceedings below, the bankruptcy court dismissed the claim for fraud set forth in the original Complaint on Rule 9(b) grounds.  The failings of the original Complaint regarding the fraud claim are not rectified in the Amended Complaint.  Count 55 of the Amended Complaint, setting forth Plaintiffs' re-pleaded claim for fraud, contains no allegations that stand separately from Plaintiffs' aiding and abetting fraud claim, as the bankruptcy court below held were necessary to support such a claim.  *See Adelphia Commc'ns Corp.*, Nos. 02-41729 (REG), 03-04942 (REG), 207 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007).  More to the point, the Amended Complaint contains no specific allegations against SocGen that might support a fraud claim against it, so Count 55 must be dismissed as against SocGen.

### 4. The Amended Complaint Fails to Plead Equitable Subordination Against SocGen With Sufficient Particularity

In light of the absence of allegations which support a fraud claim against SocGen, Plaintiffs' equitable subordination claim also fails as a matter of law, as the Amended Complaint does not contain any allegations that would satisfy the Rule 9(b) pleading standard applicable to the claim for equitable subordination in Count 33 against SocGen.  As noted by some of the other movants, a claim for equitable subordination is subject to Rule 9(b) when asserted against a

---

[14] These same deficiencies were noted in the original Complaint by the bankruptcy court below and have not been rectified in the Amended Complaint.  *See* Dismissal Opinion, 365 B.R. 24, 61-62.

non-insider such as SocGen. *See, e.g., In Re N&D Properties, Inc.*, 799 F. 2d 726, 731 (11th Cir. 1986)(non-insider claims for equitable subordination must be pled with particularity); *see also ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997)("Where noninsider, non-fiduciary claims are involved, the level of pleading and proof is even higher.")  In the absence of specific allegations of fraud against SocGen, Plaintiffs' claim for equitable subordination must also be dismissed as against SocGen.

## IV. CONCLUSION

For all of the foregoing reasons, together with those set forth in the motions and memoranda to which it has joined, Societe Generale respectfully requests that the following Counts of the Amended Complaint be dismissed with prejudice against it:  1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 32, 33, 37, 38, 41, 42, 43, 50, 51, 52, and 55, and for such other and further relief as the court deems proper.

Respectfully submitted by

Dated:  New York, New York
       January 4, 2008

DUANE MORRIS LLP

By:  /s/ *Lawrence J. Kotler*
     Lawrence J. Kotler, Esquire (LK-8177)
1540 Broadway, 14th Floor
New York, NY 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

and

John F. Horstmann, Esquire
J. Manly Parks, Esquire
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020

*Counsel to Societe Generale, S.A.*

13