Peter Feldman (PF-3271)
Anthony M. Piccione (AP-2195)
John Bougiamas (JB-7292)
OTTERBOURG, STEINDLER, HOUSTON
 & ROSEN, P.C.
230 Park Avenue
New York, New York 10169
Telephone:  (212) 661-9100

Attorneys for Defendant Mitsubishi UFJ Trust
and Banking Corporation

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------X
                                                              :
ADELPHIA RECOVERY TRUST,                                      :
                                                              :
                              Plaintiff,                      :        No. 05 CV 9050 (LMM)
                                                              :
                    v.                                        :
                                                              :
BANK OF AMERICA, N.A., et al.,                                :
                                                              :
                              Defendants.                     :
                                                              :
-------------------------------------------------------------------X
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION AND JOINDER**
**OF DEFENDANT MITSUBISHI UFJ TRUST AND BANKING**
**CORPORATION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

    A.  The Plaintiff's Failure to Timely Serve Mitsubishi Trust ............................... 2

    B.  The Allegation That Mitsubishi Trust Was a Managing Agent
        Is Demonstrably False and the Claims Relating Thereto Are
        Legally Insufficient ....................................................................................... 4

    C.  Mitsubishi Trust Adopts the Arguments of Other Lenders ............................ 5

FACTUAL BACKGROUND ................................................................................. 7

    A.  Mitsubishi Trust Was Never Served with the Original
        Summons and Original Complaint ................................................................. 7

    B.  The Claims Asserted Against Mitsubishi Trust as an
        Alleged Managing Agent ............................................................................. 11

ARGUMENT ....................................................................................................... 12

    I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED
        FOR INSUFFICIENT SERVICE OF PROCESS ......................................... 12

        A.  Plaintiff Cannot Make a Prima Facie Showing that Service
            Was Proper ............................................................................................. 12

           1. The Defective Service .......................................................................... 13

           2. The Plaintiff's Failure to Comply with Federal Rule 4(m) ................... 14

           3. The Expiration of the Statute of Limitations Requires
              Dismissal With Prejudice .................................................................... 17

    II.  THE CLAIMS AGAINST MITSUBISHI TRUST
        SHOULD BE DISMISSED ON OTHER GROUNDS ................................. 18

        A.  The Claims Asserted Against Mitsubishi Trust
            Based on Its Status as an Alleged Managing Agent
            Should Be Dismissed ............................................................................. 18

1. Mitsubishi Trust Is Not an Agent Bank ................................................................. 18

2. The Tort Claims Asserted Against Mitsubishi Trust
   Should Be Dismissed for Lack of Particularity ........................................................ 19

B.  The Bankruptcy Claims Asserted Against  Mitsubishi Trust
    Are Also Legally Insufficient ............................................................................ 20

1. The Indemnification Provisions Contained in the Debtors'
   Plans of Reorganization Bar the Plaintiff's Recovery................................................ 20

2. The Subordination Claim Is Legally Insufficient...................................................... 21

3. The Declaratory Judgment Claim Is Invalid as a Matter of Law .............................. 22

4. The BHCA Claim Should Be Dismissed as Against
   Mitsubishi Trust ........................................................................................... 23

CONCLUSION ....................................................................................................... 24

TABLE OF AUTHORITIES

Page

<u>Cases</u>

<u>Adelphia Communications Corp. v. Bank of America, N.A.</u>, 365 B.R. 24
    (Bankr. S.D.N.Y. 2007) .................................................................................. 8, 21, 22

<u>Bogle-Assegai v. Connecticut</u>, 470 F.3d 498 (2d Cir. 2006)........................................ 16

<u>Coleman v. Milwaukee Bd. of School Dirs.</u>, 290 F.3d 932 (7th Cir. 2002) ................... 15

<u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42 (2d Cir. 1991), <u>cert</u>. <u>denied</u>,
    <u>Cortec Indus., Inc. v. Westinghouse Credit Corp.</u>, 503 U.S. 960 (1992)...................... 8

<u>D'Angelo-Fenton v. Town of Carmel Police Dep't</u>, 470 F. Supp.2d 387
    (S.D.N.Y. 2007) .......................................................................................................... 8

<u>Darden v. DaimlerChrysler N. Am. Holding Corp.</u>, 191 F. Supp. 2d 382
    (S.D.N.Y. 2002) ........................................................................................................ 13

<u>Delicata v. Bowen</u>, 116 F.R.D. 564 (S.D.N.Y. 1987)................................................... 15

<u>Deptuch v. Abraham Joshua Heschel School</u>, 2007 WL 4462194 (S.D.N.Y.
    Dec. 17, 2007) .......................................................................................................... 16

<u>Fragoso v. Romano</u>, 702 N.Y.S.2d 333 (App. Div. 2d Dep't 2000) .............................. 23

<u>Int'l Cultural Prop. Soc'y v. Walter de Gruyter & Co.</u>, 2000 U.S. Dist.
    LEXIS 9447, No. 99 Civ. 12329, 2000 WL 943319 (S.D.N.Y. July 6, 2000) ........... 13

<u>Howard v. Klynveld Peat Marwick Goerdeler</u>, 977 F. Supp. 654
    (S.D.N.Y. 1997), <u>aff'd</u>, 173 F.3d 844 (2d Cir. 1999) ................................................ 15

<u>In re Bradlees Stores, Inc.</u>, 209 B.R. 36 (Bankr. S.D.N.Y. 1997) ................................. 18

<u>In re Mediators, Inc.</u>, 105 F.3d 822 (2d Cir. 1997)...................................................... 17

<u>In re Northern Telecom Ltd.</u>, 42 F. Supp.2d 234 (S.D.N.Y. 1998) ............................... 22

<u>Jenkins v. Virgin Atl. Airways, Ltd.</u>, 46 F. Supp. 2d 271 (S.D.N.Y. 1999)..................... 8

<u>Logicom Inclusive, Inc. v. W.P. Stewart & Co.</u>, 2004 US Dist. LEXIS 15668,
    No. 04 Civ. 0604, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) .............................. 13

<u>Nat'l Union Fire Ins. Co. v. Sun</u>, No. 93 Civ. 7170 (LAP), 1994 WL 463009
    (S.D.N.Y. 1994) ........................................................................................................ 15

Ovadia v. Top Ten Jewelry Corp., 2005 U.S. Dist. LEXIS 16784 (S.D.N.Y. 2005) ..................... 22

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000) ................................................................. 8

Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293
    (Bankr. S.D.N.Y. 1999) ................................................................................................ 8

Trotman v. Grand Central Partnership, Inc., 2007 WL 4115806 (S.D.N.Y.
    Oct. 19, 2007) ........................................................................................................... 16-17

Williams v. City of New York, 2005 U.S. Dist. LEXIS 6674 (S.D.N.Y. 2005) ......................... 22

Zapata v. City of New York, 502 F.3d 192 (2d Cir. 2007) ................................... 15, 16, 18

Statutes and Rules

11 U.S.C. § 544 ................................................................................................ 17, 18, 22

11 U.S.C. § 546(a) ......................................................................................... 4, 17, 18, 22

11 U.S.C. § 548 ............................................................................................................ 22

28 U.S.C. § 2201 .......................................................................................................... 23

Advisory Committee Notes in the 2007 Amendments to Federal Rule 4 ....................... 14

New York Banking Law § 34 ......................................................................................... 14

New York Banking Law 200(3) ..................................................................................... 14

Fed. R. Civ. P. 4(m) .......................................................................................... 2, 3, 14-17

Fed. R. Civ. P. 8(a) ...................................................................................................... 19

Fed. R. Civ. P. 9(b) ...................................................................................................... 19

Fed. R. Civ. P. 12(b)(5) ............................................................................................ 1, 12

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

Fed. R. Civ. P. 12(d) ..................................................................................................... 19

Defendant Mitsubishi UFJ Trust and Banking Corporation, formerly known as The Mitsubishi Trust and Banking Corporation ("Mitsubishi Trust")[1], submits this Memorandum of Law in support of Mitsubishi Trust's motion (the "Motion"), pursuant to Rules 12(b)(5) and (6) of the Federal Rules of Civil Procedure (the "Federal Rules"), to dismiss, in its entirety and with prejudice, as against Mitsubishi Trust, the amended complaint (the "Amended Complaint"), filed in the above-captioned action (the "Action") on October 31, 2007, by the Adelphia Recovery Trust ("ART"), successor-in-interest to the Official Committee of Unsecured Creditors (the "Creditors' Committee" and together with ART, the "Plaintiff") of Adelphia Communications Corporation ("ACC") and its affiliated debtors (together with ACC, "Adelphia" or the "Debtors") and to join in certain other motions to dismiss pending before the Court.[2]  In further support of its Motion to Dismiss, Mitsubishi Trust respectfully states as follows:

## PRELIMINARY STATEMENT

Multiple bases exist for dismissal of the claims asserted in the Amended Complaint against Mitsubishi Trust, a lender in certain of the credit facilities described in the Amended

---

[1]     The Amended Complaint, at paragraph 72, incorrectly alleges that Mitsubishi Trust and Banking Corporation is now known as Mitsubishi UFJ Financial Group, but at paragraph 666 correctly alleges that its current name is Mitsubishi UFJ Trust and Banking Corporation.  This error was corrected by stipulation, which was so ordered on December 20, 2007 (Docket No. 321) (the "December 2007 Stipulation").  A copy of the December 2007 Stipulation as so ordered by this Court is annexed as Exhibit  ("Ex.") "A" to the Affidavit of Peter Rockwell, sworn to on January 25, 2008 (the "Rockwell Affidavit"), submitted in support of this Motion.

[2]     This Action was initially brought by the Creditors' Committee as an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  By Decision dated August 30, 2005 (Adversary Proceeding Docket No. 326), the Bankruptcy Court (Gerber, B.J.) authorized the Creditors' Committee to pursue this Action on behalf of the Debtors' estate.  Pursuant to the Order Confirming First Modified Fifth Amended Joint Chapter 11 Plan for the Debtors dated January 5, 2007, title to this action was transferred to ART. (Bankruptcy Court Docket No. 12952).

Complaint (the "Facilities").[3] These bases include (a) the Plaintiff's failure to serve the summons and complaint on Mitsubishi Trust for more than four (4) years after the commencement of this Action - - and until after the applicable statute of limitations had expired; (b) that Mitsubishi Trust was not an Agent Bank[4] and, therefore, the claims arising out of Mitsubishi's alleged role as an Agent Bank have no merit; and (c) the various grounds for dismissal set forth in the motions to dismiss filed by hundreds of other Defendants, which motions Mitsubishi Trust joins and incorporates by reference herein, and which demonstrate that none of the claims has any merit.

A.    **The Plaintiff's Failure to Timely Serve Mitsubishi Trust**

ART's predecessor, the Creditors' Committee, filed the original complaint in this Action on July 6, 2003 (the "Original Complaint"), and in connection therewith, the Clerk of the Bankruptcy Court issued two Summonses, one dated July 8, 2003 and the other August 7, 2003 (collectively, the "Original Summons").  (Adversary Proceeding Docket Nos. 2, 3).  Mitsubishi Trust was named as a Defendant in the Original Complaint.  However, Mitsubishi Trust was never served with the Original Summons and Original Complaint.  Plaintiff failed to deliver a copy of the Original Summons and Original Complaint to Mitsubishi Trust within the 120-day period as required by Federal Rule 4(m), i.e., by November 3, 2003, and did not seek an

---

[3]    Mitsubishi Trust was an original lender in the CCH Co-Borrowing Facility, the Century-TCI Facility and FrontierVision Credit Facility.  In addition, within a month of execution of the CCH Credit Agreement, Mitsubishi Trust acquired an additional commitment in the CCH Co-Borrowing Facility, which it obtained in the secondary market.  (Rockwell Affidavit at ¶ 3, n.3).  However, this additional commitment in the CCH Co-Borrowing Facility is not reflected in the Amended Complaint.  The Amended Complaint, at paragraph 666 also incorrectly alleges that Mitsubishi Trust is an assignee of debt incurred under the UCA/HHC Co-Borrowing Facility.  Mitsubishi Trust never acquired any debt or commitment in the UCA/HHC Co-Borrowing Facility and it appears that the reference to the UCA/HHC Co-Borrowing Facility in paragraph 666 is in error.  Since the grounds for dismissal asserted herein would apply regardless of whether or not the Plaintiff corrects these errors, all of the claims should be dismissed, including the erroneous claims under the UCA/HHC Co-Borrowing Facility (i.e., Claims 1-4 and 52) in which Mitsubishi Trust is incorrectly alleged to have been an "Assignee."  (Amended Complaint ("AC") at ¶ 666).

[4]    Except as otherwise noted, capitalized terms herein have the meaning ascribed to them in the Amended Complaint.

extension of the time to do so. Rather, the Original Summons and Original Complaint were delivered to a different entity, The Bank of Tokyo-Mitsubishi Ltd. ("Bank of Tokyo")[5] -- at an address that was <u>never</u> the address for Mitsubishi Trust. (Rockwell Affidavit at ¶ 6).

For more than four (4) years, ART and its predecessor failed to serve Mitsubishi Trust, even though: (a) the correct address for Mitsubishi Trust was expressly set forth in the very loan documents upon which this suit is based, (b) Bank of Tokyo, in writing, advised the Creditors' Committee's counsel of their error in service as long ago as August 2003 and never received the call she invited Plaintiff's counsel to make if they had any questions, and (c) readily available public records of the Federal Reserve System and the New York State Banking Department not only show the correct address for Mitsubishi Trust, but also establish that Mitsubishi Trust, a foreign bank, maintains a licensed New York branch, such that service could have been effectuated at its correct address or through the Superintendent of Banking pursuant to New York Banking laws.

The Second Circuit has held that a court is not required to grant an extension of the 120-day period under Federal Rule 4(m) unless "good cause" is shown and a court may refuse to grant an extension where the Plaintiff fails to demonstrate a "colorable excuse" for its negligence. Under the circumstances of this case, the Plaintiff simply has no "good cause" or even a "colorable excuse" that might warrant an extension four (4) years after the Plaintiff permitted the service period to lapse. Moreover, by December 2007, when Mitsubishi Trust accepted service of a <u>new</u> Summons dated October 31, 2007 (the "New Summons") and the Amended Complaint, the two-year statute of limitations on the Debtors' avoidance powers set

---

[5]      The Bank of Tokyo-Mitsubishi Ltd. is now known as the Bank of Tokyo-Mitsubishi UFJ Ltd.

forth in Bankruptcy Code § 546(a)(1)(A) had long since expired.[6] Therefore, the claims asserted by the Plaintiff for intentional and constructive fraudulent transfers and preference payments (collectively, the "Avoidance Claims"), and the remaining claims for relief that are predicated upon the success of the Avoidance Claims, should be dismissed with prejudice.

**B.     The Allegation That Mitsubishi Trust Was a Managing Agent Is Demonstrably False and the Claims Relating Thereto Are Legally Insufficient**

Assuming, *arguendo*, that the claims against Mitsubishi Trust are not time-barred, the claims alleged against Mitsubishi Trust relating to its status as an alleged "Agent Bank" must nonetheless be dismissed.  The Amended Complaint incorrectly alleges that Mitsubishi Trust was a "Managing Agent" and, therefore, an "Agent Bank" in connection with the CCH Co-Borrowing Facility.  (AC at ¶ 881).  Based upon this faulty premise, the Amended Complaint asserts claims against Mitsubishi Trust, as an Agent Bank, for violation of the Bank Holding Company Act ("BHCA") (the "Bank Holding Company Claim") (Claim 32), aiding and abetting breach of fiduciary duty (Claim 37), aiding and abetting fraud (Claim 38), and fraud (Claim 55) (collectively the "Tort Claims").  (AC at ¶¶ 72 and 881).  As set forth herein, a review of the CCH Credit Agreement -- on which the Amended Complaint is based -- makes it clear that Mitsubishi Trust was not a "Managing Agent" (or any other type of "Agent Bank") and, as a result, the Tort Claims asserted against Mitsubishi Trust on that erroneous basis should be dismissed on this ground alone.  Indeed, in view of the inherent unfairness of requiring Mitsubishi Trust to defend the Tort Claims when it was not an Agent Bank, Mitsubishi Trust requests that, pursuant to Federal Rule 12(d), the Court treat this part of the Motion as one for

---

[6]     Mitsubishi Trust accepted service of the New Summons and Amended Complaint pursuant to the December 2007 Stipulation (referred to in footnote 1 hereof) (Docket No. 321) without prejudice to the defenses it held.

summary judgment if the Court determines that it cannot dismiss the Tort Claims under Federal Rule 12(b)(6) without referring to matters not cognizable on a motion to dismiss.

### C.    Mitsubishi Trust Adopts the Arguments of Other Lenders

Again, assuming, *arguendo*, that the claims against Mitsubishi Trust in the Amended Complaint are not time barred, the Amended Complaint should still be dismissed as against Mitsubishi Trust for all the reasons set forth in various motions of other Defendants to dismiss currently pending before this Court.

The Amended Complaint asserts that, based on Mitsubishi Trust's involvement in the Facilities described in the Amended Complaint, Mitsubishi Trust was a recipient of the intentional and constructive fraudulent transfers and preference payments comprising the Avoidance Claims.  In addition, the Amended Complaint seeks equitable relief against Mitsubishi Trust in the form of a declaratory judgment (the "Declaratory Judgment Claim") and subordination and disallowance of Mitsubishi Trust's claims (the "Subordination Claim" and together with the Avoidance and Declaratory Judgment Claims, the "Bankruptcy Claims"). [7]

The Bankruptcy Claims against Mitsubishi Trust suffer from the same legal infirmities as the claims asserted by the Plaintiff against hundreds of other Defendants in this Action and should be dismissed in their entirety for all the same reasons set forth in the Non-Agent Lenders' Motions to Dismiss Plaintiffs' Amended Complaint dated December 21, 2007 (the "Non-Agent Lenders' Motion to Dismiss") and the Joint Motion of Various Lenders to Dismiss the

---

[7]      In the Amended Complaint, Mitsubishi Trust is alleged to have been a recipient of (i) intentional fraudulent transfers with regard to the CCH Co-Borrowing Facility (Claims 5 and 7), and the Century-TCI Credit Facility (Claims 13 and 15); (ii) constructive fraudulent transfers with regard to the CCH Co-Borrowing Facility (Claims 6 and 8), and the Century-TCI Credit Facility (Claims 14 and 16); and (iii) preferential payments with respect to the Century-TCI Credit Facility (Claim 43), the FrontierVision Credit Facility (Claim 49), and the CCH Co-Borrowing Credit Facility (Claim 50).  As stated, the Amended Complaint also asserts claims against Mitsubishi Trust (Claims 1-4 and 52) based on the erroneous allegation that Mitsubishi Trust is an assignee of debt under the UCA/HHC Co-Borrowing Facility, which it is not.  See, footnote 3, supra.

Avoidance and Subordination Claims dated December 21, 2007 (Docket No. 201) (the "Nominal Agents' Bankruptcy Claims Motion" and together with the Non-Agent Lenders' Motion to Dismiss, the "Lenders' Motions to Dismiss").

Mitsubishi Trust hereby joins in the Lenders' Motions to Dismiss and incorporates herein by reference the grounds for dismissal set forth therein, including the arguments raised in each of the Memoranda of Law filed by the Non-Agent Lenders in Support of their Motions to Dismiss,[8] and the Memorandum of Law in Support of Joint Motion of Various Lenders to Dismiss the Avoidance and Subordination Claims dated December 21, 2007 (Docket No. 216).  In addition, Mitsubishi Trust also incorporates herein by reference the documentary proof annexed to (i) the Joint Appendix of Exhibits filed in Support of the Non-Agent Lenders' Motion to Dismiss (the "Joint Appendix") (Docket No. 175); and (ii) the Declaration of Phil Anker dated December 21, 2007 (the "Anker Declaration") in Support of the Nominal Agents' Bankruptcy Claims Motion. (Docket Nos. 222, 224).

Similarly, assuming, *arguendo*, that Mitsubishi Trust is deemed for purposes of this Motion to be an "Agent Bank", then the Tort Claims against Mitsubishi Trust should also be dismissed for the reasons set forth in the Memorandum of Law in Support of the Joint Motion of Various Lenders to Dismiss the Tort Claims filed on December 21, 2007 (Docket No. 221) (the

---

[8]     The Non-Agent Lenders are a group of approximately 400 entities across all six credit facilities identified by Plaintiff in the Amended Complaint as either a "Syndicate Lender" or "Assignee."  The Non-Agent Lenders' Motion to Dismiss is based upon six supporting Memoranda of Law, organized by the six credit facilities identified in the Amended Complaint, filed concurrently with the Non-Agent Lenders' Motion to Dismiss and which set forth in detail the bases for dismissing the Amended Complaint.  (See Docket Nos. 177-82).  The Amended Complaint alleges that Mitsubishi Trust was involved in the CCH Co-Borrowing Facility, UCA/HHC Co-Borrowing Facility, the FrontierVision Credit Facility and the Century TCI Credit Facility.  However, due to the pleading errors appearing in the Amended Complaint, including the erroneous allegation that Mitsubishi Trust was an Assignee in the UCA/HHC Co-Borrowing Facility, and due to ART's use of "John Doe" Defendants, in an abundance of caution, Mitsubishi Trust is joining in all six motions and incorporates the arguments in each of the supporting memoranda of law.

"Nominal Agents' Tort Motion"). Mitsubishi Trust hereby joins in and incorporates herein by reference the grounds for dismissal set forth in the Nominal Agents' Tort Motion, including the Nominal Agents' Memorandum of Law in Support of the Motion (Docket No. 218) and the documentary proof annexed to the Anker Declaration (Docket Nos. 222, 224).

## FACTUAL BACKGROUND

The history of this litigation has been described exhaustively by various other parties, including the Non-Agent Lenders and Nominal Agents in the Lenders' Motions to Dismiss, which are incorporated herein. Mitsubishi Trust, therefore, will not repeat that background information here. Instead, the following will set forth the facts relevant to the additional grounds for dismissal that specifically pertain to Mitsubishi Trust.

A.    **Mitsubishi Trust Was Never Served with the
      Original Summons and Original Complaint**

Mitsubishi Trust, a Japanese banking corporation conducting business in New York through the branch it maintains here (AC, ¶ 72), is a wholly-owned subsidiary of Mitsubishi UFJ Financial Group, Inc. ("MUFG").[9]

Mitsubishi Trust was named as a Defendant in the Original Complaint dated July 6, 2003. According to the Affidavit of Service dated August 28, 2003 and filed by the Creditors' Committee while this action was pending before the Bankruptcy Court (Adversary Proceeding Docket No. 4) (Rockwell Affidavit, Ex. "B"), the Creditors' Committee purported to serve Mitsubishi Trust with the Original Summons and Original Complaint by mail on August 18, 2003, at the following address:

---

[9]     See Rockwell Affidavit at ¶ 6 citing to Form 20-F filed by MUFG ("Form 20-F") with the United States Securities and Exchange Commission ("SEC") dated August 12, 2002, at pp. 17-18 and 35-36 available at http://www.mufg.jp/english/ir/form20-f/backnumber/2002mtfg/pdffile/mtfg20f.pdf. Mitsubishi UFJ Financial Group, Inc. was formerly known as Mitsubishi Tokyo Financial Group Inc.

> Mitsubishi Trust
> 1251 Ave of America
> New York, New York 10020

Mitsubishi Trust was not then located at 1251 Avenue of the Americas, and indeed it has never been located there, a fact easily demonstrated by reference to the official public records of the Federal Reserve System and of the New York State Superintendent of Banking. (Rockwell Affidavit, Exs. "C" through "F"). Rather, as established by those same records -- and by the very loan agreements on which this lawsuit is based -- the correct address for Mitsubishi Trust is 520 Madison Avenue, New York, New York (where it has been located since 1982).[10]  The address to which the Original Summons and Original Complaint were mailed was instead the address for Bank of Tokyo -- a fact that Plaintiff well knew, as the "service" copies of the Original Summons and Original Complaint were accompanied by a covering letter from Plaintiff's counsel dated August 18, 2003 (the "August 2003 Letter") that was addressed to:

> The Mitsubishi Trust and Banking Corporation
> c/o The Bank of Tokyo-Mitsubishi
> Attn:  Beatrice Kossodo
> Senior Vice President
> 1251 Avenue of the Americas
> New York, NY 10020

---

[10]     On a Rule 12(b)(6) motion, this Court may consider documents:  "(1) that have been incorporated by reference in the complaint; (2) of which judicial notice may be taken; or (3) of which plaintiff had knowledge of and relied upon in bringing the lawsuit." Jenkins v. Virgin Atl. Airways, Ltd., 46 F. Supp. 2d 271, 275 (S.D.N.Y. 1999) (internal citations omitted). See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); Adelphia Communications Corp. v. Bank of America, N.A., 365 B.R. 24, 34 (Bankr. S.D.N.Y. 2007) (taking judicial notice of documents incorporated in the complaint by reference); Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 309 (Bankr. S.D.N.Y. 1999). Public disclosure documents required by law to be, and that have been, filed with public agencies such as the SEC are among those documents of which judicial notice may be taken. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied Cortec Indus., Inc. v. Westinghouse Credit Corp., 503 U.S. 960 (1992). Additional matters as to which judicial notice may be taken include documents "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" pursuant to Rule 201(b)(2) of the Federal Rules of Evidence. See D'Angelo-Fenton v. Town of Carmel Police Dep't, 470 F. Supp.2d 387, 393 n.5 (S.D.N.Y. 2007).

<u>See</u>, Affidavit of Monique Morreale, sworn to January 25, 2008 ("Morreale Affidavit), in Support of the Motion at Ex. "A."

As is apparent from the records of the Federal Reserve System and the New York State Banking Department, Bank of Tokyo is a separate foreign bank, with a separate New York branch, that is also a subsidiary of MUFG. If there was any purported confusion on Plaintiff's part, it was quickly dispelled just days after the faulty service sent to Bank of Tokyo was made. By letter dated August 29, 2003, Bank of Tokyo, by its counsel, responded to the August 2003 Letter (the "August 2003 Response") -- well within the 120-day period -- and with sufficient time for the Plaintiff to correct any defects in service under Federal Rule 4. (Morreale Affidavit, Ex. "B"). In its August 2003 Response, Bank of Tokyo advised the Plaintiff's counsel that Mitsubishi Trust was not located "at the address set forth on your cover letter and, therefore, these materials cannot be accepted," returning with the August 2003 Response, the copies of the Original Summons and Original Complaint that had been delivered to the wrong party at the wrong address. However, in order to provide the Plaintiff with further information if required, Bank of Tokyo's counsel specifically invited the Plaintiff's counsel to contact her if Plaintiff's counsel had any questions. (Morreale Aff., Ex. "B"). No representative of the Plaintiff ever responded to the letter or ever communicated with Bank of Tokyo to obtain any additional information. <u>See</u> Morreale Affidavit at ¶ 7.

Nearly four years later, in the summer of 2007, Bank of Tokyo received another letter from Plaintiff's counsel which was again addressed to Mitsubishi Trust at Bank of Tokyo's New York address. That letter, dated June 29, 2007 (the "June 2007 Letter"), was not addressed "c/o" Bank of Tokyo, as was the August 2003 letter, but was simply addressed to Mitsubishi Trust at 1251 Avenue of the Americas, New York, New York. In the June 2007 Letter, Plaintiff's

counsel advised that it was serving Mitsubishi Trust with the discovery requests that were enclosed therewith.  (Morreale Affidavit, Ex. "C").

Notwithstanding Bank of Tokyo's August 2003 Response advising that Mitsubishi Trust was not located at 1251 Avenue of the Americas, in the June 2007 Letter, Plaintiff's counsel stated: "Our records indicate that you were served with the complaint in the above-referenced action . . . ."  (Morreale Affidavit, Ex. "D").  At the invitation of Plaintiff's counsel, Bank of Tokyo responded to the June 2007 Letter by an email (to the email address identified by Plaintiff's counsel) attaching the August 2003 Response that explained almost four (4) years before that Mitsubishi Trust was not located at 1251 Avenue of the Americas.  Id.  Again, Bank of Tokyo did not receive any reply or inquiry from Plaintiff's counsel.

There is clearly no justifiable basis for the Plaintiff's long standing failure to properly serve Mitsubishi Trust, since it had to look no further than the loan documents in its possession and referred to in its Original Complaint to obtain the correct address.  Schedule 2.1 of the CCH Credit Agreement (see Ex. "G" to the Rockwell Affidavit), entitled "Lenders and Commitments," identifies each of the lenders to the CCH Co-Borrowing Facility, and for each provides, among other information, each lender's contact information for notice purposes under the CCH Credit Agreement.  Section 2.1 of the CCH Credit Agreement correctly sets forth 520 Madison Avenue as the address for the New York branch of Mitsubishi Trust.

Indeed, a review of the publicly available information maintained by the Federal Reserve System and the New York Banking Department demonstrates that the New York branch of Bank of Tokyo has been located at 1251 Avenue of the Americas, New York, New York since 1996, and the New York branch of Mitsubishi Trust has been located at 520 Madison Avenue, New York, New York since 1982.  (See Rockwell Affidavit, Exs. "C" through "F" thereto).

10

In sum, Mitsubishi Trust was never served with the Original Summons and Original Complaint. Process was not served upon Mitsubishi Trust until December 20, 2007, four and one-half years later, when, pursuant to the December 2007 Stipulation, counsel for Mitsubishi Trust, through counsel, accepted service of the New Summons and Amended Complaint without prejudice to the defenses it held. (Rockwell Affidavit, Ex "A"). As discussed below, by December 2007, the Plaintiff's time to effect service had expired four (4) years earlier and the Amended Complaint should be dismissed with prejudice.

**B.      The Claims Asserted Against Mitsubishi Trust as an Alleged Managing Agent**

The Amended Complaint alleges that Mitsubishi Trust was a Managing Agent in the CCH Co-Borrowing Facility. However, as a review of the CCH Credit Agreement establishes, Mitsubishi Trust was not a Managing Agent (or any other type of Agent Bank) in the CCH Co-Borrowing Facility. The term "Managing Agents" is a defined term in the CCH Credit Agreement and it _does not_ include Mitsubishi Trust, but does include each of the other lenders alleged in the Amended Complaint (at ¶ 881) to be Managing Agents:

> Managing Agents means, collectively, ABN AMRO Bank N.V., Bank of Montreal, The Bank of New York, The Bank of Nova Scotia, Citibank, N.A., Cooperative Centrale Raiffeisen-Boerenleenbank B.A., "Rabobank Nederland," New York Branch, Credit Lyonnais New York Branch, Credit Suisse First Boston, DLJ Capital Funding, Inc., First Union National Bank, Fleet National Bank, Merrill Lynch Capital Corp., Morgan Stanley Senior Funding, Inc., and SunTrust Bank.

CCH Credit Agreement (at p. 14) (Joint Appendix at Ex. "1").[11]

The distinction between Mitsubishi Trust and those defendants denominated in the CCH Credit Agreement as Managing Agents is also apparent from a review of Schedule 2.1 to the

---

[11]      The "Managing Agents" are lenders who are among the so-called "Nominal Agents" -- agents in name only -- who expressly were given no additional responsibilities or powers by virtue of their titles under the CCH Credit Agreement. See CCH Credit Agreement at Section 12.10. (Joint Appendix, Ex. "1").

CCH Credit Agreement (Rockwell Affidavit, Ex. "G").  In addition to providing contact information for each of the lenders under the CCH Credit Agreement, that Schedule provides the amount of the loan commitment each lender held as of the date of the Agreement.  As reflected in Schedule 2.1, the common denominator for the Managing Agents is that each held $56,428,571 of the revolver loan commitment.  In contrast, as also reflected in Schedule 2.1, as of the date of the Agreement, Mitsubishi Trust held a revolver loan commitment of only $10 million (and a term loan commitment of $5 million).  Only the Managing Agents under the CCH Co-Borrowing Facility held revolving loan commitments in the amount of $56,428,571, thereby further demonstrating that Mitsubishi Trust, with its revolving loan commitment of $10 million, was not one of the "Managing Agents", and that the Amended Complaint is wrong in including Mitsubishi Trust as a member of the group of Managing Agents.

## ARGUMENT

### I.

### THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS

The Amended Complaint should be dismissed as to Mitsubishi Trust pursuant to Federal Rule 12(b)(5) for insufficient service of process, since Mitsubishi Trust was never served with the Original Summons and Original Complaint in accordance with Federal Rule 4 and Rule 7004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**A.** **Plaintiff Cannot Make a *Prima Facie* Showing that Service Was Proper**

"The burden on a motion to dismiss for insufficient service of process rests with the plaintiff, who must, through specific factual allegations and any supporting materials, make a *prima facie* showing that service was proper."  <u>Kwon v. Yun</u>, 2006 U.S. Dist. LEXIS 7386, *6

(S.D.N.Y. Feb. 21, 2006)  citing, e.g., Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 US

Dist. LEXIS 15668, No. 04 Civ. 0604, 2004 WL 1781009, at *4 (S.D.N.Y. Aug. 10, 2004);

Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002);

Int'l Cultural Prop. Soc'y v. Walter de Gruyter & Co., 2000 U.S. Dist. LEXIS 9447, No. 99 Civ.

12329, 2000 WL 943319, at *1 (S.D.N.Y. July 6, 2000).

   As discussed below, the Plaintiff cannot make a *prima facie* showing that service was

proper since Mitsubishi Trust was never served in accordance with either the applicable federal

or state law and the Plaintiff took no steps to correct its patently defective attempted service,

even though it was promptly advised of its mistake.

### 1.    The Defective Service

   Mitsubishi Trust was purportedly served with the Original Summons and Original

Complaint pursuant to Bankruptcy Rule 7004(b)(3), on August 18, 2003, by certified mail

addressed to "Mitsubishi Trust c/o The Bank of Tokyo-Mitsubishi" at 1251 Avenue of the

Americas, New York, NY 10020.  (Morreale Affidavit at ¶ 4).[12]  However, the Plaintiff was

promptly advised in writing that Mitsubishi Trust was not located at that address and, although

invited to do so, failed to contact in-house counsel of Bank of Tokyo if they had any questions.

(Morreale Affidavit at ¶¶ 6-7).  There is simply no excuse for Plaintiff's failure to contact Bank

of Tokyo or take any other steps to cure the defective service after it was advised of the error.  In

fact, it is unclear why the Plaintiff mailed the Original Summons and Original Complaint to the

wrong address in the first place, since it could have easily located Mitsubishi Trust's address

from the underlying loan documents to the Facilities (See, e.g. Schedule 2.1 of the CCH Credit

---

[12]    The affidavit of service filed by the Plaintiff also confirms that service was made by mail addressed to
Mitsubishi Trust at 1251 Avenue of the Americas.  (See Rockwell Affidavit, Ex. B).

Agreement, Rockwell Affidavit, Ex. "G") or from a review of public records of the Federal

Reserve System and the New York State Banking Department (Rockwell Affidavit, Ex. "C"

through "F").  Notably, Mitsubishi Trust has been at its current address since 1982.  Id.

Moreover, even if the Creditors' Committee somehow overlooked the address in the loan

documents and did not bother to consult the foregoing public records for Mitsubishi Trust's

address, the Creditors' Committee could have simply served Mitsubishi Trust through the New

York Superintendent of Banking, since Mitsubishi Trust conducts business in New York through

a branch office that is licensed by the New York Superintendent of Banking and, under New

York Banking Law, the Superintendent of Banking is appointed as agent for service of process

on branches of foreign banks.  See New York Banking Law §§ 34 and 200(3).  Certainly, it was

incumbent upon Plaintiff to take action after being notified of its error by Bank of Tokyo, if not

before.

## 2.  The Plaintiff's Failure to Comply with Federal Rule 4(m)

Under the circumstances presented here, the Plaintiff cannot make a *prima facie* showing

that service was proper and, therefore, Mitsubishi Trust is entitled to dismissal under Federal

Rule 4(m) which provides:

> If a defendant is not served within 120 days after the complaint is filed,
> the court--on motion or on its own after notice to the plaintiff--must
> dismiss the action without prejudice against that defendant or order that
> service be made within a specified time.  But if the plaintiff shows good
> cause for the failure, the court must extend the time for service for an
> appropriate period.  This subdivision (m) does not apply to service in a
> foreign country under Rule 4(f) or 4(j)(i).[13]

Fed. R. Civ. P. 4(m).

---

[13]    Federal Rule 4(m) was amended, effective December 1, 2007, to make "stylistic" changes.  See Advisory
Committee Notes in the 2007 Amendments to Federal Rule 4.

Since the Plaintiff failed to serve the Original Summons and Original Complaint within the 120-day period and no extension was sought by or granted to the Plaintiff, the Court should dismiss the Amended Complaint as against Mitsubishi Trust.  Moreover, in the event that the Plaintiff now asks that the Court extend the time for service, *nunc pro tunc*, that request should be denied because the Plaintiff cannot demonstrate any good cause or even a colorable excuse that might warrant the Court to grant an extension of the service period.

As explained by the Second Circuit in Zapata v. City of New York, 502 F.3d 192, 193 (2d Cir. 2007), an extension under Rule 4(m) is warranted when "good cause" is shown, but in the absence of such a showing, the Court may deny the extension when the plaintiff has "advanced no colorable excuse whatsoever for his neglect."  Here, neither "good cause" nor a "colorable excuse" has been shown and any request for an extension more than four years after the period expired should be denied.

A plaintiff has a "heavy burden" to establish good cause under Rule 4(m).  Spinale v. United States, 2005 U.S. Dist. LEXIS 4608 at *9 (S.D.N.Y. 2005).  Good cause is established only in exceptional circumstances where a failure to make timely service results from circumstances beyond a plaintiff's control such as when a defendant evades service.  Nat'l Union Fire Ins. Co. v. Sun, 1994 WL 463009, at *3 (S.D.N.Y. 1994); see also Coleman v. Milwaukee Bd. of School Dirs., 290 F.3d 932, 934 (7th Cir. 2002) ("Good cause means a valid reason for delay, such as the defendant's evading service.")  A clerical error is not "good cause" for extending the 120-day period.  See, e.g. Delicata v. Bowen, 116 F.R.D. 564, 566 (S.D.N.Y. 1987).  "An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause . . . ." Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999).

15

"Good cause" is clearly lacking in the present case and the Plaintiff should not be permitted to avoid dismissal under Federal Rule 4(m) in the absence of even a "colorable excuse" for its neglect.  No such excuse exists here because the Plaintiff:  (a) failed to conduct even the most cursory due diligence to locate the proper address for Mitsubishi Trust, which was contained in the loan documents referred to in the Amended Complaint and was otherwise publicly available; (b) failed to take any steps to correct the defective service after being advised in writing by Bank of Tokyo of the deficiency in August 2003; and (c) failed to take any steps to seek to extend the Federal Rule 4(m) period after being notified of the service deficiency.  See Bogle-Assegai v. Connecticut, 470 F.3d 498, 508-09 (2d Cir. 2006) (An extension of time for service of complaint was not granted where plaintiff failed to request an extension of time for almost two years during the pendency of the case after she first learned of defendants' objection to service); Deptuch v. Abraham Joshua Heschel School, 2007 WL 4462194, at *1 (S.D.N.Y. Dec. 17, 2007) (Motion for an extension denied where plaintiff failed to exercise due diligence and advanced no colorable excuse for her neglect in the six months that elapsed since she learned that service was defective); Spinale, 2005 U.S. Dist. LEXIS, at *12 (Court denies plaintiff's motion for an extension due to plaintiff's negligence in attempting to locate the defendant, and noting that "courts have refused to find justifiable excuse when the plaintiff's neglect and inadvertence are unaccompanied by a diligent effort to identify and remedy the service defect quickly").

The circumstances here are similar to those in Trotman v. Grand Central Partnership, Inc., 2007 WL 4115806 (S.D.N.Y. Oct. 19, 2007), a case decided after Zapata, and in which the District Court denied the plaintiff's request to extend the period within which it could effectuate service of the complaint.  As the Court observed in Trotman:

The genuinely extraordinary thing about the situation at bar is that counsel for the defendants - all three of them - advised the Court and plaintiff's counsel that service was defective in a letter dated February 14, 2007, just two weeks after service was purportedly effected and well within the 120 days provided by Rule 4 for effecting service.  As of that moment, plaintiff's counsel was on notice that there was a problem with service. Insofar as the corporation is concerned, that problem could readily have been corrected:  the summons and complaint could have been redelivered to the corporation's headquarters, or sent to the Secretary of State of New York, or sent to the corporation by mail pursuant to Rule 4(d), and the lawsuit would have been properly commenced.  Grand Central Partnership did nothing to evade service of process.  Plaintiff's counsel simply refused to acknowledge his error and to correct it.

Trotman,  2007 WL 4115806 at *3.

Here, despite having received written notice of the improper service, the Plaintiff took no steps to effect proper service at any time during the 120-day period provided by Rule 4(m) or for the succeeding four (4) years, even after it was put on notice again in August 2007.  As a result of the Plaintiff's failure to properly effectuate service, the Court should dismiss the action as to Mitsubishi Trust.

3.    **The Expiration of the Statute of Limitations
       <u>Requires Dismissal With Prejudice</u>**

Mitsubishi Trust is entitled to have the Amended Complaint dismissed with prejudice under Federal Rule 12(b)(6) because, by December 2007, when Mitsubishi Trust was served with the New Summons and Amended Complaint pursuant to the December 2007 Stipulation, the two-year statute of limitations on the Debtors' avoidance powers set forth in Bankruptcy Code § 546(a)(1)(A) had long since expired.  See In re Mediators, Inc., 105 F.3d 822, 827-28 (2d Cir. 1997) (dismissing fraudulent conveyance claims brought under section 544(b) of the Bankruptcy Code because they were brought after the two year statute of limitations provided for in section 546(a)); Global Crossing Estate Representative v. Winnick, 2006 U.S. Dist. LEXIS

53785, *18-19 (S.D.N.Y. 2006) ("Section 546(a), by its very terms, applies to any 'action or proceeding under section 544' and it specifically states that any such action 'may not be commenced' after, at the very latest, two years after the entry of the order of relief.  There is no room in this language for the importation of state statutes of limitations . . . ."); In re Bradlees Stores, Inc., 209 B.R. 36, 37 (Bankr. S.D.N.Y. 1997) (finding that pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations expires two years from the date that the debtors filed for relief under Chapter 11).

The Avoidance Claims, as well as the Equitable Subordination and Declaratory Judgment Claims that are predicated upon the success of the Avoidance Claims, are time-barred and should be dismissed with prejudice.  See Zapata supra, 502 F.3d at 197, where the Second Circuit affirmed the District Court's refusal to extend the 120-day period even though the effect would be a dismissal of the complaint with prejudice because the statute of limitations had expired.  See also Spinale, 2005 U.S. Dist. LEXIS 4608, at *10-11 ("[W]here the party seeking an extension has failed to meet its burden, dismissal is appropriate even if the practical effect is to bar the plaintiff's claim.").

## II.

## THE CLAIMS AGAINST MITSUBISHI TRUST SHOULD BE DISMISSED ON OTHER GROUNDS

### A.     The Claims Asserted Against Mitsubishi Trust Based on Its Status as an Alleged Managing Agent Should Be Dismissed

#### 1.     Mitsubishi Trust Is Not an Agent Bank

ART has asserted claims against Mitsubishi Trust based on its alleged status as a Managing Agent under the CCH Co-Borrowing Credit Facility.  The Amended Complaint alleges (at ¶ 881) that Mitsubishi Trust was one of 15 banks that were denominated as

18

"Managing Agents" under the CCH Credit Agreement. As it relates to Mitsubishi Trust, that allegation is in error, and demonstrably so. (See Rockwell Affidavit at ¶¶ 9-11). Mitsubishi Trust was not a Managing Agent in the CCH Co-Borrowing Facility and a review of the CCH Credit Agreement makes this point crystal clear. The term "Managing Agents" is a defined term in the CCH Credit Agreement and *does not* include Mitsubishi Trust. See also Schedule 2.1 of the CCH Credit Agreement (Rockwell Affidavit, Ex. "G").

If the Court determines that this portion of Mitsubishi Trust's 12(b)(6) Motion cannot be decided without considering matters outside the pleadings, Mitsubishi Trust requests that this portion of the Motion be treated as one for summary judgment in accordance with Federal Rule 12(d) to avoid any prejudice to Mitsubishi Trust arising from having to defend this action as an alleged "Managing Agent".

### 2.    The Tort Claims Asserted Against Mitsubishi Trust Should be Dismissed for Lack of Particularity

Assuming, *arguendo*, that Mitsubishi Trust were deemed to be a Managing Agent under the CCH Credit Agreement, the Tort Claims asserted in the Amended Complaint against Agent Banks should still be dismissed as against Mitsubishi Trust. As mentioned above, Mitsubishi Trust joins in the Nominal Agents' Tort Motion for all the reasons set forth therein, including that the Tort Claims (Claims 37, 38 and 55) do not meet the pleading standards of Federal Rule 8(a), and as to the Tort Claims sounding in fraud, Federal Rule 9(b). In fact, there is not a single specific allegation as to Mitsubishi Trust other than the allegation that Mitsubishi Trust was a Managing Agent in the CCH Co-Borrowing Facility, which, as demonstrated above, is patently false. The Amended Complaint, for all its massive verbiage, does not give Mitsubishi Trust fair notice of the claims against it.

19

**B.** **The Bankruptcy Claims Asserted Against**
**Mitsubishi Trust Are Also Legally Insufficient**

As mentioned above, Mitsubishi Trust joins in the Lenders' Motions to Dismiss and, accordingly, we will not burden the Court with another recitation of the arguments and legal authorities referenced therein.  Instead, for the convenience of the Court, the following will briefly summarize certain of the salient points raised in the Lenders' Motions to Dismiss, and additional factors specific to Mitsubishi Trust, which demonstrate that the Bankruptcy Claims should be dismissed with prejudice as against Mitsubishi Trust.

**1.** **The Indemnification Provisions Contained in the Debtors'**
**Plans of Reorganization Bar the Plaintiff's Recovery**

The Bankruptcy Claims should be dismissed as to Mitsubishi Trust because Adelphia's two plans of reorganization (the "Plans") contain indemnification provisions that effectively bar ART from pursuing the claims against the lenders, including Mitsubishi Trust.  The Plans require ART to dismiss any claim for which the lenders would be entitled to indemnification from the Debtors under the terms of the relevant facility.  In turn, the credit agreements underlying the facilities require Adelphia to indemnify the lenders under such facilities with respect to any claim except to the extent that the lender's liability on that claim is found by a court to have resulted from the lender's "gross negligence" or "willful misconduct".  See, e.g. CCH Credit Agreement § 11.12; UCA/HHC Credit Agreement § 10.4; Century-TCI Credit Agreement § 10.04; and FrontierVision Credit Agreement § 11.03 (see Joint Appendix, Exs. 1, 2, 3 and 6).

As matter of law, no showing of gross negligence or willful misconduct on the part of any of the lenders, including Mitsubishi Trust, is an element of ART's Avoidance Claims and, in any event, the Amended Complaint contains no specific allegations of wrongdoing against Mitsubishi Trust whatsoever, let alone any allegations that would constitute gross negligence or

willful misconduct with respect to any of the Bankruptcy Claims. Therefore, all of these claims should be dismissed on this ground alone, since ART's pursuit of such claims would be futile under the Plans.

**2.      The Subordination Claim Is Legally Insufficient**

The lapse of the statute of limitations under Section 546(a) also impacts the Subordination Claim (Claim 33) as well. Any alleged transfers from the Debtors to Mitsubishi Trust are no longer subject to avoidance and, accordingly, to the extent that Plaintiff's Subordination Claim is predicated on successfully avoiding such alleged transfers, the Subordination Claim is moot.

Even if the Subordination Claim (Claim 33) were not to such extent moot, the Plaintiff has failed to plead facts sufficient to sustain such claims against Mitsubishi Trust. Claims for equitable subordination (and disallowance) require the Plaintiff to allege facts that Mitsubishi Trust engaged in inequitable conduct -- that is -- gross and egregious conduct that is tantamount to fraud, misrepresentation and which shocks one's good conscience. ART has not alleged any inequitable conduct as it relates to Mitsubishi Trust and, therefore, the Subordination Claim should be dismissed in its entirety on this ground.

Moreover, as it relates to Mitsubishi Trust's role as a lender in the FrontierVision Facility, the Subordination Claim should be dismissed because, in its decision dated June 11, 2007 reported at <u>Adelphia Communications Corp. v. Bank of America, N.A.</u>, 365 B.R. 24, 70 (Bankr. S.D.N.Y. 2007) (the "June 2007 Decision"), the Bankruptcy Court granted the motion by lenders in the FrontierVision Facility to dismiss this claim with prejudice for failing to plead any specific inequitable conduct with respect to the lenders in that facility. Although Mitsubishi Trust was not a party to the Action at that time because it had not been served with the Original

Summons and Original Complaint, the June 2007 Decision is the law of case and mandates that this claim be dismissed as to Mitsubishi Trust. <u>Williams v. City of New York</u>, 2005 U.S. Dist. LEXIS 6674, *27-29 (S.D.N.Y. 2005); <u>Ovadia v. Top Ten Jewelry Corp.</u>, 2005 U.S. Dist. LEXIS 16784, *3-5 (S.D.N.Y. 2005); <u>In re Northern Telecom Ltd.</u>, 42 F. Supp.2d 234, 238 (S.D.N.Y. 1998).

### 3.    <u>The Declaratory Judgment Claim Is Invalid as a Matter of Law</u>

The Declaratory Judgment Claim should also be dismissed as moot. That Claim is predicated upon Section 9.6 of the CCH Credit Agreement (AC ¶ 1453), which allegedly limited the amount of the Borrower's Obligations to the lenders under this agreement to those amounts that are not "subject to avoidance." The Amended Complaint alleges (¶ 1455) that, as a result of the purported conduct of the defendants, "all or a significant portion of the Obligations" under the agreement "are subject to avoidance" under Sections 544 and 548. As demonstrated above, however, in accordance with Section 546(a), transfers, if any, to Mitsubishi Trust are no longer subject to avoidance, and there is no "bona fide dispute" as alleged (AC ¶ 1456). As the Bankruptcy Court noted in describing the Declaratory Judgment Claim asserted in the Original Complaint (which is repeated in the Amended Complaint), this Claim "will rise or fall with the fraudulent transfer claims themselves." <u>Adelphia Communications</u>, 365 B.R. at 80. Since the Avoidance Claims fall as a result of being time-barred, the Declaratory Judgment Claims must fall with them. Accordingly, the Declaratory Judgment Claim should be dismissed on this ground alone.

In any event, even if not moot, the Declaratory Judgment Claim should be dismissed on other grounds. Under both New York and Federal law, in order to maintain an action for declaratory judgment, a party must present a concrete, actual controversy for adjudication.

Fragoso v. Romano, 702 N.Y.S.2d 333, 333 (App. Div. 2d Dep't 2000); see also 28 U.S.C. § 2201. In the Amended Complaint (¶ 1457), ART seeks a declaration that, as successor in interest to CCH, it is not liable for any of the Obligations under the CCH Credit Agreement in excess of those permitted under Section 9.6 thereof. However, under the Plans, ART acquired title to the claims underlying this Action, and not the liabilities of the Debtors. Therefore, contrary to the Amended Complaint, ART has no liability for any of the Obligations of the Debtors under the CCH Credit Agreement and no case or controversy exists.

4.      **The BHCA Claim Should Be Dismissed as Against Mitsubishi Trust**

The BHCA Claim (Claim 32) must be dismissed against Mitsubishi Trust -- even assuming, contrary to fact, that Mitsubishi Trust was an Agent Bank. The Amended Complaint nowhere specifically alleges any facts upon which a claim under the BHCA against Mitsubishi Trust can be lodged. As described in this Court's "Decision on Appeal from the Bankruptcy Court" dated January 17, 2008 (Docket No. 420) concerning the BHCA claim in the Original Complaint:

> Plaintiff does not dispute that it must allege that the banks coerced the
> Debtors to accept investment services as a condition of obtaining loans ....
> (p.14)

No specific acts by Mitsubishi Trust to coerce the Debtors to accept investment services are alleged; as it relates to Mitsubishi Trust, no tying arrangement concerning investment services is even described.

Indeed, the Amended Complaint does not (and cannot) allege that any of the Investment Banks whose services the Debtors allegedly were required to use is in any way affiliated with Mitsubishi Trust (AC at ¶¶ 25-73). Quite plainly, relating to Mitsubishi Trust, there is no

validity to the allegation that "[e]ach of the Investment Banks acted in concert with its affiliated Agent Bank in connection with its dealings with Adelphia, as described in this complaint." (AC at ¶ 1366). The central element of this Claim -- the tie of banking and investment services between affiliated entities, has not been pleaded with respect to Mitsubishi Trust.

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice as against Mitsubishi Trust.

Dated: New York, New York
       January 25, 2008

Respectfully submitted,

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

By:   /s/  Peter Feldman
      Peter Feldman (PF- 3271)
      Anthony M. Piccione (AP-2195)
      John Bougiamas (JB-7292)
230 Park Avenue
New York, New York 10169
Phone:  (212) 661-9100
Attorneys for Defendant Mitsubishi UFJ Trust and Banking Corporation

953572

24