UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
ADELPHIA RECOVERY TRUST,              )
                                      )
                Plaintiff,             )   No. 05 Civ. 9050 (LMM)
                                      )
        vs.                           )
                                      )
BANK OF AMERICA, N.A., *et al.*,      )
                                      )
                Defendants.           )
                                      )
                                      )
-----------------------------------------------------------------x

# DEFENDANT BANK OF AMERICA, N.A.'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS
# MOTION TO COMPEL PLAINTIFFS' RESPONSES TO INTERROGATORIES

**HAYNES AND BOONE, LLP**

Thomas E. Kurth
Richard D. Anigian
Debra J. McComas

901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Judith Elkin
153 E. 53rd Street, Suite 4900
New York, New York 10022
Telephone: (212) 659-7300

**WHITE & CASE LLP**

Glenn M. Kurtz
Karen M. Asner

1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200

Counsel to Bank of America, N.A.

**Table of Contents**

Preliminary Statement ........................................................................................................... 1

Background ........................................................................................................................... 2

    A.    The Lawsuit ............................................................................................................ 2

    B.    The Damages Interrogatories ................................................................................ 2

Argument .............................................................................................................................. 5

    A.    Plaintiffs Must Identify the Computation of Damages Allegedly Caused By BofA .......... 6

    B.    Plaintiffs Must Sign and Verify the Responses .................................................... 9

Conclusion .......................................................................................................................... 10

# Table of Authorities

**Cases**

*Buffalo Carpenters Pension Fund v. CKG Ceiling and Partition Co., Inc.*,
    192 F.R.D. 95 (W.D.N.Y., 2000)......................................................................................9

*City and County of San Francisco v. Tutor-Saliba, Corp.*,
    218 F.R.D. 219 (N.D. Cal. 2003)..................................................................................7, 8

*Davidson v. Goord,*
    215 F.R.D. 73 (W.D.N.Y., 2003)...................................................................................10

*Design Strategy, Inc. v. Davis,*
    469 F.3d 284 (2d Cir. 2006)..............................................................................................8

*Hewlett-Packard Co. v. Factory Manual Ins. Co.*,
    No. 04 Civ. 2791, 2006 WL 1788946 (S.D.N.Y. June 28, 2006)......................................7

*Kingsway Fin. Servs., Inc. v. PWC LLP*,
    No. 03 Civ. 5560, 2006 WL 1520227 (S.D.N.Y. June 1, 2006).........................................9

*Majdalani v. Legacy Bank*,
    No. 06-1317-MLB, 2007 WL 2694043, at 2 (D. Kan. Sept. 11, 2007)...............................8

*Morin v. Nationwide Federal Credit Union,*
    229 F.R.D. 364 (D.Conn., 2005).....................................................................................10

*Nagler v. Admiral Corp.,*
    167 F. Supp. 413 (S.D.N.Y. 1958)....................................................................................7

*Thomson v. Safety-Kleen Sys., Inc.*,
    No. C06-1270RSL, 2007 WL 1526356 (W.D. Wash. May 22, 2007) ..............................8

*Veeco Instruments, Inc. Securities Lit.*,
    No. 05MD1695, 2007 WL 274800 (S.D.N.Y. Jan. 29, 2007) ..........................................6

**Statutes and Rules**

FED. R. CIV. P. 26(a)(1)(C).....................................................................................................7

FED. R. CIV. P. 33(b)(3).........................................................................................................9

FED. R. CIV. P. 33(b)(5).........................................................................................................9

    N.Y. LOC. CIV. R. 33.3 ................................................................................................6

Defendant Bank of America, N.A. ("BofA") seeks to compel the most basic information from Plaintiffs about their claims – the computation of damages sought against BofA.

**Preliminary Statement**

The Federal Rules of Civil Procedure, the Southern District Local Rules, and case authority throughout the United States all require each plaintiff to provide a defendant with the computation of its claimed damages at the outset of discovery. But rather than provide this fundamental information, Plaintiffs in this case gave BofA's damage interrogatories short shrift. Despite receiving multiple extensions on their response date, Plaintiffs sent BofA an unsigned, unverified response to four damage interrogatories, providing only a vague description of some of the alleged damages suffered collectively by the more than 260 Plaintiffs as a result of the actions of all defendants. Although Plaintiffs claim to have also suffered unspecified "other" damages, they have refused to identify or quantify such other damages. Plaintiffs also refused to identify which of the hundreds of Adelphia entities are actually claiming an injury caused by BofA and in what amounts, or how they expect to compute those amounts. Instead, Plaintiffs referred BofA to a global mediation submission that BofA is not even allowed to copy, much less use in this action.

BofA wrote Plaintiffs detailing the deficiencies in the interrogatory answers and have twice sought further disclosure and clarification, but Plaintiffs have rebuffed BofA's attempts to obtain the requested information.[1] BofA seeks in this motion only that which it is expressly entitled to know and what Plaintiffs are required to provide – who is suing it and the computation

---

[1] On May 1, 2008, BofA sent a letter to Plaintiffs' counsel detailing the deficiencies with the responses and asking Plaintiffs to "let us know within seven days of your receipt of this letter whether Plaintiffs intend to supplement their responses to BofA's interrogatories and document requests as requested." Plaintiffs never responded. On May 14, 2008, BofA's counsel followed up with Plaintiffs by email, asking Plaintiffs to confirm their position related to the responses. Again, BofA heard nothing. On May 30, 2008, BofA's counsel again sent an email to Plaintiffs asking them to schedule a phone call to discuss the responses, and again, there was no response whatsoever. *See* Declaration of Richard D. Anigian, Exhibit A.

of any damage each Plaintiff claims was actually caused by BofA. This basic information is a necessary prerequisite to Plaintiffs bringing a suit and there is no basis to withhold the information.

## Background

**A.     The Lawsuit**

This lawsuit is brought by the Adelphia Recovery Trust, an entity created via a bankruptcy plan of reorganization to address certain claims belonging to Adelphia Communications Corporation and its 268 subsidiary and affiliated entities (the "Plaintiffs" or "Debtors"). For purposes of this lawsuit, the Adelphia Recovery Trust stands in the shoes of the Debtors and is prosecuting claims that are based on alleged damages sustained by one or more of the individual Debtors. The defendants are comprised of commercial lenders who are alleged to have participated in one or more of six separate loan facilities, made over four years and totaling some $8 billion, and a number of affiliated investment banks. Plaintiffs claim that these lenders and investment banks committed various torts related to a fraud perpetuated by Plaintiffs' management.

**B.     The Damage Interrogatories**

On October 24, 2007, the Court approved the "Phase One" and "Phase Two" discovery plan submitted by the parties (the "Discovery Order"). The Discovery Order provided that on or after October 1, 2007, "[t]he parties may serve interrogatories in accordance with the Federal Rules of Civil Procedure concerning . . . the calculation of damages." Consistent with the Discovery Order, on February 19, 2008, BofA served four interrogatories on Plaintiffs (the

"damage interrogatories").[2]  *See* Declaration of Richard D. Anigian, Exhibit B.  The damage interrogatories sought Plaintiffs' computation of damages for each claim asserted against BofA.

INTERROGATORY No. 1:  BofA asked Plaintiffs in Interrogatory No. 1 to identify the computation of each category of damage.  Specifically, BofA asked in Interrogatory No. 1:

> Please identify by claim alleged against Bank of America the computation of each category of damage which you allege Bank of America caused including (i) each specific entity currently or formerly affiliated with Adelphia which was allegedly damaged by Bank of America; (ii) the nature and amount of damage that each specific entity allegedly sustained as a result of Bank of America's alleged conduct; and (iii) your method for calculating each amount identified, and please identify all documents referred to or relied upon in such computation.

*See* Declaration of Richard D. Anigian, Exhibit B.

After requesting and receiving several extensions of time, Plaintiffs finally served BofA with unsigned, unverified objections and responses on April 14, 2008.  *See* Declaration of Richard D. Anigian, Exhibit C.  Plaintiffs objected to Interrogatory No. 1, claiming among other things that the request for a breakdown of damages by claim is a premature contention interrogatory.  Specifically, Plaintiffs objected as follows:

> Plaintiff objects to this Interrogatory on the grounds set forth in the General Objections.  Plaintiff specifically objects to the phrase "each specific entity currently or formerly affiliated with Adelphia" as vague and ambiguous to the extent it appears to seek information concerning damages caused to entities other than Adelphia.  To the extent the Interrogatory seeks a breakdown of damages by claim by each Adelphia entity, Plaintiff objects to this Interrogatory as a contention interrogatory, which is premature at this stage of the case.  Plaintiff also objects to this Interrogatory to the extent it requests damage theory and methodology and/or expert opinion, which is premature at this stage of the case.  Plaintiff further objects to this Interrogatory to the extent that Plaintiff's claims against Bank of America for avoidance of obligations, recovery of fraudulent transfers, avoidance or preferences, subordination of claims, disallowance of

---

[2]  On June 17, 2008, Judge McKenna issued a Memorandum Opinion and Order dismissing the majority of the bankruptcy and avoidance claims for lack of standing (the "Dismissal Order").  BofA believes that the few remaining bankruptcy and avoidance claims should be dismissed for the reasons articulated in the Dismissal Order.  Accordingly, BofA believes the information sought in Interrogatory No. 2 (seeking the same information related to the bankruptcy and avoidance claims) and Interrogatory No. 4 (seeking the identity of creditor beneficiaries of the Adelphia Recovery Trust) have been rendered moot, but reserves the right to reurge its complaints related to the inadequate responses to Interrogatory No. 2 and No. 4 should any bankruptcy and avoidance claims survive.

claims, or other remedies available pursuant to the Bankruptcy Code or the court's equitable powers seek remedies that fall outside the scope of the term "damages."

Subject to its objections Plaintiffs responded that they estimated the global damages to "Adelphia," defined to include all Adelphia entities, in the amount of at least $3.4 billion and claimed "Adelphia" further sustained "other damages." Plaintiffs refused to quantify such "other" undefined damages. Specifically, Plaintiffs responded to Interrogatory No. 1 as follows:

> Plaintiff preliminarily estimates that *Adelphia* was damaged by at least $3.4 billion – the amount of funds looted from Adelphia by the Rigas Family – as a result of Bank of America's *and other defendants'* misconduct. *Adelphia* was also damaged *to the extent* it paid interest to the banks on the $3.4 billion in loans that were made for the benefit of the Rigas Family. *Adelphia* sustained *other damages* as a result of the banks' conduct, including but not limited to costs of bankruptcy, financial distress, loss of revenue and enterprise value, payments to the government to resolve criminal and civil proceedings, advances to third parties on account of indemnification claims, and all other damages that foreseeably flow from the Rigases' looting. The precise amount of these damages has not yet been quantified and will be the subject of expert analysis.

(emphasis added). Plaintiffs provided no computation for any of these damage theories, and Plaintiffs refused to identify which of the more than 260 affiliated Debtors were allegedly injured as a result of BofA's alleged actions or failure to act or to identify the amount of damages allegedly caused by BofA.

In support of its responses, Plaintiffs cited to only three documents used as exhibits in other proceedings that make similar global references to harms caused to the Debtors as a whole due to conduct of the Debtors' own management (not BofA). And, Plaintiffs cited to a privileged (and equally generic) "White Paper" provided to BofA by Plaintiffs in connection with mediation proceedings that BofA has been prohibited from copying or disseminating, much less using as part of the discovery process.

4

INTERROGATORY No. 3: Interrogatory No. 3 further refined Interrogatory No. 1 by seeking specific clarification as to the alleged improper uses of loan proceeds supporting any damage calculations. Specifically, Interrogatory No. 3 asks:

> To the extent that any damages alleged in your answers to the foregoing interrogatories involved the alleged use of loan proceeds by the Rigas Family or one or more Rigas Family Entities from one or more of the Co-Borrowing Facilities or Non-Co-Borrowing Facilities, please identify with particularity: (i) each instance in which you allege such loan proceeds were used; (ii) the date, amount, and specific facility in which such funds were drawn; and (iii) the method you employed to compute the amount of damage each specific entity allegedly sustained as a result of Bank of America's alleged conduct.

Rather than respond, Plaintiffs again referred to the response to Interrogatory No. 1 and objected to the interrogatory as compound. BofA pointed out in its follow-up correspondence that the compound objection went only to the number of questions being asked and in no way relieved Plaintiffs of their obligation to respond – particularly where there were only four interrogatories in total. But Plaintiffs ignored the follow-up letter, choosing to provide no response whatsoever. *See* Declaration of Richard D. Anigian, Exhibit A.

**Argument**

Plaintiffs are obligated to provide a computation of the damages BofA allegedly caused with sufficient particularity so that BofA can assess the claims against it. Plaintiffs bear the burden of justifying any objections or failure to meet these unambiguous disclosure obligations. *See, e.g., Shannon v. New York City Transit Authority*, No. 00 Civ. 5079, 2001 WL 286727, at *2 (S.D.N.Y. Mar. 22, 2001). Plaintiffs cannot sustain this burden where they have failed to provide any information in sufficient detail concerning which of the Plaintiffs was purportedly injured by BofA and how any such damages can be calculated. Their generic and global responses to the damage interrogatories are woefully insufficient to provide BofA with any meaningful information concerning the damages it allegedly caused, and reference to a

5

privileged, highly restricted and generic mediation-related submission does not cure these deficiencies. Plaintiffs even fail to identify which of hundreds of Plaintiffs are claiming to have been harmed by BofA despite the obvious fact that not all Plaintiffs were involved in each Credit Facility and did not suffer a single global harm. Simply put, BofA is entitled to know which Plaintiff(s) it allegedly harmed and how such Plaintiff(s) calculates the alleged damages as to it. Although Plaintiffs refers to $3.4 billion in allegedly "looted" loan proceeds, they fail to provide even the most basic information about which of the six separately syndicated credit facilities (each to different borrowers) was looted, when, and in what amounts.[3] Accordingly, BofA moves this Court to compel Plaintiffs to remedy these deficiencies in the responses and provide BofA with the basic fundamental information to which it is entitled.

**A.  Plaintiffs Must Identify the Computation of Damages Allegedly Caused By BofA.**

Both the Federal Rules of Civil Procedure and the Southern District Local Rules expressly allow a defendant to obtain a meaningful disclosure of the computation of any category of damages asserted against that defendant. *See* S.D.N.Y. LOC. CIV. R. 33.3 (allowing interrogatories on the computation of any category of damages "at the commencement of discovery"); FED. R. CIV. P. 26(a)(1)(C) (requiring disclosure of the computation of any category of damages asserted against a defendant). The early discovery of Plaintiffs' damages is critical to allow a defendant to make informed decisions regarding settlement and to understand "the basis and amount of [the] damages claim it is facing, so that it may conduct meaningful discovery as to the underpinnings of such a claim." *See, e.g., Hewlett-Packard Co. v. Factory Manual Ins. Co.*, No. 04 Civ. 2791, 2006 WL 1788946, at **10-11 (S.D.N.Y. June 28, 2006). Thus, generic or global responses on damages, non-specific to a particular plaintiff, a particular

---

[3] Moreover, the Plaintiffs failed to sign or verify the responses even though BofA has expressly asked them to do so.

defendant, and a specific cause of action, are inadequate. *See, e.g., Nagler v. Admiral Corp.*, 167 F. Supp. 413, 414-16 (S.D.N.Y. 1958) (granting defendant's motion to compel damage interrogatory responses and noting that each of four joint plaintiffs owed an independent duty to verify responses and the alleged damages against defendant); *see also City and County of San Francisco v. Tutor-Saliba, Corp.*, 218 F.R.D. 219, 221-22 (N.D. Cal. 2003) (holding that in a case involving multiple claims and multiple defendants, plaintiff must describe damages "in sufficient detail so as to enable each of the multiple defendants in [the] case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery.").

The existence of hundreds of plaintiffs and numerous defendants in this case does not alleviate Plaintiffs of their obligation to provide BofA with specific information about the harm it allegedly caused. Rather, the number of parties and transactions involved only highlights the need for more specific information. The court in *Tutor-Saliba* recognized the difficulty a defendant faces in assessing its own potential liability in the face of numerous defendants being sued in connection with six different contracts. In finding that the Plaintiffs there had failed to meet their disclosure requirements as to their damage theories and calculations, the court explained:

> Plaintiffs' aggregation of *e.g.,* compensatory damages for all claims, all contracts, and all defendants does not permit each defendant to know the extent of its liability since the [Plaintiff] alleges breaches and fraud with respect to six different contracts, each of them involving some defendants but not others. Nor are the Defendants able to discern how the compensatory damages claimed are distributed among the contracts. It would be useful to know, for instance, for both discovery organization as well as for settlement discussions, whether the bulk of damages are attributable to one or two contracts.

218 F.R.D. at 222. Thus, a plaintiff may not satisfy its requirement to disclose damages by reference to a simple arithmetic calculation, much less the gross number provided by Plaintiffs in this case. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006).

7

Nor is it sufficient to refer defendants to general information from which they are expected to glean the Plaintiffs' damage computations. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (finding plaintiff's general reference to its financial statements was insufficient to put the defendant on notice that plaintiff would be seeking to recover lost profits). Each Plaintiff must disclose both the amount of and the basis for calculating damages in sufficient detail to put BofA on notice as to the actual harm BofA is alleged to have caused to that particular plaintiff under a particular legal theory. *Id. See also Majdalani v. Legacy Bank*, No. 06-1317-MLB, 2007 WL 2694043, at 2 (D. Kan. Sept. 11, 2007) (granting motion to compel further response to damage interrogatories, including specific dollar amounts for claims and computations supporting the dollar amounts sought); *Thomson v. Safety-Kleen Sys., Inc.*, No. C06-1270RSL, 2007 WL 1526356, at *1 (W.D. Wash. May 22, 2007) (rejecting plaintiff's statement that damages had not yet been formulated and ordering plaintiff to provide specific information as to hours worked and pay rate for claim seeking recovery of back pay).

Plaintiffs' responses fall far short of the detailed information they are required to disclose to BofA. Plaintiffs reference in very global terms a broad damage claim asserted on behalf of all Plaintiffs, against all defendants, pertaining to multiple, separately syndicated credit facilities to different borrowers spanning a period of many years. Plaintiffs do not identify which Plaintiffs are asserting what damages BofA – or even the lender groups in any specific credit facility -- allegedly caused, or how Plaintiffs compute such damages. Indeed, other than a general claim that all the Plaintiffs have been collectively injured by "at least $3.4 billion – the amount of funds looted from Adelphia by the Rigas Family – as a result of Bank of America's *and other defendants'* misconduct," Plaintiffs offer no explanation of how to compute damages or even under what theory, choosing instead to refer generally to some unspecified "other" damages.

Plaintiffs cannot excuse the inadequate responses by characterizing the interrogatories as premature "contention" interrogatories or by claiming that the damages are subject to subsequent expert testimony. Plaintiffs are obligated to disclose the best information available to them at the time the interrogatories are requested, which in this case necessarily requires more than a global reference to a general alleged harm to hundreds of Plaintiffs involved in numerous transactions and a general claim of "other" damages. Even if Plaintiffs ultimately rely upon expert testimony to prove alleged damages, that does not absolve Plaintiffs of their responsibility to answer BofA's interrogatories. *See, e.g., In re Veeco Instruments, Inc. Securities Lit.*, No. 05MD1695, 2007 WL 274800, at *2 (S.D.N.Y. Jan. 29, 2007) (rejecting plaintiffs' argument that interrogatories related to loss causation and damages are contention interrogatories and finding that Local Rule 33.3(a) expressly allows such interrogatories at the commencement of the lawsuit); *see also Kingsway Fin. Servs., Inc. v. PWC LLP*, No. 03 Civ. 5560, 2006 WL 1520227, at *1 (S.D.N.Y. June 1, 2006) (noting that a party must provide the "best information then available to it concerning the claim.").

BofA cannot take the sparse responses of Plaintiffs and use that information to make intelligent decisions on how to proceed with discovery or even how to assess settlement possibilities. Plaintiffs should thus be compelled to provide substantive responses to the damage interrogatories, identifying which Plaintiff was allegedly harmed by BofA, in what amounts, and how to compute such amounts.

**B.     Plaintiffs Must Sign and Verify the Responses.**

Consistent with Plaintiffs' lax treatment of its responses to the damages interrogatories, Plaintiffs neither signed nor verified the responses. Rule 33(b)(3) states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing

9

under oath." FED. R. CIV. P. 33(b)(3). Rule 33(b)(5) states that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." FED. R. CIV. P. 33(b)(5). Courts routinely enforce this requirement. *See, e.g., Buffalo Carpenters Pension Fund v. CKG Ceiling and Partition Co., Inc.*, 192 F.R.D. 95 (W.D.N.Y., 2000); *Davidson v. Goord*, 215 F.R.D. 73, 83 (W.D.N.Y., 2003); *Morin v. Nationwide Federal Credit Union*, 229 F.R.D. 364, 369 (D.Conn., 2005). Plaintiffs should be compelled to comply with the rules and sign, verify and stand by their responses.

## Conclusion

For the reasons outlined above, Defendant Bank of America, N.A., respectfully asks this Court to compel Plaintiffs to respond to Interrogatory Nos. 1 and 3 by identifying which Plaintiffs are asserting they have been harmed by BofA, and the amount and computation of damages associated with such alleged harm, and by identifying the documents relied upon in support of such computations. BofA further asks this Court to compel Plaintiffs to sign and verify the answers provided. BofA requests such further relief to which it may be entitled.

Dated: New York, New York

June 30, 2008

Respectfully submitted,

**HAYNES AND BOONE, LLP**

By: /s/ Richard D. Anigian
Thomas E. Kurth
Richard D. Anigian
Debra J. McComas
901 Main Street, Suite 3100
Dallas, Texas 75202
(214) 651-5000

Judith Elkin
153 E. 53rd Street, Suite 4900
New York, New York 10022
(212) 659-7300

Glenn M. Kurtz
Karen M. Asner
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200

**ATTORNEYS FOR BANK OF AMERICA, N.A.**

d-1657287.6