UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

ADELPHIA RECOVERY TRUST, :

Plaintiff, : Adversary Proceeding

vs. :

BANK OF AMERICA, N.A., *et al.*, : No. 05 Civ. 9050 (LMM)

Defendants. :

------------------------------------------------------------ X

# MEMORANDUM OF LAW IN SUPPORT OF THE BANK DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

MAYER BROWN LLP

1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Of Counsel:

Jean-Marie Atamian
Robert F. Finke

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
FACTUAL BACKGROUND .......... 2
ARGUMENT .......... 5
I. Adelphia's Basis For Withholding The Post-Petition Restatement Documents Is Untenable .......... 5
II. The Post-Petition Restatement Documents Are Clearly Relevant And Discoverable .......... 6
III. Adelphia Will Not Suffer Any Undue Burden If It Is Compelled To Produce The Post-Petition Restatement Documents .......... 10
CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adelphia Communications Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Ct. C.P., Phil. Co. Nov. Term 2002)....3

*Bourne v. Town of Madison*, No. 05-cv-365-JD, 2007 WL. 951552 (D.N.H. Mar. 27, 2007)....11

*Bradley v. Cooper Tire & Rubber Co.*, No. 4:03CV94LR, 2006 WL. 3360926 (S.D. Miss. Nov. 20, 2006)....11

*Burke v. New York City Police Dep't*, 115 F.R.D. 220 (S.D.N.Y. 1987)....7

*Griffith v. United States*, No. M8-85(JFK), 2007 WL. 1222586 (S.D.N.Y. Apr. 25, 2007)....7

*Oppenhemier Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)....7

*Zanowic v. Reno*, No. 97 Civ. 5292 (JGK)(HPB), 2000 WL. 1376251 (S.D.N.Y. Sept. 25, 2000)....7

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(1)....6, 10

Fed. R. Civ. P. 37....1

Local Ct. R. 37.2....1

The moving defendants[1] respectfully submit this memorandum of law in support of their motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Rule 37.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, for an order compelling the Adelphia Recovery Trust ("Adelphia"), successor in interest to Adelphia Communications Corp. (the "Company") and approximately 260 of its subsidiaries and affiliated entities, to produce documents, as set forth below.

## PRELIMINARY STATEMENT

This motion seeks redress from yet another instance of Adelphia's dilatory tactics in declining to produce indisputably relevant and non-privileged documents which are of paramount importance in refuting Adelphia's purported allegations of wrongdoing against the Bank Defendants.

Specifically, Adelphia refuses to produce highly probative documents relating to the restatement of its financial statements for audit years 1999 through 2001 (the "Restatement"), and the concomitant forensic accounting documents that were generated after June 25, 2002, the date of the Company's bankruptcy petition (collectively, the "Post-Petition Restatement Documents"), by the employees of PricewaterhouseCoopers LLP ("PwC") and other outside advisors who worked on the Restatement over the course of several years. Tellingly, Adelphia has never challenged the relevance of these documents, nor has it ever asserted that production of these documents would be unreasonably burdensome. In fact, Adelphia has previously conceded

---

1 The moving defendants are: ABN AMRO Inc., Banc of America Securities LLC, Bank of America, N.A., Bank of Montreal ("BMO"), BMO Capital Markets Corp. ("BMO CM"), BNY Capital Markets, Inc., Barclays Capital Inc., Citigroup Global Markets Holdings Inc., CIBC World Markets Corp., Deutsche Bank Securities, Inc. (f/k/a Deutsche Bank Alex. Brown, Inc.), Fleet Securities, Inc. (whose liabilities have been assumed by Bank of America, N.A.), Harris Nesbitt Corp., Morgan Stanley & Co. Incorporated, PNC Capital Markets LLC, Scotia Capital (USA) Inc., SunTrust Capital Markets, Inc. (f/k/a SunTrust Equitable Securities), TD Securities (USA) LLC (f/k/a TD Securities (USA) Inc.), Wachovia Bank, National Association, and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.) (collectively, the "Bank Defendants").

(as it must) both relevance and lack of burden. Instead, Adelphia's sole stated basis for withholding these documents is that the Bank Defendants have declined to produce irrelevant post-petition documents within their possession, custody or control. This apparent tit-for-tat is entirely misplaced because no post-petition conduct of the Bank Defendants is at issue in this action. In marked contrast, the forensic accounting and Restatement documents -- which were necessarily created following and as a result of the revelation of the Rigas family's fraud in the Spring of 2002 -- are plainly relevant here. The mere fact that these documents were created post-petition hardly diminishes the salient fact that, as evidenced by their very nature and subject matter, they relate to and shed light upon critical pre-petition issues. Indeed, the Post-Petition Restatement Documents reflect PwC's examination, analysis and restatement of the Company's 1999, 2000 and 2001 financial statements which are at the very center of this dispute. Adelphia's gamesmanship in denying the Bank Defendants access to documents that are vital to their defense and to which they are plainly entitled should no longer be countenanced. Accordingly, Adelphia should be compelled to produce these documents forthwith.

## FACTUAL BACKGROUND[2]

The operative complaint, the Second Amended Complaint, dated February 29, 2008 (the "SAC"), asserts dozens of claims arising under the Bankruptcy Code,[3] a claim under the Bank Holding Company Act, and tort claims for fraud, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and fraudulent concealment. In essence, Adelphia's tort claims stem from its allegations that defendants purportedly "facilitate[d] and assist[ed]" the Rigas family's

---

2 For a more detailed recitation of the facts underlying this action, we respectfully refer the Court to the contemporaneously submitted Memorandum of Law in Support of the Bank Defendants' Motion to Compel the Production of Documents and Preclude the Assertion of Privilege by Adelphia and the Outside Directors, dated June 30, 2008.

3 Most of these claims were recently dismissed in a Memorandum and Order, dated June 17, 2008.

misuse of funds drawn under a number of co-borrowing facilities and the alleged failure by the Company's management to properly account for those funds, which led to the Company's bankruptcy in June 2002.

Nearly three years ago, a number of Bank Defendants served document requests upon Adelphia seeking, *inter alia*, documents related to the financial condition of the Company and its subsidiaries. *See, e.g.*, Affidavit of Jean-Marie L. Atamian, dated June 27, 2008, ("Atamian Aff.") Ex. A (Defendant Bank of Montreal's First Request For Production of Documents to Plaintiffs, dated July 28, 2005), Ex. B (Defendant Harris Nesbitt Corporation's [BMO CM] First Request For Production of Documents to Plaintiffs, dated July 28, 2005). These discovery requests included individual requests seeking "[a]ll documents relating to any investigation(s) of the Company, the Rigas Family, or the Rigas Family Entities from 1996 through the present," and "[a]ll reports or analyses of Price Waterhouse Forensics concerning the Company, the Rigas Family or the Rigas Family Entities, including all inter-company transactions." Atamian Aff., Ex. A ¶¶ 90-91 (Defendant Bank of Montreal's First Request For Production of Documents to Plaintiffs, dated July 28, 2005); Ex. B ¶¶ 48-49 (Defendant Harris Nesbitt Corporation's [BMO CM] First Request For Production of Documents to Plaintiffs, dated July 28, 2005). These individual document requests confirm that the Post-Petition Restatement Documents are among the highly relevant documents sought by the Bank Defendants. In fact, the Company has previously produced the Post-Petition Restatement Documents in a related action styled *Adelphia Communications Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Ct. C.P., Phil. Co. Nov. Term 2002) (the "Deloitte Litigation"). Significantly, in that action, the Company asserted claims against its former auditors that are similar to the claims asserted against the Bank Defendants in this action.

Adelphia's current position is particularly indefensible and vexatious given the crucial (if not dispositive) fact that on March 20, 2008, Adelphia's counsel sent a letter to counsel for PwC seeking to "confirm our agreement that non-party [PwC], consents to [Adelphia's] production to the [Bank Defendants] of PwC documents concerning work performed for or on behalf of Adelphia Communication Corp. and its affiliated entities." Atamian Aff., Ex. C (Letter from Howard W. Schub to John E. Caruso, dated March 20, 2008). *Id.* PwC's counsel promptly countersigned the letter and returned it to Adelphia's counsel, signaling PwC's consent to Adelphia's production of PwC documents to the Bank Defendants. *Id.*[4]

On June 12, 2008, the parties met and conferred to discuss outstanding issues concerning Adelphia's document production. Atamian Aff., Ex. D (Email from Nancy Ruskin to Howard W. Schub, dated June 12, 2008). During the meeting, the parties discussed the fact that the Company had retrieved the Post-Petition Restatement Documents from PwC and had produced those documents in the Deloitte Litigation. *Id.* Nevertheless, Adelphia's counsel asserted that despite the fact that certain PwC post-petition forensic accounting documents had already been produced to the Bank Defendants, Adelphia objected to producing the balance of PwC's post-petition forensic accounting and Restatement documents for the ostensible but inappropriate reason that the Bank Defendants had not produced post-petition documents in their possession,

---

4 Although this memorandum of law occasionally refers to Post-Petition Restatement Documents as PwC documents, Adelphia is also withholding documents created and received by other entities that worked on the Restatement. On June 2, 2008, Adelphia produced two "Covington & Burling Electronic E-mail Privilege Log[s]" (created in the related Deloitte Litigation) listing over 20,000 entries (the "Covington Logs"). Of these more than 20,000 documents, approximately 4,000 presumably relate to the Restatement because they post-date March 2003, when Covington Burling's internal investigation into the Rigas fraud officially ended and it was retained by Adelphia for other purposes. The Bank Defendants are moving to compel production of the pre-March 2003 documents listed in the Covington logs on waiver and other grounds in a separate, contemporaneously filed motion (see footnote 2, *supra*), and this motion seeks to compel production of the post-March 2003 documents listed in the Covington Logs and all Post-Petition Restatement Documents created or received by PwC, Covington & Burling or any other entity.

custody or control. *Id.* The Bank Defendants emphasized the fact that PwC's agreement to allow Adelphia to produce the Post-Petition Restatement Documents in this action did not give Adelphia any discretion to pick and choose which PwC documents it would produce or, alternatively, withhold. *Id.* Indeed, the *only* caveat to PwC's written consent was that the parties to this action agree to a reservation-of-rights provision.[5] The Bank Defendants also underscored the fact that within days of receiving PwC's written consent to the production of Post-Petition Restatement Documents to the Bank Defendants, Adelphia had affirmatively represented that once the Bank Defendants had confirmed their assent to PwC's terms, Adelphia would arrange for "the PwC docs" to be produced. *Id.* (attaching Email from Howard W. Schub to Nancy Ruskin, dated March 24, 2008). Although the Bank Defendants agreed to PwC's terms long ago, Adelphia persists in its improper refusal to produce the Post-Petition Restatement Documents, thereby prompting this motion.[6]

## ARGUMENT

### I. Adelphia's Basis For Withholding The Post-Petition Restatement Documents Is Untenable.

As previously demonstrated, it appeared, until quite recently, that Adelphia was ready and willing to produce the Post-Petition Restatement Documents, including documents produced

---

5 That provision, to which the Bank Defendants agreed, states, "[t]his will also confirm that [Adelphia] and all Defendants seeking access to the documents agree that the production of the PwC documents in the Bank Litigation will not constitute a waiver of PwC's attorney-client privilege, work-product protection or any other applicable privilege or protective doctrine, provided however that Defendants reserve all of their rights with respect to PwC's document production, including the right to challenge any asserted privilege, protection, or protective doctrine." Atamian Aff., Ex. C (Letter from Howard W. Schub to John E. Caruso, dated March 20, 2008). PwC has not asserted any privilege, protection, or protective doctrine with respect to the Post-Petition Restatement Documents.

6 The Hon. Daniel Weinstein (ret.) was appointed as a mediator in this action. After extensive negotiations among the parties and Judge Weinstein, by written agreement dated June 5, 2008, the parties agreed to meet and confer on all open discovery items and identify all issues on which they disagree and as to which motions to compel and/or for protective orders are required. Motions on discovery issues ripe for resolution were to be filed on June 30, 2008.

by PwC in the Deloitte Litigation. In fact, Adelphia went so far as to procure PwC's consent to produce those documents here in response to the Bank Defendants' document requests and to affirmatively represent to the Bank Defendants that they could expect to receive all of PwC's documents, namely the Post-Petition Restatement Documents, forthwith. Therefore, Adelphia is now precluded from arguing that it has any good faith basis or credible substantive reason for withholding production of the Post-Petition Restatement Documents. Adelphia's belated and superficial excuse for withholding production of documents it concedes are relevant and non-privileged -- including, that the Bank Defendants have not produced any post-petition documents -- misses the mark. As an initial matter, Adelphia's newly contrived position lacks any conceivable legal basis as evidenced by Adelphia's efforts in persuading PwC that such documents should be produced to the Bank Defendants. Moreover, Adelphia's purported view that "what is sauce for the goose is sauce for the gander" completely ignores the basic fact that the Bank Defendants' post-petition conduct is not at issue in this action. Nowhere in the SAC -- or in any other submission for that matter -- does Adelphia allege that the Bank Defendants committed any wrongdoing after, or even close in time to, June 25, 2002, the date of the Company's bankruptcy petition. Accordingly, none of the Bank Defendants' post-petition documents are even arguably relevant.[7] Moreover, and as described below, no other possible reason excuses Adelphia's failure to produce.

## II. <u>The Post-Petition Restatement Documents Are Clearly Relevant And Discoverable.</u>

The Federal Rules of Civil Procedure ("Federal Rules") permit discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1) ("Rule 26"). Rule 26 further provides that "[r]elevant information need not be admissible at trial

---

7 Even assuming, *arguendo*, that the Bank Defendants' post-petition documents were somehow relevant, which they are not, Adelphia's attempt to obtain them by withholding clearly relevant and non-privileged documents is patently improper.

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* It is well-settled that "relevance, for the purposes of discovery, is an extremely broad concept." *Zanowic v. Reno*, No. 97 Civ. 5292 (JGK)(HPB), 2000 WL 1376251, at *2 (S.D.N.Y. Sept. 25, 2000); *see Oppenhemier Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("relevance" should "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Griffith v. United States*, No. M8-85(JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007) ("Relevance under Federal Rule 26 is far broader than the standard under Federal Rule of Evidence 401, which governs the standard at trials.").

Notably, Adelphia, as the party objecting to the Bank Defendants' discovery requests, bears the burden of demonstrating that they either fall outside the broad scope of relevance as provided by Rule 26(b)(1), or are "of such marginal relevance" that their potential for harm outweighs the "ordinary presumption in favor of broad disclosure." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). Adelphia cannot come close to meeting this burden; nor has it ever attempted to do so.

The Post-Petition Restatement Documents clearly fall within the broad scope of discovery permitted under the Federal Rules. Indeed, accounting issues concerning and the financial condition of the Company and its subsidiaries are at the very heart of the claims against the Bank Defendants. Adelphia's claims of fraud rest upon allegations of diversion of corporate assets, and manipulation of financial records to overstate revenue and understate expenses by means of, *inter alia*, (a) sham transactions and fictitious record keeping, and (b) failure to employ proper accounting practices and make adequate disclosures. PwC's forensic accounting files and related documents will undoubtedly shed much light on these issues and, as such, are highly relevant. For example, the Post-Petition Restatement Documents are likely to reveal

many of the details relevant to Adelphia's allegations concerning the Rigas family's pervasive fraud in preparing the Company's financial statements for the years ended December 31, 1999 and 2000, including, but not limited to:

(i) The improper transfer of Company assets and funds to benefit the Rigas family's own interests (*see, e.g.*, SAC ¶¶ 2, 6, 990-1006; 1414-15, 1565, 1572);

(ii) The concealment of material related party transactions through, for example, improper debt reclassification procedures and improper netting of affiliate receivables and payables in the Company's 1999 and 2000 financial statements (*see, e.g.*, SAC ¶¶ 1414-15, 1572);

(iii) The underreporting of the Company's debt (in publicly filed financial statements for years 1999 and 2000 and through the third quarter of 2001, and internally prepared financial statements that were not submitted to the SEC for the year 2001) by over $2 billion in off-balance sheet debt that was borrowed by the Rigas family or Rigas-family entities ("RFEs") for their own benefit and for which the Company was nevertheless jointly and severally liable (*see, e.g.*, SAC ¶¶ 1008-10; 1064; 1414-15, 1565, 1572);

(iv) The use of improper accounting methods in over-capitalizing soft costs to allow the Company to reduce expenses, thereby artificially inflating EBITDA (*see, e.g.*, SAC ¶¶ 1414-15);

(v) The use of improper accounting methods in capitalizing increased costs in connection with two marketing support arrangements that lacked a valid business purpose for the sole purpose of artificially inflating EBITDA (*see, e.g.*, SAC ¶¶ 1414-15);

(vi) The concealment of the Company's true financial condition in connection with Rigas family "purchases" of Company stock that were (i) financed with loans guaranteed by the Company which increased the Company's debt without any compensation, or (ii) recorded as a debit to Company affiliate accounts receivable even though the Company received no incremental value for the stock (*see, e.g.*, SAC ¶¶ 987-89, 1414-15, 1565, 1572);

(vii) The failure to disclose that the Company's stock sales to the Rigas family did not have the effect of de-leveraging the Company; instead, these stock purchases were drawing the Company deeper into debt (*see, e.g.*, SAC ¶¶ 1016-23; 1414-15, 1572);

(vii) The use of funds drawn down under the co-borrowing facilities to pay off Rigas family or RFE personal margin calls (*see, e.g.*, SAC ¶¶ 14, 1011-15; 1065; 1414-15, 1565, 1572);

(viii) The improper accounting with respect to transfers of over $800 million worth of Company debt and equity by means of fictitious journal entries (*see, e.g.*, SAC ¶¶ 1012; 1414-15); and,

(ix) The use of co-borrowing facilities and the Adelphia cash management system to loot billions of dollars from Adelphia (*see, e.g.*, SAC ¶¶ 2, 6, 990-1003; 1414-15, 1565, 1572).

Adelphia, having made these allegations -- which permeate the 1,600 paragraphs of the SAC -- the centerpiece of its action, is now foreclosed from denying the relevance of the Post-Petition Restatement Documents.

In addition, the Post-Petition Restatement Documents are highly relevant to many of the Bank Defendants' affirmative defenses. For example, the Post-Petition Restatement Documents -- particularly those generated during PwC's analysis of the 1999, 2000 and 2001 financial statements -- are especially germane to the following affirmative defenses contained in various Bank Defendants' answers, including, but not limited to, the Answer of Defendants Bank of Montreal and BMO Capital Markets Financing, Inc., dated December 21, 2007 ("BMO Ans."):

(i) "Plaintiff's claims against BMO are barred, in whole or in part, by the doctrine of unclean hands." BMO Ans., at 238; *see also* Answer of Bank of America, N.A. to the Adelphia Recovery Trust's Amended Complaint, dated December 21, 2007 ("BofA Ans."), at 197; Answer of Wachovia Bank, National Association to Plaintiffs' Amended Complaint and Counterclaims ("Wachovia Ans."), at 204.

(ii) "Plaintiff's claims against BMO are barred, in whole or in part, because BMO did not know, and in the exercise of reasonable care could not have known, of the existence of the alleged false or misleading statements and omissions of material fact asserted in the Amended Complaint." BMO Ans., at 239; *see also* BofA Ans., at 202; Wachovia Ans., at 211.

(iii) "Plaintiff's damages, if any, resulted from the acts or omissions of individuals or entities over whom BMO had no control. The acts of other such individuals or entities constitute intervening or superseding causes of harm, if any." BMO Ans., at 241; *see also* BofA Ans., at 201; Wachovia Ans., at 209.

(iv) "Plaintiff's claims against BMO are barred, in whole or in part, by the fraud and/or contributory negligence of third parties, including without limitation, the Rigas Family and current and/or former officers and employees of [the Company]." BMO Ans., at 242; *see also* BofA Ans., at 199; Wachovia Ans., at 210.

(v) "Plaintiff's claims against BMO are barred, in whole or in part, because plaintiff and/or its predecessors failed to exercise due care with respect to the transactions and in connection with the Co-Borrowing and Non-Co-Borrowing Facilities on which plaintiff bases such claims." BMO Ans., at 242; *see also* BofA Ans., at 201; Wachovia Ans., at 209.

(vi) "Any damage, loss or liability sustained by plaintiff must be reduced, diminished and/or eliminated in proportion to the wrongful or negligent conduct of entities or individuals other than BMO under principles of equitable allocation, recoupment, set-off, proportionate responsibility and comparative fault." BMO Ans., at 243; *see also* BofA Ans., at 200; Wachovia Ans., at 205.

(vii) "Under principles of contribution and indemnity, persons or entities other than BMO are wholly or partially responsible for the purported damages, if any, plaintiff may have sustained." BMO Ans., at 243; *see also* BofA Ans., at 196; Wachovia Ans., at 208.

The financial condition of the Company and its subsidiaries, the accounting practices of those entities, and the identities of individuals, groups, or entities responsible for overseeing those areas are critical to establishing these affirmative defenses. Accordingly, the Post-Petition Restatement Documents are indisputably relevant in these (and other) areas, and therefore must be produced under Rule 26(b)(1).

Once again, Adelphia has never contended that the Post-Petition Restatement Documents are not relevant. To the contrary, Adelphia previously conceded the relevance of these documents in undertaking to produce "the PwC docs" once the Bank Defendants had agreed to abide by PwC's terms in producing those documents. Atamian Aff. Ex. D (attaching Email from Howard W. Schub to Nancy Ruskin, dated March 24, 2008). Therefore, Adelphia is foreclosed from now arguing that the Post-Petition Restatement Documents are not relevant.

## III. Adelphia Will Not Suffer Any Undue Burden If It Is Compelled To Produce The Post-Petition Restatement Documents.

Adelphia has not argued that it will suffer undue burden if it is compelled to produce the Post-Petition Restatement Documents. Indeed, no such objection could withstand scrutiny because the documents in question have already been gathered and produced by the Company in

the Deloitte Litigation, and they reside on an electronic database which houses the Company's document productions as well as those of other parties in the Deloitte Litigation. Adelphia is simply withholding access to the folders that contain the documents for purely strategic purposes.

Not surprisingly, courts routinely hold that where a party has produced documents in a prior litigation, the party's objection to producing the same documents in a subsequent litigation on undue burden grounds is without merit. *Bourne v. Town of Madison*, No. 05-cv-365-JD, 2007 WL 951552, at *4 (D.N.H. Mar. 27, 2007) ("[T]he court remains unpersuaded by the defendants' argument that the production of the documents responsive to [the requests] would be unduly burdensome because Bourne had already obtained these documents through discovery in the related state case."); *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03CV94LR, 2006 WL 3360926, at *1 (S.D. Miss. Nov. 20, 2006) (noting that the fact that documents were produced in another litigation is "germane to [the] discussion if [the subpoenaed party] refuses to produce relevant documents by claiming undue hardship"). Such reasoning is especially persuasive here where Adelphia has such ready access to the requested documents.[8]

In sum, any claim of undue burden or expense by Adelphia would be entirely baseless.

---

8 For example, production of the Post-Petition Restatement Documents listed on the Covington Logs would not present any burden to Adelphia because presumably it has already reviewed, analyzed and segregated those documents.

## CONCLUSION

For the foregoing reasons, the Bank Defendants respectfully request that the Court compel Adelphia to produce the Post-Petition Restatement Documents and grant such other and further relief as the Court deems just and proper, including the costs of making this motion.

Dated: June 30, 2008
New York, New York

Respectfully submitted,

MAYER BROWN LLP

By: s/ Jean-Marie L. Atamian
Robert F. Finke
Jean-Marie L. Atamian

1675 Broadway, Suite 1900
New York, New York 10019
Tel: (212) 506-2500

Attorneys for Bank of Montreal and BMO Capital Markets Corp.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: s/ Mitchell A. Lowenthal
Mitchell A. Lowenthal
Deborah M. Buell
Lindsee P. Granfield
Members of the Firm

One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

Attorneys for ABN AMRO Inc., Banc of America Securities LLC, BNY Capital Corp., BNY Capital Markets, Inc., Barclays Capital Inc., Citigroup Financial Products Inc., Citigroup Global Markets Holdings Inc., CIBC World Markets Corp., Deutsche Bank Securities, Inc., Fleet Securities, Inc., Morgan Stanley & Co. Incorporated, PNC

Capital Markets LLC, Scotia Capital (USA) Inc., SunTrust Capital Markets, Inc., and TD Securities (USA) LLC

SIMPSON THACHER & BARTLETT LLP

By: s/ William T. Russell, Jr.
Peter V. Pantaleo
William T. Russell, Jr.
Elisha D. Graff

425 Lexington Avenue
New York, New York 10017-3954
Tel: (212) 455-2000
Fax: (212) 455-2502

Attorneys for Wachovia Bank, National Association and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.)

HAYNES AND BOONE, LLP

By: s/ Richard D. Anigian
Thomas E. Kurth
Richard D. Anigian
Debra J. McComas
901 Main Street, Suite 3100
Dallas, Texas 75202
Tel: (214) 651-5000
Fax: (214) 651-5940

Attorneys for Bank of America N.A.