UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
ADELPHIA RECOVERY TRUST,            )
                                    )
           Plaintiffs,              ) No. 05 Civ. 9050 (LMM)
                                    )
       vs.                          )
                                    )
BANK OF AMERICA, N.A., *et al.*,    )
                                    )
           Defendants.              )
                                    )
                                    )
------------------------------------------------------------x

# BANK DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE ELLIS' DECISION DENYING THEIR MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF EXPERT MATERIALS FROM RELATED ACTION

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................... 2

BACKGROUND ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 6

I. The Deloitte Materials Are Not Protected Work Product .................................... 6

II. Even if the Deloitte Materials Were Protected Work Product, Plaintiffs Waived Such Protection ........................................................................................ 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelphia Communications Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Ct. Comm. Pl., Phil. Co. November Term 2002) ................................................................................................1

*B.C.F. Oil Ref. v. Consolidated Edison Co.*, 1997 U.S. Dist. LEXIS 857 (S.D.N.Y. Jan. 29, 1997) ................................................................................5, 6

*Durflinger v. Artiles*, 727 F.2d 888 (10th Cir. 1984) ...........................................................7

*Griffith v. United States,* No. M8-85(JFK), 2007 WL 1222586 (S.D.N.Y. Apr. 25, 2007) ................................................................................4

*Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84 (E.D.N.Y. 1981) ..............................................................................9

*Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership*, 154 F.R.D. 202 (N.D. Ind. 1993) ............................................................8

*Hewlett-Packard Co. v. Bausch & Lomb*, 116 F.R.D. 533 (N.D. Cal. 1987) ..............................................................................................6

*In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844 (8th Cir. 1988) ..........................................................9

*In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379 (2d Cir. 2002) ..........................................................6

*In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) .........................................5, 7, 9

*Moore U.S.A. Inc. v. Standard Register Co.*, 206 F.R.D. 72 (W.D.N.Y. 2001) ..............................................................................................7

*Permian Corp. v. United States*, 665 F.2d 1214 (D.C. Cir. 1981) ..........................................................................................................7

*Rodriguez v. Pataki*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003) ..................................................5

*United States ex rel. Smith v. Boeing Co.*, Nos. 05-1073-WEB and 04-1294-WEB, 2008 U.S. Dist. LEXIS 47179 (D. Kan. June 17, 2008) ..............................................................................8

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997) ................................................................................................9

**Rules**

FED. R. CIV. P. 26 ..................................................................................................................5

FED. R. CIV. P. 26(b)(1) ........................................................................................................4

FED. R. CIV. P. 26(b)(3) .....................................................................................................5, 6

FED. R. CIV. P. 26(b)(4) ........................................................................................................6

FED. R. CIV. P. 26(b)(4)(B) ..........................................................................................4, 7, 8

FED. R. CIV. P. 72(a) ..........................................................................................................1, 6

FED. R. EVID. 401 ..................................................................................................................5

**Other Authorities**

8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL
   PRACTICE AND PROCEDURE § 2024 ..................................................................................9

8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL
   PRACTICE AND PROCEDURE § 2029 ..................................................................................6

C. McCormick, EVIDENCE § 93 ............................................................................................8

FED. R. CIV. P. 26(b)(4), Advisory Committee's Note
   (1970) ..............................................................................................................................6, 7

Proposed FED. R. EVID. 511 ..................................................................................................8

Pursuant to Federal Rule of Civil Procedure 72(a), Bank Defendants[1] respectfully submit this Objection to Magistrate Judge Ellis' February 11, 2009 Decision (the "Decision"), together with the Declaration of William T. Russell, Jr., sworn to on February 26, 2009 (the "Russell Decl."),[2] to the extent that the Decision denies Bank Defendants' motion to compel the Adelphia Recovery Trust ("Plaintiffs")[3] to produce all withheld testifying expert materials from the related action styled *Adelphia Communications Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Ct. Comm. Pl., Phil. Co. November Term 2002) (the "Deloitte Action"), including but not limited to: (a) Adelphia's testifying expert materials (expert reports and transcripts of the depositions of those experts); (b) Deloitte's testifying expert rebuttal materials (expert rebuttal reports and deposition transcripts); and (c) deposition transcripts and reports of the testifying experts of all other parties to the Deloitte Action to the extent they have not been produced (collectively, the "Deloitte Materials").

---

[1] The "Bank Defendants" are the following movants joining in this objection: Wachovia Bank, National Association and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.); Bank of America, N.A.; Bank of Montreal and BMO Capital Markets Corp. (f/k/a BMO Nesbitt Burns Corp.); The Bank of Nova Scotia; Citibank, N.A. and Citicorp USA, Inc.; JPMorgan Chase Bank, N.A.; Credit Suisse, New York Branch (f/k/a Credit Suisse First Boston, New York Branch), Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (USA), Inc. and Donaldson, Lufkin & Jenrette, Inc.), Credit Suisse Capital Funding, Inc. (f/k/a DLJ Capital Funding, Inc.), and The Royal Bank of Scotland PLC; ABN AMRO Bank N.V.; Barclays Bank PLC; PNC Bank, N.A.; and ABN AMRO Inc., Banc of America Securities LLC, BNY Capital Markets, Inc., Barclays Capital Inc., Citigroup Global Markets Holdings Inc., CIBC World Markets Corp., Deutsche Bank Securities Inc. (f/k/a Deutsche Bank Alex. Brown, Inc.), Fleet Securities, Inc. (whose liabilities have been assumed by Bank of America, N.A.), Morgan Stanley & Co. Incorporated, PNC Capital Markets LLC, Scotia Capital (USA) Inc., SunTrust Capital Markets, Inc. (f/k/a SunTrust Equitable Securities), and TD Securities (USA) LLC (f/k/a TD Securities (USA) Inc.).

[2] All citations to "Ex. __" refer to Exhibits to the Russell Decl.

[3] Pursuant to Adelphia's Plan of Reorganization, the claims asserted in the complaints in this proceeding have been transferred to the Adelphia Recovery Trust.

**PRELIMINARY STATEMENT**

Plaintiffs are improperly seeking to preclude discovery of the plainly relevant and non-privileged Deloitte Materials – reports and deposition testimony of testifying experts that have already been disclosed to adversaries in a parallel action against Adelphia's auditor, Deloitte & Touche, LLP ("Deloitte"). In the Deloitte Action, Plaintiffs attributed – without any mention of the Bank Defendants – "much if not all" of their damages to the conduct of Deloitte, (Deloitte Action Compl. ¶ 83) (Ex. A), and in support of these allegations produced to their adversaries the reports and deposition testimony of their testifying experts. By contrast, Plaintiffs inconsistently argue in this action – without any mention of Deloitte – that it is the Bank Defendants who are responsible for their damages and that the Deloitte Materials they provided to their adversaries in the Deloitte Action somehow are now privileged. Because there is no legitimate basis for withholding as privileged materials that were actually disclosed to a party's adversaries and which – since they relate to testifying experts – were created with the intention that they would be disclosed to one's adversaries, the only logical conclusion is that Plaintiffs are withholding this information from the Deloitte Action simply because it undercuts Plaintiffs' claims in this case. That is no basis for withholding relevant, non-privileged materials.

After many months of Bank Defendants' good faith but unavailing efforts to secure the disclosure of the Deloitte Materials without judicial intervention, Bank Defendants submitted to this court their Motion to Compel Plaintiffs' Production of Expert Materials from Related Action on November 21, 2007 (the "Motion"). On February 11, 2009, Judge Ellis issued his Decision, denying the Motion. At a conference held on January 29, 2009 to hear argument on another discovery dispute and to present Judge Ellis' findings with respect to a number of pending discovery disputes (the "January 29 Conference"), Judge Ellis explained that he denied

2

the Motion based on his legal conclusion that all expert materials – including information produced to adversaries by testifying experts – constitute protected attorney work product and that – while there is a narrow exception permitting their disclosure in a case where the expert actually testifies – the testifying expert's final reports produced to an adversary and deposition testimony are protected attorney work product with respect to any related action. (Transcript of January 29, 2009 Discovery Conference Before The Honorable Ronald L. Ellis ("Conf. Tr.") at 22-23) (Ex. B).

Bank Defendants respectfully submit that this Decision and its underlying legal conclusion are incorrect as a matter of law. Materials that, by definition, were created with the intent that they be shared with adversaries and which, in fact, were shared with adversaries are not protected attorney work product and do not become work product simply because the case in which the experts produced their reports and were deposed has now settled. Certainly, once shared with adversaries, any privilege that may have existed is waived. This Court should therefore review the Decision and, applying the appropriate law correctly, grant the Motion.

## BACKGROUND

In the Deloitte Action and in the instant case, Plaintiffs claim that each set of defendants is substantially responsible for bringing about the demise of Adelphia and is liable for the same resulting damages. For example, Plaintiffs' complaint in the Deloitte Action expressly alleged that, if Deloitte had taken appropriate steps, "much if not all of the Rigas Family's wrongdoing could have and would have been prevented and much if not all of the damages caused to Adelphia could have and would have been avoided." Deloitte Action Compl. ¶ 83 (Ex. A). And yet, in this case, Plaintiffs allege – without any mention of Deloitte – that it is the Bank Defendants who are responsible for Plaintiffs' damages. Much of the Deloitte Materials relate to

3

the nature of these damages that Plaintiffs allegedly suffered as a result of the actions attributed to both Deloitte and the Bank Defendants.[4]

In the Deloitte Action, extensive expert discovery was conducted, with the parties producing expert reports and conducting depositions of the various expert witnesses. Deloitte has agreed to and has produced its expert materials to the Bank Defendants here. Plaintiffs, however, have refused to do so. After months of Bank Defendants' good faith efforts to secure the disclosure of the Deloitte Materials without judicial intervention, the Bank Defendants submitted the Motion on November 21, 2007, arguing that the Deloitte Materials are relevant and discoverable and, in the alternative, that Plaintiffs have waived any relevance objections through their words and actions. On December 17, 2007, Plaintiffs filed their opposition, arguing that the Deloitte Materials are protected by the consulting expert privilege established by Federal Rule of Civil Procedure 26(b)(4)(B), despite the fact that the Deloitte Materials relate to testifying – rather than consulting – experts and were actually produced to adverse parties in the Deloitte Action. After the January 29 Conference at which Judge Ellis described his reasoning, Judge Ellis issued the Decision on February 11, 2009, denying the Motion.

While the Decision itself is devoid of any discussion of the legal authority or reasoning underpinning the Court's Decision, Judge Ellis made clear during the January 29 Conference that while he considers the Deloitte Materials to be clearly relevant,[5] he believes that

---

[4] This quite clearly belies the disingenuous representation of Plaintiffs' counsel at the January 29 Conference that the Deloitte Materials are "really very tangential information." (Conf. Tr. at 29:8-9) (Ex. B).

[5] With respect to the relevance of the Deloitte Materials, Judge Ellis was plainly correct. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See also Griffith v. United States,* No. M8-85(JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)

4

they are "classic work product." (Conf. Tr. at 22:5) Judge Ellis further explained that work product protection is not waived when protected documents are produced to an adverse party in litigation under the terms of a confidentiality agreement. (*Id.* at 23:8-13) Judge Ellis contrasted such a scenario with one where work product protections are waived with respect to documents that were "accessible to people in general" because they were "produced during a trial" with "no confidentiality agreement in effect." (*Id.* at 23:1-4) Accordingly, he concluded:

> My ruling with respect to what happened in the [Deloitte Action] is it is self contained [sic] and that while [the experts] may have testified in the [Deloitte Action], in this litigation they are not testifying. The work product that existed in [the Deloitte Action] still exists outside of that litigation.

(*Id.* at 23:24-25, 24:1-4).

The Bank Defendants object on the grounds that the Decision is premised on incorrect conclusions of law. Specifically, it is well established that testifying expert materials are *not* protected attorney work product, *see, e.g.*, *B.C.F. Oil Ref. v. Consolidated Edison Co.*, 1997 U.S. Dist. LEXIS 857, at *8-9 (S.D.N.Y. Jan. 29, 1997) ("documents generated by experts are not work product within the meaning of Rule 26(b)(3)"), and even when materials do constitute attorney work product, any protection is waived as to third parties when the materials are voluntarily disclosed to an adverse party. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("voluntary disclosure of work product to an adversary waives the privilege as to other parties"). The Decision is therefore contrary to law and should be reconsidered by this Court. FED. R. CIV. P. 72(a); *Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003)

---

("[r]elevance under Federal Rule 26 is far broader than the standard under Federal Rule of Evidence 401, which governs the standard at trials."). Here, materials from the Deloitte Action, in which Plaintiffs have sued Deloitte for the same damages arising from the same wrongdoing alleged in this action, could not be more relevant. It is therefore unsurprising that Plaintiffs' counsel conceded that the Deloitte Materials "are *directly relevant* to plaintiffs' claims in the Bank Litigation. . . ." Letter from Jonathan E. Minsker, Esq. to James E. Canning, Esq., dated March 28, 2007, at 2 (Ex. C) (emphasis added).

(holding that an objection to a privilege-related discovery order by a magistrate judge is decided under Federal Rule of Civil Procedure 72(a) and reviewing the magistrate judge's legal conclusions "de novo").

**ARGUMENT**

**I.     The Deloitte Materials Are Not Protected Work Product**

Because the Deloitte Materials were prepared by testifying experts, (*see* Conf. Tr. at 23:23-24) ("I understand that they testified in the [Deloitte Action]"), they are not protected attorney work product. The federal work product doctrine is codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2002), while Rule 26(b)(4) addresses pre-trial discovery of expert materials.

"[N]umerous cases both within the Second Circuit and outside of it . . . have held that documents generated by experts are not work product within the meaning of Rule 26(b)(3)." *B.C.F.*, 1997 U.S. Dist. LEXIS 857, at *8-9 (citing cases); *Hewlett-Packard Co. v. Bausch & Lomb*, 116 F.R.D. 533, 536 (N.D. Cal. 1987) ("It is quite clear that Rule 26 does not include within the definition of 'work product' documents generated or consulted by experts in connection with litigation."). *See also* FED. R. CIV. P. 26(b)(4) advisory committee's note (1970) (stating that Rule 26(b)(4) was added to the Rules in 1970 specifically to "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine"); 8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2029 ("The knowledge of an expert is not privileged [and] it is not part of the work product"). Accordingly, work product protections do not apply to the Deloitte Materials, all of which were prepared by or relate to testifying experts.

6

Similarly, the Deloitte Materials are not protected by Rule 26(b)(4)(B), which provides certain protections to consulting expert materials. The Deloitte Action experts were hired by Plaintiffs specifically in order to provide expert reports and deposition testimony to their adversaries in the Deloitte Action. The Deloitte Materials that the Bank Defendants seek are materials that were prepared by these testifying experts and shared with the proponents' adversaries. They do not represent the work product of analyses of consulting experts.

Rule 26(b)(4)(B) was designed "to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *Moore U.S.A. Inc. v. Standard Register Co.*, 206 F.R.D. 72, 75 (W.D.N.Y. 2001) (stating that Rule 26(b)(4)(B) is "intended to allow litigants to consult experts in order to evaluate a claim without fear that every consultation with an expert may yield grist for the adversary's mill") (internal quotation marks omitted); FED. R. CIV. P. 26(b)(4) advisory committee's note (1970) (stating that Rule 26(b)(4) "adopt[s] a form of the . . . doctrine of 'unfairness'").

This policy of protecting consulting expert materials from opponents has no bearing here, where the Deloitte Action experts were retained specifically in order to testify before an adversary and did in fact so testify. The Second Circuit's reasoning in *Steinhardt* is instructive in this regard. There, in the context of a discussion of work product, the court held that "selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage." 9 F.3d at 235, *citing Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) (holding with respect to attorney-client privilege that "[t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or

7

to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit"). *See also*, C. McCormick, EVIDENCE § 93 (stating that waiver of a privilege occurs when actions by the holder would make it unfair to insist that the privilege still exists); Proposed FED. R. EVID. 511 (stating that waiver occurs when the holder "voluntarily discloses . . . any significant part of the privileged matter").

Consistent with *Steinhardt*, the "fairness doctrine" that underpins Rule 26 compels the conclusion that Plaintiffs, having already benefited from the disclosure of the Deloitte Materials in the Deloitte Action, may not now claim that they will be harmed by disclosure. *See United States ex rel. Smith v. Boeing Co.*, Nos. 05-1073-WEB and 04-1294-WEB, 2008 U.S. Dist. LEXIS 47179, at *8-9 (D. Kan. June 17, 2008) (holding that a party waived any Rule 26(b)(4)(B) privilege over consulting experts' reports where the party voluntarily disclosed such reports to *The Washington Post*); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership*, 154 F.R.D. 202, 210 (N.D. Ind. 1993) (holding that a party waived Rule 26(b)(4)(B) protection over the information from a consulting expert's report that was included in a press release provided to a trade publication). For this Court to reimpose confidentiality upon materials that Plaintiffs themselves have already freely distributed among their adversaries would itself be unfair.

## II. Even if the Deloitte Materials Were Protected Work Product, Plaintiffs Waived Such Protection

Even if the reports and deposition testimony of an expert could somehow be deemed protected attorney work product, any such protection was waived here because Plaintiffs voluntarily disclosed the Deloitte Materials to their adversary in the Deloitte Action.

In the Second Circuit, it is well established that once a party benefits from a waiver of work product protection with respect to a given adversary, it waives the privilege as to

8

third parties. *Steinhardt*, 9 F.3d at 235; *see also United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997) ("disclosing material in a way inconsistent with keeping it from an adversary waives work product protection") (citing cases); 8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 ("If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product."); *see also Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 87, 90 (E.D.N.Y. 1981) (holding that confidentiality agreements do not by themselves immunize expert materials from discovery, "[d]isclosure to an adversary waives the work product protection as to items actually disclosed," and therefore production of an expert report to potential adversaries – even in facilitation of settlement – waived work product protection).[6]

Having enjoyed the fruits of a waiver in the Deloitte Action, Plaintiffs waived any claim to work product protection for the Deloitte Materials here.

## **CONCLUSION**

In their parallel litigation against Deloitte, Plaintiffs retained experts for the sole purpose of creating materials to be disclosed to litigation adversaries – the Deloitte Materials. Now, Plaintiffs argue – and the Magistrate Judge held – that the Deloitte Materials remain

---

[6] The Eighth Circuit reached a similar conclusion in *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844 (8th Cir. 1988), where the government sought access to certain data that, during settlement negotiations in prior civil litigation, Chrysler Motors Corp. had voluntarily disclosed to co-liaison counsel for the plaintiff class. *Id.* at 845. In the prior litigation, counsel for plaintiffs had agreed that they would not disclose that data to additional parties and also stipulated that the data was protected work product. *Id.* Nonetheless, the Eighth Circuit held that "Chrysler waived any work product protection by voluntarily disclosing the computer tape to its adversaries. . . ." *Id.* at 846.

9

protected by a privilege. But there is no work product production for expert materials, and certainly no privilege can remain for materials that have actually been shared with an adversary. Similarly, there is no consulting expert protection for testifying expert materials, or for materials that were created for the purpose of being disclosed or that have actually been disclosed. This Court should therefore grant the Bank Defendants' Motion.

Dated: New York, New York
February 26, 2009

| | |
|---|---|
| **HAYNES AND BOONE, LLP** | **SIMPSON THACHER & BARTLETT LLP** |
| By: */s/ Thomas E. Kurth*<br>Thomas E. Kurth<br>(*thomas.kurth@haynesboone.com*)<br>Richard D. Anigian<br>(*rick.anigian@haynesboone.com*)<br>2323 Victory Avenue, Suite 700<br>Dallas, TX 75219<br>(214) 651-5000 | By: */s/ William T. Russell, Jr.*<br>Peter V. Pantaleo (*ppantaleo@stblaw.com*)<br>William T. Russell, Jr. (*wrussell@stblaw.com*)<br>Paul C. Gluckow (*pgluckow@stblaw.com*)<br>425 Lexington Avenue<br>New York, New York 10017-3954<br>Telephone: (212) 455-2000<br>Facsimile: (212) 455-2502 |
| **Attorneys for Bank of America, N.A.** | **Attorneys for Wachovia Bank, National Association and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.)** |
| **MAYER BROWN LLP** | **CLEARY GOTTLIEB STEEN & HAMILTON LLP** |
| By: */s/ Jean-Marie L. Atamian*<br>Jean-Marie L. Atamian<br>(*jatamian@mayerbrown.com*)<br>John Conlon<br>(*jconlon@mayerbrown.com*)<br>1675 Broadway<br>New York, New York 10019<br>(212) 506-2500 | By: */s/ Deborah M. Buell*<br>Mitchell A. Lowenthal (*mlowenthal@cgsh.com*)<br>Deborah M. Buell (*dbuell@cgsh.com*)<br>Lindsee P. Granfield (*lgranfield@cgsh.com*)<br>Members of the Firm<br><br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999 |
| **Attorneys for Bank of Montreal, BMO Capital Markets Corp. (f/k/a Harris Nesbitt Corp.)** | **Attorneys for ABN AMRO Inc., Banc of America Securities LLC, Bank of New York Capital Markets, Inc., Barclays Capital Inc., Citigroup Global Markets Holdings Inc., CIBC World Markets Corp., Deutsche Bank Securities, Inc., Fleet Securities Inc., Morgan Stanley & Co. Incorporated, PNC Capital Markets LLC, Scotia Capital (USA), Inc., SunTrust Capital Markets, Inc., and TD Securities (USA) LLC** |

| | |
|---|---|
| **MILBANK, TWEED, HADLEY& McCLOY LLP** | **HUGHES HUBBARD & REED LLP** |
| By: */s/ James G. Cavoli*<br>Scott A. Edelman (*SEdelman@milbank.com*)<br>James G. Cavoli (*JCavoli@milbank.com*)<br>L. Anthony Pellegrino (*APellegrino@milbank.com*)<br>One Chase Manhattan Plaza<br>New York, New York 10005<br>(212) 530-5000 | By: */s/ Michael Luskin*<br>Michael Luskin (*luskin@hugheshubbard.com*)<br>George A. Tsougarakis (*tsougara@hugheshubbard.com*)<br>Christopher Gartman (*gartman@hugheshubbard.com*)<br>1 Battery Park Plaza<br>New York, New York 10004<br>(212) 837-6000 |
| **Attorneys for Citibank, N.A., Citicorp USA, Inc., and Citigroup Financial Products, Inc.** | **Attorneys for The Bank of Nova Scotia** |
| **MILBANK, TWEED, HADLEY& McCLOY LLP** | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| By: */s/ Thomas A. Arena*<br>Thomas A. Arena (TA 4613)<br>Tawfiq S. Rangwala (TR 1621)<br>1 Chase Manhattan Plaza<br>New York, New York 10005-1413<br>(212) 530-5000<br>(*tarena@milbank.com*) | By: */s/ Philip D. Anker*<br>Philip D. Anker (*philip.anker@wilmerhale.com*)<br>399 Park Avenue<br>New York, NY 10022<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888 |
| **Attorneys for JPMorgan Chase Bank, N.A.** | **Attorneys for Credit Suisse, New York Branch (f/k/a Credit Suisse First Boston, New York Branch), Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston (USA), Inc.), Credit Suisse Capital Funding, Inc. (f/k/a DLJ Capital Funding, Inc), and The Royal Bank of Scotland PLC** |
| **WHITE & CASE LLP** | **K&L GATES LLP** |
| By: */s/ Heather K. McDevitt*<br>Heather K. McDevitt (*hmcdevitt@whitecase.com*)<br>1155 Avenue of the Americas<br>New York, New York 10036-2787<br>Tel: 212-819-8200<br>Fax: 212-354-8113 | By: */s/ Michael R. Gordon*<br>Richard S. Miller (*richard.miller@klgates.com*)<br>Michael R. Gordon (*michael.gordon@klgates.com*)<br>599 Lexington Avenue<br>New York, NY 10022-6030<br>Telephone: (212) 536-3900<br>Facsimile: (212) 536-3901 |
| **Attorneys for ABN AMRO Bank, N.V.** | **Attorneys for Barclays Bank PLC** |

**WILLIAMS & CONNOLLY LLP**

By: */s/ F. Whitten Peters*
F. Whitten Peters (*wpeters@wc.com*)
Lance A. Wade (*lwade@wc.com*)
725 Twelfth St., N.W.
Washington, DC  20005
(202) 434-5000

**Attorneys for PNC Bank, N.A.**