UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
                                  :
ADELPHIA RECOVERY TRUST,          :
                                  :
                    Plaintiff,    :
                                  :          05 Civ. 9050(LMM)
              v.                  :          MEMORANDUM AND ORDER
                                  :
BANK OF AMERICA, N.A., et al.,    :
                                  :
                    Defendants.   :
                                  :
- - - - - - - - - - - - - - - - X


McKENNA, D.J.

        This Memorandum and Order addresses various motions to

dismiss filed by five Agent Banks.[1]  The Agent Banks seek

dismissal of Claim 32 alleging violation of the Bank

Holding Company Act ("BHCA") in Adelphia Recovery Trust's

("ART") Amended Complaint.[2]  Motions to dismiss were filed

by: Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.,

"Rabobank Nederland", New York Branch ("Rabobank"); Fuji

Bank Limited ("Fuji"); Royal Bank of Scotland plc ("RBS");

Merrill Lynch Capital Corp. ("ML Capital")[3]; and Texas

Dominion (Texas) LLC ("TD Texas").  The five motions to

---

[1] Agent Banks are Bank Defendants which are alleged to have aided in the
structuring of three allegedly fraudulently structured Co-Borrowing
Facilities (the CCH, HHC/UCA, and Olympus Co-Borrowing Facilities).
[2] As part of the pleading related to this case ART has replead
paragraphs 1051 to 1056.  These paragraphs are referred to by this
Court as the Second Amended Complaint.  (Second Am. Compl. ¶¶ 1051—56.)
[3] ML Capital is referred to in the Second Amended Complaint as Merrill
Lynch.  ML Mem. at 1.

dismiss were joined by the other Agent Bank Defendants in various configurations.  Claim 32 is DISMISSED as to Rabobank, Fuji, and TD Texas.  The remaining motions to dismiss are DENIED.


I. Factual and Procedural Background

      The factual and procedural background of this case is discussed in detail by this Court in its May 6, 2009 Memorandum and Order.  Adelphia Recovery Trust v. Bank of America, N.A., No. 05-CV-9050, 2009 WL 1249360 (S.D.N.Y. May 6, 2009) (hereinafter, "Mem. & Order, May 6, 2009"). Since the issuance of the May 6, 2009 Memorandum and Order this Court has issued two substantive orders affecting the disposition of the case.  On June 16, 2009 on a motion for reconsideration filed by Goldman Sachs & Co. this Court required ART to replead Claim 31 (the Margin Loan Claim) to specify which payments to the Margin Lenders[4] came from Adelphia Communication Corporation ("ACC").  Adelphia Recovery Trust v. Bank of America, N.A., No. 05-CV-9050, 2009 WL 1676077 (S.D.N.Y. June 16, 2009).[5]  Subsequently,

---

[4] The Margin Lenders are a group of lenders who received "payments in the months preceding the Adelphia Bankruptcy" from Adelphia on accounts which were controlled by the Rigas family.  Adelphia Recovery Trust, 2009 WL 1676077, at *1.

[5] On July 15, 2009 ART filed a revision to Claim 32 in response to this Court's Memorandum and Order of June 16, 2009 (Docket Nos. 1067).

this Court on July 8, 2009 ruled on the Bank Defendants[6]
motion to strike ART's demand for a jury trial.  <u>Adelphia</u>
<u>Recovery Trust v. Bank of America</u>, N.A., No. 05-CV-9050,
2009 WL 2031855 (S.D.N.Y. July 8, 2009).  This Court held
ART is entitled to a jury trial when pursuing claims on
behalf of ACC.  However, if ART is pursuing claims on
behalf of the Obligor Debtors and the claims arise from the
Co-Borrowing Facilities then the claims will be covered by
jury waivers.

Claim 32, which this Memorandum and Order addresses,
alleges various:

> Agent Banks and Investment Banks, acting in
> concert as a single unit, extended credit and/or
> furnished services . . . on the condition or
> requirement that Adelphia also obtain some
> additional credit, property, and/or service from
> a subsidiary of the bank holding company of such
> bank, including the Agent Banks and/or Investment
> Banks.
>
> (Am. Cmpl. ¶ 1367.)

---

[6] The Bank Defendants are the various Agent and Investment Banks which
are listed in ART's Amended Complaint as participating in the alleged
fraudulent Co-Borrowing Facilities.

ART alleges these tying arrangements between Agent Banks and Adelphia violated the BHCA.  Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841(c), 1971, 1975.

Claim 32 was originally pled in the Creditor Committee Complaint.  (Creditor Cmpl. ¶¶ 809—15.)  When the Complaint was before the Bankruptcy Court, Judge Gerber held that ART had adequately pled Claim 32 as against the Agent Banks and their affiliated Investment Banks.  In re Adelphia Commc'ns Corp., 365 B.R. 24, 75 (Bankr. S.D.N.Y. 2007). Following Judge Gerber's Memorandum and Order ART filed an Amended Complaint on October 31, 2007.  The Amended Complaint consolidated the Creditor Complaint and Intervenor Complaint.  ART also made revisions to the claims.[7]  (Am. Cmpl. ¶¶ 1363—69.)

This Court, on January 17, 2008, issued a Memorandum and Order which looked at a variety of aspects of Judge Gerber's opinion.  Adelphia Recovery Trust v. Bank of Am., N.A., 390 B.R. 64 (S.D.N.Y. 2008) (hereinafter, "Mem. & Order, Jan. 17, 2008").  This Court in its January 17, 2008 Memorandum and Order dismissed the BHCA Claim (Claim 32) as against the Investment Banks on the grounds that the

---

[7] The Amended Complaint is in excess of 500 pages, naming many hundreds of defendants, and provides additional details to various claims.  (Am. Cmpl. ¶¶ 1-1655.)

Investment Banks did not fit within the definition of 'Bank' in the BHCA. (Mem. & Order, Jan. 17, 2008, at 72.)

This Court dismissed Claim 32 with leave to replead to cure ambiguity in the original allegations as against the Agent Banks. This Court requested ART to replead Claim 32 to specify whether the Agent Banks had initiated coercive tying in violation of the BHCA. (Mem. & Order, Jan. 17, 2008, at 73.) ART in addition to the Amended Complaint submitted to this Court a Second Amended Complaint which adds additional factual details to paragraphs 1051 to 1056 of the Amended Complaint. (Second. Am. Cmpl. ¶¶1051—56.)[8]

## II. Standard of Review:

This Memorandum and Order responds to various Agent Bank Defendants' motions to dismiss Claim 32 under Rule 12(b)(6). For ART to avoid dismissal of claims under Rule 12(b)(6) ART must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, adequate pleadings must raise a right to relief above the speculative level. "[A] plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and

---

[8] The Second Amended Complaint is attached as Exhibit A to ART's Memorandum of Law in Opposition to the Agent Banks' Motions to Dismiss the Bank Holding Company Act Claim ("ART Mem."). (ART Mem. at Ex. A.)

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

The Second Circuit has held, "[f]irst, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v. Mills, --- F.3d ----, No. 07-CV-2283, 2009 WL 1956176 (2d Cir. July 9, 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949—50 (2009)).

III. Discussion

Defendants have submitted various motions to dismiss. Some arguments made by Defendants are only applicable to particular Defendants.  Other arguments apply broadly to all the Defendants.  A review of the parties' memoranda of

law finds seven primary arguments.  This Court addresses
each in turn.


1. Lack of an Investment Banking Arm Does not Preclude a
BHCA Claim

     Rabobank and Fuji allege Claim 32 should be dismissed
because it fails to state a claim upon which relief can be
granted pursuant to Fed. R. Civ. P. 12(b)(6).  They argue a
violation of the BHCA requires Rabobank and Fuji have
affiliated investment banks.  Rabobank and Fuji argue that
ART has made no such allegation and, as such, fails to
state a claim against either bank under the BHCA.  Fuji
Reply Mem. at 3; Rabo Mem. at 3.  Despite the protestations
of Fuji and Rabobank it is not necessary that a Bank have
an affiliated Investment Bank for a violation of the BHCA
to have occurred.

     To sufficiently plead a violation of Section 1972 of
the BHCA, ART must allege "that a bank, a bank holding
company, or its subsidiary (1) extended credit; (2) on the
condition or requirement; (3) that its customer obtain or
provide some additional credit, property or service."
Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 552
(S.D.N.Y. 1985).  Fuji and Rabobank contend that ART has
asserted only that "[t]he Agent Banks and Investment Banks,

act[ed] in concert as a single unit" in imposing anti-competitive tying agreements on Adelphia and/or the Rigases.   (Second Am. Cmpl. ¶ 1367.)

A plain reading of the statute indicates a bank can violate the BHCA on its own by tying one credit or service to a requirement 'that the customer shall obtain additional credit, property, or service from such bank' does not require the involvement of an affiliated investment bank. 12 U.S.C. § 1972(1)(A).  ART has alleged the "extension of credit and/or provision of services, on the condition or requirement that Adelphia also obtain some additional credit, property, and/or service from a subsidiary of the bank holding company of such bank, including the Agent banks and/or the Investment Banks."  (Am. Cmpl. ¶ 1367). This allegation comports with the requirement of Section 1972 of the BHCA that a party need only allege that a Bank predicates the purchase of one service on the purchase of another and that the tying need not necessarily include an investment banking service or entity.


2. The Failure of the Second Amended Complaint to Allege Specific Tying against Fuji or Rabobank is Fatal

Fuji and Rabobank allege ART has not pled tying with sufficient specificity against Rabobank or Fuji to survive

a motion to dismiss.  Fuji and Rabobank argue there are no allegations in the Second Amended Complaint that suggest that Fuji or Rabobank specifically tied any credit, property or service to any other credit, property or service involving Adelphia and that there are only generic allegations that identify each as Agents Banks involved in the Olympus Co-Borrowing Facility.  Fuji Reply Mem. at 4; Rabo Mem. at 3.

Fuji and Rabobank suggest that ART is attempting to demonstrate that all Agent Banks participated in 'illicit arrangements' by presenting snippets of 'evidence' from some of the Agent Banks.  (ART Mem. at 5, 11; Second Am. Cmpl. ¶ 1054.)  However, none of the allegations in the Second Amended Complaint specifically mention tying by Fuji or Rabobank.

ART must identify some specific tying in which Rabobank and Fuji engaged.  Lumping together all the Agent Banks without identifying specific tying arrangements, an underwriting agreement or an email fails to meet the pleading requirements of Fed. R. Civ. P. 8(a).[9]   Under

---

[9] The lumping together of the Agent Banks for purposes of the BHCA claim without pleading specific tying or requests for tying fails to meet the requirements for adequate BHCA pleading.  This is different than the lumping together of Agent Banks which fit under the group pleading doctrine.  In the tort claims, ART alleged that the defendant banks had together drafted and/or approved allegedly fraudulent summary term

Iqbal a party must allege more than just conclusory legal statements.  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  Iqbal, 129 S.Ct. at 1940.  ART fails to provide any factual allegations supporting its claim that Fuji and Rabobank participated in impermissible tying in violation of the BHCA.

## 3. TD Texas Is Not a Bank within the Definition of the BHCA

TD Texas alleges that it is not a Bank within the definition of the Bank Holding Company Act.  Further, TD Texas alleges that because it falls outside the definition of a Bank under the BHCA this Court must find it not liable of coercive tying.

For purposes of 12 U.S.C. § 1975, the term bank has meaning ascribed to it in 12 U.S.C. § 1841(c)(1):

"Except as provided in paragraph (2), the term 'bank' means any of the following:

(A) An insured bank as defined in section 1813(h) of this title.

(B) An institution organized under the laws of the United States, any State of the United

_____

sheets.  The terms sheets were collectively approved.  Mem. & Order, May 6, 2009 at 18.  That is not the case with the BHCA claim.

States, the District of Columbia, any territory
of the United States, Puerto Rico, Guam, American
Samoa, or the Virgin Islands which both--

(i) accepts demand deposits or deposits that
the depositor may withdraw by check or similar
means for payment to third parties or others; and

(ii) is engaged in the business of making
commercial loans.

12 U.S.C § 1841(c)(1).

TD Texas argues it is neither an: 'insured bank', an
institution that accepts demand deposits, or is engaged in
the business of making commercial loans.  This Court may
take judicial notice of materials in consideration of
motion to dismiss.  See Hotel Emples. & rest. Emples.
Union, Local 100 v. City of N.Y. Dep't of Parks &
Recreation, 311 F.3d 534, 549 (2d Cir. 2002); Thomas v.
Westchester County Health Care Corp., 232 F.Supp.2d 273,
276 (S.D.N.Y. 2002).  TD Texas presents the following
information: the FDIC omits TD Texas from its list of FDIC
insured bank and thrift subsidiaries of TD Bank, and the
National Information Center of the Federal Reserve Board
identifies TD Texas as a 'finance company' not a
'commercial bank.'  TD Texas Reply Mem. at 4-5.

Merely because TD Texas is affiliated with entities that may accept deposits or maintain FDIC insurance does not make TD Texas a "bank" for purposes of the BHCA. Flintridge Stations Assocs. V. Am. Fletcher Mortgage Co., 761 F.2d 434, 439 (7th Cir. 1985).

ART's sole response to TD Texas is that this argument is premature on a motion to dismiss.[10]  ART argues it should have the opportunity to test the factual assertions made by TD Texas in discovery and/or challenge their relevance and import at trial.  However, a Court may take judicial notice of public records such as those cited by TD Texas to determine a 12(b)(6) motion to dismiss.  "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

This court takes judicial notice of the records cited by TD Texas and holds that TD Texas is not a bank within the meaning of the BHCA and accordingly the claim is dismissed against TD Texas.

---

[10] ART contends that TD Texas's argument contradicts assertions made by ART in the Second Amended Complaint, which must be accepted as true under FRCP 12(b)6, and raises factual issues inappropriate for resolution at this time.  ART Mem. at 15 n.9.

4.  The Second Amended Complaint Alleges Tying with
Sufficient Particularity as Against RBS.

RBS alleges that ART's pleading fails to satisfy the
requirements of Fed. R. Civ. P. 8(a) because the pleadings
do not make any specific allegations against RBS.  RBS
argues Claim 32 must be dismissed as to RBS because of
"ART's inconsistent BHCA pleading – alleging some details
as to many banks, but none as against RBS. . ."  RBS Reply
Mem. at 4.  RBS alleges this failure to allege specific
facts as against RBS should lead to Claim 32's dismissal.
Id.

Despite the assertions in RBS's papers the Second
Amended Complaint contains specific allegations against RBS
and dismissal of Claim 32 would be inappropriate at this
time.  There are two independent bases for finding
sufficient pleadings.  First, Adelphia identifies
underwriting transactions and approval of a specific Co-
Borrowing Facility as evidence of coercive tying.   The
Amended Complaint lists RBS as underwriting Adelphia's
October 2001 offering of senior notes.  (Am. Cmpl. ¶¶ 1046,
1061.)  In addition, RBS acted as an Agent Bank in the
Olympus Co-Borrowing Facility.  (Am. Cmpl. ¶ 927.)  It is
plausible that RBS might have anticipated further
investment banking business from Adelphia but Adelphia's

13

bankruptcy in June of 2002 precluded further purchases of investment banking services.[11]  (Am. Cmpl. ¶ 25.)

The Amended Complaint alleges coercive tying generally by all the Agent Banks.  "Adelphia and the Agent Banks both understood that the Agent Banks' agreement to participate in the CCH Co-Borrowing Facility, among others, was tied to Adelphia's assurance that their affiliated Investment Banks would garner substantial fees."  (Am. Cmpl. ¶ 1056.)  This paragraph coupled with the identification of underwriting of the Olympus Co-Borrowing Facility raises the tying allegations in the Second Amended Complaint above mere legal conclusions and provides "factual allegations." Iqbal, 129 S.Ct. at 1950.

Second, an internal RBS email which is attached as an exhibit to the Second Amended Complaint makes the allegations of tying against RBS rise to more than conclusory statements.  ART in its opposition brief cites a RBS Corporate Credit Memorandum to support its claim of illegal tying.  "Additionally the return is acceptable and the [Relationship Manager] is confident that additional remunerative business can be earned on the back of the proposed participation.  On this basis, facilities are

---

[11] The offering which RBS participated in was related to the Olympus Co-Borrowing Facility.  RBS Reply Mem. at 1.  The Olympus Co-Borrowing Facility was the last Co-Borrowing Facility structured before Adelphia's bankruptcy.

recommended as proposed." ART Mem at 14 n.8 (Decl. of
Michael C. Harwood, Ex. A, at Bates Nos. RBS000303-04).

    RBS alleges this Memorandum prepared by RBS Senior
Credit Manager Bali Nerwan from September 5, 2001 suggests
that RBS did not compel Adelphia to accept more 'lucrative'
investment banking services from RBS in exchange for its
participation in the Olympus facility.  RBS Reply Mem. at
9.  However, on a motion to dismiss all reasonable
inferences are to be drawn in favor of the non moving
party.  Harris v. Mills, 2009 WL 1956176, at *4 (2d Cir.
2009).  The RBS email when viewed in favor of ART raises
the Complaint's allegations of coercive tying above mere
legal conclusions by providing context in which to view the
transactions and actions of RBS.

    This Court when considering RBS's motion for dismissal
will take into account the RBS email, "the complaint is
deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in
it by reference."  Chambers v. Time Warner, Inc., 282 F.3d
147, 152 (2d Cir. 2002) (citations and internal quotation
marks omitted).[12]  The Second Amended Complaint has

---

[12] To the extent that considering an exhibit or a document which is not
in a Complaint in assessing a motion to dismiss the claim comes from
the idea that, "the harm to the plaintiff when a court considers
material extraneous to a complaint is the lack of notice that the
material may be considered. Accordingly, where plaintiff has actual

sufficient particularity that dismissal of Claim 32 is inappropriate at this time.

## 5. RBS's Participation in Only One Co-Borrowing Facility is Sufficient

RBS alleges any investment banking services which were purchased were de minimis in value and thus it is not liable for a violation of the BHCA.  RBS is alleged to have only participated in one securities offering and that its participation was limited to being an underwriter of "a mere $1000 of Adelphia's $500 million senior notes offering – representing 0.0002% of the total offering." RBS Mem. at 4.

The amount of money at stake is not determinative of liability under the BHCA.  An amount of 1000 dollars or a promise of the future purchase of services (even if the purchase were never consummated) will qualify for liability under the BHCA.  Case law supports the contention that a customer need not purchase tied services.  A customer need

notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (internal citations and quotations omitted).  The situation outlined in Mangiafico is not the case here where RBS has in its Rely Brief directly addressed the RBS email.  RBS Reply Mem. at 9.  No prejudice has been wrought against RBS through considering the email when evaluating a motion to dismiss.

only be induced by a bank to purchase services.  "Arguably,
if the bank had premised the Defendants' early funding on
the provision of future services, then the bank would have
violated the statute." Federal Deposit Ins. Corp. v. Eagle
Properties, Ltd., 664 F.Supp. 1027, 1054 (W.D.Tex. 1985).

The plain language of the statute requires only that
future services be tied and does not require a minimum
amount.  "A bank shall not in any manner extend credit,
lease or sell property of any kind, or furnish any service,
or fix or vary the consideration for any of the foregoing,
on the condition or requirement. . ."  Bank Holding Company
Act Amendments of 1970, § 106(b), 12 U.S.C. § 1972(1).  The
BHCA does not require that tying occur, only that a promise
be made.  The promise need not be fulfilled for liability
to arise under the BHCA.  The claim against RBS will not be
dismissed under Fed. R. Civ. P. 12(b)(6).


6. Amended Complaint Specifies the Agent Banks Initiated
Coercive Tying

ML Capital alleges the tying was initiated by the
Rigas Family and not the Agent Bank Defendants.  The
Defendants further allege that if the tying was initiated
by the Rigas Family and not the Banks then ML Capital and

the other Bank Defendants (who have joined in this motion) would not be liable under the Bank Holding Company Act.

As a general rule a Bank will only be liable under the BHCA if it was the party which initiated the tying arrangement.  This Court previously held in its January 17, 2008 Memorandum and Order, "[o]ne element that must be shown in a tying case is, 'evidence of actual coercion by the seller that in fact forced the buyer to accept the tied product.'" (Mem. & Order, Jan. 17, 2008, at 73.) (quoting Yentsch v. Texaco, Inc., 630 F.2d 46, 57 (2d Cir. 1980). This Court requested in its January 17, 2008 Memorandum and Order that Claim 32 be replead to clarify whether the coercion was coming from the Rigas Family or the Banks. (Mem. & Order, Jan. 17, 2008, at 73.)

Repled Claim 32 (as it appears in the Second Amended Complaint) meets the requirement of alleging that the Banks initiated the tying.  Coercive tying by the Agent Banks does not preclude the Rigases from also insisting on coercive tying.  This Court's January 17, 2008 order did not foreclose the possibility that both the Rigases and the Agent Banks sought coercive tying arrangements simultaneously and for different purposes. (Mem. & Order, Jan. 17, 2008, at 73.)  Multiple parties could simultaneously conduct coercive tying.  12 U.S.C. § 1971.

ML Capital's argument that the Second Amended Complaint continues to be ambiguous as to whether the Banks instigated coercive tying is inapposite.  The Second Amended Complaint alleges clearly "Adelphia and the Agent Banks both understood that the Agent Banks' agreement to participate in the CCH Co-Borrowing Facility, among others, was tied to Adelphia's assurance that their affiliated Investment Banks would garner substantial fees."  (Sec. Am. Cmpl. ¶ 1056).  Allegations against the Agent Banks are not ambiguous or self contradictory because other sections of the Amended Complaint allege the Rigas Family pursued coercive tying arrangements.  Both groups could have simultaneously been attempting coercive tying.[13]

---

[13] ML Capital cites a California Appellate Court case from 1951 to argue that the contradictions between two versions of a complaint create ongoing ambiguity as to who initiated the tying.  "ART still does not even try to proffer an explanation as to why it originally alleged that the Rigases initiated the alleged tying."  ML Reply Mem. at 4 (citing Lee v. Hensley, 230 P.2d 159, 166 (Cal. Ct. App. 1951).  However, even California cases (which is not the governing law of this case) which have followed Hensley have viewed this admonition to be in regard to a situation where a subsequent complaint clearly contradicts a prior complaint and where the two complaints are so at odds with each other they constitute a sham or a fraud upon the court.  That is not the case here where it is plausible both the Rigases and the Banks initiated coercive tying.  Appl v. Lee Swett Livestock Co., 237 Cal.Rptr. 433, 436 (Cal. App. 1 Dist. 1987); Fisher v. MacInness, 12 Cal.Rptr. 798, 801 (Cal. App. 1961).  This case is not governed by the substantive or procedural law of the State of California.  Federal procedural law governs and it holds, "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(e)(2); see Mem. & Order, May 6, 2009, at 10.)

7. Second Amended Complaint Contains Sufficient Factual
Allegations against ML Capital

     ML Capital alleges the Second Amended Complaint fails
to allege specific tying between Adelphia and ML Capital.
ML Reply Mem. at 5.  "The complete absence of any factual
detail concerning ML Capital speaks volumes about the
inadequacy of the claim against ML Capital."  Id.  ML
Capital argues Claim 32 should be dismissed for this
failure to allege specific factual allegations.

     This Court holds the Second Amended Complaint contains
allegations of specific transactions between ML Capital and
Adelphia of tying in violation of the BHCA.  The Complaint
alleges two tied transactions.  In October 1999, ML & Co.
participated in an underwriting.  (Sec. Am. Compl. ¶ 1046.)
In April 2000, ML Capital is alleged to have approved the
CCH Co-Borrowing Facility.  (Sec. Am. Cmpl. ¶¶ 878, 881).
ML Capital alleges nothing in the brief indicates that ML
Capital initiated the purported tying arrangement.  ML
Reply Mem. at 6.

     However, ART identifies specific transactions in its
Second Amended Complaint (approval of the CCH Co-Borrowing
Facility and underwriting six months earlier).  This places
ML Capital in a different position than Fuji or Rabobank as
to which specific transactions are not identified.  ART

pled that ML Capital as well as other Agent Banks initiated coercive tying.  (Sec. Am. Compl. ¶¶ 1051, 1056).

The general allegations of tying by the category of Agent Banks together with the identification of specific transactions which ML Capital participated in raises the allegations when taken as true above mere legal conclusions and into the realm of plausibility.  Dismissal of Claim 32 against ML Capital would be inappropriate at this time. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

ML Capital alleges that the order in which the transactions occurs makes coercive tying implausible.  The approval of the CCH Co-Borrowing Facility occurred 6 months after the alleged underwriting and it is not possible that ML Capital was coercing investment banks fees.  ML. Reply Mem. at 6. However, liability under the BHCA does not hinge on the order of tying.  Tying can be contemporaneous or occur separated by time.  ART Mem at 4 n.3.

The position of ML Capital is different than that of Fuji or Rabobank in which a pair of transactions were not alleged.  The pleading requirements laid out in Twombly and its progeny Iqbal are met.

IV. Conclusion

Claim 32 is dismissed against Fuji, Rabobank and TD Texas. Leave to replead is granted as to the allegations against Fuji and Rabobank if the parties can identify specific evidence of tying arrangements in violation of the BHCA. The ML Capital and RBS motions for dismissal are DENIED.

SO ORDERED.

Dated: July 27, 2009

Lawrence M. McKenna
U.S.D.J.