UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ADELPHIA RECOVERY TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 Civ. 9050 (LMM) |
| | ) |
| BANK OF AMERICA, N.A., et al., | ) |
| | ) |
| Defendants. | ) |

_____

**INVESTMENT BANKS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT ON CLAIMS 36 AND 40**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... ii

PRELIMINARY STATEMENT ...................................................... 1

PROCEDURAL BACKGROUND..................................................... 2

STATEMENT OF FACTS ........................................................... 4

ARGUMENT....................................................................... 5

CLAIMS 36 AND 40 MUST BE DISMISSED BECAUSE THE INVESTMENT
BANKS OWED NO DUTY OF CARE, FIDUCIARY OR OTHERWISE, TO
ADELPHIA ....................................................................... 5

    A.    The Applicable Legal Standards Require the ART to Provide Evidence
    that the Investment Banks Owed a Fiduciary Duty ...................... 5

    B.    Law of the Case Compels Dismissal of Claims 36 and 40 ........................... 7

    C.    Discovery Has Revealed No Facts in Dispute that Could Establish a
    Fiduciary or Similar Duty Between the Investment Banks and Adelphia..... 8

        1.    Under Applicable Legal Standards, the Undisputed Facts Establish
        that No Fiduciary Duty Could Have Existed ...................... 8

        2.    There Is No Basis to Support the ART's Gross Negligence Claim...... 13

    CONCLUSION    ........................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 56(e)(2) ................................................................................................ 6

**<u>Cases</u>**

<u>Adelphia Commc'ns Corp. v. Bank of America, N.A.</u>
<u>(In re Adelphia Commc'ns Corp.)</u>,
365 B.R. 24 (Bankr. S.D.N.Y. 2007) ....................................................................... passim

<u>Adelphia Recovery Trust v. Bank of America, N.A.</u>,
624 F. Supp. 2d 292 (S.D.N.Y. 2009) ...................................................................... passim

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986) ...................................................................................................... 6

<u>Arizona v. California</u>,
460 U.S. 605 (1983) ...................................................................................................... 7

<u>Café La France v. Schneider Sec. Inc.</u>,
281 F. Supp. 2d 361 (D.R.I. 2003) ............................................................................. 12

<u>Cara Corp. v. Cont'l Bank</u>,
148 B.R. 760 (Bankr. E.D. Pa. 1992) ................................................................... 8-9, 11

<u>City of Harrisburg v. Bradford Trust Co.</u>,
621 F. Supp. 463 (M.D. Pa. 1985) ............................................................................... 9

<u>City of Rome v. Glanton</u>,
958 F. Supp. 1026 (E.D. Pa. 1997) ....................................................................... 14, 15

<u>Doe v. New York City Dep't of Soc. Servs.</u>,
709 F.2d 782 (2d Cir. 1983) ......................................................................................... 7

<u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>,
811 A.2d 10 (Pa. Super. Ct. 2002) ........................................................................ passim

<u>Federowicz v. Snap-On Tools Corp.</u>,
No. Civ. A. 91-3425, 1992 WL 55723 (E.D. Pa. Mar. 12, 1992) ................................. 9

<u>Gaines v. Krawczyk</u>,
354 F. Supp. 2d 573 (W.D. Pa. 2004) .................................................................... 13, 14

<u>Galisson v. Shawnee Mountain Ski Area</u>,
No. 791 Civil 1995, 1996 WL 932761 (Pa. Com. Pl. 1996) ...................................... 13

Globalnet Financial.Com, Inc. v. Frank Crystal & Co.,
449 F.3d 377 (2d Cir. 2006)......................................................................................... 6

Gredd v. Bear, Stearns Secs. Corp.
(In re Manhattan Inv. Fund Ltd.),
343 B.R. 63 (Bankr. S.D.N.Y. 2006)........................................................................... 7

Griggs v. BIC Corp.,
981 F.2d 1429 (3d Cir. 1992)........................................................................................ 6

Harmon Elecs., Inc. v. Nat'l Signal Corp.,
No. Civ. A. 94-3071, 1997 WL 158216 (E.D. Pa. Mar. 31, 1997)................................ 9

In re Estate of Scott,
316 A.2d 883 (Pa. Super. Ct. 1974)............................................................................. 14

Jeter ex rel. Estate of Smith v. Brown & Williamson Tobacco Corp.,
294 F. Supp. 2d 681 (W.D. Pa. 2003)........................................................................... 13

Joyce v. Morgan Stanley & Co.,
538 F.3d 797 (7th Cir. 2008) ........................................................................................ 9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)...................................................................................................... 6

McGrath v. Parker,
771 N.Y.S.2d 691 (2d Dep't 2004)............................................................................... 12

MRED Gen. Partner, LLC v. Tower Econ. Co.,
No. 2531 Nov. Term 2004, 2005 WL 957707 (Pa. Com. Pl. Apr. 12, 2005)................. 10

Neuchatel Ins. & Great N. Ins. Co. v. ADT Sec. Sys., Inc.,
No. Civ. A. 96-5396, 1998 WL 966080 (E.D. Pa. Nov. 5, 1998)................................... 6

Niagara Mohawk Power Corp. v. Jones Chem., Inc.,
315 F.3d 171 (2d Cir. 2003)......................................................................................... 6, 12

Owens v Mazzei,
847 A.2d 700 (Pa. Super. Ct. 2004).............................................................................. 13-14

Philip Morris Inc. v. Heinrich,
No. 95 Civ. 0328, 1997 WL 781907 (S.D.N.Y. Dec. 18, 1997)...................................... 7

Reichhold Chems., Inc. v. Millennium Int'l Techs, Inc.,
No. 99-799, 1999 WL 270391 (E.D.Pa. May 5, 1999).................................................. 14

Smith v. John Hancock Ins. Co.,
No. 06-3876, 2008 WL 4072585 (E.D. Pa. Sept. 2, 2008)............................................ 10

United States v. Crowley,
318 F.3d 401 (2d Cir. 2003)................................................................................................   7

The Investment Banks[1] submit this memorandum of law in support of their motion for summary judgment on Claim 36 (breach of fiduciary duty) and Claim 40 (gross negligence) of the Second Amended Complaint (the "SAC").[2]

## PRELIMINARY STATEMENT

This motion presents the Court with straightforward grounds to dismiss two discrete claims: breach of fiduciary duty and gross negligence.  First, this Court has already found that, as a matter of law, the Investment Banks owed no fiduciary duty to Adelphia,[3] and the Bankruptcy Court previously held that the ART's gross negligence claim also requires a showing of the existence of a fiduciary duty that is lacking here.  Thus, the law of the case requires granting summary judgment as to both claims.  Second, even absent clear law of this case, no facts have emerged in discovery – and the ART will be able to present none – that could establish the requisite duty on the part of the Investment Banks.  Far from it, discovery has revealed – predictably – that the Investment Banks acted as business *counter-parties* to Adelphia, underwriters of Adelphia's public securities, not its fiduciaries.  And under such circumstances,

---

[1]      The "Investment Banks" are defined in the Second Amended Complaint to include twenty-two separate institutions.  See SAC ¶ 25 (Ex. 35).  Of those, this motion is brought on behalf of the following: ABN AMRO Inc., Barclays Capital Inc., BMO Capital Markets Corp., BNY Capital Markets, Inc., CIBC World Markets Corp., JPMorgan Securities, Inc., Calyon Securities (USA), Inc., Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation and Donaldson, Lufkin & Jenrette Securities Corporation), Deutsche Bank Securities, Inc. (f/k/a Deutsche Bank Alex Brown, Inc.), Fleet Securities, Inc., Merrill Lynch & Co., Inc., Morgan Stanley & Co. Incorporated, PNC Capital Markets LLC, Scotia Capital (USA) Inc., SunTrust Robinson Humphrey, Inc. (f/k/a SunTrust Equitable Securities), TD Securities (USA) LLC (f/k/a TD Securities (USA) Inc.), The Royal Bank of Scotland PLC, Cowen and Company, LLC, and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.).

[2]      At an October 16, 2009 status conference, the Court permitted the defendants to file a limited number of discrete summary judgment motions (including one on Claims 36 and 40) before the close of expert discovery and in advance of filing "global" summary judgment motions, currently scheduled to be filed on January 15, 2010.

[3]      For purposes of this motion, Adelphia will refer collectively to both Adelphia Communications Corporation and its affiliated debtors and debtors in possession; because the Investment Banks owed no fiduciary or other similar duty to any Adelphia company, there is no need here to distinguish among them.

the law – articulated by this Court and others – is clear that no breach of fiduciary duty or gross negligence claim can survive.

## PROCEDURAL BACKGROUND[4]

Among its myriad of tort claims centered around the Rigases' alleged misuse of the so-called "co-borrowing facilities," the ART included claims for breach of fiduciary duty and gross negligence against the Investment Banks.  The Investment Banks previously moved to dismiss those claims at the pleading stage on, *inter alia*, the grounds that the relationship between the Investment Banks and Adelphia did not create a fiduciary or other type of duty that could support these claims.  In June 2007, the Bankruptcy Court granted in part and denied in part the Rule 12(b)(6) motion to dismiss these claims.[5]  The court concluded that the Investment Banks "properly note[d] that their status as underwriters for Adelphia securities offerings does not give rise to a fiduciary relationship," Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp.), 365 B.R. 24, 65 (Bankr. S.D.N.Y. 2007) ("6/11/07 Decision"), but because the plaintiff had alleged in the complaint a relationship that was not limited to the underwritings of securities, but also supposedly encompassed service as "advisors" to Adelphia, the question of whether a fiduciary duty could have arisen precluded dismissal on the pleadings. Id. at 65-66.  The court did, however, dismiss the breach of fiduciary duty claim against Salomon Smith Barney Holdings Inc. ("SSB") and Banc of America Securities LLC ("BAS") on the

---

[4]     For purposes of this motion, the Investment Banks presume familiarity with the ART's allegations and the central facts of the case, including facts concerning the co-borrowing facilities.  See, e.g., Adelphia Recovery Trust v. Bank of America, N.A., 624 F. Supp. 2d 292, 298-304 (S.D.N.Y. 2009) (McKenna, J.) (providing summary of allegations and factual history).

[5]     At the time, the claims were being pursued by one of the ART's predecessor entities, the Official Committee of Unsecured Creditors.

2

grounds that they had entered into written agreements disclaiming the existence of a fiduciary duty.  See id. at 66 & n.171.[6]

With respect to the gross negligence claim, the Bankruptcy Court concluded that, although "in the strictest sense, one might argue that the fiduciary duty alleged to exist in [the breach of fiduciary duty claim] is not quite the same as the duty alleged to exist and underlie the [gross negligence claim], any differences are, in this Court's view, immaterial."  Id. at 67.  Thus, the court also dismissed – on the pleadings – the gross negligence claim against SSB and BAS based on their contractual disclaimers, but permitted the claim against the remaining Investment Banks to proceed to fact discovery.  Id.

More recently, in May 2009, this Court ruled on the Investment Banks' motion to dismiss a number of claims made in the ART's Amended Complaint.  See Adelphia Recovery Trust v. Bank of America, N.A., 624 F. Supp. 2d 292 (S.D.N.Y. 2009) ("5/6/09 Decision").  Relevant to the instant motion, this Court considered, and granted, the Investment Banks' motion to dismiss the ART's claim of fraudulent concealment (Claim 54).  Because fraudulent concealment, under Pennsylvania law, requires an affirmative duty to speak, the Court considered whether a fiduciary relationship existed between the Investment Banks and Adelphia.  Id. at 320-21.  This Court held that the "Investment Banks' status as underwriters for Adelphia securities offerings *did not give rise to a fiduciary relationship* and the Investment Banks were under no duty to speak . . . ."  Id. at 321 (emphasis added).  The Court also considered whether, consistent with Pennsylvania law, a duty to speak may have arisen "'as a result of one party's reliance on the other's representations, if one party is the only source of information to the other party, or the problems are not discoverable by other reasonable means.'"  Id. at 322 (quoting Reichhold

---

[6]     Accordingly, SSB and BAS are not among the investment banks included in the definition of "Investment Banks" on whose behalf this motion for summary judgment is filed.

Chems., Inc. v. Millennium Int'l Techs, Inc., No. 99-799, 1999 WL 270391, at *2 (E.D. Pa. May 5, 1999)).  Because the ART has always asserted that the Rigas Family had knowledge of the allegedly concealed information, this Court properly concluded that the Investment Banks were "not solely in control of the information," 5/6/09 Decision, 624 F. Supp. 2d at 322-33, and therefore had no duty to speak arising from sole access to the relevant information.  The Court thus dismissed the fraudulent concealment claim against the Investment Banks.

    With fact discovery now complete, the Court can – and should – dismiss the two remaining claims against the Investment Banks that require a showing of a fiduciary or similar duty to Adelphia.  Discovery has confirmed that the Investment Banks did nothing more than engage in arm's-length underwritings of Adelphia's public offerings of debt and equity securities and occasionally make pitches to Adelphia's management for additional underwriting business.[7] They never once met with Adelphia's outside directors ("Outside Directors"), much less did or said anything to create a fiduciary relationship.  Indeed, in contention interrogatories, the ART was asked to identify any statement or document provided by any of the Investment Banks to Adelphia's Board, and the ART could not identify a single one.

## STATEMENT OF FACTS

    To grant this motion, the Court need consider only the following facts, limited in number and undisputed, all of which lead to the inevitable conclusion that the relationship between the

---

[7]       In April 2002, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston (USA), Inc. and Donaldson, Lufkin & Jenrette, Inc.) ("Credit Suisse") was engaged to provide financial advisory services to ACC. The engagement letter executed by Credit Suisse in connection with these services expressly disclaimed the existence of a fiduciary relationship with ACC.  See Ex. 33 at CSFBUSA000214 (April 5, 2002 engagement letter with ACC, stating that ACC's engagement of Credit Suisse "is as an independent contractor and not in any other capacity *including as a fiduciary*") (emphasis added).  In December 2000, Credit Suisse was engaged to render a fairness opinion on behalf of ABIZ (not ACC), which also in no way created a fiduciary relationship with ACC.  See Ex. 34 at CSFBUSA030249 (Dec. 29, 2000 engagement letter with ABIZ, stating that Credit Suisse was acting as independent contractor with duties owing "*solely to* [*ABIZ*]") (emphasis added).

Investment Banks and Adelphia was that of typical underwriters and issuer:[8]

- There is no evidence that the Investment Banks did anything beyond serving a limited role as underwriters on certain Adelphia securities offerings, and on occasion, certain of them pitched Adelphia management for additional investment banking business.  Rule 56.1 Statement ¶ 1.

- Adelphia, a multi-billion dollar company, had access to professionals who plainly did owe Adelphia duties of care (e.g., Deloitte, its outside accountants, and Buchanan Ingersoll, its regular outside counsel).  Rule 56.1 Statement ¶ 2.

- The Investment Banks had only limited interaction with Adelphia's senior management and no substantive interaction with Adelphia's Board.  Rule 56.1 Statement ¶ 3.

- There is no evidence of any written or oral agreement between the Investment Banks and Adelphia imposing a fiduciary or similar duty on the Investment Banks.  Rule 56.1 Statement ¶ 4.

- There is no evidence that the Investment Banks either accepted or understood that they were entering into a fiduciary relationship with Adelphia.  Rule 56.1 Statement ¶ 5.

- The Rigases were in possession of all information the ART alleges was concealed from the Outside Directors.  Rule 56.1 Statement ¶ 6.

## ARGUMENT

### CLAIMS 36 AND 40 MUST BE DISMISSED BECAUSE THE INVESTMENT BANKS OWED NO DUTY OF CARE, FIDUCIARY OR OTHERWISE, TO ADELPHIA

**A.**    **The Applicable Legal Standards Require the ART to Provide Evidence that the Investment Banks Owed a Fiduciary Duty**

Summary judgment is appropriate where no genuine issue as to any material fact exists

and thus, the moving party is entitled to judgment as a matter of law.  In opposing summary

judgment, the non-moving party must "do more than simply show that there is some

---

[8]      Pursuant to the Local Rule 56.1, a statement of facts relevant to the disposition of this motion is set forth in the accompanying Investment Banks' Statement Pursuant to Local Rule 56.1 of Material Facts As To Which There Is Not Genuine Issue, dated November 18, 2009 (the "Rule 56.1 Statement").  Citations to "Ex.___" are to the Exhibits attached to the accompanying Declaration of Nora K. Abularach, dated November 18, 2009.

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, where, as here, the moving party does not bear the burden of persuasion at trial, the non-moving party must put forth specific facts establishing that a genuine issue of material fact exists for trial. Id. at 587; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Globalnet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006); Fed. R. Civ. P. 56(e)(2). If the non-moving party offers only conclusory statements, conjecture or speculation, summary judgment should be granted. Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) ("'Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.'") (citation omitted).

To survive this motion for summary judgment, the ART must set forth specific facts establishing that the Investment Banks owed a fiduciary or similar duty to Adelphia. See Neuchatel Ins. & Great N. Ins. Co. v. ADT Sec. Sys., Inc., No. Civ. A. 96-5396, 1998 WL 966080, at *7 (E.D. Pa. Nov. 5, 1998) ("[T]o determine whether the alleged conduct of which a plaintiff had complained might be characterized as gross negligence, a court would first have to consider whether plaintiff has established the essential elements of ordinary negligence under Pennsylvania law, i.e., duty of care owed by defendant to plaintiff, breach thereof, and damages proximately caused by the breach of duty."); Griggs v. BIC Corp., 981 F.2d 1429, 1434 (3d Cir. 1992) ("Under Pennsylvania law, no tort liability may be imposed upon a defendant who does not owe a duty to the injured plaintiff."). As explained below, this Court and the Bankruptcy Court have already held, and the facts established in discovery have confirmed, that the ART cannot meet its burden.

**B.**     **Law of the Case Compels Dismissal of Claims 36 and 40**

This Court, in its May 6, 2009 decision, already held that no fiduciary relationship exists

between the Investment Banks and Adelphia:

> This Court concludes that the Pennsylvania Supreme Court would
> not find a fiduciary relationship between an Investment Bank and a
> corporation, its shareholders, or independent directors (barring a
> duty set by written contract).

5/6/09 Decision, 624 F. Supp. 2d at 323.  The Court's well-founded ruling that the Investment

Banks owed no fiduciary duty to Adelphia or its Outside Directors is now the law of this case.  In

addition, the Bankruptcy Court held – in a ruling that also constitutes law of the case – that the

ART's claim for gross negligence is predicated on the same purported fiduciary relationship

upon which its breach of fiduciary duty claim rests.  The Bankruptcy Court reasoned that the

ART's gross negligence claim based on an alleged "fiduciary duty to the Debtors, and/or a

'special relationship and/or superior knowledge'" could only be interpreted as "euphemisms for

the same thing."  6/11/07 Decision, 365 B.R. at 66 (citation omitted).

This Court has also held that "'when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case' unless the

decision 'is clearly erroneous and would work a manifest injustice.'"  Philip Morris Inc. v.

Heinrich, No. 95 Civ. 0328, 1997 WL 781907, at *4 n.3 (S.D.N.Y. Dec. 18, 1997) (McKenna, J.)

(citation omitted).  See also Arizona v. California, 460 U.S. 605, 618 (1983); Doe v. New York

City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983).[9]  No serious argument can be made

---

[9]     See also United States v. Crowley, 318 F.3d 401, 420 (2d Cir. 2003) ("[W]hen a Court has ruled on an
issue, that decision should generally be adhered to by that court in subsequent stages in the same case.") (citation
and quotation marks omitted); Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd.), 343 B.R. 63, 67
(Bankr. S.D.N.Y. 2006) (noting that "'where a court decides upon a rule of law, that decision should continue to
govern the same issues in subsequent stages in the same case'") (citation omitted).

here that the courts' prior rulings were erroneous or that a manifest injustice would result from their continued application.

In short, the law of the case – establishing unequivocally that (a) the Investment Banks did not owe fiduciary duties to Adelphia and (b) the ART's claim of gross negligence alleges no duty other than a potential fiduciary duty – mandates granting the Investment Banks' motion for summary judgment.

**C.      Discovery Has Revealed No Facts in Dispute that Could Establish a Fiduciary or Similar Duty Between the Investment Banks and Adelphia**

Even if it were not law of the case, the ART has failed to elicit any facts in discovery that could support its burden of establishing the existence of a fiduciary relationship or any other confidential relationship between the Investment Banks and Adelphia.  The undisputed evidence demonstrates that the Investment Banks acted <u>solely</u> in a limited role as underwriters on certain Adelphia securities offerings and on occasion made pitches to Adelphia management (who were members of the Rigas family, or who reported to them) for additional investment banking business.  Rule 56.1 Statement ¶ 1.  These undisputed facts, cannot – and do not – create a legal duty necessary for claims of breach of fiduciary duty or gross negligence.

**1.      Under Applicable Legal Standards, the Undisputed Facts Estabalish that No Fiduciary Duty Could Have Existed**

Under relevant Pennsylvania law,[10] the relationship the Investment Banks had with Adelphia – that of arm's-length underwriters of its securities – does not create a fiduciary duty. <u>See</u> <u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>, 811 A.2d 10 (Pa. Super. Ct. 2002) (affirming dismissal of breach of fiduciary duty claim because no fiduciary relationship arises from execution of arm's-length contract for advertising services); <u>Cara Corp. v. Cont'l Bank</u>, 148 B.R.

---

[10]      Pennsylvania law applies to the ART's breach of fiduciary duty and gross negligence claims.  <u>See</u> <u>6/11/07 Decision</u>, 365 B.R. at 39.

760 (Bankr. E.D. Pa. 1992) (granting summary judgment in favor of defendant lender in lender-liability suit because facts could not support finding of fiduciary duty created in lender-borrower relationship); Harmon Elecs., Inc. v. Nat'l Signal Corp., No. Civ. A. 94-3071, 1997 WL 158216, at *5 (E.D. Pa. Mar. 31, 1997) ("At its foundation, the interactions of the [parties] demonstrate an ordinary business relationship by sophisticated business-persons, and do not rise to the realm of fiduciary status."); Federowicz v. Snap-On Tools Corp., No. Civ. A. 91-3425, 1992 WL 55723, at *4 (E.D. Pa. Mar. 12, 1992) (finding no fiduciary duty where relationship involved ordinary "business dealings").

The absence of fiduciary duty is especially clear where – as here – there was no "mutual understanding" between the parties that they had a fiduciary relationship. See Cara Corp., 148 B.R. at 772 (no fiduciary duty where no evidence presented of a "mutual understanding by both parties that their relationship [is] a fiduciary one"); City of Harrisburg v. Bradford Trust Co., 621 F. Supp. 463, 473 (M.D. Pa. 1985) ("[I]t is not enough to show that the plaintiff reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship."); Joyce v. Morgan Stanley & Co., 538 F.3d 797, 802 (7th Cir. 2008) (finding no fiduciary duty arose between investment bank advisor and company's shareholders because bank "did not accept any such responsibility").

As the eToll case makes clear, no fiduciary duty will arise under Pennsylvania law in a commercial relationship – even where one party is paid for its specialized skill and expertise – absent a showing of "overmastering influence" on the part of that party, or extreme weakness and trust easily manipulated on the part of the other party.  eToll, 811 A.2d at 23 (the "critical question [in determining existence of fiduciary duty] is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering

9

influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side")

(citing <u>Basile v. H&R Block, Inc.</u>, 777 A.2d 95, 101 (Pa. Super. Ct. 2001); <u>see also</u> <u>MRED Gen.</u>

<u>Partner, LLC v. Tower Econ. Co.</u>, No. 2531 Nov. Term 2004, 2005 WL 957707, at *2 (Pa. Com.

Pl. Apr. 12, 2005); <u>Smith v. John Hancock Ins. Co.</u>, No. 06-3876, 2008 WL 4072585, at *7 (E.D.

Pa. Sept. 2, 2008).

     The undisputed evidence here shows nothing close to an "overmastering influence" on

the part of the Investment Banks or extreme "weakness" or "dependence" on the part of

Adelphia.  Far from it, the uncontroverted evidence establishes that Adelphia, a multi-billion

dollar company, had access to professionals who plainly did owe Adelphia duties of care (e.g.,

Deloitte, its outside accountants, and Buchanan Ingersoll, its regular outside counsel).  Rule 56.1

Statement ¶ 2.  Not only did the Investment Banks assert no "overmastering influence" over

Adelphia, they had very little interaction with Adelphia's senior management and absolutely no

substantive interaction with Adelphia's Board.  Rule 56.1 Statement ¶ 3.  Moreover, there is no

evidence that the Investment Banks accepted or understood that they were entering into a

fiduciary relationship with Adelphia.  Rule 56.1 Statement ¶ 5.

     Under these circumstances, the Investment Banks' involvement solely as underwriters of

Adelphia securities and their skill and expertise in marketing and selling public securities did

not, as a matter of law, create a fiduciary duty to Adelphia.  To hold otherwise would – in direct

contradiction to the Court's prior rulings in this very case – create a fiduciary duty every time an

institution underwrites a company's securities and any time a party hires another party for a

particular set of skills or expertise that other party can offer.  That is not the law in Pennsylvania.

As the Pennsylvania Superior Court explained, in rejecting fiduciary duties in analogous

circumstances:

> Most commercial contracts for professional services involve one
> party relying on the other party's superior skill or expertise in
> providing that particular service.  Indeed, if a party did not believe
> that the professional possessed specialized expertise worthy of
> trust, the contract would most likely never take place.

eToll, 811 A.2d at 23.  The law simply will not impose a fiduciary duty in all such commercial

relationships.  See, e.g., Cara Corp., 148 B.R. at 772 (declining to find a fiduciary relationship

between bank lender and borrower because, inter alia, no facts establishing a relationship of trust

and confidence with "a confidence on the part of one party and a domination and influence on

the part of the other"); see also 5/6/09 Decision, 624 F. Supp. 2d at 323-24 (citing numerous

cases rejecting fiduciary relationships in the commercial context).

The record here is devoid of any facts that suggest the Investment Banks' relationship

with Adelphia was anything more than a typical underwriter-issuer relationship.  The ART's

vague and unfounded allegations that the Investment Banks provided "advisory services" to

Adelphia, see, e.g., SAC ¶¶ 1037, 1048, 1049 (Ex. 35), the only reason the Bankruptcy Court did

not dismiss the breach of fiduciary duty and gross negligence claims against the Investment

Banks at the pleading stage, have not been borne out in discovery.  Indeed, in pointed contention

interrogatories served by each Investment Bank, the ART failed to offer a single specific fact

supporting Claims 36 and 40 and its allegation that the Investment Banks owed a duty to

Adelphia.  Rather, the interrogatory responses offered only the conclusory statement

(unsupported by any actual evidence) that there are "many facts" supporting the assertion that

each Investment Bank owed and breached a legal duty to Adelphia, "including but not limited

to" the fact that each Investment Bank "acted in an advisory capacity [to Adelphia], providing

expert advice on when and how to structure and conduct financial transactions."  See Exs. 14-32.

To the contrary, the Outside Directors themselves testified that – not only did none of the

Investment Banks provide any advisory services to Adelphia – the Outside Directors did not have any interactions with any of the Investment Banks.  See Exs. 4-10, 13.  The ART has also failed to identify, in response to interrogatories, any statements made or documents provided to the Outside Directors by the Investment Banks.  See Exs. 14-32.  Moreover, James and Michael Rigas, both Adelphia Directors and members of senior management, testified to their recollection that the Investment Banks provided only underwriting services and did not provide any advisory services to Adelphia.  See Exs. 2-3.  Conclusory statements such as the ones the ART has made concerning the provision of advisory services by the Investment Banks, particularly when contradicted by specific and uncontroverted evidence, cannot preclude summary judgment.  See Niagara Mohawk, 315 F.3d at 175; McGrath v. Parker, 771 N.Y.S.2d 691, 692 (2d Dep't 2004) ("[P]laintiff submitted affidavits that were conclusory, vague, and contradicted by documentary evidence.  Such conclusory allegations are insufficient to raise an issue of fact, precluding summary judgment.").

Finally, there is no evidence that the relationship between the Investment Banks and Adelphia was "so markedly imbalanced as to give rise to a confidential relationship" creating a fiduciary duty.[11]  eToll, 811 A.2d at 24; see also Café La France v. Schneider Sec. Inc., 281 F. Supp. 2d 361, 373 (D.R.I. 2003) (finding no fiduciary relationship between underwriter and issuer and noting that "the underwriter, who was chosen by the corporation, can only exert as much influence as the issuer permits").  No facts in this case – disputed or otherwise – can establish a fiduciary relationship between the Investment Banks and Adelphia.  Accordingly, the ART's claim for breach of fiduciary duty cannot survive the instant motion for summary judgment.

---

[11]  Indeed, the Complaint expressly alleges that it was the Rigases who at all times controlled Adelphia, see SAC ¶ 801 (Ex. 35), and thus there is no factual basis to suggest that the Investment Banks were able to – let alone did – exert any undue influence over management.

### 2.   There Is No Basis to Support the ART's Gross Negligence Claim

No viable claim for gross negligence can exist where the defendant owes no duty to the plaintiff.  See Galisson v. Shawnee Mountain Ski Area, No. 791 Civil 1995, 1996 WL 932761, at *5 (Pa. Com. Pl. 1996).  Plaintiff asserts in Claim 40 that "[b]y virtue of [their] fiduciary duty, special relationship and/or superior knowledge with respect to the Debtors, each of the Investment Banks owed a duty to the Debtors . . . to act with reasonable care in the course of its duties and responsibilities as underwriters" and to keep Debtors fully informed of all material facts.  SAC ¶ 1444 (Ex. 35).  This claim is nothing more than the breach of fiduciary duty claim cloaked as gross negligence, and, as the Bankruptcy Court correctly concluded, the ART's allegation of a duty based on "fiduciary duty to the Debtors, and/or a 'special relationship and/or superior knowledge'" could only be interpreted as "euphemisms for the same thing."  6/11/07 Decision, 365 B.R. at 66 (citation omitted).

Pennsylvania law recognizes that a confidential relationship, which can be broader than a fiduciary one, may give rise to a duty of care.  See Gaines v. Krawczyk, 354 F. Supp. 2d 573, 581 (W.D. Pa. 2004) (noting the Supreme Court of Pennsylvania's observation that a confidential relationship "is not limited to a particular association of persons or confined to technical cases of fiduciary relationship . . ."); Jeter ex rel. Estate of Smith v. Brown & Williamson Tobacco Corp., 294 F. Supp. 2d 681, 688 (W.D. Pa. 2003) ("Under Pennsylvania law, a duty to speak or disclose information normally only arises when there is a fiduciary or confidential relationship between the parties.").  However, a confidential relationship – like a fiduciary one – must be characterized by significant disparity:

> The [Supreme Court of Pennsylvania] has recognized . . . that the essence of [a confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other.  Accordingly, a confidential relationship appears when the circumstances make it certain the

parties do not deal on equal terms, but, on the one side there is an <u>overmastering influence</u>, or, on the other, weakness, dependence or trust, justifiably reposed.

<u>Owens v Mazzei</u>, 847 A.2d 700, 709 (Pa. Super. Ct. 2004) (internal citations and quotation marks omitted) (emphasis added); <u>see also</u> <u>In re Estate of Scott</u>, 316 A.2d 883, 886 (Pa. Super. Ct. 1974); <u>Gaines</u>, 354 F. Supp. 2d at 581 ("[a confidential relationship] is deemed to be present whenever the relative positions of the parties is such that one has the power and means to take advantage or exercise undue influence over the other").  Thus, to impose an additional duty on the Investment Banks arising out of a confidential relationship, there must be overmastering influence present in the relationship, and for all of the reasons discussed above, the facts do not support such a finding.

Similarly, the ART's gross negligence claim cannot rely on a showing of "superior knowledge."  The duty of care imposed by special knowledge arises "as a consequence of an agreement between parties, or as a result of one party's reliance on the other's representations, if one party is the <u>only source</u> of information to the other party, or the problems are not discoverable by other reasonable means."  <u>City of Rome v. Glanton</u>, 958 F. Supp. 1026, 1038-39 (E.D. Pa. 1997) (emphasis added); <u>see also</u> <u>Reichhold Chems.</u>, 1999 WL 270391, at *2.  The ART cannot dispute the absence of any agreement between the Investment Banks and Adelphia that imposed a fiduciary or similar duty, Rule 56.1 Statement ¶ 4, nor can the ART credibly argue that the Investment Banks were the only source of the information the ART alleges was concealed from the Outside Directors.  As this Court recognized, the ART's complaint itself alleges that the Rigases and other members of Adelphia management – at a minimum – possessed all of the information that was allegedly concealed from the Outside Directors.  Rule 56.1 Statement ¶ 6; <u>see also</u> <u>5/6/09 Decision</u>, 624 F. Supp. 2d at 322-23.  The factual record

14

establishes that the Investment Banks' relationship with Adelphia was that of a typical

underwriter, and accordingly, the Investment Banks owed no fiduciary or other duty to Adelphia

that could form the basis of a gross negligence claim.  See Glanton, 958 F. Supp. at 1039 ("[A]

duty to speak does not arise when both a plaintiff and defendant are sophisticated business

entities, entrusted with equal knowledge of the facts and equal access to legal representation.").

## CONCLUSION

For the foregoing reasons, the Investment Banks respectfully request that the Court grant

the Investment Banks' motion for summary judgment and dismiss the claims for breach of

fiduciary duty (Claim 36) and gross negligence (Claim 40) against the Investment Banks, and

grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        November 18, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By:  _Mitchell A. Lowenthal_

Mitchell A. Lowenthal
(mlowenthal@cgsh.com)
Joon H. Kim
(joonkim@cgsh.com)
Members of the Firm

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*(Attorneys for ABN AMRO Inc., Barclays
Capital Inc., BNY Capital Markets, Inc.,
CIBC World Markets Corp., Deutsche Bank
Securities, Inc. (f/k/a Deutsche Bank Alex
Brown, Inc ), Fleet Securities, Inc., Morgan
Stanley & Co. Incorporated, PNC Capital
Markets LLC, Scotia Capital (USA) Inc.,
SunTrust Robinson Humphrey, Inc (f/ka
SunTrust Equitable Securities), TD Securities
(USA) LLC (f/k/a TD Securities (USA) Inc.)).*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Marshall R. King
      Marshall R. King (MK-1642)
      Robert F. Serio (RS-2479)

200 Park Avenue
47th Floor
New York, New York 10166-0193
(212) 351-4000
(*Attorneys for Merrill Lynch & Co.*)

MILBANK, TWEED, HADLEY &
McCLOY LLP

By: /s/ Thomas A. Arena
   Thomas A. Arena (TA 4613)
   (tarena@milbank.com)

1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
(*Counsel for J.P. Morgan Securities,*
*Inc.*)

DUANE MORRIS LLP

By: /s/ Lawrence J. Kotler
   Lawrence J. Kotler

1540 Broadway, Suite 1400
New York, NY  10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

Wayne A. Mack
J. Manly Parks
30 South 17th Street
Philadelphia, PA  19103-1020
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
(*Counsel Cowen and Company, LLC f/k/a*
*Cowen & Co., LLC*)

WILMER CUTLER PICKERING HALE
AND DORR LLP

By: /s/ Philip D. Anker
   Philip D. Anker
   (philip.anker@wilmerhale.com)

17

399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
*(Counsel for Credit Suisse Securities (USA)*
*LLC (f/k/a Credit Suisse First Boston*
*Corporation and Donaldson, Lufkin &*
*Jenrette Securities Corporation) and The*
*Royal Bank of Scotland PLC)*

MAYER BROWN LLP

By: /s/ Jean-Marie Atamian
        Jean-Marie L. Atamian
        (jatamian@mayerbrown.com)

1675 Broadway
New York, NY 10019
(212) 506-2500
*(Attorneys for BMO Capital Markets*
*Corp.)*

SIMPSON THACHER & BARTLETT
LLP

By:   /s/ William T. Russell, Jr.
        William T. Russell, Jr.
        (wrussell@stblaw.com)
        Paul C. Gluckow
        (pgluckow@stblaw.com)
        Jeffrey Coviello
        (jcoviello@stblaw.com)

425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
*(Attorneys for Wachovia Capital Markets,*
*LLC (f/k/a Wachovia Securities, Inc.)*

CLIFFORD CHANCE US LLP

By:  /s/ Andrew Brozman
        Andrew Brozman (APB-2456)

31 West 52nd Street

18

New York, New York 10019
(212) 878-8000
(*Attorneys for Calyon Securities (USA),
Inc.*)