KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

DAVID M. FRIEDMAN
DFRIEDMAN@KASOWITZ.COM
212-506-1740

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/2010

**MEMO ENDORSED**

July 29, 2010

RECEIVED IN CHAMBERS
JUL 2 9 2010
LAWRENCE M. McKENNA
USDJ   SDNY

**BY HAND**
Honorable Lawrence M. McKenna
United States District Court
  for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007

    Re:    <u>Adelphia Recovery Trust v. Bank of America, N.A., et al.</u>, 05 Civ. 9050

Dear Judge McKenna:

    On behalf of Plaintiff Adelphia Recovery Trust, we respectfully request leave to file a sur-reply to the extensive reply papers that we received earlier this week from Defendants. The reply papers included four "omnibus" briefs on behalf of all Defendants, one group brief on behalf of the Margin Lenders, two stand-alone briefs on the fraudulent conveyance claims, and 23 separate briefs from each individual bank defendant or related pair of bank defendants, as well as ten attorneys' declarations attaching additional discovery material. While Defendants' initial moving briefs totaled 690 pages (including 140 pages in the three main omnibus briefs), their reply briefs are, in the aggregate, almost as voluminous, with many of the individual bank reply briefs exceeding the initial briefs (for a total of 630 pages, including 115 pages in the three main omnibus briefs). Although the parties have not typically haggled over the length of motion papers in the past, it is certainly unusual (even in this case) for reply briefs to equal or even exceed the length of opening briefs.

    We wish to file a sur-reply because the Trust believes it would be useful to the Court in connection with the "obvious issue" that Your Honor identified for oral argument in the order dated July 12, 2010: "is there or is there not an issue of material fact." In their reply papers, Defendants have pointed to a variety of factual matters that they incorrectly claim to be undisputed and intemperately accused the Trust of citing facts and law that are "fabrications" and "misrepresentations" and "ramblings," among other terms. The Trust believes that it cannot simply deal with these matters at oral argument. Indeed, it would be an extremely inefficient use of the Court's time for us to clarify and respond at length to the Defendants' extensive mischaracterizations of witness testimony and documentary evidence. In addition, there are a small number of new legal issues raised for the first time in certain reply briefs, particularly as to causation and one of the fraudulent conveyance claims.

    The difficulty is that a substantial percentage of Defendants' misstatements (of omission and commission) would not be obvious to the Court from a review of the briefs filed to date as

*Request denied without prejudice to oral renewal at end of oral argument (8/12/10). So ordered.* [signature] USDJ 8/2/10

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Honorable Lawrence M. McKenna
July 29, 2010
Page 2

they arise for the first time in the reply papers. And, the record is so voluminous that it would not be possible for these errors to be uncovered without a specific explanation from counsel through citations to the source materials. These are some examples of the kinds of errors that would be illuminated if we are permitted to file sur-reply papers:

- o Defendants assert that the "atypical and suspicious" quarter-end repayments and borrowings under the facilities were merely "rollovers" of three-month financial instruments known as "LIBOR Notes," and cite the testimony of David Sawyer, an employee of CSFB and then Societe Generale, at pages 338:11-340:6. (Omnibus Misconduct Reply Br. at 50, n.58.) But they ignore that, on further questioning beginning on the next line, Mr. Sawyer acknowledged that there were several day gaps between the repayments and the reborrowings, so they were *not* rollovers and said "I stand corrected in what I said," and admitted that these transactions had the effect of removing outstanding debt from the Obligor Debtors' books as of the last day of the quarters. Sawyer Tr. at 340:10-344:11.

- o Wachovia says that its officer Fritz Bentien testified "that he was personally comfortable with the amount of information received from Adelphia management" relating to Olympus. (Wachovia Reply Br. at 4, n.7.) They fail to cite Mr. Bentien's directly contrary contemporaneous internal memoranda identifying the lack of information as a risk in the deal and pointing out that Adelphia "is unwilling to provide [financial data] in sufficient detail, both at the Borrower Group and Parent levels, to enable First Union to underwrite the transaction to its full satisfaction" and complains about "Very limited ability to underwrite credit, given management's historical ability to provide bank group with only cursory amount of Borrower Group detail." Plaintiff's Apps. 889, 893.

- o Wachovia states that Mark Misenheimer "specifically and unequivocally testified that he did not believe that Wachovia violated any of its guidelines." (Wachovia Reply Br. at 4; Exhibit A thereto, p. 2.) What Mr. Misenheimer actually said about Wachovia's failure to obtain separate financials from the Rigas Family co-borrowers was that "I don't believe it was a violation of the guidelines" but it "didn't adhere to the guidelines." Misenheimer Tr. at 645:7-14. Wachovia omitted his full answer in order to call this an "unequivocal" denial – to the contrary, it is an admission.

- o JPMorgan Chase claims that "JPM was fully aware" that Deloitte "regularly issued clean audit opinions on Adelphia's financial statements" to indicate that it relied on those opinions (JPM Reply Br. at 15), but it fails to mention that in an interrogatory response it admitted that it could not identify a single JPM employee who had ever seen or read the Deloitte audit opinions or ever communicated with Deloitte about Adelphia. Apps. 744 and 745 at interrogatory 8. (Other banks make a similar assertion about reliance on Deloitte's audits and Buchanan Ingersoll's opinion letters, despite evidence that they were unable to identify anyone who actually read or relied on these reports, as we would set forth in a sur-reply.)

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Honorable Lawrence M. McKenna
July 29, 2010
Page 3

- o Defendants state that "not one Adelphia witness testified that the Moving Banks engaged in any tying activity" and cite the deposition of Dean Marshall, Director of Finance, at page 722, lines 1-6, where he said he did "not specifically recall any banks telling us they would only participate in Adelphia bank deals if they participated in public security finances." (BHCA Reply Br. at 19.) Yet they omit the answers he gave to questions beginning on the very next line of his transcript in which he recalled discussions that he and James Brown of Adelphia had with banks where the banks discussed "linking the two types of businesses" and that "this is a fairly common discussion, you know, with lots of banks, but I recall discussing the fact ... that a component of being able to justify additional allocations of credit was some form of yield enhancement [which] could take the form of expected economics on future security issuances," and that the banks "expressed that sentiment to [Mr. Marshall] and/or Mr. Brown." Marshall Tr. at 722:7-723:21.[1] This presents a disputed issue of fact on the banks' motive and linkage of services, in which the inference must be drawn in Plaintiff's favor on this motion.

In order to provide the Court with a written submission that will seek to present the bulk of Plaintiff's challenges to Defendants' misstatements of the record, the Trust requests an opportunity to file sur-reply papers on August 31, 2010. We believe that in a case of this magnitude, in terms of the dollar amounts at issue, the number of parties, and the volume of papers that already have been submitted, an opportunity to file a sur-reply is appropriate and plainly justified.

We asked counsel for Defendants whether they would consent to this request, but they have declined, and have indicated that they may wish to submit a short response to this letter. We are available to discuss this request at the Court's convenience.

Respectfully,

David M. Friedman

cc:   All counsel (by email)

---

[1] Defendants do not attach this portion of Mr. Marshall's transcript to their reply papers, so the Trust will need to submit a supplemental appendix to add this, and potentially other, deposition excerpts with its sur-reply.