UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ADELPHIA RECOVERY TRUST, ) | No. 05 Civ. 9050 (LMM) |
| ) | |
| Plaintiff, ) | |
| ) | |
| - against - ) | |
| ) | |
| BANK OF AMERICA, N.A., *et al.*, ) | |
| ) | |
| Defendants. ) | |

---

## MEMORANDUM OF ADELPHIA RECOVERY TRUST IN RESPONSE TO GOLDMAN SACHS & CO.'S NOVEMBER 12, 2010 LETTER AND THE SUPPLEMENTAL DECLARATION OF CLAUDE SZYFER

# INTRODUCTION[1]

Goldman has belatedly supplemented its motion for summary judgment with an additional document that it asserts supports its argument that the Trust should be judicially estopped from arguing that Adelphia Communications Corp. ("ACC") owned the Concentration Account that was the source of the Margin Loan payments to Goldman. In doing so, however, Goldman fatally undermines its own argument and illustrates exactly why summary judgment is inappropriate here.

First, the document Goldman has submitted is a financial schedule of assets that was publicly filed in February 2004, nearly two years into the bankruptcy proceedings, by a subsidiary of ACC -- ACC Operations, Inc. ("ACC Ops."). This ACC Ops. Schedule (like the Debtors' May 2005 Schedules that Goldman relied upon in its initial motion papers purporting to show that the Concentration Account was owned by yet another ACC subsidiary, Adelphia Communications, Inc. ("ACI")) is irrelevant as a legal matter because (i) the pertinent issue is which entity owned and controlled the account at the time the margin payments were made in 2001 and 2002, and (ii) the undisputed evidence is that at all relevant times ACC held title to the Concentration Account and controlled the use of those funds. As such, ACC has standing to recover money fraudulently transferred from that account.

Second, Goldman's assertion that this newly offered document purportedly shows that ACC Ops. owned the Concentration Account undermines the rest of Goldman's judicial estoppel argument in its summary judgment papers that a different ACC subsidiary -- ACI -- owned the Concentration Account. Goldman's submission of this document demonstrates precisely why summary judgment should not be granted here. Indeed, these "facts" that Goldman claims are

---

[1] Unless otherwise defined, capitalized terms shall have the meaning set forth in the Trust's *Memorandum Of Law In Opposition To The Margin Lenders' And Goldman Sachs' Motions For Summary Judgment On Claim 31* (the "Opposition Brief").

2

"undisputed" in fact contradict each other. Rather than support Goldman's arguments, the document, at best, presents further disputed factual issues that preclude an award of summary judgment.

## ARGUMENT

### I. The ACC Ops. Schedule Is Irrelevant

In its Opposition Brief, the Trust demonstrated that, at the time the Margin Loan payments were made from the Concentration Account to Goldman in 2001 and 2002, ACC owned the Concentration Account: the Trust established that (a) ACC had control over and title to the Concentration Account; (b) the bank records recorded the Concentration Account as an ACC account; (c) no other entity could restrict ACC's ability to use and access the funds in the Concentration Account; and (d) the funds at issue could have gone to pay the creditors of ACC. *Id.* at 13. Pursuant to *Southmark Corp. v. Grocsz (In re Southmark Corp.)*, 49 F.3d 1111 (5th Cir. 1995), and *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447 (10th Cir. 1996), such evidence conclusively establishes that ACC owned the Concentration Account for the purposes of standing to recover a fraudulent transfer. (Opposition Brief at 11-14).[2] Nothing about the newly submitted ACC Ops. Schedule from 2004 changes this analysis.

Goldman now relies on the 2004 ACC Ops. Schedule, just as it earlier relied on the May 2005 Schedules submitted by the Debtors, for the assertion that the Trust should be judicially estopped from arguing that ACC owned this account. The Trust demonstrated in its summary judgment opposition (*Id.* at 14-18), however, that these schedules cannot be the basis for judicial

---

[2] A recent decision from the Bankruptcy Court in this District confirms that ACC has standing to bring its fraudulent conveyance claim against Goldman under the facts present here. *In re 1030 Tax Group LLC*, Case No. 07-11448 (MG), 2010 Bankr. LEXIS, 2612, 57-59 (Bankr. S.D.N.Y. Aug. 27, 2010) (trustee presumptively has standing to bring an intentional fraudulent conveyance claim where bank statements indicate that payments from an account that was held in the debtor's name: "money in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate ... the accounts that held the transferred funds belonged to the [debtor] ... The Trustee has provided bank account statements that further establish this fact.")

estoppel because, among other reasons, the Bankruptcy Court previously concluded that the Debtors' bankruptcy schedules, including the May 2005 Schedules, were mere evidence only without any presumption of validity and were not binding admissions. (*Id.* at 15-16) (citing *In re Adelphia Communs. Corp.*, 368 B.R. 140, 163 (Bankr. S.D.N.Y. 2007)). The same is true of the ACC Ops. Schedule. Like the May 2005 Schedules, the ACC Ops. Schedule suffers from the same findings and conclusions of the Bankruptcy Court and cannot be the basis of judicial estoppel. *See Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006) (judicial estoppel can only be invoked where an "inconsistent position [has] been adopted by the [prior] court in some manner").

The Trust also demonstrated that the May 2005 Schedules did not state that ACI owned the Concentration Account, but rather reflected that the Concentration Account had been recorded internally by Rigas management on Adelphia's books as being owned by ACI, and which indicated that the account was held "in the name" of ACI. Pursuant to *Southmark* and *Amdura*, such facts are outweighed by the abundant evidence that the bank records and statements actually showed that the account was in the name of ACC and was completely controlled by ACC and used for ACC's purposes, all supporting a finding that ACC owned the Concentration Account. (Opposition Brief at 16-17.) The same facts demonstrate that the ACC Ops. Schedule is far outweighed by the other evidence.

Moreover, the evidence (submitted herewith) surrounding the ACC Ops. Schedule, which Goldman failed to bring to the Court's attention, further demonstrates the limited value of this evidence. The evidence makes clear that the 2004 ACC Ops. Schedule reflects a post-petition *change* in the name of the Concentration Account. On April 29, 2003, nearly a year after the bankruptcy proceedings began, Adrian Alfred, the Treasury Manager of Adelphia, sent a letter to

4

Nancy Hernandez (the "April Letter"), of Wachovia Bank where the Concentration Account was held, requesting that the name on the Concentration Account be changed. Mr. Alfred attached several documents "to effectuate a change in the Tax Identification Number and Account Name" for the Concentration Account to "ACC Operations, Inc. – Concentration Account."[3] Among the attached documents was a March 18, 2003 ACC Board resolution that acknowledged the changes in Adelphia's management and Board membership following the bankruptcy and a change of the individuals with signing authority over the Concentration Account. The ACC Ops. Schedule was filed in Bankruptcy Court the following year and merely reflected the changed circumstances post-bankruptcy, long after ACC made the fraudulent transfers out of the Concentration Account to Goldman to pay off the Rigas Family's margin loans. To be clear, it is the ownership of the Concentration Account on the date of each of those fraudulent transfers in 2001 and 2002 that is at issue, not who owned the account after Adelphia filed for bankruptcy.

Finally, the Trust also pointed out that judicial estoppel could not apply based upon the May 2005 Schedules because the alleged prior inconsistent statement was not unequivocal, as required under the doctrine. (Opposition Brief at 17-18). Rather, the May 2005 Schedules contained extensive caveats and warnings that the contents were not necessarily final and may contain inadvertent errors or admissions and the Debtors undertook no obligation to update, modify, or revise them. The ACC Ops. Schedule contains the same caveats and warnings and similarly cannot establish judicial estoppel. Accordingly, at best, the ACC Ops. Schedule is simply no different than the other schedules already fully explored in the existing motion papers. Thus, Goldman's proposed addition to the record adds nothing to support Goldman's judicial

---

[3] A copy of each of these documents is attached as Exhibit A to the Declaration of Daniel N. Zinman in Support of this Memorandum.

estoppel argument. To the contrary, as the Trust now shows, the ACC Ops. Schedule actually undermines Goldman's estoppel argument.

## II. The ACC Ops. Schedule Undermines Goldman's Other Judicial Estoppel Argument

Even adopting Goldman's view of the ACC Ops. Schedule – that, notwithstanding the arguments above, this 2004 schedule somehow conclusively establishes which entity owned the Concentration Account when the fraudulent transfers were made to Goldman in 2001 and 2002 – the ACC Ops. Schedule undercuts Goldman's judicial estoppel argument in its initial papers, as well as the very standard that Goldman endorses for determining ownership of the Concentration Account.

Goldman's judicial estoppel argument was premised heavily on the contention that the Debtors represented to the Bankruptcy Court that the Concentration Account was owned by ACI, and not by ACC or any other Debtor. (*See* Goldman's Brief, at 11, 16; *Reply Memorandum Of Law In Support Of Goldman Sachs & Co.'s Motion For Summary Judgment On The Thirty-First Claim For Relief* ("Goldman Reply") at 6; *Reply Of The Margin Lender Defendants In Support Of Their Motion For Summary Judgment On Claim 31* at 6, 13).[4] Now, Goldman contends that the Debtors represented to the Bankruptcy Court that the Concentration Account was owned by a different Debtor, ACC Ops. In effect, Goldman is arguing that the Debtors made two different, inconsistent representations as to the ownership of the Concentration Account: ACI in the May 2005 Schedules and ACC Ops. in the 2004 ACC Ops. Schedule.

---

[4] Goldman incorporated the arguments from the Margin Lender Reply into its Reply brief. (Goldman Reply at 3, n.2).

Judicial estoppel clearly cannot apply where the alleged prior position is actually two assertions that are inconsistent with each other. Indeed, in order for judicial estoppel to apply, the party against which the doctrine is invoked must have persuaded the prior court to adopt a prior position. *Zender v. United States*, 547 U.S. 489, 505 (2006); *Rosenman & Colin LLP v. Sandler*, 01 Civ. 7123 (GEL), 2002 U.S. Dist. LEXIS 900 at *5, n.1 (S.D.N.Y. 2002). Putting aside the point that, as argued in the Opposition Brief, the Bankruptcy Court did not adopt *any* position on the ownership of the Concentration Account (Opposition Brief at 14-16), it is simply impossible for the Debtors to have persuaded the Bankruptcy Court that ACI owned the Concentration Account, on the one hand, and at the same time, to have persuaded the court that ACC Ops. owned the Concentration Account on the other. In light of its new "evidence," Goldman has rendered its own judicial estoppel argument nonsensical. The very inconsistency of the bankruptcy schedules only confirms the caveats set forth in all of the schedules that they are inherently unreliable. Such unreliable assertions cannot be the basis for judicial estoppel. *Citizens Accord Inc. v. Town of Rochester*, 98-CV-0715, 2000 U.S. Dist. LEXIS 4844, 45-47 (N.D.N.Y. April 18, 2000) (language in the prior statement must be unequivocal in order to be a prior statement for the purposes of judicial estoppel).

Accordingly, the bankruptcy schedules cannot justify judicial estoppel. Rather, Goldman's new evidence only confirms that the Court should not rely on the Debtors' schedules, but rather on the established legal test articulated in *Southmark* and *Amdura* for determining ownership of the Concentration Account. Under that test, the contemporaneous evidence is clear that ACC owned the Concentration Account. To the extent the Court wishes to give any weight to the ACC Ops. Schedule, however, it would at most constitute further disputed evidence as to a material issue of fact, which undermines Goldman's summary judgment motion.

## CONCLUSION

For the foregoing reasons and for the reasons articulated in the Opposition Brief, the Trust respectfully requests that the Court deny Goldman's Summary Judgment Motion.

Dated: November 22, 2010
      New York, New York

                            Respectfully submitted,

                            KASOWITZ, BENSON, TORRES
                            &amp; FRIEDMAN LLP

                            By: /s/ *[signature]*
                                David M. Friedman
                                (dfriedman@kasowitz.com)

                            1633 Broadway
                            New York, New York  10019
                            (212) 506-1700
                            (212) 506-1800 (facsimile)

                            *Counsel for the Adelphia Recovery Trust*